1 | DYLAN J. LIDDIARD, State Bar No. 203055 | MICHAEL J. LOCKERBY (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI | FOLEY & LARDNER LLP
2 | Professional Corporation | Washington Harbour
3 | 650 Page Mill Road | 3000 K Street, N.W. | Suite 600
Palo Alto, California 94304 | Washington, D.C. 20007
4 | Telephone: (650) 493-9300 | Telephone: (202) 672-5300
Facsimile: (650) 565-5100 | Facsimile: (202) 672-5399
5 | Email: dliddiard@wsgr.com | Email: mlockerby@foley.com

6 | MORRIS J. FODEMAN (*pro hac vice*)
7 | WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
8 | 1301 Avenue of the Americas, 40th Floor
New York, New York 10019
9 | Telephone: (212) 497-7704
Facsimile: (212) 999-5899
10 | Email: mfodeman@wsgr.com

11 | STUART A. WILLIAMS (*pro hac vice*)
12 | WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
13 | 375 Southpointe Boulevard
Canonsburg, Pennsylvania 15317
14 | Telephone: (917) 288-5094
Facsimile: (212) 999-5899
15 | Email: swilliams@wsgr.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS, <br><br> Plaintiff, <br><br> v. <br><br> GUARDIAN PROTECTION PRODUCTS, INC., <br><br> Defendant. | Case No. 1:15-cv-00321-SKO <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO AMEND THE COMPLAINT** <br><br> Date: July 20, 2016 <br> Time: 9:30 a.m. <br> Courtroom: 7 (Sixth Floor) <br> Judge: Hon. Sheila K. Oberto |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

    A.    GIS's Existing Claims Against Guardian .............................................................. 2

    B.    Guardian's Sale of Furniture Protection Plans to Renaissance ............................. 3

    C.    RPM's Direction that Guardian Breach its Agreements with GIS ....................... 4

    D.    Guardian's Status as RPM's Alter Ego ................................................................ 4

ARGUMENT .............................................................................................................................. 5

I.    LEGAL STANDARD ....................................................................................................... 5

II.    GIS SHOULD BE GRANTED LEAVE TO AMEND ITS COMPLAINT ..................... 6

    A.    There Is No Undue Delay ..................................................................................... 6

    B.    There Is No Bad Faith .......................................................................................... 7

    C.    There Is No Futility of Amendment ..................................................................... 7

    D.    There Is No Prejudice to Guardian ....................................................................... 9

    E.    There Is Good Cause to Amend the Pre-Trial Scheduling Order ....................... 10

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Express Travel Related Servs. Co. v. D&A Corp.*,
   No. CV-F-04-6737 OWW/TAG,
   2007 U.S. Dist. LEXIS 65998 (E.D. Cal. Aug. 23, 2007) ................................................................. 7

*Asahi Kasei Pharma Corp. v. Actelion Ltd.*,
   166 Cal. Rptr. 3d 134 (Cal. Ct. App. 2013) ........................................................................ 9

*Bates v. Jones*,
   No. C 95-2638 CW,
   1996 U.S. Dist. LEXIS 20998 (N.D. Cal. May 30, 1996) ............................................... 10

*Caven v. Autotime Motors*,
   Civ. No. 2:15-295 WBS EFB,
   2016 U.S. Dist. LEXIS 68252 (E.D. Cal. May 24, 2016) ................................................. 6

*EIG Global Energy Partners, LLC v. TCW Asset Mgmt. Co.*,
   No. CV 12-7173 CAS,
   2012 U.S. Dist. LEXIS 171412 (C.D. Cal. Nov. 30, 2012) .............................................. 8

*Eldridge v. Block*,
   832 F.2d 1132 (9th Cir. 1987) ......................................................................................... 5

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ......................................................................................... 5

*Foman v. Davis*,
   371 U.S. 178 (1962) .................................................................................................... 5, 6

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*,
   No. CIV. S-05-583 LKK/GGH,
   2006 U.S. Dist. LEXIS 94421 (E.D. Cal. Dec. 15, 2006) .............................................. 10

*In re Daisy Sys. Corp.*,
   97 F.3d 1171 (9th Cir. 1996) ........................................................................................... 5

