# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.P.P., INC. dba GUARDIAN INNOVATIVE SOLUTIONS,<br><br>            Plaintiff,<br><br>    v.<br><br>GUARDIAN PROTECTION PRODUCTS, INC.,<br><br>            Defendant.<br>_____/ | Case No.  1:15-cv-00321-SKO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO AMEND AND TO MODIFY THE SCHEDULING ORDER**<br><br>(Doc. 57) |

## I.    INTRODUCTION

On June 20, 2016, Plaintiff G.P.P. Inc., dba Guardian Innovative Solutions' ("GIS") filed its Motion for Leave to Amend the Complaint (the "Motion"), seeking to file a Second Amended Complaint ("SAC").  (Doc. 57.)  Defendant Guardian Protection Products, Inc. ("Guardian) filed an opposition brief (Doc. 58), and GIS filed a reply brief on July 13, 2016.  (Doc. 61.)  The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g).  The hearing set for July 20, 2016, was therefore VACATED.  (Doc. 63.)

For the reasons set forth below, GIS's Motion is GRANTED.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes.  (Docs. 11, 12.)

## II. BACKGROUND

**A.   Factual Background[2]**

GIS is family-run business that has purchased products from Guardian for nearly 30 years. Guardian is a Delaware company with its principal place of business in North Carolina. Guardian sells furniture and upholstery protection products, furniture warranties, and other related items to distributors such as GIS, who in turn sell to retail chains and establishments. (Doc. 31, ¶¶ 1-2.) In 2000, Guardian was acquired by RPM International, Inc. ("RPM International"), a multi-national, multi-billion dollar Fortune 300 company. (Doc. 31, ¶ 2.)

In May 1988, GIS and Guardian entered into a written agreement whereby GIS acquired exclusive distribution rights to Guardian's products in certain counties in Pennsylvania (the "Pennsylvania Agreement"). The Pennsylvania Agreement required GIS to make a minimum initial purchase of $40,000 of Guardian's products. So long as GIS made purchases that were in a sum sufficient to meet an annual purchase agreement, the Pennsylvania Agreement automatically renewed on an annual basis. (Doc. 31, ¶ 5.)

GIS and Guardian subsequently entered into other agreements whereby GIS acquired exclusive distribution rights to Guardian's products in Maryland, Washington, D.C., certain remaining counties in Pennsylvania, specified counties in Western New York (collectively the "Mid-Atlantic Agreement"), and Ohio (the "Ohio Agreement"). The Mid-Atlantic Agreement required GIS to purchase $75,000 of Guardian's products as consideration for the exclusive distribution rights, and, so long as GIS met a minimum annual purchase requirement, the Mid-Atlantic Agreement automatically renewed annually. The Ohio Agreement required GIS to make an initial purchase of $20,000 of Guardian's products and to pay an additional $20,000 fee. Provided that GIS made purchases in a sum sufficient to meet an annual purchase requirement, the Ohio Agreement automatically renewed on an annual basis. (Doc. 31, ¶¶ 6-7.)

In 2007, pursuant to a written assignment of three other written agreements originally entered into between Guardian and another company, GIS obtained exclusive distribution rights to

---

[2] The factual background summarizes GIS's allegations as set forth in the First Amended Complaint ("FAC"), which is currently the operative pleading. (Doc. 31.)

2

Guardian's products in Illinois (the "Cook County Agreement"); Indiana (the "Indiana Agreement"); and Iowa and certain counties in Eastern Missouri (the "Midwest Agreement"). So long as GIS met minimum annual purchase requirements under each of these agreements, they each automatically renewed on an annual basis. (Doc. 31, ¶ 8.)

In March 2010, pursuant to three additional written assignments originally entered into between Guardian and another company, GIS acquired exclusive distribution rights to Guardian's products in Alabama (the "Alabama Agreement); Florida (the "Florida Agreement"), and Tennessee (the "Tennessee Agreement") (collectively, these nine agreements will be referred to as the "Distributor Agreements."). To obtain the assignment of the Alabama, Florida, and Tennessee Agreements, GIS paid $50,000 to the company who had originally entered into these Distributor Agreements with Guardian. (Doc. 31, ¶ 9.)

