1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,<br><br>Plaintiff,<br><br>v.<br><br>GUARDIAN PROTECTION PRODUCTS, INC., RPM WOOD FINISHES GROUP, INC.,<br><br>Defendants.<br>_____/<br><br>GUARDIAN PROTECTION PRODUCTS, INC.,<br><br>Counterclaimant,<br><br>v.<br><br>G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,<br><br>Counter-defendant.<br>_____/ | **Case No.  1:15-cv-00321-SKO**<br><br>**PRETRIAL ORDER**<br><br>**Motions in Limine**<br>**Filing Deadline:**  **March 2, 2017**<br><br>**Motions in Limine**<br>**Response Deadline:**  **March 8, 2017**<br><br>**Motions in Limine**<br>**Hearing:**  **Date:  March 13, 2017**<br>  **Time:  3:00 p.m.**<br>  **Court:  7 (SKO)**<br><br>**Jury Trial:**  **Date:  March 21, 2017**<br>**(5-7 day estimate)**  **Time:  8:30 a.m.**<br>  **Court:  7 (SKO)** |

The Court conducted a pretrial conference in this case on February 2, 2017.  Dylan Liddiard and Craig Bolton appeared on behalf of Plaintiff/Counter-Defendant G.P.P., Inc., doing business as Guardian Innovative Solutions ("GIS").  Aaron Rudin and Calvin Davis appeared on behalf of Defendant/Counterclaimant Guardian Protection Products, Inc. ("Guardian") and Defendant RPM Wood Finishes Group, Inc. ("RPM").  Pursuant to Federal Rule of Civil Procedure 16(e) and Rule 283 of the Local Rules of the United States District Court, Eastern District of California, the Court issues the following Pretrial Order.

## A.     JURISDICTION AND VENUE

Jurisdiction is predicated upon 28 U.S.C §§ 1332(a)(1) and 1367(a), and the Eastern District of California is the proper venue pursuant to 28 U.S.C. § 1391(b).  The parties do not dispute jurisdiction or venue.

## B.     JURY TRIAL

This case will be tried before a jury.

## C.     TRIAL DATE AND ESTIMATED LENGTH

Trial will commence on **Tuesday, March 21, 2017, at 8:30 a.m. before U.S. Magistrate Judge Sheila K. Oberto in Courtroom 7 (SKO)**.  The parties estimate that the trial will require approximately 5-7 days.  The parties are reminded that this Court holds full trial days and the parties are expected to have witnesses ready every day to avoid wasting jury time.

## D.     UNDISPUTED FACTS

### 1.     The Parties

a.     GIS, a Pennsylvania corporation based in Pitcairn, Pennsylvania, is a Gibson family-run business that, together with its predecessors, has been a warehousing distributor for Guardian for nearly three decades.

b.     Frank Gibson is GIS's President.

c.     Christopher Nolan is GIS's Executive Vice-President.

d.     Guardian was incorporated under the laws of the State of Delaware on January 14, 2000.

e.     Guardian's primary place of business is in Hickory, North Carolina.

f.    RPM is a Nevada corporation with its primary place of business in Hickory, North Carolina.

g.    Ronnie Holman has been President of both Guardian and RPM since October of 2002.

**2.    The Warehousing Distributor Agreements**

a.    On or around May 5, 1988, GIS and Guardian's predecessors entered into a Warehousing Distributor Agreement ("WDA") whereby GIS acquired exclusive distribution rights to Guardian's products in certain counties in Pennsylvania (the "Pennsylvania Agreement").

b.    As of January 2013, GIS and Guardian were parties to nine valid WDAs (or "Agreements") which grant GIS the exclusive right to distribute Guardian's products" in all or parts of eleven states and the District of Columbia covered by those various Agreements.

c.    GIS became a party to the WDAs on May 5, 1988 (Pennsylvania Agreement), December 6, 1988 (Mid-Atlantic Agreement), April 2, 1990 (Ohio Agreement), April 23, 2007 (Cook County Agreement, Indiana Agreement, and Midwest Agreement), and March 5, 2010 (Alabama Agreement, Florida Agreement, and Tennessee Agreement).

d.    The WDAs are governed by California law.

e.    The WDAs also contain provisions requiring notice and an opportunity to cure with respect to other acts of material breach (i.e., besides failing to meet the minimum purchase quotas).   These clauses prohibit the non-breaching party from terminating the Agreements unless the breaching party fails to cure the breach within a 60-day period following notice.

f.    As an exception, the Pennsylvania Agreement provides a 90-day notice and cure period, but only with respect to certain breaches.

**3.    Guardian's Termination of the Alabama, Florida, and Tennessee Agreements**

a.    On August 19, 2013, Guardian sent GIS three breach notices related to the Alabama, Florida, and Tennessee Agreements.

3

1               b.       The numbers cited in Guardian's notices of breach of the Alabama,

2 Florida, and Tennessee Agreements included the sale of electronic furniture protection plans.

3               c.       On October 23, 2013, Guardian sent notices of termination of the

4 Alabama, Florida, and Tennessee Agreements.

5               d.       Guardian has not terminated the Pennsylvania, Mid-Atlantic, Ohio, Cook

6 County, Indiana, or Midwest Agreements.

7               e.       On December 9, 2014, in advance of a meeting in Pittsburgh that the

8 parties had scheduled, Guardian sent GIS a memorandum which stated: "In preparation for our

9 upcoming coming meeting, I am sending you a draft Agreement and this Memo to guide our

10 discussion."  The December Memo states as follows: "Executive Summary:  The old contracts

11 held by GIS are no longer applicable to the current business, nor are they relevant to the current

12 business model.  Moreover, the dated quotas do not allow for today's market size.  Corporate

13 Guardian is seeking new contracts that reflect the current business relationship, and provide the

14 appropriate market penetration to justify exclusive distribution rights."

15 **E.**       **DISPUTED FACTUAL AND LEGAL ISSUES**

16         **1.**       **GIS's Statement of Disputed Factual Issues:**

17               a.       Purchase Quotas Under the Alabama, Florida, and Tennessee Agreements

18                     i.       Whether Guardian had the right to terminate the Alabama, Florida,

19 and Tennessee Agreements (as opposed to merely asserting a breach of contract) on account of

20 GIS allegedly failing to its meet its purchase quota in any given month; or, whether Guardian's

21 termination rights are limited only to instances where GIS fails to meet its annual quota over a

22 12-month contract term.

23                    ii.       Whether Guardian properly terminated the Alabama, Florida, and

24 Tennessee Agreements on the grounds that GIS allegedly failed to meet its purchase quotas for

25 the specific months of June and July, 2013 in the specific states of Alabama, Florida, and

26 Tennessee.

27                   iii.       Whether GIS did, in fact, fail to meet its purchase quota under the

28 WDAs.

iv.        Whether Guardian frustrated GIS's contractual right to cure its alleged breach of its quota within 60 days of Guardian's notices of breach, thereby excusing GIS's alleged nonperformance.

b.        <u>Implied Covenant of Good Faith and Fair Dealing Under the WDAs</u>

i.        Whether Guardian violated the implied covenant of good faith and fair dealing under the WDAs by devising a scheme to improperly terminate the Alabama, Florida, and Tennessee Agreements as a means to deprive GIS of its rights under those Agreements, pressure GIS into giving up the rest of its territory, and accede to a new distribution agreement with terms heavily in Guardian's favor.

ii.        Whether Guardian threatened to terminate all WDAs—in addition to the Alabama, Florida, and Tennessee Agreements—if GIS did not agree to a new distribution agreement with terms heavily in Guardian's favor.

iii.        Whether Guardian frustrated GIS's right to benefit from the notice-and-cure provisions of the Alabama, Florida, and Tennessee Agreements by refusing to allow GIS to purchase additional products in order to cure any alleged shortfall under those Agreements.

iv.        Whether Guardian deprived GIS of revenue it could use to fund a defense against its conduct by selling products directly to customers within GIS's Exclusive Territories (including Bob's Discount Furniture and Renaissance) and refusing to share revenue from those sales with GIS.

c.        <u>Bob's Discount Furniture</u>

i.        Whether the parties entered into a binding "Bob's Discount Furniture Agreement," supported by valid consideration, concerning Guardian's direct sale of warranties to Bob's Discount Furniture retail locations within GIS's Exclusive Territories.

ii.        Whether the Bob's Discount Furniture Agreement, if valid and binding, was unilaterally terminable at will by Guardian; or, whether the Agreement requires Guardian to continue making commission payments to GIS so long as Guardian continues to sell products to Bob's locations within GIS's Exclusive Territories.

1             iii.      Whether Guardian breached the Bob's Discount Furniture

2  Agreement by unilaterally deciding to stop making commission payments in December 2014.

3        d.     <u>Renaissance</u>

4             i.      Whether Guardian breached the Mid-Atlantic Agreement by

5  selling electronic warranties directly to Renaissance without GIS's knowledge or consent.

6             ii.      Whether Guardian's unilateral classification of Renaissance as a

7  "national account" revokes GIS's exclusive right to sell Guardian products covered by the

8  WDAs to that customer under the Mid-Atlantic Agreement.

9        e.     <u>RPM</u>

10             i.      Whether RPM is an alter ego of Guardian.

11             ii.      Whether RPM tortiously interfered with GIS's contractual

12  relationship with Guardian.

13        f.     <u>Electronic Furniture Protection Plans Under the WDAs</u>

14             i.      Whether electronic warranties are covered by the WDAs.

15        g.     <u>Franchise Law and Unfair Competition Claims</u>

16             i.      Whether Defendants' conduct violated the California Corporations

17  Code Sections 31000-21516.

18             ii.      Whether Defendants' conduct violated California Business and

19  Professions Code Sections 17200-17210.

20        h.     <u>dreamGUARD</u>

21             i.      Whether CDFC is an alter-ego of GIS, and thereby bound by the

22  non-compete provisions in the WDAs.

23             ii.      Whether GIS violated the non-compete provisions of the WDAs on

24  account of CDFC's sale of dreamGUARD mattress protector products.

25             iii.      Whether the dreamGUARD mattress protector product is, in fact, a

26  "competing product" as that term is defined under the WDAs.

27             iv.      Whether Guardian, through its conduct, has waived its right to sue

28  GIS or terminate the WDAs on account of dreamGUARD sales, or is estopped from preventing

1   the continued sales of those products in the future.

2            i.        Damages

3                      i.        GIS contends that it has suffered, and will continue to suffer, lost

4   profits, increased costs, expenditure of attorneys' fees, and loss of good will as a direct result of

5   Guardian's wrongful termination of the Alabama, Florida, and Tennessee Agreements and

6   threatened termination of all remaining WDAs.  For example, GIS contends that the ongoing

7   threat of termination of the WDAs has remained ever present, adversely affecting GIS's business

8   and business decisions and freezing its ability to grow that business.  GIS's expert, Peter Wrobel,

9   calculated GIS's lost profits based, among other things, on testimony and documentary evidence

10  provided by Guardian regarding the value of the furniture protection products business in GIS's

11  territories and Guardian's expectation that GIS could achieve an approximate 30% market share

12  in all of those territories.  Based on his analysis, Mr. Wrobel determined with reasonable

13  certainty that GIS's lost profits are $74,469,048 as a result of a permanent impairment to GIS's

14  business.  Mr. Wrobel also determined that GIS has and will suffer lost commissions totaling

15  $1,050,049 due to Guardian's breach of the Bob's Discount Furniture Agreement, from

16  December 2014 (the time of the breach) through 2024.

17        **2.        Defendants' Statement of Disputed Factual Issues:**

18            a.        Whether Guardian's transmission of termination notices on October 23,

19  2013 ("Termination Notices") with regard to the Florida, Alabama, and Tennessee Agreement

20  breached those contracts.