*James ex rel. James Ambrose Johnson, Jr., 1999 Trust v. UMG Recordings, Inc.*,
   Nos. C 11-1613 SI, C 11-2431 SI, C 11-5321 SI,
   2012 WL 4859069 (N.D. Cal. Oct. 11, 2012) ...................................................... 7, 9, 10

*Macias v. City of Clovis*,
   No. 1:13-cv-01819-BAM,
   2016 U.S. Dist. LEXIS 38964 (E.D. Cal. Mar. 24, 2016) ................................................ 6

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) ........................................................................................8

*N. Cal. River Watch v. Ecodyne Corp.*,
    No. C 10-5105 MEJ,
    2013 U.S. Dist. LEXIS 5368 (N.D. Cal. Jan. 14, 2013).......................................................6

*No Cost Conference, Inc. v. Windstream Commc'ns, Inc.*,
    940 F. Supp. 2d 1285 (S.D. Cal. 2013) .............................................................9

*Nordyke v. King*,
    644 F.3d 776 (9th Cir. 2011) ........................................................................................7

*RRX Indus., Inc. v. Lab-Con, Inc.*,
    772 F.2d 543 (9th Cir. 1985) ........................................................................................8

*Todd v. Tempur-Sealy Int'l, Inc.*,
    No. 13-cv-04984-JST,
    2015 U.S. Dist. LEXIS 114116 (N.D. Cal. Aug. 26, 2015) ................................... 7, 8, 10

**RULES**

Fed. R. Civ. P. 8........................................................................................................................9

Fed. R. Civ. P. 15.............................................................................................................. 1, 5, 7

Fed. R. Civ. P. 16................................................................................................................. 1, 6

# INTRODUCTION

Plaintiff G.P.P., Inc. d/b/a Guardian Innovative Solutions ("GIS") submits the following Memorandum of Points and Authorities in support of its motion for leave to amend its complaint pursuant to Fed. R. Civ. P. 15(a)(2), and to file the [Proposed] Second Amended Complaint ("SAC"), which is attached as Exhibit A to the accompanying Declaration of Dylan J. Liddiard ("Liddiard Decl."). GIS further requests, pursuant to Fed. R. Civ. P. 16(b)(4), that the Court vacate the current scheduling order, so that the parties may confer and propose a new schedule which will allow GIS to amend its complaint, defendant(s) to respond, and the parties to obtain additional discovery regarding the new claims.

GIS has been a distributor of Defendant Guardian Protection Products, Inc.'s ("Guardian") products in good standing for over twenty-five years. In or about mid-2012, Guardian decided that it wanted to rewrite—heavily in its favor—a series of longstanding exclusive distribution agreements between itself and GIS, one of its distributors in various territories throughout the United States. To create leverage and to pressure GIS into acceding to its new demands, in 2013, Guardian threatened to terminate its existing agreements with GIS, and actually did purport to terminate GIS's distributorship rights in Alabama, Florida, and Tennessee. While GIS vehemently disputed that it was in breach of its agreements, Guardian persisted in its conduct. Forced to defend its contractual rights, GIS filed this suit alleging, *inter alia*, breach of various distributor agreements between the parties.

Over the course of discovery, GIS learned a number of troubling facts that compel GIS to file the instant motion.

***First***, only a few weeks ago, in May 2016, GIS learned for the first time that—in addition to the conduct that formed the basis of GIS's original and First Amended Complaint ("FAC")—Guardian has violated at least one of its agreements with GIS by selling its products to a third-party customer in the Commonwealth of Pennsylvania, one of GIS's exclusive distribution territories. Thus, GIS seeks leave to amend its complaint in order to account for this new and unanticipated breach of contract.

***Second***, also in May 2016, GIS learned for the first time that Guardian's corporate

parent, RPM Wood Finishes Group, Inc. ("RPM"), actively directed Guardian's breach of its agreements with GIS. GIS also learned that Guardian and RPM are alter egos of one another, as described more fully below. Among other factors evidencing the lack of corporate separateness, the two companies share a President, merge their finances, do not hold separate board meetings, and, according to an explicit admission by their President, are *operating as one company.* Accordingly, GIS also seeks leave to amend its complaint in order to (i) add RPM as a co-defendant as to all of GIS's claims against Guardian; and, (ii) add an alternative new claim against RPM for tortiously interfering with GIS's contracts.