GIS alleges that each of these Distributor Agreements constitutes a franchise. (Doc. 31, ¶¶ 28-31.) GIS maintains that at no time before offering a "franchise" in connection with each of these Distributor Agreements did Guardian ever provide GIS with a Uniform Franchise Offering Circular or Franchise Disclosure Document in accordance with the Federal Trade Commission ("FTC") Franchise Rule, 16 C.F.R., pt. 436. (Doc. 31, ¶ 32.) GIS also alleges that Guardian failed to register its franchise offering in accordance with the franchise disclosure and registration laws of California, Maryland, New York, Indiana, and Illinois. (Doc. 31, ¶¶ 33-34.)

Beyond franchise disclosure violations, GIS alleges that Guardian began to engage in a series of wrongful acts, including refusal to pay commission due GIS; improperly purporting to terminate the Alabama, Florida, and Tennessee Agreements; and making actual and implicit threats to terminate the existing Distributor Agreements unless GIS entered into a new agreement (the "2015 Agreement") that contains much less advantageous terms and conditions to GIS than the existing Distributor Agreements. (Doc. 31, ¶¶ 12, 16-27.) Moreover, GIS claims the 2015 Agreement constitutes a franchise itself within the meaning of federal and state law, but Guardian failed to provide the required disclosures and, where applicable, state registration of its franchise offering. (Doc. 31, ¶¶ 35-37.)

3

Additionally, GIS alleges it discovered in 2010 that Guardian was violating the Distributor Agreements by directly selling products in GIS's exclusive territory to retail locations associated with Bob's Discount Furniture. (Doc. 31, ¶¶ 13-15.) To resolve this, GIS and Guardian agreed that Guardian would pay GIS a 5% commission on all sales of Guardian's products made to Bob's Discount Furniture retail locations in GIS's Exclusive Territory for the duration of such sales (the "Bob's Discount Furniture Agreement"). Guardian made payments under this agreement until November 2014. In December 2014, however, Guardian stopped paying GIS the 5% commission.

**B.     Procedural Background**

GIS filed its original complaint on February 27, 2015, alleging breach of contract, breach of the implied covenants of good faith and fair dealing, declaratory judgment that termination of certain of the Distributor Agreements violates certain state laws, negligence *per se*, and violation of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA). (Doc. 1.) Guardian moved to dismiss GIS's complaint on April 23, 2015. (Doc. 16.) On June 30, 2015, the Court granted in part, and denied in part, Guardian's motion to dismiss on June 30, 2015. (Doc. 30.) Specifically, the Court dismissed without prejudice, and with leave to amend, GIS's claim for declaratory judgment that termination of certain of the Distributor Agreements violated Iowa law, and dismissed with prejudice GIS's negligence *per se* and North Carolina UDPTA causes of action. (*See* Doc. 30.)

GIS's First Amended Complaint ("FAC"), which is currently the operative pleading, alleges the following causes of action: (1) breach of the Alabama, Florida, and Tennessee Agreements; (2) breach of the implied covenants of good faith and fair dealing in the Alabama, Florida, and Tennessee Agreements; (3) breach of the Bob's Discount Furniture Agreement; (4) breach of the implied covenant of good faith and fair dealing in the Bob's Discount Furniture Agreement; (5) declaratory judgment that termination of the Cook County Agreement would violate the Illinois Franchise Disclosure Act; (6) violation of California Business and Professions Code § 17200, *et seq.*; (7) violation of the California Franchise Investment Law, Cal. Bus. & Prof. Code § 31000, *et seq.*; and (8) breach of the implied covenant of good faith and fair dealing in the Pennsylvania, Mid-Atlantic, Cook County, Indiana, and Midwest Agreements. (Doc. 31.)  On

July 31, 2015, Guardian filed its answer summarily denying the allegations of the FAC, as well as a counterclaim against GIS for declaratory relief, breach of certain of the Distributor Agreements, breach of the implied covenants of good faith and fair dealing in certain of the Distributor Agreements, and breach of California Commercial Code § 2306.  (Docs. 35, 36.)