21            b.        Whether GIS suffered any compensable damages as a result of Guardian's

22  transmission of the Termination Notices.

23            c.        Whether any damages that Guardian suffered as a result of Guardian's

24  transmission of the Termination Notices were reasonable foreseeable.

25            d.        Whether GIS mitigated any damages that it may have suffered as a result

26  of Guardian's transmission of the Termination Notices were reasonable foreseeable.

27            e.        Whether GIS satisfied the purchase quotas in the Florida, Alabama, and

28  Tennessee Agreements for the months of June and July 2013.

f. Whether the so-called Bob's Discount Furniture Agreement was a contract.

g. If the so-called Bob's Discount Furniture Agreement was a contract, whether Guardian properly terminated it.

h. If the so-called Bob's Discount Furniture Agreement was a contract, whether Guardian breached it by selling products covered by that "contract" to Bob's Discount Furniture.

i. Whether Guardian was required to register the Mid-Atlantic Agreement with Maryland regulators under the Maryland Franchise Registration and Disclosure Law.

j. Whether Guardian was required to register the Mid-Atlantic Agreement with New York regulators under the New York Franchises Law.

k. Whether Guardian was required to register the Indiana Agreement with Indiana regulators under the Indiana Franchises Law.

l. Whether Guardian was required to register the Illinois Agreement with Illinois regulators under the Illinois Franchise Disclosure Act.

m. Whether Guardian was required to provide a Uniform Offering Circular ("UFOC") or Franchise Disclosure Document ("FDD") under the Maryland Franchise Registration and Disclosure Law, New York Franchises Law, Indiana Franchises Law, Illinois Franchise Disclosure Act, FTC Franchise Rule, and/or the California Franchise Investment Law, with regard to the WDAs or the "2015 Form Agreement."

n. Whether the statute of limitations on GIS's claim under Business & Professions Code section 17200 expired before it filed the instant action.

o. Whether the 2015 Form Agreement constituted a franchise under the California Franchise Investment Law, the FTC Franchise Rule, or any other franchise law.

p. Whether Guardian "offered" the 2015 Form Agreement to GIS.

q. Whether Guardian was required to register the 2015 Form Agreement with any government regulatory body.

r. Whether Guardian was required to present a UFOC or FDD to GIS in

8

1    connection with the 2015 Form Agreement.

2            s.      Whether Guardian's alleged presentation of the 2015 Form Agreement

3    caused Guardian to suffer any financial loss.

4            t.      Whether GIS is entitled to restitution under California Business &

5    Professions Code section 17200 in connection with the WDAs or the 2015 Form Agreement and,

6    if so, in what amount.

7            u.      Whether the electronic furniture protection plans constitute "Guardian

8    Products" within the meaning of the Pennsylvania Agreement, Ohio Agreement, Cook County

9    Agreement, Indiana Agreement, Midwest Agreement, Alabama Agreement, and Tennessee

10   Agreement and, if so, whether Guardian has the right to establish a purchase quota above in sums

11   additional to the quotas set forth in those WDAs.

12           v.      Whether GIS's alter-ego's sale of micro-fleece mattress pads violates the

13   WDAs.

14           w.      Whether GIS's alter-ego's micro-fleece mattress pads that it sells are of

15   comparable claims or qualities to mattress pads that Guardian sells.

16           x.      Whether RPM directed or caused GIS to fail to perform under the WDAs.

17           y.      Whether Guardian is RPM's alter ego.

18           z.      Whether CDFC, Inc. is GIS's alter ego.

19           aa.     Whether Guardian may be held liable for any acts relating to the WDAs,

20   including breach thereof, by the party that assigned the WDAs to Guardian in 2000 or any of its

21   predecessors.

22           bb.     Pursuant to Local Rule 281(b)(6)(iii), Guardian and RPM incorporate the

23   following Specific Factual Information In Actions Involving Contracts

24                   i.      Warehousing Distributor Agreements

25                   •       The terms of the nine Warehouse Distributor Agreements

26   ("WDAs") are set forth in the writings attached as exhibits 1 through 9 to CM/ECF Document

27   No. 120.

28                   •       The WDAs and any modifications (i.e., addendum and

exhibits) are written; not oral.  Any modifications are set forth in the writings attached as exhibits 1 through 9 to CM/ECF Document No. 120.

- None.

- GIS breached the WDAs by selling a competing micro-fleece mattress protector under the dreamGUARD brand name and by failing to satisfy the purchase quotas in the Alabama, Florida, and Tennessee Agreements for the months of June and July, 2013.

- No issues of waiver or estoppel.

- Monetary damages, injunctive relief, and attorneys' fees and costs.

- As to monetary damages – benefit of the bargain (i.e., lost profits, etc.)

i.   Bob's Discount Furniture Agreement.

- Guardian and RPM deny that the so-called Bob's Discount Furniture Agreement was ever a contract.  On December 22, 2010, Guardian's President, Ronnie Holman, orally notified GIS's Charles Gibson, Sr., Frank Gibson, and Christopher Schall, in a face-to-face meeting, that Guardian would do for GIS what it was doing for Metro Guardian, another distributor with an adjacent geographic territory.  At that point, Guardian was paying Metro Guardian five percent of the revenue that Guardian received from its sale of so-called "paper" warranties (i.e., those that Guardian issued on paper itself), the only "warranties" that Guardian then sold, if those sales occurred at Bob's locations inside the geographic areas covered by Metro's WDA.  Mr. Holman stated that Guardian would to do the same thing for sales of that nature in the territories encompassed by GIS's WDAs.  GIS promised nothing in return. Mr. Holman made the representation not in exchange for a GIS promise (which Guardian never received) but, rather, because Mr. Schall had complained about the payments that Guardian was making to Metro Guardian on warranty sales at Bob's locations inside Metro Guardian's territory, payments that Guardian made only as an accommodation to Metro Guardian and not because of any contractual obligation.  The parties never discuss the length of

the so-called contract nor the circumstance under which Guardian could terminate the so-called "Bob's Discount Furniture Agreement."

- Guardian and RPM contend that no so-called "Bob's Discount Furniture Agreement" was ever made, let alone subsequently modified. Nevertheless, Guardian and RPM note that Messrs. Holman and Schall exchanged e-mails in January of 2011, about Mr. Holman's December 22, 2010, statement.

- Guardian and RPM contend that no so-called "Bob's Discount Furniture Agreement" was ever made and, thus, has no validity.

- Guardian and RPM contend that no so-called "Bob's Discount Furniture Agreement" was ever made, let alone breached.

- Guardian and RPM contend that no so-called "Bob's Discount Furniture Agreement" was ever made. Thus, there are no issues of waiver or estoppel.

- Guardian and RPM seek dismissal of GIS's claims relating to the so-called "Bob's Discount Furniture Agreement."

- Guardian and RPM seek no monetary of other affirmative relief relating to the so-called "Bob's Discount Furniture Agreement."

**F.    DISPUTED EVIDENTIARY ISSUES**

Guardian has offered the expert testimony of Karl Schulze with respect to, among other things, the reasonableness and reliability of Guardian using an internally generated sales report to estimate GIS's purchases on a per-month, per-territory basis. GIS opposes the introduction of this evidence at trial because, *inter alia*, it is an improper subject for expert testimony and, further, fails to meet the requirements of FRE 702 and 703.

GIS believes that Guardian intends to offer evidence regarding other businesses owned by the Gibson Family, other than GIS and CDFC, Inc. GIS opposes the introduction this evidence because, *inter alia*, it is inadmissible under FRE 403 as it is irrelevant to the issues in dispute and risks unfairly prejudicing GIS.

GIS believes that any evidentiary disputes should be resolved by motion in limine prior to trial, to the extent practicable for the Court and parties to do so. GIS continues to evaluate its

1   case as it prepares for trial and reserves the right to seek relief with respect to any evidentiary

2   disputes that may develop or arise in the future.

3        Guardian and RPM seek the opportunity to file motions *in limine* seeking to exclude

4   certain witness testimony based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

5   (1993), as well as, the Court's recent ruling on the parties' motions for summary judgment.

6   **G.      SPECIAL FACTUAL INFORMATION**

7        Not applicable.

8   **H.      RELIEF SOUGHT**

9        GIS seeks (a) a declaration that the Alabama, Florida, and Tennessee Agreements were

10  not properly terminated and are currently valid and in full effect; (b) an award of compensatory

11  damages for breach of contract in an amount according to proof, including but not limited to all

12  lost profits incurred by GIS resulting from Defendants' alleged wrongful terminations and/or

13  breaches of the WDAs and the Bob's Discount Furniture Agreements; (c) treble and punitive

14  damages; (d) pre-judgment interest; (e) costs of suits, including GIS's actual and/or reasonable

15  attorneys' and experts' fees; and (f) such other relief as the Court deems just and proper.

16       Guardian and RPM seek:

17       1.      As to monetary damages – benefit of the bargain (i.e., lost profits, etc.).

18       2.      Declaratory Relief that the electronic furniture protection plans ("EFFPs") are not

19  "Guardian Products" with the meaning of the Pennsylvania Agreement, Ohio Agreement, Cook

20  County Agreement, Indiana Agreement, Midwest Agreement, Alabama Agreement, and

21  Tennessee Agreement and, if so, whether Guardian has the right to establish a purchase quota

22  above in sums additional to the quotas set forth in those WDAs.  The Court's Order of 1/18/2017

23  found that EFFPs were not "Guardian Products" as that phrase is used in the Florida and Mid-

24  Atlantic Agreements.

25       3.      Injunctive relief.

26       4.      Attorneys' fees and costs.

27       5.      Judgment of dismissal as to GIS's claims.

28

**I.  POINTS OF LAW**

At this time, the parties are not aware of any points of law which are disputed, but the parties reserve their rights to address disputes of law which may arise as the case continues.

**J.  AMENDMENTS, DISMISSALS, AND ABANDONED ISSUES**

**1.  Abandoned Issues**

GIS does not anticipate abandoning any issues at this time.  Defendants abandon their first, sixth, and eleventh affirmative defenses.

**2.  Dismissals**

Guardian filed its counterclaims against GIS on July 31, 2015.  (Doc. 36.)  GIS then filed the operative Second Amended Complaint on July 29, 2016.  (Doc. 67.)  Since that time, the Court dismissed the following causes of action by way of summary judgment:

        a.    GIS's fifth cause of action in the Second Amended Complaint;

        b.    GIS's California Franchise Investment Law claim based on the parties' warehousing distributor agreements, as provided in the seventh cause of action in the Second Amended Complaint;

        c.    Guardian's claims in all of its counterclaims that GIS failed to use best efforts; and

        d.    Guardian's sixth counterclaim.