## FACTUAL BACKGROUND

### A.   GIS's Existing Claims Against Guardian

In May 1988, GIS and Guardian entered into the first of many written agreements whereby GIS acquired exclusive rights to distribute Guardian's products—including furniture protection plans, or "warranties"—in certain counties in the Commonwealth of Pennsylvania (the "Pennsylvania Agreement"). FAC ¶ 5 & Ex. 1. In December 1988, GIS and Guardian entered into a similar written agreement (the "Mid-Atlantic Agreement"), which, together with the Pennsylvania Agreement, made GIS the sole authorized distributor of Guardian products in all of Pennsylvania. *Id.* ¶ 6 & Ex. 2. In the following years, GIS and Guardian entered into similar written agreements concerning other geographic distribution territories, including in Alabama, Florida, Tennessee, and several other states. *Id.* ¶¶ 7-11.

Long after these agreements had been signed—and indeed, after years of GIS serving as Guardian's most successful distributor—Guardian began engaging in a series of wrongful, coercive acts, including refusing to pay commission due to GIS, improperly terminating the Alabama, Florida, and Tennessee Agreements, threatening to terminate all other agreements (including the Pennsylvania and Mid-Atlantic Agreements) in order to pressure GIS to agree to new and (to GIS) disadvantageous contract terms, and violating various state and federal franchise laws. *See id.* ¶¶ 12-41. Guardian's decision to violate GIS's contractual rights was without legal basis or justification and was simply born from its belief that "[t]he old contracts . . . . are no longer applicable to the current business[.]" *Id.* ¶ 35.

To defend its rights, GIS brought suit against Guardian and has alleged claims for: breach of contract, *id.* ¶¶ 42-46, 54-58; breach of the implied covenants of good faith and fair dealing, *id.* ¶¶ 47-53, 59-64, 117-22; declaratory judgment, *id.* ¶¶ 65-79; violation of the California Business and Professions Code, *id.* ¶¶ 80-97; and violation of the California Franchise Investment Law, *id.* ¶¶ 98-116.  GIS's claim for breach of the implied covenants of good faith and fair dealing pertain, *inter alia*, to Guardian's wrongful conduct under the Pennsylvania and Mid-Atlantic Agreements.  *Id.* ¶¶ 117-22.

### B. Guardian's Sale of Furniture Protection Plans to Renaissance

As discovery progressed in this case, GIS learned that, in late 2014, Guardian entered into a business relationship with a third-party reseller known as RenComGroup, LLC (d/b/a "Renaissance"), which builds eCommerce websites for furniture retail stores.  Liddiard Decl. ¶ 4 (*see also* http://www.rencomgroup.com and http://www.rencomgroup.com/ecommerce.html).  Renaissance is based in Philadelphia, Pennsylvania (*see* http://www.rencomgroup.com/directions.html), and is therefore located within GIS's exclusive territory for the distribution of Guardian products under at least the Mid-Atlantic Agreement (which covers all counties not covered by the Pennsylvania Agreement, including Philadelphia County).  Liddiard Decl. ¶ 4; *see also* FAC Exs. 1-2.

Despite clear and unambiguous agreements granting GIS exclusive rights to sell Guardian products to customers in the entire Commonwealth of Pennsylvania, discovery has revealed that Guardian sold those same products to Renaissance in clear breach of contract. Only a few weeks ago, in or around May 2016, GIS learned for the first time that Renaissance may be reselling Guardian's warranties to its customers.  Liddiard Decl. ¶ 5.  Specifically, Renaissance has been offering its customers the ability to sell Guardian furniture protection plans through the eCommerce websites it develops for those customers.  *Id.* Ex. C (form from Renaissance's website explaining its offering of Guardian furniture protection plans).

On May 25, 2016, Christopher Taylor, Guardian's Vice President of Operations, confirmed during his deposition that Guardian indeed sells its warranties ***to Renaissance in Pennsylvania***, and that Renaissance then resells Guardian's warranties to its own customers.