### III.    DISCUSSION

The parties participated in a scheduling conference with the Court on August 25, 2015. (Doc. 41.)  The Court issued a scheduling order on August 26, 2015, which provides that "[a]ny motions or stipulations requesting leave to amend the pleadings must be filed by no later than June 20, 2016."  (Doc. 42, 2:15-16.)  The parties were advised that "[a]ll proposed amendments must (A) be supported by good cause pursuant to Fed. R. Civ. P. 16(b) if the amendment requires any modification to the existing schedule . . . and (B) establish, under Fed. R. Civ. P. 15(a), that such an amendment is not (1) prejudicial to the opposing party, (2) the product of undue delay, (3) proposed in bad faith, or (4) futile." (Doc. 19, 2:18-23) (citations omitted).)

On June 3, 2016, the Court entered a "Joint Stipulation re: Extending Fact Witness Discovery Deadline for the Taking of Agreed Upon Fact Witness Depositions and Extending Expert Disclosure Deadlines" (the "Stipulation"), which extended the non-expert discovery deadline from May 18, 2016, to June 30, 2016, for the limited purpose of taking the following party depositions:

(1) Charles Gibson, Sr.;

(2) Debbie Gibson;

(3) Frank Gibson;

(4) Christopher Nolan;

(5) Christopher Taylor;

(6) Darrin Lease; and

(7) the second FRCP 30(b)(6) deposition of Guardian, based on the deposition notice served on April 26, 2016.

(Doc. 52.)  The Stipulation states that the reason the parties were unable to complete these depositions was "due to scheduling conflicts and the travel required for all of these depositions as

well as the additional time needed to complete document production and review . . . ." (*See* Doc. 52.) The Stipulation further provides:

> Nothing in this stipulation is intended as a waiver of either party's right to seek further modification of the Court's August 25, 2015 Scheduling Order or to seek any other relief from the Court, including with respect to any discovery disputes between the parties.

(Doc. 52.)

**A.     There is Good Cause to Modify the Schedule Pursuant to Fed. R. Civ. P. 16.**

    **1.     Legal Standard**

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions. Fed. R. Civ. P. 16(b)(1)-(3). Once in place, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16 primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id*. (internal citation and quotation marks omitted).

Good cause may be found to exist where the moving party shows, for example, that it (1) diligently assisted the court in recommending and creating a workable scheduling order, *see In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 228 (1st Cir. 1997), (2) is unable to comply with the deadlines contained in the scheduling order due to issues not reasonably foreseeable at the time of the scheduling order, *see Johnson*, 975 F.3d at 609, and (3) was diligent in seeking an amendment once the party reasonably knew that it could not comply with the scheduling order, *see Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996). *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999). "If [the] party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. If the Court finds that there is good cause to modify the schedule, the court then turns to Rule 15(a) to determine whether the amendment sought should be granted. *Jackson*, 186 F.R.D. at 607 ("As the Ninth Circuit explained in [*Johnson* ], once the district court has filed a pretrial scheduling order pursuant to

Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

**2.  Analysis**

Pursuant to the scheduling order in this action (Doc. 42), the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Whether good cause exists to modify a scheduling order rests on whether the party seeking the modification has been diligent. *See Johnson*, 975 F.2d at 609. Here, GIS's Motion was filed within the time constraints set forth by the Court in the scheduling order. (*See* Doc. 42.) GIS seeks to amend its complaint to add (1) a claim for breach of the Mid-Atlantic Agreement based on Guardian's alleged sale of its furniture protection plans to third-party reseller RenComGroup, LLC d/b/a Renaissance ("Renaissance"); (2) Guardian's corporate parent, RPM Wood Finishes Group, Inc. ("RPM") as a party to all of GIS's claims against Guardian, based on an alter ego theory; and (3) a claim against RPM for alleged tortious interference with the Distributor Agreements. (Doc. 57-1.) GIS contends that new facts learned during discovery in May 2016 warrant these amendments to the FAC, and that, as a result, the scheduling order should be modified to permit Guardian and RPM to file responsive pleadings and the parties to engage in additional discovery.