**3.  Amendments**

None at this time, although GIS indicated at the pretrial conference that it may seek an amendment in the future.

**K.  BIFURCATION OF ISSUES AT TRIAL**

GIS seeks to have all claims, defenses, and issues tried before the jury in a single global trial.  Defendants seek to have their declaratory relief claim tried to the bench in advance of the trial of the remaining matters.

During the pretrial conference in this matter, the parties agreed to address the issue of bifurcation through a motion in limine.

**L.     FURTHER DISCOVERY OR MOTIONS**

On January 26, 2017, Guardian filed a Motion for Clarification, or Reconsideration, of the Court's January 18, 2017 Order Granting in Part and Denying in Part the Parties' Motions for Summary Judgment.  (Doc. 143.)  GIS filed its opposition to this motion on January 31, 2017.  (Doc. 150.)  By order of the Court, no reply in support of this motion is allowed.  (Doc. 151.)

On January 31, 2017, GIS filed a Motion for Reconsideration of this Court's January 18, 2017 order regarding the parties' motions for summary judgment.  (Doc. 147.)  Defendants may file an opposition to this motion by no later than February 8, 2017.  (Doc. 151.)  By order of the Court, no reply in support of this motion is allowed.  (*Id.*)

The Court is scheduled to hear oral argument regarding the parties' motions for reconsideration, (Docs. 143 & 147), on February 15, 2017, at 9:30 a.m. in Courtroom 7.  The Court reserves the right to vacate this hearing if it determines that oral argument will not aid the Court in ruling on these two motions.

**M.     SETTLEMENT NEGOTIATIONS**

The parties appeared for a settlement conference before U.S. Magistrate Judge Stanley A. Boone on August 23, 2016, but the case did not settle.  **A further settlement conference has been set for February 16, 2017, at 1:00 p.m. in Courtroom 10 before U.S. Magistrate Judge Erica P. Grosjean.   The parties shall submit confidential settlement statements to EPGorders@caed.uscourts.gov by no later than February 9, 2017.**

**N.     WITNESSES**

**1.     Witness Lists**

The following are lists of witnesses that the parties expect to call at trial.

a.     GIS's Witness List

i.     Frank Gibson (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto, CA., 94304);

ii.     Christopher Nolan (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto, CA., 94304);

iii.     Kara Himich (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto,

CA., 94304);

    iv.    Peter Wrobel (expert) (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto, CA., 94304);

    v.    Ronnie Holman (P.O. Box 22000, Hickory, N.C., 28603);

    vi.    Johnny Green (P.O. Box 22000, Hickory, N.C., 28603);

    vii.    Christopher Taylor (P.O. Box 22000, Hickory, N.C., 28603);

    viii.    Darin Lease (P.O. Box 22000, Hickory, N.C., 28603); and

    ix.    Karl Schulze (expert) (660 S. Figueroa St., Suite 1280, Los Angeles, CA. 90017).

   b.   <u>Defendants' Witness List</u>

    i.    Charles Gibson (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto, CA., 94304);

    ii.    Deborah Gibson (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto, CA., 94304);

    iii.    Frank Gibson (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto, CA., 94304);

    iv.    Christopher Nolan (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto, CA., 94304);

    v.    Peter Wrobel (expert) (c/o Wilson Sonsini, 650 Page Mill Rd., Palo Alto, CA., 94304);

    vi.    Ronnie Holman (P.O. Box 22000, Hickory, N.C., 28603);

    vii.    Johnny Green (P.O. Box 22000, Hickory, N.C., 28603);

    viii.    Christopher Taylor (P.O. Box 22000, Hickory, N.C., 28603);

    ix.    Darin Lease (P.O. Box 22000, Hickory, N.C., 28603);

    x.    Karl Schulze (expert) (660 S. Figueroa St., Suite 1280, Los Angeles, CA. 90017); and

    xi.    Christopher Schall (28762 Greening St. Farmington Hills, MI., 48334).

### 2.     Notice Regarding Witnesses

The parties are cautioned that **every** witness they intend to call must appear on that party's witness list.  The mere fact that a witness appears on the opposing party's witness list is not a guarantee that the witness will be called at trial or otherwise be available for questioning by other parties.  The parties must undertake independent efforts to secure the attendance of every witness each party intends to call at trial.

**By no later than Wednesday, March 15, 2017**, each party shall file and serve a final witness list, including the name of each witness along with the business or home address of each witness, to the extent known, and omitting witnesses listed in the Joint Pretrial Statement whom the parties no longer intend to call.  Only witnesses who are listed in this Pretrial Order may appear on the final witness list.  Further, no witness, other than those listed in the final witness list, may be called at trial, with the exception of rebuttal or impeachment witnesses, unless the parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice." Fed. R. Civ. P. 16(e).

**O.     EXPERT WITNESSES**

The parties anticipate calling two expert witnesses total—Peter Wrobel and Karl Schulze.

**P.     EXHIBITS**

**By no later than Friday, March 3, 2017**, the parties shall exchange their proposed exhibits to the extent they have not already done so.  The parties' counsel shall meet and conduct an exhibit conference **by no later than Friday, March 10, 2017**, to prepare exhibit lists to the extent they have not already done so.[1]  **By no later than Wednesday, March 15, 2017**, the parties shall file and serve their final lists of respective pre-marked exhibits.  Impeachment or rebuttal evidence need not be pre-marked.

Only those exhibits that are listed in this Pretrial Order may appear on the final exhibit list. Further, no exhibit other than those listed in the final exhibit list may be admitted at trial unless the

---

[1] Joint exhibits should be marked starting with "J-1," continuing with "J-2," "J-3," "J-4," etc.  Plaintiffs' exhibits should be marked starting with "P-201," continuing with "P-202," "P-203," "P-204," etc.  Defendants' exhibits should be marked starting with "D-501," continuing with "D-502," "D-503," "D-504," etc.

parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice." Fed. R. Civ. P. 16(e).

**If a party attempts to admit or use for any purpose evidence that (1) was not previously disclosed during discovery, and (2) should have been disclosed as an initial disclosure under Rule 26(a), or as a supplemental disclosure under Rule 26(e), the Court will prohibit that party from admitting or using for any purpose that evidence at trial, unless the failure was substantially justified or was harmless.** *See* **Fed. R. Civ. P. 37(c)(1).**

**By no later than Thursday, March 16, 2017**, the parties shall submit to the Clerk's Office all pre-marked documentary trial exhibits, including all originals and three copies. As stated at the pretrial conference, the Court encourages the parties to stipulate to the admission of joint exhibits where possible. The parties anticipate using the exhibits listed below.

**1.      GIS's Exhibit List**

|    | Date       | Description                                                              |
|----|------------|--------------------------------------------------------------------------|
| 1  | 12/6/1988  | Warehousing Distributor Agreement                                        |
| 2  | 4/2/1990   | Warehousing Distributor Agreement                                        |
| 3  | 4/19/2007  | 2007 Assignment                                                          |
| 4  | 8/30/1988  | Warehousing Distributor Agreement                                        |
| 5  | 3/15/1999  | Warehousing Distributor Agreement                                        |
| 6  | 5/5/1998   | Warehousing Distributor Agreement                                        |
| 7  | 3/5/2010   | 2010 Assignment of Contract                                              |
| 8  | 11/4/1997  | Warehousing Distributor Agreement                                        |
| 9  | 11/17/1988 | Warehousing Distributor Agreement                                        |
| 10 | 12/21/2015 | Guardian's Responses to Interrogatories (Set One)                        |
| 11 | 12/21/2015 | Guardian's Responses to Requests for Admission (Set One)                 |
| 12 | 1/25/2016  | GIS's Responses and Objections to Guardian's First Set of Interrogatories |

| | Date | Description |
|---|---|---|
| 13 | 10/4/2016 | Guardian's Supplemental Responses to GIS's Interrogatories (Set Two) |
| 14 | 1/20/2016 | 30(b)(6) Deposition of Johnny Green |
| 15 | 4/21/2016 | Deposition of Johnny Green |
| 16 | 5/12/2016 | 30(b)(6) Deposition of Ronnie Holman |
| 17 | 5/25/2016 | Deposition of Christopher Taylor |
| 18 | 5/25/2016 | 30(b)(6) Deposition of Darin Lease |
| 19 | 6/16/2016 | Deposition of Deborah Gibson |
| 20 | 6/21/2016 | Deposition of Frank Gibson |
| 21 | 6/23/2016 | Deposition of Christopher Nolan |
| 22 | 10/6/2016 | Deposition of Darin Lease |
| 23 | 9/7/2016 | Deposition of Peter Wrobel |
| 24 | 10/7/2016 | 30(b)(6) Deposition of Christopher Taylor |
| 25 | 8/12/2013 | Memorandum from Johnny Green to Guardian Distributors |
| 26 | 8/19/2013 | Notice of breach of the Tennessee Agreement from Johnny Green to Chuck Gibson |
| 27 | 8/19/2013 | Notice of breach of the Alabama Agreement from Johnny Green to Chuck Gibson |
| 28 | 8/19/2013 | Notice of breach of the Florida Agreement from Johnny Green to Chuck Gibson |
| 29 | 8/30/2013 | Letter from Charles Gibson to Johnny Green regarding notices of breach of the Alabama, Florida, and Tennessee Agreements |
| 30 | 10/23/2013 | Notices of termination of the Alabama, Florida, and Tennessee Agreements from Johnny Green to Chuck Gibson |
| 31 | 12/9/2014 | January 2015 form "Distributorship Agreement" proposed by Guardian to GIS on December 9, 2014 |
| 32 | 1/13/2011 | Email correspondence between Ronnie Holman and Christopher Schall setting forth terms of the Bob's |

| | Date | Description |
|---|---|---|
| | | Discount Furniture Agreement |
| 33 | 12/6-10/2013 | Email correspondence between Johnny Green and Frank Gibson discussing Mr. Green's proposed amendment to the Bob's Discount Furniture Agreement |
| 34 | 11/12/2014 | Notice of termination of the Bob's Discount Furniture Agreement from Johnny Green to Chuck Gibson |
| 35 | 12/9/2014 | Memorandum from Johnny Green to Frank Gibson attaching Guardian's proposed form "Distributorship Agreement" |
| 36 | 9/12-15/2014 | Email correspondence between Christopher Nolan and third-party Guardian distributor, Guardian North Central, regarding distributor's purchase of dreamGUARD products |
| 37 | 8/14/2013 | Internal Guardian email correspondence re dreamGUARD, dated August 14, 2013 |
| 38 | 6/1/2012 | Authorized Extended Service Program Agreement between Chartis WarrantyGuard, Inc. ("AIG") and Guardian |
| 39 | 6/17/2013 | Email correspondence between Kevin Warrix of AIG and Johnny Green and Darin Lease re Pre-Sell Proposal |
| 40 | 7/1/2013 | Email correspondence between Kevin Warrix of AIG and Johnny Green and Darin Lease re Pre-Sell Proposal, and attachment |
| 41 | 12/10/2014 | Email correspondence between Chris Taylor and Johnny Green re GIS market potential |
| 42 | GUARD 00000827-932 | Memorandum re GIS market potential, authored by Johnny Green in advance of February 2015 |
| 43 | 11/30/2014 | Email from Johnny Green to Christopher Taylor regarding GIS Shipment Details |
| 44 | 8/12/2013 | Email correspondence from Darin Lease to Johnny Green re Quota Methodology |
| 45 | 6/7/2013 | Email correspondence from Greg Webb to Johnny |