Mr. Taylor testified that Guardian's new "partnership" with Renaissance began in the second half of 2014. *Id.* Ex. D at 14:18-15:6. Beginning in 2016, Renaissance became a "customer" of Guardian with respect to electronic furniture protection plans and then, in turn, began reselling those electronic warranties to its own customers. *Id.* at 17:2-18:4. Mr. Taylor also admitted that Renaissance is headquartered in Philadelphia, Pennsylvania. *Id.* at 18:5-7. In addition, Mr. Taylor confirmed that the warranties that Guardian sells to Renaissance in Pennsylvania are the ***same warranties*** for which GIS has exclusive distribution rights under the Pennsylvania and Mid-Atlantic Agreements. *Id.* at 21:22-22:9. This testimony confirmed, without any doubt, GIS's new-found suspicions that Guardian is in further breach of contract.

### C. RPM's Direction that Guardian Breach its Agreements with GIS

GIS also learned, in the course of discovery, that Guardian is not the only wrongful actor in this story. On May 12, 2016, GIS deposed Ronnie Holman, President of both Guardian and its corporate patent, RPM. *Id.* Ex. E at 16:13-17. Mr. Holman testified that RPM has been closely involved in Guardian's breach of its agreements with GIS, and in fact, had been actively directing and approving Guardian's conduct. For instance, Mr. Holman testified that it was he, in his capacity as President of the RPM "group," who approved of Guardian's wrongful termination of the Alabama, Florida, and Tennessee Agreements in October 2013, because he believed that GIS had not met its "[m]onthly purchase requirements" under those agreements. *Id.* at 26:9-27:21, 28:3-16; *see also* FAC ¶¶ 16-27. As President of RPM, Mr. Holman gave Guardian's employees "the ability to proceed" in terminating those agreements with GIS. Liddiard Decl. Ex. E at 191:1-14. Mr. Holman admitted that the decision to terminate a Guardian distributor such as GIS "ultimately rests with RPM," and that RPM "makes decisions and pays bills on behalf of Guardian[.]" *Id.* at 207:14-208:21.

### D. Guardian's Status as RPM's Alter Ego

GIS also learned, at Mr. Holman's deposition, that Guardian and RPM are actually alter egos of one another and do not maintain any semblance of corporate separateness. Mr. Holman testified that he is the President of both RPM and Guardian, *id.* at 16:13-17; that he became the President of both entities at the same time, *id.* at 16:6-12; that he is a member of both of their

boards of directors, *id.* at 17:2-20; that Guardian does not hold regular board meetings, *id.* at 18:7-11; that he cannot recall the last time that Guardian held a board meeting, *id.* at 18:12-14; and that he has never attended a board meeting of either Guardian or RPM or even seen minutes of a board meeting for either entity, *id.* at 19:11-22.  Mr. Holman also testified that he and all other Guardian employees are paid by RPM, not Guardian.  *Id.* at 27:22-28:2, 199:24-200:2.  The two entities also share services with one another, including banking, despite the fact that there is no official shared services agreement between them.  *Id.* at 200:3-8.  RPM also pays AIG—the underwriter of the furniture protection plans that are central to this litigation—on Guardian's behalf.  *Id.* at 199:13-21.  Mr. Holman even admitted that, in his capacity as President of both Guardian and RPM, he "function[s] as one and the same."  *Id.* at 48:22-49:3.  In fact, when explicitly asked whether Guardian and RPM are "two separate companies," Mr. Holman replied that Guardian and RPM are "*operating as one company*" and that GIS just "happens to be a legal entity[.]"  *Id.* at 49:12-22 (emphasis added).

## ARGUMENT

### I.  LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) allows a party to amend its complaint after obtaining leave of court, or by the adverse party's consent.  Leave to amend is generally within the discretion of the district court, *see, e.g.*, *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1175 (9th Cir. 1996), but the Rule provides that "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2).

"Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality."  *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted).  In determining whether to grant a motion for leave to amend a complaint, courts consider four factors: (1) undue delay, (2) bad faith, (3) futility of amendment, and (4) prejudice to the opposing party.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (reversing district court's denial of leave to amend) (emphasis in original).