With respect to Guardian's relationship with Renaissance, GIS asserts that "[i]n or around May 2016," it learned for the first time that Renaissance has been reselling Guardian's furniture protection plans to its customers by offering customers to ability to sell Guardian plans through ecommerce websites developed by Renaissance. (Declaration of Dylan J. Liddiard ("Liddiard Decl."), Doc. 57-2, ¶ 5.) GIS argues that Guardian's breach of the Mid-Atlantic Agreement was confirmed on May 25, 2016, when Guardian's Vice President of Operations Christopher Taylor testified during his deposition that Guardian sells its warranties to Renaissance in Pennsylvania, and that Renaissance then resells Guardian's warranties to its own customers. (Doc. 57-1, 3:26-4:9; Liddiard Decl., Doc. 57-2, ¶ 6.) Regarding RPM's role in the dispute, GIS contends that it did not learn of facts sufficient to claim that Guardian and RPM are alter egos, or that RPM directed Guardian to terminate several of the Distributor Agreements, until May 12, 2016, when GIS deposed Guardian's and RPM's president Ronnie Holman. (Doc. 57-1, 4:12-5:13; Liddiard

Decl., 57-2, ¶ 7.)

Guardian does not dispute GIS's characterization of Mr. Holman's May 12, 2016, testimony. Nor does Guardian dispute the May 25, 2016, testimony of Mr. Taylor. Instead, Guardian points out, correctly, that GIS's Motion does not specify the date on which it learned of Guardian's relationship with Renaissance. From this, Guardian asserts that GIS exhibited a lack of diligence under Rule 16(b) because an exhibit from Mr. Taylor's deposition demonstrates that GIS knew of Guardian's business relationship no later than May 23, 2016 (and knew of RPM's alleged involvement two weeks prior, on May 12), and yet GIS waited until June 20, 2016, to file its Motion. (Doc. 58, 6:10-12, 7:5-6; )[3]

In general, the focus of the diligence inquiry under Rule 16 is the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. *See Zivkovic v. S. Cal. Edison Corp.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002). Assuming GIS first learned of Guardian's relationship with Renaissance as early as May 23, 2016, which is undisputed, the Court finds that GIS was diligent in seeking to amend its complaint less than four weeks of discovering all of the facts that form the basis for its amendments. *See, e.g., N. California River Watch v. Ecodyne Corp.,* No. C 10-5105 MEJ, 2013 WL 146324, at *4 (N.D. Cal. Jan. 14, 2013) ("Because River Watch sought to amend its pleading within a month after receiving such information, there is no evidence of undue delay. This factor thus weighs in favor of allowing leave to amend."); *Fru-Con Const. Corp. v. Sacramento Mun. Util. Dist.*, No. CIV.S-05-583LKKGGH, 2006 WL 3733815, at *4 (E.D. Cal. Dec. 15, 2006) (finding that the defendant "acted with reasonable diligence" in moving for leave to amend its counterclaim based on alter ego liability "roughly two months" after learning new facts at the deposition, and collecting cases

---

[3] Guardian also takes issue with the fact that, during the intervening time between GIS's learning the factual basis for the amending the complaint and filing its Motion, GIS agreed to a partial extension of the non-fact discovery deadline without notifying Guardian of its intention to seek to amend, and instead filed its Motion "only five and half hours before the Scheduling Order's deadline for filing a motion for leave to amend expired." (Doc. 58, 2:10-11; Declaration of Calvin Davis ("Davis Decl."), Doc. 58-1, ¶ 3.) While the Court observes that this dispute might have been avoided had GIS sought and obtained Guardian's consent to the amendments, which would have been a more efficient use of the parties' time and resources, GIS was certainly under no legal obligation to do so. And, as set forth above, GIS's Motion was timely, as it was electronically filed prior to 11:59 p.m. PDT on June 20, 2016. *See* Fed. R. Civ. P. 6(a)(4) ("Unless a different time is set by a statute, local rule, or court order, the 'last day' [of a court deadline] ends: (A) for electronic filing, at midnight in the court's time zone [.]")