| | Date | Description |
|---|---|---|
| | | Green re Distributor Quotas |
| 46 | 1/17/2015 | Internal Guardian document entitled "FY2015 Marketing/Sales" sent from Johnny Green to Christopher Taylor on January 17, 2015 |
| 47 | GUARD 00002491-2496 | Guardian internal "FY2015 Competitive Review" |
| 48 | 2/4/2013 | Email correspondence from Greg Webb to Johnny Green and Ronnie Homan re Mattress Pads |
| 49 | 11/5/2014 | Email correspondence from Johnny Green to Eugene Alleto re New Pattern (for mattress pads) |
| 50 | GUARD 00008834-8873 | Internal presentation entitled "Business Review & Analysis: A 30-Day Perspective," presented by Johnny Green to Guardian executives in January 2013 |
| 51 | 4/21/2016 | Letter from Johnny Green to Chuck Gibson re Records Request |
| 52 | 11/30/2014 | Internal Guardian spreadsheet entitled "Distribution Sales by Territory FY14" / cover Email correspondence between Johnny Green and Darin Lease enclosing same |
| 53 | 8/30/2013 | Guardian spreadsheet entitled "Individual Distributor Market Share" / cover Email correspondence between Johnny Green and GIS enclosing same |
| 54 | 7/12/2013 | Email correspondence between Kevin Warrix of AIG and Johnny Green and Darin Lease re Pre-Sell Proposal |
| 55 | 5/23/2016 | Printout from RenCom Group, LLC's (a.k.a. "Renaissance") website regarding Renaissance's offering of Guardian furniture protection plans, printed May 23, 2016 |
| 56 | 2/9/2015 | Internal Guardian document entitled "GIS Sales Performance and Market Share Analysis" |
| 57 | GUARD 00002643-47 | Internal Guardian document entitled "Guardian Protection Products FY2016 Marketing / Sales" |

|  | Date | Description |
|---|---|---|
| 58 | 8/30/2013 | Email correspondence from Chuck Gibson to Johnny Green enclosing Sales Quota Action Plan |
| 59 | 8/22/2013 | Email correspondence between Kara Copeland and Johnny Green re Quota Notices |
| 60 | 9/27/2013 | Email correspondence between Chuck Gibson and Johnny Green re Quota Letter 2 |
| 61 | 10/25/2013 | Email from Frank Gibson to Johnny Green and Ronnie Holman re GIS Terminations |
| 62 | 12/2/2013 | Email from Frank Gibson to Johnny Green enclosing letter re terminations |
| 63 | 1/23/2011 | Email correspondence between Ronnie Holman and Chris Schall re mattress pads |
| 64 | 2/6/2013 | Email correspondence from Chris Nolan to Frank and Debbie Gibson re conversation with Ronnie Holman |
| 65 | \ | Internal Guardian spreadsheet entitled "Distribution Sales by Territory FY2014" |
| 66 | 9/18/2015 | Internal Guardian document entitled "Renaissance Partners Operational Narrative" drafted by Christopher Taylor |
| 67 | 9/29/2014 | Email correspondence from Christopher Taylor to Johnny Green attaching letter from Guardian to Renaissance regarding proposed business partnership between the two companies |
| 68 | GUARD 00009205 | Spreadsheet produced by Guardian entitled "Bob's Sales" |
| 69 | GUARD 000423 | Copy of Pennsylvania Agreement with attached "Memorandum #78" |
| 70 | GUARD 00000762 | Information pamphlet entitled "Guardian Underwritten Warranty Programs: Moving to the Next Generation of Secure and Compliant Programs," regarding Guardian's conversion to electronically-registered furniture protection plans |
| 71 | GUARD 00000761 | Addendum to GUARD 00000762 entitled "Guardian Brand Warranty Cover Pages" for electronically-registered furniture protection plans |

|  | Date | Description |
|---|---|---|
| 72 | GUARD 00000757 | Addendum to GUARD 00000762 showing "Terms and Conditions" for electronically-registered furniture protection plans |
| 73 | 7/18/2014 | Email correspondence from Chris Nolan to Renaissance |
| 74 | 5/22/2014 | Email correspondence from Renaissance to Chris Nolan |
| 75 | 6/21/2014 | Email correspondence between Renaissance and Chris Nolan |
| 76 | GIS_002145 GIS_002244 | GIS Purchase Reports Detailing and Summarizing Purchases of Guardian Products |
| 77 | GIS_003323 GIS_003328 | GIS P&L Statements for 2010-2015 |
| 78 | 11/11/2016 | Screenshot of Guardian's web page regarding its electronically-registered furniture protection plans, https://www.guardianproducts.com/protection-plans/, taken on November 11, 2016 |
| 79 | 12/12/2016 | Copy of Bob's Discount Furniture web page regarding "Bob's Goof Proof," http://www.mybobs.com/goof-proof-plus, printed on December 12, 2016 |
| 80 | 7/1/2016 | Report of Peter D. Wrobel |
| 81 | 10/14/2016 | Supplemental Report of Peter D. Wrobel |
| 82 | 2/10/2015 | Email correspondence from Chris Schall to Chris Nolan, Frank Gibson, Debbie Gibson re Bob and Stickley's commissions |
| 83 | 2/6/2013 | Email correspondence from Chris Nolan to Frank Gibson, Debbie Gibson re Bullet Point 0 Ronnie Holman |
| 84 | 4/18/2012 | Email correspondence from Christopher Schall to Frank Gibson, Debbie Gibson re Implemenation Deadline |
| 85 | 8/1/2012 | Memo from Guardian to Greg Webb re Correspondence Received on August 1, 2012 "Transition to Chartis Warranties Update" |

| | Date | Description |
|---|---|---|
| 86 | GIS_000587 GIS_000593 | Letters between Charles Gibson and Greg Webb re: distribution rights, dated August 9, 2010, August 27, 2010, December 7, 2010 |
| 87 | 4/13/2014 | Memorandum from Todd Edwards to Distributors, Johnny Green re Performance Review |
| 88 | GUARD 00006296 | Distributor Sales YOY |
| 89 | 11/10/2013 | Email correspondence from Johnny Green to Frank Gibson re New contract |
| 90 | 9/27/2013 | Email correspondence from Charles Gibson to Johnny Green, Todd Edwards re Quota Letter 2 |
| 91 | 8/30/2013 | Letter from Charles Gibson to Johnny Green re Sales Quota Action Plan |
| 92 | 9/27/2013 | Letter from Charles Gibson to Johnny Green re Sales Quota: Alabama, Florida and Tennesse |
| 93 | 2/7/2013 | Memo from Johnny Green to Guardian Distributors, Ronnie Holman, Tim Vaughan, Eric Mawyer, Diann Ebersole, Damien Narayan re Inventories |
| 94 | 6/7/2013 | Email correspondence from Chris Nolan to Debbie Gibson, Frank Gibson re Year End/June Distribution Report |
| 95 | 1/25/2016 | Memo from Johnny Green to Guardian Distributors, Ronnie Holman re June Report |
| 96 | 10/29/2013 | Email correspondence from Christopher Nolan to Debbie Gibson, Frank Gibson re Correspondence w/Johnny re quota letters |
| 97 | 9/6/2013 | Email correspondence from Christopher Nolan to Debbie Gibson, Frank Gibson re DG distribution agreement |
| 98 | 11/7/2013 | Email correspondence from Kara Copeland to Debbie Gibson, Frank Gibson re Monday Quota Conference Call Notes |
| 99 | 7/3/2013 | June, July and August Quota Report Conference Call |

23

| | Date | Description |
|---|---|---|
| 100 | 1/10/2011 | Email correspondence from Ronnie Holman to Christopher Schall re Follow-up of distributor agreement |
| 101 | 4/30/2015 | Memo from Chris Taylor to Guardian Distributors re Notice of Pricing Changes - Effective June 1, 2015 |
| 102 | GUARD 00001929 | Guardian Protection Plan Pricing - Distributor Price List, effective June 1, 2015 |
| 103 | 1/12/2016 | Second Amended Notice of Depo of GPP |
| 104 | 12/6/1988 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement for Areas of Pennsylvania |
| 105 | 12/6/1988 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement for Pennsylvania, Maryland, DC, areas of New York |
| 106 | 4/2/1990 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement for Ohio |
| 107 | 8/30/1988 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement for Cook County, Illinois |
| 108 | 3/15/1991 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement of Indiana |
| 109 | 5/5/1998 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement for Iowa, parts of Illinois, parts of Missouri |
| 110 | 11/4/1997 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement for Alabama |
| 111 | 4/11/1989 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement for Broward and Dade County, Florida |
| 112 | 11/4/1997 | Guardian Protection Productions, Inc. Warehousing Distributor Agreement for Tennessee |
| 113 | 9/17/2013 | Memorandum, Johnny Green to Guardian Distributors re August Results |
| 114 | N/A | Step-by-step Web-based Warranty Registration Procedures |

| | Date | Description |
|---|---|---|
| 115 | 6/11/2013 | GIS Purchase Order to Guardian and Order Confirmation |
| 116 | 7/10/2013 | GIS Purchase Order to Guardian and Order Confirmation, |
| 117 | 6/6/2013 | GIS Purchase Order to Guardian and Order Confirmation |
| 118 | 10/21/2014 | E-mail, Johnny Green to Chris Nolan with GIS-American Freight – Shipped vs. Registered attachment |
| 119 | GUARD 00002052 | Three-page Excel spreadsheets columns Distributor, Territory, Terminated, Status, Strategy, Candidate, |
| 120 | 3/13/2012 | Memo from Greg Webb to Guardian Distributors, Ronnie Holman, Tim Vaughan, Eric Mawyer, Damien Narayan, Greg Hadfield, Diann Ebersole re Distributor Meeting to Introduce National Underwritten Warranty Program |
| 121 | GUARD 00008875-8877 | Timeline created by Johnny Green |
| 122 | 12/5/2013 | E-mail string Guardian North Central to Johnny Green, Subject Advertising for sales rep in North and South Dakota |
| 123 | 12/8/2014 | E-mail correspondence from Ronnie Holman to Johnny Green re GIS with redaction |
| 124 | 12/7/2012 | Email correspondence from Ronnie Holman to Greg Webb, Johnny Green, Wesley Harris re Tellor visit |
| 125 | 12/10/2012 | Email corresondence from Johnny Green to Ronnie Holman re Tellor Meeting |
| 126 | 120/10/12 | Email correspondence from Johnny Green to Ronnie Holman re GPP Business Review (attached) |
| 127 | 12/11/2012 | Email from J. Green to R. Holman with attachment |
| 128 | GUARD 00001040.xls | Document titled R. Holman Analysis |
| 129 | 10/2/2012 | Email correspondence from Ronnie Holman to Greg Webb, Wesley Harris re Guardian Innovative |