Where, as here, a court has already issued a pre-trial scheduling order, the party seeking leave to amend must also demonstrate "good cause" to modify that scheduling order under Fed. R. Civ. P. 16(b). *E.g.*, *Caven v. Autotime Motors*, Civ. No. 2:15-295 WBS EFB, 2016 U.S. Dist. LEXIS 68252, at *3 (E.D. Cal. May 24, 2016). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Id.* (citation omitted). "Good cause may be demonstrated by . . . newly discovered facts." *Macias v. City of Clovis*, No. 1:13-cv-01819-BAM, 2016 U.S. Dist. LEXIS 38964, at *7 (E.D. Cal. Mar. 24, 2016) (finding "good cause" under Rule 16(b)).

## II. GIS SHOULD BE GRANTED LEAVE TO AMEND ITS COMPLAINT

Here, all four of the *Foman* factors indicate, unambiguously, that GIS should be granted leave to amend its complaint in order to: (1) add a breach of contract claim against Guardian on the basis of newly-discovered evidence of its relationship with Renaissance; (2) add RPM as a co-defendant to all of GIS's claims against Guardian on the basis of newly-discovered evidence that Guardian and RPM are alter egos; and (3) add an alternative claim against RPM on the basis of newly-discovered evidence that, by directing Guardian to terminate several of its agreements with GIS, RPM tortiously interfered with Guardian's agreements with GIS.

In addition, there is good cause to amend the scheduling order to allow GIS to file a new complaint, as GIS has acted diligently to amend its claims since it only recently learned of Guardian and RPM's additional unlawful conduct.

### A. There Is No Undue Delay

There is no undue delay here. GIS learned of Guardian's relationship with Renaissance only a few weeks ago, several months after the filing of the First Amended Complaint. Moreover, the deposition of Mr. Taylor, which provided GIS with new information about Guardian's breach of the Mid-Atlantic Agreement, did not take place until May 25, 2016. In addition, GIS did not learn that Guardian and RPM are alter egos, or that RPM directed Guardian to terminate several of Guardian's agreements with GIS, until May 12, 2016. *See, e.g.*, *N. Cal. River Watch v. Ecodyne Corp.*, No. C 10-5105 MEJ, 2013 U.S. Dist. LEXIS 5368, at *11 (N.D. Cal. Jan. 14, 2013) ("Because River Watch sought to amend its pleading within a month after

receiving [new] information, there is no evidence of undue delay.").

More generally, discovery in this case is ongoing[1], and "undue delay cannot exist where, as in this case, discovery has not ended." *James ex rel. James Ambrose Johnson, Jr., 1999 Trust v. UMG Recordings, Inc.*, Nos. C 11-1613 SI, C 11-2431 SI, C 11-5321 SI, 2012 WL 4859069, at *2 (N.D. Cal. Oct. 11, 2012); *accord, e.g.*, *Am. Express Travel Related Servs. Co. v. D&A Corp.*, No. CV-F-04-6737 OWW/TAG, 2007 U.S. Dist. LEXIS 65998, at *23 (E.D. Cal. Aug. 23, 2007) ("If discovery is not closed, undue delay does not exist.").

### B. There Is No Bad Faith

There is no bad faith here. The sole reason for the present motion is that GIS has discovered new evidence that had not previously been available to it. As noted above, this new evidence reveals that Guardian has clearly breached the Mid-Atlantic Agreement, which has been at issue since the commencement of this litigation. GIS could seek to add a claim that relates to Guardian's unlawful relationship with Renaissance only *after* learning of the relationship and the fact that it constitutes a breach of Guardian's contractual obligations. The newly-discovered evidence also reveals that Guardian and RPM are alter egos, and that RPM directed Guardian to terminate several of its agreements with GIS. GIS makes the present motion simply to account for this newly-discovered evidence.

### C. There Is No Futility of Amendment

There is no futility of amendment here. "A proposed amended complaint is futile if it would be immediately subject to dismissal." *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (citation omitted). "Under Rule 15(a), if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2015 U.S. Dist. LEXIS 114116, at *12 (N.D. Cal. Aug. 26, 2015) (citations omitted). The "denial of a motion for leave to amend on the ground of futility is rare and courts generally defer consideration of

---

[1] Per the June 3, 2016 Joint Stipulation and Order (Dkt. No. 52), fact discovery has been extended to June 30, 2016 for seven remaining depositions, expert disclosures are extended to July 1, supplemental expert disclosures are extended to July 15, and expert discovery will close on August 15.