where court granted leave to amend based on "new information revealed through discovery."). *See generally Macias v. City of Clovis*, No. 1:13-CV-01819-BAM, 2016 WL 1162637, at *4 (E.D. Cal. Mar. 24, 2016) ("[D]iscovery of new evidence is often sufficient to satisfy the good cause standard" under Rule 16(b).).

Further, GIS has been diligent in seeking discovery generally. The scheduling order was issued on August 26, 2015, and GIS began serving discovery on November 18, 2015. (*See* Doc. 49, p. 2.) Guardian responded to GIS's November 2015 discovery requests in December 2015, and the parties thereafter agreed to a protective order, which the Court entered on January 13, 2016. (*See* Doc. 49, p. 2; Doc. 45.) GIS took the deposition of Guardian's corporate representative in January 2016, and took additional depositions of Guardian's witnesses in March 2016. (*See* Doc. 49.) The parties jointly agreed that GIS would be permitted to take the depositions of certain of Guardian's current employees after the expiration of the non-expert discovery deadline. (Doc. 52.) The need for the extension of the discovery deadline was not due to any delay by GIS—indeed, Guardian stipulated that both it and GIS were "*diligently working* to complete fact witness discovery within the May 18, 2016 deadline set by the Court in its August 25, 2015 Scheduling Order." (Doc. 52, 1:22-27) (emphasis added.) Finally, in June 2016, GIS invoked the Court's informal discovery dispute procedure to resolve several discovery disputes with Guardian, which has resulted in two telephonic conferences with the Court and eight (8) written submissions by the parties, four of which made by GIS. (*See* Docs. 53-56.)

In sum, due to newly discovered information that GIS timely assert warrants a modification to the initial scheduling order, the Court finds good cause to modify the scheduling order.

**B.   GIS May Amend the Complaint Under Federal Rule of Civil Procedure 15(a)**

   **1.   Legal Standard**

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading only by leave of court or by written consent of the adverse party and that leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(1)-(2). The Ninth Circuit has instructed that the policy favoring amendments "is to be applied with extreme liberality." *Morongo Band of Mission*

9

*Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). The factors commonly considered to determine the propriety of a motion for leave to amend are (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Ninth Circuit has held that it is the consideration of prejudice to the opposing party that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice, or a strong showing of any of the remaining *Foman* factors, a presumption in favor of granting leave to amend exists under Rule 15(a). *Id. See also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (In the absence of prejudice or other negative factors, the party opposing the motion to amend has the burden of showing why amendment should not be granted.). Further, undue delay alone is insufficient to justify denial of a motion to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Finally, "liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Programs,* 833 F.2d at 186. *Contra Union Pac. R.R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) ("Amendments seeking to add claims are to be granted more freely than amendments adding parties.").

### 2. The Proposed Amendments Are Not Prejudicial to Guardian

As consideration of prejudice to the opposing party carries the greatest weight, the Court considers this factor first. *Eminence Capital, LLC*, 316 F.3d at 1052. Guardian asserts that it will be prejudiced if GIS is allowed to amend because such amendment would necessitate the reopening of discovery and delay the proceedings as a result, and "significantly increase Guardian's litigation expenses." (Doc. 58, 7:22-10:4; Declaration of Calvin Davis ("Davis Decl."), Doc. 58-1, ¶ 5.)

GIS argues that Guardian "will not have to radically change its litigation strategy" in order to defend the new claim against it, as it "arises out of the same Mid-Atlantic Agreement that has been the subject of this litigation since it commenced." (Doc. 57-1, 10:1-3.) GIS contends that the addition of RPM will not prejudice Guardian, as "the addition of RPM as an alter ego of Guardian will not change any of the issues in the litigation." (Doc. 57-1, 10:10-12.)