| | Date | Description |
|---|---|---|
| | | Solutions P&L (attached) |
| 130 | 2/11/2013 | Email correspondence from Johnny Green to Ronnie Holman re President's letter |
| 131 | 1/31/2011 | Email correspondence from Ronnie Holman to Christopher Schall, Greg Webb re pads and ereg |
| 132 | 4/26/2011 | Notice of Subpoena to RPM Wood Finishes Group, Inc. |
| 133 | 5/17/2016 | Notice of Deposition of Guardian Protection Products, Inc. |
| 134 | 5/28/2014 | Email correspondence from Darin Lease to Johnny Green re GIS Bob's Commissions |
| 135 | 11/30/2014 | Email correspondence from Chris Taylor to Johnny Green, Darin Lease re GIS Shipment Details |
| 136 | 11/30/2014 | Email correspondence from Chris Taylor to Darin Lease, Johnny Green re GIS Shipment Details |
| 137 | 4/7/2015 | Email correspondence from Chris Taylor to Darin Lease, Louis Romenstant, Johnny Green re GIS Accounts |
| 138 | 1/27/2015 | Email correspondence from Chris Taylor to Johnny Green re Response to GIS |
| 139 | 1/29/2015 | Email string between Chris Taylor to Chris Nolan, Johnny Green, Todd Edwards re Fw: Web Portal Request |
| 140 | GUARD 00009208 | Excel spreadsheet titled Distribution |
| 141 | GUARD 00009236 | Excel spreadsheet titled Working |
| 142 | GUARD 00009218 | RPM Wood Response to GIS Interrogatories Set One |
| 143 | 10/4/2016 | GPP's Suppl Response to GIS Interrogs Set Two |
| 144 | 9/12/2016 | Amended Notice of Depo of GPP |

|  | Date | Description |
|---|---|---|
| 145 | 9/12/2016 | Amended Notice of Depo of RPM Wood |
| 146 | N/A | Web page from RPM Wood |
| 147 | N/A | Spreadsheet Guardian 62-089 |
| 148 | 9/22/2016 | Document entitled RPM Entity; Guardian Protection Production East Div |
| 149 | 9/22/2016 | Document Titled RPM Entity, RPM Wood Finishes Group, Inc. |
| 150 | 3/6/2015 | Email string between Chris Taylor, Louis Romestant re: Renaissance Partners - Guardian Program Outline |
| 151 | 2/27/2015 | Email string between Chris Taylor, Frank Amendola, Darin Lease re: Renaissance and Pet Damage Underwriting |
| 152 | 10/2/2014 | Email string between Chris Taylor, Rick Wright re: Guardian Program Outline for Renaissance (attached) |
| 153 | 7/27/2015 | Email Rick Wright to Chris Taylor |
| 154 | 7/1/2016 | Defendant's Expert Witness Disclosure |
| 155 | 8/1/2016 | Pl's Amended Notice of Deposition of Expert Schulze |
| 156 | N/A | Index to Documents in SHL Binders |
| 157 | 7/13/2016 | Invoice #14555 from SHL to Gordon Rees |
| 158 | 8/1/2016 | Supplemental and Rebuttal Report of Karl J. Schulze |
| 159 | 10/5/2016 | Report of K. Schulze re claims related to Renaisance |
| 160 | N/A | Schulze Testimony Publishing and Speaking History |
| 161 | 8/5/2013 | Guardian Protection Products, Inc. Invoice #2805688 sold to GPP Northeast |
| 162 | 7/1/2016 | Plaintiff's Expert Witness Disclosure |
| 163 | 5/25/2016 | Excerpts from the Deposition of Christopher Taylor |
| 164 | 4/21/2016 | Excerpts from the Deposition of Johnny Green |
| 165 | N/A | Guardian Protection Products FY2016 |

| | Date | Description |
|---|---|---|
| | | Marketing/Sales |
| 166 | N/A | Bob's Sales Spreadsheet |
| 167 | Depo Ex. 126 | SHL Binder1 provided by Karl Schulze |
| 168 | 1/16/1995 | Letter from Greg Freeman to Charles Gibson re distributor relationship between GPP Northeast and Guardian Protection Products, Inc. |
| 169 | GUARD 000030-33 | Guardian Residential Furniture Terms and Conditions |
| 170 | 12/18/2014 | Letter from Christopher Taylor to Christopher Nolan re: Sales and Operations Agreement for American Freight |
| 171 | 3/3/2009 | Distributor Policy Letter for the Sale of Crypton Branded Products |
| 172 | GUARD 000299-299 | Fiscal Year 2014 Results spreadsheet |
| 173 | GUARD 000313-313 | R. Holman Analysis, Guardian West spreadsheet |
| 174 | 1/11/2000 | Letter from Donald Smith to Jack Castella re: interest in the state of Kentucky |
| 175 | 12/9/2015 | Redline version of a memo from Johnny Green to Frank Gibson, Ronnie Holman, Ken Nota, Chris Taylor re: December 17 Meeting |
| 176 | GUARD 000628-639 | Redline Distributorship Agreement between GPP and GIS |
| 177 | GUARD 001687-1692 | Guardian Product Catalog |
| 178 | GUARD 001698-1708 | Guardian Underwritten Warranty Programs - Moving to the Next Generation of Secure and Compliant Programs |
| 179 | 1/8/2015 | Email string between Frank Gibson to Johnny Green re: deliveries and shipping issues |
| 180 | 6/12/2013 | Email string between Debbie Gibson, Johnny Green, |

| | Date | Description |
|---|---|---|
| | | Chris Nolan re: Kentucky Agreement |
| 181 | 1/15/2014 | Email from Frank Gibson to Johnny Green re: Tolling Agreement |
| 182 | 1/15/2014 | Email from Frank Gibson to Johnny Green re: meeting |
| 183 | 1/7/2015 | Email from Frank Gibson to Johnny Green, Christopher Nolan re: deliveries and shipping issues |
| 184 | 5/14/2015 | Email from Frank Gibson to Johnny Green re: purchase order |
| 185 | 4/1/2016 | Email string between Chris Taylor, David Bregler, Ted Gular re: Guardian/Renaissance/ABV Protection Plan Orders |
| 186 | 10/1/2014 | Letter from Christopher Taylor to Ted Gular and David Breglar re: Guardian Protection Plan Development |
| 187 | GUARD 00010583-10583 | Warranty Services Processes, Terms and Conditions |
| 188 | GUARD 00010903-10903 | "What Happens When A Consumer Purchases A Guardian Program?" |
| 189 | 7/23/2014 | Email string between Chris Taylor, Johnny Green, Damien Narayan re: Projects (Rep.Account Spreadsheet attached) |
| 190 | 1/27/2015 | Email string between Damien Narayan, Chris Taylor, Kim LeFevers re: New Customer Setup - Tennessee |
| 191 | 11/5/2014 | Email string between Johnny Green, Chris Taylor re: New Pattern |
| 192 | 11/30/2014 | Email from Chris Taylor to Johnny Green, Darin Lease re: GIS Shipment Details (GIS Shipment Details spreadsheet attached) |
| 193 | 7/25/2014 | Email string between Chris Taylor, Johnny Green re: Guardian Territory (Territory Strategy spreadsheet attached) |
| 194 | 1/20/2011 | Email string between Ronnie Holman, Greg Webb re: mattress pads |

| | Date | Description |
|---|---|---|
| 195 | 3/26/2012 | Email string between Greg Webb, Ronnie Holman, Christopher Schall, Tim Vaughan, Eric Mawyer, Greg Hadfield, Chris Nolan re: April Distributor Meeting |
| 196 | 7/11/2014 | Memo from Todd Edwards to Distributors, Johnny Green re: Performance Summary |
| 197 | 8/27/2014 | Memo from Todd Edwards to Distributors, Johnny Green re: Performance Review July |
| 198 | 2/5/2013 | Email string between Johnny Green, Ronnie Holman, Greg Webb re: GIS - Bob's |
| 199 | 11/30/2014 | Email string between Chris Taylor, Darin Lease, Johnny Green re: GIS Shipment Details |
| 200 | 11/30/2014 | Email string between Johnny Green, Chris Taylor, Darin Lease re: GIS Shipment Details |
| 201 | 11/11/2013 | Email string between Todd Edwards, Johnny Green re: Mattress Pad and Pillow Protector forecast |
| 202 | 1/29/2013 | Email string between Sara Ramseur, Johnny Green re: Distributor commissions (spreadsheets attached) |
| 203 | 10/1/2013 | Email string between Bob Ellerby, Johnny Green, Karen Ellerby, Todd Edwards re: September Numbers |
| 204 | 1/29/2013 | Email string between Eric Foucrier, Johnny Green re: Update from Las Vegas |
| 205 | 2/8/2013 | Email string between Ronnie Holman, Johnny Green, Greg Webb re: GIS - Bob's |
| 206 | 12/5/2013 | Email string between Johnny Green, Todd Edwards re: Advertising for sales rep in North and South Dakota |
| 207 | 12/11/2013 | Memo from Todd Edwards to Guardian Distributors, Johnny Green re: November Review |
| 208 | 11/4/2013 | Email string between Damien Narayan, Johnny Green, Tim Vaughan re: Some Quick Thoughts |
| 209 | 9/17/2013 | Memo from Todd Edwards to Guardian Distributors, Johnny Green re: Introduction |

| | Date | Description |
|---|---|---|
| 210 | 8/12/2013 | Memo from Johnny Green to Guardian Distributors, Ronnie Holman re: July Results |
| 211 | 10/8/2013 | Memo from Todd Edwards to Guardian Distributors, Johnny Green re: September |
| 212 | 10/24/2013 | Email from Guardian North Central to Johnny Green, Eric Mawyer, Todd Edwards re: Guardian Bedding Accessory Program |
| 213 | 2/25/2014 | Email string between Guardian North Central and Johnny Green re: Contract |
| 214 | 5/28/2015 | Email string between Frank Gibson and Johnny Green re: follow-up |
| 215 | 1/6/2014 | Email from Johnny Green to Frank Gibson, Todd Edwards, Ronnie Holman, Ken Nota re: contract |
| 216 | 3/13/2014 | Memorandum from Todd Edwards to Distributors, Johnny Green re February 2014 Performance Review |
| 217 | 10/9/2013 | Memo from Todd Edwards to Guardian Distributors, Johnny Green re: September |
| 218 | 1/10/2014 | Memo from Todd Edwards to Distributors, Johnny Green re: Performance December 2013 |
| 219 | 7/11/2013 | Memo from Johnny Green to Guardian Distributors, Ronnie Holman re: June Report |
| 220 | GUARD 00000632-632 | Handwritten Notes |
| 221 | 5/23/2011 | Furniture Today newspaper front page |
| 222 | 4/14/2014 | Email string between Christopher Nolan, Frank Gibson, Debbie Gibson, Chuck Gibson re: March Distributor Update (attached) |
| 223 | 11/12/2013 | Email string between Christopher Nolan, Debbie Gibson, Frank Gibson, Chuck Gibson re: October Performance Update (attached) |
| 224 | 5/14/2012 | Email between Christopher Schall, Ronnie Holman, Greg Web, Joann Seaman, Debbie Gibson, Frank Gibson, Chris Nolan, Vincent Scaglione re: Ongoing Sales Opportunities |