1 challenges to the merits of a proposed amended pleading until after leave to amend is granted
2 and the amended pleading is filed." *Id*. (citations omitted).  Here, the proposed SAC, *see*
3 Liddiard Decl. Ex. A, properly states the elements of the new claims and properly seeks to add
4 RPM as a co-defendant on the basis of alter ego or, in the alternative, third-party liability.

5       As an initial matter, RPM is subject to personal jurisdiction in California in light of the
6 forum-selection clause in the various distributor agreements at issue in this case.  *See, e.g.*, FAC
7 ¶ 3 & Ex. 1 at ¶ 13.  In the Ninth Circuit, a non-party can be bound to a forum selection clause in
8 a contract where, as here, the non-party's conduct is "closely related to the contractual
9 relationship[.]"  *See, e.g.*, *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th
10 Cir. 1988) ("[Plaintiff] argues the forum selection clause can only apply to . . . the . . . defendant
11 to sign the contract.  However . . . the alleged conduct of the non-parties is so closely related to
12 the contractual relationship that the forum selection clause applies to all defendants.") (finding
13 that corporate parent was bound by forum selection clause in its subsidiary's contract).

14       With respect to GIS's new claim against Guardian arising out if its relationship with
15 Renaissance, as noted above, the relationship between Guardian and Renaissance evidences a
16 clear breach of Guardian's contractual obligations to GIS, as Guardian unambiguously violated
17 GIS's exclusive distribution rights in the Commonwealth of Pennsylvania.

18       With respect to the addition of RPM as a co-defendant on the basis of alter ego liability,
19 under California law, "[t]he alter ego doctrine applies where (1) such a unity of interest and
20 ownership exists that the personalities of the [two entities] are no longer separate, and (2) an
21 inequitable result will follow if the acts are treated as those of [one of the entities] alone."  *RRX*
22 *Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545-46 (9th Cir. 1985) (upholding district court's
23 finding that alter ego liability applies in breach of contract case, and taking into consideration
24 that "[n]o . . . stockholder meetings were ever held").  Here, GIS can and will show that both
25 parts of the alter ego liability test have been met.  California courts have noted, moreover, that "a
26 parent corporation may be held liable for the wrongdoing of a subsidiary where the parent
27 directly participated in the subsidiary's unlawful actions."  *EIG Global Energy Partners, LLC v.*
28 *TCW Asset Mgmt. Co.*, No. CV 12-7173 CAS (MANx), 2012 U.S. Dist. LEXIS 171412, at *24

(C.D. Cal. Nov. 30, 2012) (citation omitted) (finding that corporate parent faces liability for any breach of a contract by its subsidiary).

With respect to GIS's new claim of tortious interference with contract against RPM, California law recognizes that a parent company can be liable for tortiously interfering with a contract of its subsidiary. *See, e.g.*, *Asahi Kasei Pharma Corp. v. Actelion Ltd.*, 166 Cal. Rptr. 3d 134, 145-49 (Cal. Ct. App. 2013) (upholding jury verdict against parent corporation for tortious interference with subsidiary's contract); *No Cost Conference, Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1304-05 (S.D. Cal. 2013) (declining to dismiss tortious interference claim where defendant sought to dismiss on the basis that, *inter alia*, defendant was the corporate parent of the contracting party). In addition, under Fed. R. Civ. P. 8(d)(3), a party may allege claims for breach of contract and tortious interference as alternative theories of liability against the same party as to the same contract. *See, e.g.*, *No Cost Conference*, 940 F. Supp. 2d at 1304-05 ("At the current stage of this case, No Cost may state a tortious interference claim against [defendants] in the alternative to any contract-based claim.").