Ninth Circuit case law provides that prejudice may effectively be established by demonstrating that a motion to amend was made after the cutoff date for such motions, or when discovery had closed or was about to close. *See, e.g., Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (affirming denial of plaintiff's motion for leave to amend where proposed amendment would have added additional causes of action which would have required further discovery and discovery was set to close five days after motion to amend was filed); *Lockheed Martin Corp. v. Network Solutions, Inc*., 194 F.3d 980, 986 (9th Cir. 1999) (stating that "[a] need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint"); *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming the denial of leave to amend where the motion was made "on the eve of the discovery deadline" and "[a]llowing the motion would have required re-opening discovery, thus delaying the proceedings").

Here, the Court is not persuaded that Guardian has demonstrated that it will suffer substantial prejudice if GIS's Motion were granted. *See James ex rel. James Ambrose Johnson, Jr., 1999 Trust v. UMG Recordings, Inc.*, No. C 11-1613 SI, 2012 U.S. Dist. LEXIS 146759, 2012 WL 4859069, at *2 (N.D. Cal. Oct. 11, 2012) ("If a court is to deny leave to amend on grounds of undue prejudice, the prejudice must be substantial."). Per the scheduling order, most of the fact discovery in this matter closed on May 18, 2016 (Doc. 42), and the deadline was enlarged by stipulated order to June 30, 2016, to permit GIS to take certain Guardian employees' depositions (Doc. 52.). GIS's Motion was filed one month after the fact discovery cut off, before the stipulated extended deadline of June 30, 2016, and before the expert discovery cut off of August 15, 2016.  (Docs. 42, 52.) Although such a schedule might suggest that GIS's proposed amendments may be prejudicial to Guardian, any prejudice could be cured. GIS's proposed amendments do not significantly change the course of the litigation, nor do they expand the breadth of GIS's existing claims. *Cf. Morongo*, 883 F.2d at 1079 (affirming denial of amendment to add RICO claims because "of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay"). To the contrary, the amendments reflect issues already at the core of the case.

11

The amendments, if allowed, would therefore not require Guardian to engage in substantial additional discovery—such additional discovery would be very limited. Guardian does not offer any specificity in terms of how much additional expense it would expect to incur in defending GIS's new claims, and, as such, has failed to establish that an (unspecified) increase in litigation costs would be substantially prejudicial. *See, e.g., Sako v. Wells Fargo Bank, Nat. Ass'n*, No. 14CV1034-GPC JMA, 2015 WL 5022326, at *4 (S.D. Cal. Aug. 24, 2015) (refusing to find undue prejudice on "summary arguments" where "neither party provide[d] any details as to what discovery on breach of contract and breach of the covenant of good faith and fair dealing was conducted or what additional discovery would be needed to address these proposed new claims."). Even if Guardian had provided such specificity, "[t]he fact that the amended counterclaim may cause more work does not constitute prejudice. This is especially true in light of Rule 16(b)'s 'good cause' standard which primarily considers the diligence of the party seeking the amendment." *Fru-Con Const. Corp.*, 2006 WL 3733815, at *5. Given that GIS has met the diligence standard discussed above, any considerations regarding the extra time and resources required of Guardian are outweighed. *See id.*

To the extent that limited additional discovery may be required, however, "the need for additional discovery is insufficient by itself to deny a proposed amended pleading based on prejudice."[4] *Greenfield v. Am. W. Airlines, Inc.*, No. C03-05183 MHP, 2004 WL 2600135, at *4 (N.D. Cal. Nov. 16, 2004) (citing *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997). *See also Newton v. Am. Debt Servs., Inc.*, No. C-11-3228 EMC, 2013 U.S. Dist. LEXIS 147152, 2013 WL 5592620, at *15 (N.D. Cal. Oct. 10, 2013) (additional discovery alone is not sufficient prejudice). A brief extension of the discovery deadline could cure any prejudice were the amendments allowed. *See Macias v. City of Clovis*, No. 1:13-CV-01819-BAM, 2016 WL 1162637, at *5 (E.D. Cal. Mar. 24, 2016) ("[P]rejudice to Defendants, if any, is eliminated by a continuance of the discovery deadlines.") (citing *Lopez v. Comcast Cable Communs. Mgmt. LLC*, 2016 U.S. Dist. LEXIS 5517 (N.D. Cal. Jan. 15, 2016) (court granted leave to amend where a