| | Date | Description |
|---|---|---|
| 225 | 4/18/2012 | Email from Christopher Schall to Ronnie Holman, Greg Web, Tim Vaughan, Eric Mawyer, Debbie Gibson, Frank Gibson, Chris Nolan re: Reply to Chicago Meeting (Proposal attached) |
| 226 | 12/11/2013 | Memo from Todd Edwards to Distributors, Johnny Green re: November Review |
| 227 | 11/12/2013 | Memo from Todd Edwards to Distributors, Johnny Green re: October |
| 228 | 9/7/2011 | Email string between Christopher Schall, Tom Toma, Chris Nolan re: dreamGuard Pricing |
| 229 | 1/2/2013 | Email string between Debbie Gibson, Chris Nolan re: dreamGuard Pricing - Tom Toma Guardian Authority |
| 230 | 6/28/2013 | Email string between Chris Nolan, Debbie Gibson, Frank Gibson re: Levins |
| 231 | 3/15/2012 | Email string between Christopher Schall, Frank Gibson, Chuck Gibson, Chris Nolan re: Mandatory Distributor Meeting (Meeting Letter attached) |
| 232 | 10/10/2013 | Email string between Christopher Nolan, Debbie Gibson, Frank Gibson, Chuck Gibson re: September Update (Sales Summary, Performance attached) |
| 233 | 8/10/2012 | Email from Chris Nolan to Greg Webb, Debbie Gibson, Frank Gibson, Christopher Schall re: Letter from GIS (attached) |
| 234 | 10/25/2013 | Email string between Debbie Gibson, Christopher Nolan, Frank Gibson re: Distributor Conference Call |
| 235 | 5/1/2007 | Bill of Sale between Guardian Midwest and GPP, Inc. |
| 236 | 8/1/2012 | Memo from Greg Webb to Guardian Distributors re: Transition to Chartis Warranties Update |
| 237 | 8/27/2014 | Email string between Christopher Nolan, Debbie Gibson, Frank Gibson, Chuck Gibson re: July Performance Update (attached) |
| 238 | 10/29/2013 | Email string between Kara Copeland, Debbie Gibson, Frank Gibson re: Product Branding Update (Certification attached) |

| | Date | Description |
|---|---|---|
| 239 | 11/5/2013 | Email string between Guardian North Central and Chris Nolan re: Guardian Bedding Accessory Program |
| 240 | 2/25/2007 | Email from Chris Schall to Chris Nolan re: Jack Castella letter |
| 241 | 5/10/2005 | Email string between Linda Lemar, Chuck Gibson, Ronnie Holman re: Guardian Neast Name Change Consent (attached) |
| 242 | 10/19/2012 | Email from Diann Ebersole to various distributors, Ronnie Holman, Greg Webb, Johnny Green, Eric Mawyer, Tim Baughan, Greg Hadfield, Damien Narayan re: Announcement: Johnny Green intro (attached) |
| 243 | 5/11/2010 | GWDA Conference Call Agenda |
| 244 | Aug-14 | Guardian Protection Products, Inc. Corporate Branding Guidelines |
| 245 | 6/25/2012 | Email string between Eric Mawyer, Christopher Schall re: Licensed to Sell Warranties in California and Florida |
| 246 | 7/5/2012 | Email string between Christopher Schall, Diann Ebersole, Chis Nolan, Greg Webb, Geoff Poole, Frank Gibson, Debbie Gibson re: More Chartis Conversions from GIS |
| 247 | 5/2/2012 | Email string between Tim Vaughan to Chis Nolan, Chris Schall, Eric Mawyer, Frank Gibson, Greg Webb, Tim Vaughan re: The RoomPLace |
| 248 | GIS_001079-1103 | Compilation of emails |
| 249 | 4/18/2012 | Email string between Ronnie Holman, Christopher Schall, Greg Webb re: Implementation Deadline |
| 250 | 1/21/2014 | Memo from Todd Edwards to Guardian Products Distributors, Johnny Green, Eric Mawyer, Tim Vaughan re: Guardian Rebranding Initiative |
| 251 | 9/15/2014 | Email from Christopher Nolan to Debbie Gibson, Frank Gibson Re: Fwd: Mattress Protection Program email |

| | Date | Description |
|---|---|---|
| 252 | 11/5/2013 | Email from Christopher Nolan to Debbie Gibson, Frank Gibson Re: Fwd: Guardian Bedding Accessory Program |
| 253 | 2/7/2013 | Email from Christopher Nolan to Debbie Gibson, Frank Gibson Re: Fwd: Memo from Guardian |
| 254 | 5/4/2012 | Email from Greg Webb to Chris Nolan, Crish Schall, Debbie Gibson, Frank Gibson, Ronnie Holman re: Meeting with GIS |
| 255 | 1/15/2014 | Email from Johnny Green to Frank Gibson re: Tolling Agreement |
| 256 | 6/7/2012 | Email from Christopher Schall to Greg Webb, Chris Nolan, Darin Lease, Damien Narayan re: Update on Chart Progress |
| 257 | 3/27/2012 | Emails between Christopher Schall, Chris Nolan and Frank Gibson re: April Distributor Meeting |
| 258 | | Backup Documents for GIS Purchase Reports (2010 - 2015) |
| 259 | | Samples of Various Products Distributed by GIS and Guardian, Including Physical Products, Product Labels, and Warranty Documents (Terms and Conditions, Transmission Documents, Cover Sheets, etc.) |
| 260 | GIS 001743 – 002137; 002245 – 003322 | Various Purchase Orders, Order Confirmations, and Invoices |

## 2.  Defendants' Exhibit List

| | Description |
|---|---|
| 1 | Second Amended Notice of Depo of GPP, Inc. w/list of examination topics dated 01/12/16 |
| 2 | Warehousing Distributor Agreement for Pennsylvania |
| 3 | Warehousing Distributor Agreement for Pennsylvania, Maryland, D.C. and New York |

| | Description |
|---|---|
| 4 | Warehousing Distributor Agreement for Ohio |
| 5 | Warehousing Distributor Agreement for Illinois |
| 6 | Preliminary Guardian Warehousing Distributor Agreement for Indiana |
| 7 | Warehousing Distributor Agreement for Iowa |
| 8 | Warehousing Distributor Agreement for Alabama |
| 9 | Warehousing Distributor Agreement for Florida |
| 10 | Warehousing Distributor Agreement for Tennessee |
| 11 | Letter dated 08/12/13 to Guardian Distributors, Ronnie Holman and GPP Directors from Johnny Green re July results (GUARD 001009-1011) |
| 12 | Letter dated 09/17/13 to Guardian Distributors, Ronnie Holman and GPP Directors from Johnny Green re August results (GUARD 001009-1011) |
| 13 | Letter dated 08/19/13 to Chuck Gibson from Johnny Green re Sales Quotas for Tennessee<br><br>(GUARD 000869) |
| 14 | Letter dated 08/19/13 to Chuck Gibson from Johnny Green re Sales Quotas for Alabama<br><br>(GUARD 000865) |
| 15 | Letter dated 08/19/13 to Chuck Gibson from Johnny Green re Sales Quotas for Florida (GUARD 000863) |
| 16 | Letter dated 08/30/13 to Johnny Green from Charles Gibson re Sales Quota Action Plan<br><br>(GUARD 000561-563) |
| 17 | Email dated 10/24/13 from Kara Copeland to Frank Gipson re Distributor Agreement Termination Notices w/attached notices |
| 18 | Distributorship Agreement between Guardian Protection Products, Inc. and G.P.P., Inc. (unsigned) |
| 19 | Email chain dated 01/13/11 from Chris Schall to Ronnie Holman, cc: Debbie and Frank Gibson, Greg Webb, R. Holman re Bob's Discount 5% |
| 20 | Email dated 08/20/14 to Debbie and Frank Gibson from Chris Nolan re Bob's idea (2 pages) |

| | | **Description** |
|---|---|---|
| 21 | | Letter dated 11/12/14 to Chuck Gibson from Johnny Green re Termination of Commissions for Bob's Discount Furniture |
| 22 | | Memorandum dated 12/09/15 to Frank Gibson from Johnny Green Re: December 17th Meeting |
| 23 | | Step-by-step Web-based Warranty Registration Procedures (GUARD 000017-23) |
| 24 | | Email chain dated 09/15/14 from Christopher Nolan to Debbie and Frank Gibson re dreamGUARD products |
| 25 | | Email dated 08/14/13 from Johnny Green to Ronnie Holman re dreamGUARD program<br><br>(GUARD 001459) |
| 26 | | Authorized Extended Service Program Agreement 06/01/12  between Chartis Warranty Guard, Inc. and Guardian Protection Products, Inc., Bates<br><br>(GUARD 00008798 - 8833) |
| 27 | | Email string, dated 06/17/13 from Kevin Warrix to Johnny Green and Darin Lease<br><br>(GUARD 00008892 - 8895) |
| 28 | | Email dated 07/01/13 from Darin Lease to Kevin Warrix, Frank Amendola and others re AIG Guardian Pre-Sell Proposal Working Copy<br><br>(GUARD 00008758) |
| 29 | | Document titled AIG Guardian Program Pre-Sell Proposal (GUARD 00008759-8763) |
| 30 | | Email dated 12/10/14 from Chris Taylor to Johnny Green re Market Potential – GIS States w/attached spreadsheet (GUARD 00001845-1846.xlsx) |
| 31 | | Document re GPP-GIS Meeting dated 02/09/15 re contract discussion (GUARD 00000827-863) |
| 32 | | Confidential email dated Nov. 2014 from Johnny Green to Chris Taylor re GIS shipment details<br><br>(GUARD 00003979) |
| 33 | | Email from Darin Lease to Johnny Green dated 08/12/13 re Distributor Sales vs Quotas Methodology & Assumptions  w/attached Warehousing Distributor Agreement for Florida (GUARD 00005527) |
| 34 | | Purchase Order # EXT061113AF dated 06/11/13<br><br>(GIS 001819 and 001818) |

| | Description |
|---|---|
| 35 | Purchase Order # EXT071013C  dated 07/10/13 |
| | (GIS 001821-1822) |
| 36 | Purchase Order # EXT6713AF dated 06/06/13 |
| | (GIS 001899 -1900); Memo dated 08/12/13 to Guardian Distributors from Johnny Green re July results (GUARD 001009-1011) |
| 39 | E-mail dated 10/21/14 from Johnny Green to Chris Nolan w/attached document re |
| | GIS-American Freight - Shipped vs. Registered  (GUARD 00000894-895) |
| 40 | Email string dated 06/07/13 from Webb to Green, w/attached Distributor Purchase Requirement Summary  (GUARD 00008554 – 8555) |
| 41 | E-mail dated 01/17/15 Green to Taylor w/attached Guardian Protection Products FY2015 Marketing/Sales (GUARD 00002485-2490) |
| 42 | Guardian Protection Products FY2015 Competitive Review document (GUARD 00002491-2496) |
| 43 | 3-page Excel spreadsheet regarding  Distributor Territory, Terminated, Status, Strategy, Candidate (GUARD 00002052) |
| 44 | Email string dated 02/04/13 from Greg Webb to Johnny Green and  Ronnie Holman re mattress pads (GUARD 00001666 - 16667) |
| 45 | Email dated 11/05/14 from Johnny Green to Eugene Alletto re New Pattern (GUARD 00006229) |
| 46 | Memo dated 03/13/12 to All Guardian Distributors, Ronnie Holman, Tim Vaughan, Eric Mawyer, Damien Narayan, Greg Hadfield, Dianne Ebersole from Greg Webb re Distributor Meeting to Introduce National Underwritten Warranty Program |
| | (GUARD 000444-445; GUARD 000561-563) |
| 47 | Guardian Business Review &Analysis, a |
| | 30-Day Perspective (GUARD 00008834 - 8873) |
| 48 | Timeline titled "Guardian Pre-Johnny Green" |
| | (GUARD 00008875-8877) |
| 49 | Email dated 12/05/13 from Guardian North Central to Johnny Green, Todd Edwards re Advertising for Sales Rep in North and South Dakota |
| | (GUARD 0006150-6155) |

| | Description |
|---|---|
| 50 | Redacted email dated 12/08/14 from Ronnie Holman to Johnny Green re GIS Distribution and Quotas (GUARD 00008467) |
| 51 | Letter dated 04/21/16 to Chuck Gibson from Johnny Green; and email dated 04/29/16 from Johnny Green to Frank Gibson re request for GIS' shipping records |
| 52 | Email dated 12/07/12 from Ronnie Holman to Greg Webb, Johnny Green and Wesley Harris re Tellor visit (GUARD 00009101) |
| 53 | Email dated 12/10/12 from Johnny Green to Ronnie Holman re meeting with Greg (GUARD 00009143) |
| 54 | Email dated 12/10/12 from Johnny Green to Ronnie Holman w/attached presentation titled "Guardian Business Review & Analysis" (GUARD 00009102 – 9142) |
| 55 | Email dated 12/11/12 from Johnny Green to Ronnie Holman Ronnie Holman w/attached presentation titled "Guardian Business Review & Analysis" (GUARD 00009144 – 9184) |
| 56 | 5-page document titled "R Holman Analysis" and "Guardian West"   (GUARD 00001040.xls) |
| 57 | Email dated 10/02/12 from Ronnie Holman re:  Guardian Innovative Solutions P&L w/attached 4-page spreadsheet |
| 58 | Email dated 02/11/13 from Johnny Green to Ronnie Holman re: President's letter (GUARD 00004035) |
| 59 | Email dated 01/31/11 from Ronnie Holman to Chris Schall regarding pads and competitors ereg system (GUARD 00006742) |
| 60 | Notice of Subpoena to RPM Wood Finishes Group, Inc. |
| 61 | NOT USED |
| 62 | Email chain from Darin Lease to Johnny Green re GIS update by state (GUARD 0008514-8515) |
| 63 | Spreadsheet re Distribution Sales by Territory FY14 (GUARD 00008522.xlsx) |
| 64 | Email chain dated 08/20/14 from Chris Nolan to Debbie and Frank Gibson re backup sales data for FL, TN and AL w/attached spreadsheet |
| 65 | Email chain dated 07/12/13 from Kevin Warrix to Darin Lease and Frank Amendola, cc: Johnny Green re AIG Guardian Pre-Sell Proposal Working Copy (GUARD 00008890-8891) |

| | | Description |
|---|---|---|
| 66 | | Email dated 05/28/14 from Darin Lease to Johnny Green re GIS Bob's Commissions<br><br>(GUARD 00007774) |
| 70 | | Advertisement re Renaissance Protection Program |
| 71 | | Email dated 11/30/14 from Chris Taylor to Johnny Green, cc: Darin Lease re GIS Shipment details<br><br>(GUARD 00001975) |
| 72 | | Email chain dated 11/30/14 from Chris Taylor to Darin Lease, cc: Johnny Green re GIS Shipment details and incomplete data<br><br>(GUARD 00003463-3464) |
| 73 | | Email dated 04/07/15 from Chris Taylor to Darin Lease, Louis Romestant, cc: Johnny Green re GIS accounts (GIS 00008362) |
| 74 | | GIS Sales Performance and Market Share Analysis dated 02/09/15 (GUARD 00001796-1808) |
| 78 | | Letter dated 04/19/2007 to Greg Webb from GPP Northeast re intent to transfer rights to Frank Gibson |
| 79 | | Assignment of Contract dated 03/17/2010 by Greg Webb |
| 80 | | Memo dated 03/26/12 from Christopher Schall to rholman@rpmwfg.com, Greg Webb, Tim Vaughan, Greg Hadfield, cc: Chris Nolan, Frank Gibson re April Distributor Meeting (GIS 000022-023) |
| 81 | | Email dated 08/30/13 from Charles Gibson to Johnny Green, cc: Chris Nolan forwarding attached Sales Quota Action Plan (GUARD 00000327; 503-505 and GUARD 00001262; 1438-1440) |
| 82 | | Email dated 08/22/13 from Kara Copeland to Johnny Green, cc: Debbie and Frank Gibson re Quota Notices (GUARD 00000510-511; 328, 502, 514 and GUARD 00001445-1446; 1263, 1437, 1449) |
| 83 | | Email dated 09/27/13 to Johnny Green from Charles Gibson, cc: Todd Edwards re Quota Letter 2 w/attached letter (GUARD 00000994-998) |
| 84 | | Letter from Frank Gibson to R. Holman, J. Green re GIS Terminations (GUARD 00000333; 1268) |
| 85 | | Email dated 12/02/13 from Frank Gibson to Johnny Green, cc: Debbie Gibson, Chris Nolan re response to terminations (GUARD 00007482-7484) |

| | | Description |
|---|---|---|
| 1 | | |
| 2 | 86 | Email chain dated 01/26/11 from Christopher Schall to Vincent Scaglione, cc: Debbie Gibson re mattress pads (GIS_001119-1120) |
| 3 4 5 | 87 | Email chain dated 02/05/13 from Chris Nolan to Frank and Debbie Gibson re Guardian response<br><br>(GIS_000432) |
| 6 7 8 | 88 | Email dated 10/08/13 from Johnny Green to Kara Copeland, cc: Chris Nolan re Bobs<br><br>(GUARD 00006925-6926) |
| 9 10 | 89 | Email dated 02/05/13 from Chris Nolan to Frank and Debbie Gibson re bullet point – Ronnie Holman<br><br>(GIS 000407-408) |
| 11 12 | 90 | Letter dated 03/21/12 from GIS to Damien Narayan re SC Warranty Replacement /Exchange |
| 13 14 | 96 | Spreadsheet re Distribution Sales by Territory FY14<br><br>(GUARD 00009208.xlsx) |
| 15 16 | 97 | Spreadsheet re Distribution<br><br>(GUARD 00009236.xlsx) |
| 17 18 | 98 | Spreadsheet re Working<br><br>(GUARD 00009218.xlsx) |
| 19 | 99 | Defendant RPM Wood Finishes Group, Inc.'s Response to Plaintiff G.P.P., Inc.'s Interrogatories, Set One, Numbers 8, 16, 17 & 18 |
| 20 | 101 | Amended Notice of Deposition of Guardian Protection Products, Inc. |
| 21 | 102 | Amended Notice of Deposition of RPM Wood Finishes Group, Inc. |
| 22 | 103 | Information re RPM Wood Finishes Group |
| 23 24 | 104 | Spreadsheet re Guardian; marked "Highly Confidential – Attorney Eyes Only"<br><br>(Guardian062-089) |
| 25 26 27 | 105 | Spreadsheet re RPM – Entity: Guardian Protection Prod Inc – East Div (US222.US22211); marked "Highly Confidential – Attorneys' Eyes Only<br><br>(Guardian060-061) |
| 28 | | |

| | | Description |
|---|---|---|
| | | |
| | 106 | Spreadsheet re RPM – Entity:  RPM Wood Finishes Group, Inc. (USA.US307); marked "Highly Confidential – Attorneys' Eyes Only (Guardian058-059) |
| | 107 | E-mail chain, top e-mail 03/06/2015, Christ Taylor to Louis Romestant (GUARD 00010309-313) |
| | 108 | Renaissance Partners Operational Narrative September 18, 2015 (GUARD 00010919) |
| | 109 | E-mail chain, top e-mail 02/27/2015, Chris Taylor to Frank Amendola and Darin Lease (GUARD 00010314-316) |
| | 110 | E-mail chain, top e-mail 10/02/2014, Chris Taylor to rick@thewrightreps.com, with 10/1/2014 Letter attachment Christopher Taylor to Ted Gular and David Breglar (GUARD 00009455-458) |
| | 111 | E-mail   dated 09/29/2014 Chris Taylor to Johnny Green   with attachment Renaissance Program Outline 2014 letter dated 09/29/2014 (GUARD 00009474-476) |
| | 112 | E-mail dated 07/27/2015 from Rick Wright to Christ Taylor (GUARD 00010614) |
| | 113 | Defendant's Expert Witness Disclosure |
| | 114 | Plaintiff's Amended Notice of Deposition of Defendants' Expert Karl J. Schulze |
| | 115 | G.P.P., Inc. d/b/a Guardian Innovative  Solutions v. Guardian Protection Products, Inc. Index to Documents in SHL Binders |
| | 116 | Invoice #14555 dated 07/13/16 submitted to Calvin E. Davis from Schulze Hayne Loevenguth & Co. (7-pages) |
| | 117 | Supplemental and Rebuttal Report of  Karl J. Schulze |
| | 118 | Report of Karl J. Schulze, CPA, CVA, CFE, CFF (Regarding Claims Related to Renaissance) |
| | 119 | Karl J. Schulze, CPA, CVA, CFE, CFF document re Testimony, Publishing and Speaking History |
| | 120 | Invoice 2805688; marked "CONFIDENTIAL" (GIS_001950) |
| | 121 | Plaintiff's Expert Witness Disclosure |

| | Description |
|---|---|
| 122 | Transcript of the Videotaped Deposition of Christopher Patrick Taylor, taken May 25, 2016 |
| 123 | Transcript of the Videotaped Deposition of Johnny Wayne Green, Junior, taken April 21, 2016 |
| 124 | Guardian Protection Products FY2016                    Marketing/Sales; marked "CONFIDENTIAL" (GUARD 00002643-2647) |
| 125 | Document titled "Bob's Sales" marked "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER"  (GUARD 00009205-9206) |
| 126 | SHL Binder 1 provided by Karl J. Schulze |

## Q.    DISCOVERY DOCUMENTS

GIS states that it included all discovery documents it intends to use in its case-in-chief in GIS's Exhibit List.  Defendants state that they anticipate offering GIS's answers to Special Interrogatories 1 through 17.  The parties intend to rely on deposition testimony of all listed witnesses if those witnesses are offered for live testimony.  The parties have requested to reserve the right to offer the entirety of the deposition testimony of individuals who were deposed in this litigation in the event that the other party does not call them for live testimony.

**By no later than Wednesday, March 15, 2017**, the parties shall file and serve a final list of discovery documents that they intend to use at trial.  Only those discovery documents listed in this Pretrial Order may appear on the final discovery document list.  Further, no discovery document, other than those listed in the final exhibit list, may be admitted at trial for any purpose including for rebuttal unless the parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice."  Fed. R. Civ. P. 16(e).

Discovery documents (or relevant portions thereof) may be either separately marked and indexed as a trial exhibit (as part of the exhibit marking process described above) or, if admissible, read directly into evidence.  **By no later than Thursday, March 16, 2017**, the parties shall submit to the Court, through the Clerk's Office, all pre-marked discovery documents.

**R.     DUTIES OF COUNSEL REGARDING EVIDENCE**

**1.     General Evidentiary Matters**

During the course of trial, the parties' counsel shall meet with the Court each morning and advise the Court as to which items of evidence will be used that day and which have not already been admitted into evidence.  The Court will rule on any objections, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If such ruling depends on the receipt of testimony or other evidence, the Court will rule as appropriate upon receipt of such testimony or evidence.  If evidentiary problems are anticipated, the parties' counsel are required to notify the Court immediately that a hearing outside the jury's presence will be required.  During the time set for conducting the trial before the jury, the Court will not hear argument outside the jury's presence on such matters.

**2.     Witnesses**

During the trial, **the parties' counsel shall provide to the Court and the other counsel, no less than one court day before a witness is called, with the name of the witness to be called.**  If evidentiary problems are anticipated, the parties' counsel are required to notify the Court immediately that a hearing will be required.

**3.     Duty of Parties' Counsel**

The Court respects the jury's time and expects issues that must be presented outside the jury's presence to be raised such that the jury's service is not unnecessarily protracted.  To the extent possible, the parties shall raise issues that must be presented to the Court outside of the jury's presence (1) in the morning before the jury sits, (2) during breaks, (3) in the afternoon after the jury is excused, or (4) during any other appropriate time that does not inconvenience the jury. For example, if evidentiary problems can be anticipated, the parties should raise the issue with the Court before the jury sits so that there is no delay associated with specially excusing the jury. Issues raised for the first time while the jury is sitting when the issue could have been raised earlier will be looked upon with disfavor and counsel may be sanctioned for any fees, costs or other expenses caused by their failure to raise the issue at a more convenient time.

**4.     Post-Trial Exhibit Retention**

The party's counsel who introduces evidence at trial shall retrieve the original exhibits from the Courtroom Deputy following the verdict in the case.  The parties' counsel shall retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

**S.     MOTIONS IN LIMINE**

The Court ORDERS the parties' counsel to meet and confer on anticipated motions in limine and to distill evidentiary issues.  The Court further ORDERS the parties to file motions in limine as to only important matters in that most evidentiary issues can be resolved easily with a conference among the Court and counsel.  If, after conferring, any party chooses to file motions in limine, the party shall file and serve its motions in limine **by no later than Thursday, March 2, 2017**.  Oppositions to motions in limine shall be filed and served **by no later than Wednesday, March 8, 2017**.  The Court will conduct a hearing regarding pending motions in limine on **Monday, March 13, 2017, at 3:00 p.m. in Courtroom 7**.  **Telephonic appearances are approved for the hearing regarding motions in limine; counsel appearing telephonically shall confer to place one conference call to the Court at the time and date for the hearing.**

**T.     TRIAL PREPARATION AND SUBMISSIONS**

**1.     Trial Briefs**

**By no later than Wednesday, March 15, 2017**, the parties may file and serve optional trial briefs pursuant to Local Rule 285.

**2.     Neutral Statement of the Case**

**By no later than Friday, March 3, 2017**, the parties shall serve a proposed neutral statement of the case on the opposing party.  **By no later than Friday, March 10, 2017**, the parties shall meet and confer regarding a joint neutral statement of the case.  The parties shall jointly file a neutral and brief statement of the case, which is suitable for reading to the jury, **by no later than Thursday, March 16, 2017**.

**3.     Proposed Voir Dire**

The parties shall file and serve any proposed jury voir dire **by no later than Wednesday, March 15, 2017**.

### 4.   Proposed Jury Instructions

The parties shall serve their proposed jury instructions on one another **by no later than Friday, March 3, 2017**.  The parties shall conduct a conference to address their proposed jury instructions **by no later than Friday, March 10, 2017**.  At the conference, the parties SHALL reach an agreement on the jury instructions for use at trial.  The parties shall file and serve all agreed-upon jury instructions, and identify them as such, **by no later than Thursday, March 16, 2017**.

For those jury instructions on which the parties cannot agree, **by no later than Thursday, March 16, 2017**, the parties may file and serve **no more than ten total** proposed jury instructions and identify them as instructions upon which the parties could not agree.  **Without prior order, the Court will not consider additional proposed jury instructions past the first ten**.

All jury instructions shall indicate the party submitting the instruction (i.e., joint/agreed-on, GIS's, Guardian's, or Defendants'), the number of proposed instruction in sequence, a brief title for the instruction describing the subject matter, the text of the instruction, and the legal authority supporting the instruction.

Ninth Circuit Model Jury Instructions SHALL be used where the subject of the instruction is covered by a model instruction.  Similarly, CACI or BAJI instructions SHALL be used where the subject of the instruction is covered by CACI or BAJI.  **All instructions shall be short, concise, understandable, neutral, and accurate statements of the law.  Argumentative or formula instructions will not be given and must not be submitted.**  Quotations from legal authorities without reference to the issues at hand are unacceptable.

The parties shall, by italics or underlining, designate any modifications of instructions from statutory or case authority, or any pattern instruction, such as the Ninth Circuit Model Jury Instructions, CACI, BAJI, or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

**By no later than Friday, March 17, 2017**, the parties may file and serve any written objections to disputed jury instructions proposed by another party.  All objections shall be in

writing, set forth the proposed instruction, and shall include a citation to legal authority to explain the grounds for the objection and why the instruction is not proper.   A concise argument concerning the instruction may be included.  Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

### 5.     Proposed Verdict Form

The parties shall serve their proposed verdict form on one another **by no later than Friday, March 3, 2017**.  The parties shall conduct a conference to address their proposed verdict form **by no later than Friday, March 10, 2017**.  At the conference, the parties SHALL reach agreement on the verdict form for use at trial.  The parties shall file and serve the agreed-upon verdict form, and identify it as such, **by no later than Thursday, March 16, 2017**.  If a party seeks additions to the agreed-upon verdict form, the party may file and serve, **by no later than Friday, March 17, 2017**, a proposed verdict form which includes the agreed-upon portions and additions which are clearly indicated on the party's proposed verdict form.  The Court will strike and will not accept separately proposed verdict forms upon which the parties do not agree.

### 6.     Other Matters

All proposed jury instructions and verdict forms shall be e-mailed as a Word document attachment to SKOorders@caed.uscourts.gov **by no later than Thursday, March 16, 2017**.  Jury instructions and verdict forms will not be given or used unless they are e-mailed to the court.  The Court will not accept a mere list of numbers of form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI, or other instruction forms.  The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury.  All blanks to form instructions must be completed.  Irrelevant or unnecessary portions of form instructions must be omitted.

## U.     COURTROOM ACCESS

To the extent either party has video or DVD evidence they wish to present, the only method of displaying such evidence will be through the use of the parties' laptop(s) which will be projected to the courtroom monitors.  The parties' laptop(s) will have to serve as the device that

plays these videos or DVDs—our courtroom equipment no longer provides any technology to play such evidence.

The parties should contact Courtroom Deputy Alice Timken at 559-499-5975 **by no later than Monday, March 13, 2017**, to coordinate access to the courtroom and training with IT on equipment.

## V.      SUMMARY OF PRETRIAL DEADLINES AND HEARINGS

| Deadline | Event |
|----------|-------|
| **February 8, 2017** | • Defendants may file their opposition to GIS's Motion to Reconsider, (Doc. 147). |
| **February 15, 2017** | • Hearing on the parties' motions to reconsider, (Docs. 143 & 147), unless the Court vacates the hearing. |
| **February 16, 2017** | • Settlement Conference before the Honorable Erica P. Grosjean at 1:00 p.m. in Courtroom 10. |
| **March 2, 2017** | • File motions in limine. |
| **March 3, 2017** | • Exchange proposed exhibits;<br>• Serve proposed neutral statement of the case on opposing party;<br>• Serve proposed jury instructions on opposing party; and<br>• Serve proposed verdict forms on opposing party. |
| **March 8, 2017** | • File oppositions to motions in limine. |
| **March 10, 2017** | • Exhibit conference;<br>• Meet and confer to draft joint neutral statement of the case;<br>• Meet and confer regarding jury instructions; and<br>• Meet and confer regarding verdict form. |
| **March 13, 2017** | • Contact Courtroom Deputy to coordinate access to courtroom and IT equipment; and<br>• Hearing on motions in limine at 3:00 p.m. in Courtroom 7 (SKO). |
| **March 15, 2017** | • Serve and file final witness lists;<br>• Serve and file final exhibit lists;<br>• Serve and file final list of discovery documents;<br>• File optional trial brief; and<br>• File any proposed voir dire. |
| **March 16, 2017** | • Submit all pre-marked trial exhibits to the Clerk's Office; |

| | |
|---|---|
| | • Submit all pre-marked discovery documents to the Clerk's Office;<br>• Submit all deposition transcripts reasonably anticipated for use for any purpose at trial to the Clerk's Office;<br>• Serve opening statement materials (*e.g.*, demonstrative exhibits) on opposing parties and provide a copy to the Court;<br>• File and email agreed-upon jury instructions;<br>• File and email joint verdict form;<br>• File and email joint neutral statement of the case; and<br>• File up to 10 proposed jury instructions on which the parties could not agree (no more than 10 total will be considered). |
| **March 17, 2017** | • File any objections to separately proposed jury instructions; and<br>• File any additions to the agreed-upon verdict form. |
| **March 21, 2017, at 8:30 a.m.** | • Trial begins. |

## W.    STRICT COMPLIANCE

Strict compliance with this Pretrial Order and its requirements is mandatory.  The Court will strictly enforce the requirements of this Pretrial Order, especially those portions pertaining to jury instructions and a verdict form.  Counsel and the parties are subject to sanctions for failure to fully comply with this order and its requirements.  **The Court will modify this order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e).**

IT IS SO ORDERED.

Dated:   **February 3, 2017**                          /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE

48