In sum, the facts that underlie the new claims are a proper subject of relief. The new claims pertain to (i) the sale of Guardian warranties in Pennsylvania in breach of the Mid-Atlantic Agreement, and (ii) RPM's decision to cause Guardian to breach several of its agreements with GIS, both of which entitle GIS to relief. Moreover, the claims that GIS seeks to add are not only properly pleaded and based on facts that are a proper subject of relief, but are also sustained by powerful evidence. As noted above, a high-level Guardian employee has admitted that Guardian engaged in conduct that constitutes a clear breach of its contractual duties to GIS, and the President of both Guardian and RPM has admitted that RPM directed Guardian to terminate several of its agreements with GIS.

### D. There Is No Prejudice to Guardian

"If a court is to deny leave to amend on grounds of undue prejudice, the prejudice must be *substantial*." *James*, 2012 WL 4859069, at *2 (emphasis added). There is, however, no prejudice to Guardian here.

*First*, discovery in this case is ongoing, and the court can extend discovery, if necessary,

as needed to adjudicate the new claims.  *Second*, Guardian "will not have to radically change its litigation strategy" in order to defend the new claim against it, which arises out of the same Mid-Atlantic Agreement that has been the subject of this litigation since it commenced.  *Id.* (finding no prejudice to opposing party where both the original claim and the new claim "depend on the proof of largely similar facts").  *Third*, even if Guardian were to incur an expense in responding to the new claim against it, the need to respond to a new claim is not sufficient to constitute prejudice to the opposing party.  *See, e.g.*, *Todd*, 2015 U.S. Dist. LEXIS 114116, at *10 ("Although Defendants may incur additional expense responding to the new complaint, they will not have to radically change their litigation strategy in order to defend against related advertising allegations and an additional unjust enrichment claim.").  *Finally*, the addition of RPM as a co-defendant will not prejudice Guardian, as the addition of RPM as an alter ego of Guardian will not change any of the issues in this litigation.  *See, e.g.*, *Bates v. Jones*, No. C 95-2638 CW, 1996 U.S. Dist. LEXIS 20998, at *23 (N.D. Cal. May 30, 1996) (refusing to find prejudice, and granting leave to amend, where "there is no indication that the addition of the potential new Plaintiffs or new Defendant would change the factual or legal issues in this action").

In addition, there is no prejudice to RPM here.  As noted above, RPM and Guardian operate as one company, and RPM has been appraised of this litigation since it commenced.  And, indeed, RPM is equally responsible for the conduct that lead to this litigation.

### E. There Is Good Cause to Amend the Pre-Trial Scheduling Order

Lastly, because GIS has acted diligently, there is "good cause" to amend the scheduling order so that GIS may amend its complaint, Guardian and RPM may respond, and the parties may obtain additional discovery regarding the new claims.  As described above, GIS first learned of Guardian's relationship with Renaissance only a few weeks ago, and the deposition of Mr. Taylor which confirmed Guardian's breach of contract did not take place until May 25, 2016.  In addition, GIS did not learn that Guardian and RPM are alter egos, or that RPM directed Guardian to terminate several of Guardian's agreements with GIS, until Mr. Holman's deposition on May 12, 2016.  "Allowing parties to amend based on information obtained through discovery is common and well established."  *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No.

1 | CIV. S-05-583 LKK/GGH, 2006 U.S. Dist. LEXIS 94421, at *15-16 (E.D. Cal. Dec. 15, 2006)
2 | (finding "good cause" under Rule 16(b) where party had discovered new evidence showing, *inter*
3 | *alia*, alter ego liability).

### CONCLUSION

For the reasons described above, Plaintiff GIS respectfully requests that the Court grant its motion for leave to amend the complaint and to modify the current scheduling order.[2]

Dated:  June 20, 2016                                   Respectfully submitted,

                                                        WILSON SONSINI GOODRICH & ROSATI
                                                        Professional Corporation

                                                        By:     *s/ Dylan J. Liddiard*

                                                        Dylan J. Liddiard
                                                        650 Page Mill Road
                                                        Palo Alto, California 94304
                                                        Telephone:  (650) 493-9300
                                                        Facsimile:  (650) 565-5100
                                                        Email:  dliddiard@wsgr.com

                                                        *Attorneys for Plaintiff*

---

[2] GIS also seeks leave to add minor clarifications to its allegations in Count Eight.  *See* Exhibit B (redline of SAC) to the Liddiard Declaration.