---

[4] This concept is embodied in the Court's scheduling order, which set the deadline to file a motion requesting leave to amend the pleadings (June 20, 2016) one month after the close of fact discovery (May 18, 2016). (*See* Doc. 42.)

continuance of the discovery deadlines would eliminate possible prejudice to Defendant)). *See also B2B CFO Partners, LLC v. Kaufman,* No. CV 09-2158-PHX-JAT, 2011 WL 2713887, at *7 (D. Ariz. July 13, 2011) ("Allowing the claim and reopening discovery could cause some additional delay, but this delay and any prejudice can be managed by limiting the extension of discovery, in terms of both scope and time.") (citing *Washington v. Brown,* No. CIV S–06–1994 WBS DAD P., 2009 WL 160311, at *21 (E.D. Cal. Jan. 21, 2009)). As a modification of the scheduling order is warranted, Guardian will have additional time to conduct any necessary investigations or discovery required to adequately defend the suit.

### 3. The Proposed Claims Against Guardian and RPM are Not Futile

Although the validity of the proposed amendments is not typically considered by courts in deciding whether to grant leave to amend, such leave may be denied if the proposed amendment is futile or subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). Guardian has not argued that GIS's proposed Second Amended Complaint ("SAC") is futile, and this factor does not weigh against permitting amendment.

### 4. There is No Evidence GIS Seeks to Amend the Complaint in Bad Faith or Unduly Delayed in Seeking Amendment

The Court finds no evidence that GIS is seeking to amend its complaint in a bad faith attempt to unnecessarily protract the litigation, and Guardian does not argue the existence of bad faith. This factor does not weigh against amendment. *See DCD Programs, Ltd*., 833 F.2d at 187 ("Since there is no evidence in the record which would indicate a wrongful motive, there is no cause to uphold the denial of leave to amend on the basis of bad faith."). In addition, as discussed above, the Court finds that GIS's request to amend the complaint is not the product of undue delay. *Cf. Kaplan v. Rose*, 49 F. 3d 1363, 1370 (9th Cir. 1994) (giving greater weight to undue delay factor where facts and theories sought to be added were known to moving party early in the litigation).

On balance, the Court concludes that the factors weigh in favor of allowing GIS to file the proposed amended complaint.

## IV.  CONCLUSION AND ORDER

For the reasons set forth above, GIS's Motion for Leave to Amend the Complaint is GRANTED. Accordingly, it is HEREBY ORDERED that:

1. GIS shall file an a Second Amended Complaint as proposed and attached to its Motion for Leave to Amend the Complaint (Doc. 57-2) within 2 days from the date of this order;

2. Guardian shall file a response to the Second Amended Complaint within the time permitted by the Federal Rules of Civil Procedure;

3. Within 14 days from the date of this order, the parties shall file a supplemental Joint Scheduling Report setting forth amended dates agreed to by all counsel as follows:

    a. a firm cut-off date for non-expert discovery **limited to GIS's newly-added claims and party;**

    b. a firm cut-off date for disclosure of expert witnesses as required by Fed. R. Civ. P. 26(a)(2), **limited to only those experts relating to GIS's newly-added claims and party;**

    c. a firm cut-off date for expert witness discovery **limited to GIS's newly-added claims and party;** and

    d. filing non-dispositive and dispositive pre-trial motions;

    **No other existing scheduling deadlines are subject to amendment, including the pretrial conference and trial dates.**

4. A Scheduling Conference will be set upon receiving the parties' Joint Scheduling Report.

IT IS SO ORDERED.

Dated:   **July 27, 2016**                           /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE