1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

7

### EASTERN DISTRICT OF CALIFORNIA

8

9    G.P.P., INC. d/b/a GUARDIAN
     INNOVATIVE SOLUTIONS,
10
                    Plaintiff,
11

12            v.

13
     GUARDIAN PROTECTION PRODUCTS,
14   INC., RPM WOOD FINISHES GROUP,
     INC.,                                       Case No.  1:15-cv-00321-SKO
15
                    Defendants.                  **ORDER GRANTING IN PART AND**
16                                               **DENYING IN PART THE PARTIES'**
     ———————————————————————/                   **MOTIONS FOR RECONSIDERATION**
17
                                                 **(Docs. 143 & 147)**
18
     GUARDIAN PROTECTION PRODUCTS,
19   INC.,

20                  Counterclaimant,

21
              v.
22

23   G.P.P., INC. d/b/a GUARDIAN
     INNOVATIVE SOLUTIONS,
24
                    Counter-defendant.
25   ———————————————————————/

26

27

28

1    Before the Court are the following: (1) Defendant/Counterclaimant Guardian Protection

2 Products, Inc.'s ("Guardian") Motion for Clarification, or Reconsideration, of the Court's January

3 18, 2017 Order Granting in Part and Denying in Part the Parties' Motions for Summary Judgment

4 ("Guardian's Motion"), (Doc. 143); and (2) Plaintiff/Counter-defendant G.P.P., Inc. d/b/a

5 Guardian Innovative Solutions' ("GIS") Motion for Reconsideration ("GIS's Motion"), (Doc.

6 147).   In Guardian's Motion and GIS's Motion, the parties request that the Court reconsider

7 certain portions of its January 18, 2017 Order Granting in Part and Denying in Part the Parties'

8 Motions for Summary Judgment (the "Order").[1]   (*See* Docs. 143 & 147.)   These motions are

9 currently before the Court on the parties' initial and opposition briefs, which were submitted

10 without oral argument.[2]

11    For the reasons provided herein, the Court GRANTS IN PART and DENIES IN PART

12 both Guardian's Motion, (Doc. 143), and GIS's Motion, (Doc. 147).

13                              **I.      LEGAL STANDARD**

14     "[A] motion for reconsideration should not be granted, absent highly unusual

15 circumstances, unless the district court is presented with newly discovered evidence, committed

16 clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals,*

17 *Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St.*

18 *Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).   "'A party seeking reconsideration must

19 show more than a disagreement with the Court's decision, and recapitulation . . .' of that which

20 was already considered by the Court in rendering its decision." *Andrews v. Pride Indus.*, No.

21 2:14-cv-02154-KJM-AC, 2017 WL 117899, at *2 (E.D. Cal. Jan. 11, 2017) (quoting *United States*

22 *v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001)). Further, "[a] motion for

23 reconsideration 'may *not* be used to raise arguments or present evidence for the first time when

24 they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc.*, 571

25

26 ---
[1] In Guardian's Motion, Guardian requests that the Court reconsider portions of its Order.  (*See* Doc. 143.)  The Court therefore construes Guardian's Motion as a motion to reconsider.

27 [2] In its order entered on January 31, 2017, the Court ordered "that no reply briefs are allowed as to either Guardian's Motion or GIS's Motion." (Doc. 151.)  Additionally, in its order entered on February 10, 2017, the Court found "that

28 Guardian's Motion and GIS's Motion are suitable for decision without oral argument pursuant to Local Rule 230(g)" and, as such, the Court vacated the hearing regarding these motions.  (Doc. 159.)

1    F.3d at 880 (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

2    Ultimately, "[t]o succeed" in a motion for reconsideration, "a party must set forth facts or law of a

3    strongly convincing nature to induce the court to reverse its prior decision." *Andrews*, 2017 WL

4    117899, at *2 (citation omitted); *see, e.g.*, E.D. Cal. Local Rule 230(j) (stating that a party seeking

5    reconsideration must show, in part, "what new or different facts or circumstances are claimed to

6    exist which did not exist or were not shown upon such prior motion, or what other grounds exist

7    for the motion").

8         In both Guardian's Motion and GIS's Motion, the parties assert that reconsideration is

9    warranted due to discrete errors in the Court's Order.  (*See* Docs. 143 & 147.)  "Where there is an

10   error in the underlying order, only a failure to correct 'clear error' constitutes an abuse of

11   discretion." *Andrews*, 2017 WL 117899, at *2 (citing *McDowell v. Calderon*, 197 F.3d 1253,

12   1255 (9th Cir. 1999)); *see also id.* ("The Ninth Circuit has held it is not an abuse of discretion to

13   deny a motion for reconsideration merely because the underlying order is 'erroneous,' rather than

14   'clearly erroneous." (quoting *McDowell*, 197 F.3d at 1255 n.4)).  "Clear error occurs when 'the

15   reviewing court on the entire record is left with the definite and firm conviction that a mistake has

16   been committed.'" *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting

17   *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "Whether or not to grant

18   reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated*

19   *Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona*

20   *Enters., Inc.*, 229 F.3d at 883).

21                    **II.    GUARDIAN'S MOTION**

22         In Guardian's Motion, Guardian argues, in pertinent part, that the Court clearly erred in

23   portions of its analysis relating to the warehousing distributor agreement between the parties

24   pertaining to Cook County in Illinois (the "Cook County Agreement").  (*See* Doc. 143 at 1–4.)

25   For the reasons that follow, the Court finds that these arguments have merit.

26

27

28

**A.     Whether EFPPs are Covered by the Cook County Agreement**

Guardian first argues that the Court clearly erred in denying Guardian's First Counterclaim on the issue of whether electronic furniture protection plans ("EFPPs") are covered by the Cook County Agreement.  (*See* Doc. 143 at 2–3.)  The Court agrees with Guardian's position.

In its Order, the Court noted the following as to the parties' warehousing distributor agreements relating to the State of Florida (the "Florida Agreement") and certain counties in Pennsylvania, the State of Maryland, the District of Columbia, and certain counties in New York (the "Mid-Atlantic Agreement"):

> The Florida and Mid-Atlantic Agreements provide, in pertinent part, that "[i]t is understood that unless specifically noted by a mutually agreed upon Addendum hereto, Guardian Labeled Distributor Products shall be only those items indicated on Exhibit #A which is attached hereto." (Doc. 120, Ex. 2 ¶ 7; *id.*, Ex. 8 ¶ 7.)  As noted above, this language provides that, unless there is a relevant addendum, the list of products provided in "Exhibit #A" are the *only* products that qualify as "Guardian Labeled Distributor Products."  (*See id.*, Ex. 2 ¶ 7; *id.*, Ex. 8 ¶ 7.)  EFPPS—or any variation of an electronic protection plan—are not listed on these exhibits. (*See id.*, Ex. 2 ¶ 7; *id.*, Ex. 8 ¶ 7.)  Additionally, these agreements do not include an addendum providing that these products qualify as "Guardian Labeled Distributor Products." (*See id.*, Exs. 2 & 8.)  As such, the Court finds that EFPPs are not "Guardian Labeled Distributor Products" under the Florida and Mid-Atlantic Agreements.

(Doc. 133 at 71.)   As to the Cook County Agreement, the Court noted that this agreement "include[s] the same language that, absent a relevant addendum, limits the products that qualify as 'Guardian Labeled Distributor Products' to those provided in a specified attached exhibit."  (*Id.* at 71–72.)  The Court stated, however, that the "pertinent exhibit[] providing" a product list for the Cook County Agreement was "not a part of the record for this case."  (*Id.* at 72.)  The Court declined to speculate as to whether EFPPs are included as "Guardian Labeled Distributor Products" and, instead, denied Guardian's motion for summary judgment on the issue in the First Counterclaim of whether EFPPs are covered by the Cook County Agreement.  (*See id.*)

As Guardian correctly notes in Guardian's Motion, the Court clearly erred in stating that the exhibit listing "Guardian Labeled Distributor Products" under the Cook County Agreement is not a part of the record for this case.  To the contrary, the Cook County Agreement in the record

1   includes the relevant list identified by this agreement as providing the list of "Guardian Labeled

2   Distributor Products."  (*See* Doc. 120, Ex. 4 at 12–17.)

3       As such, the analysis pertaining to the Cook County Agreement is identical to that the

4   Court employed for the Florida Agreement and the Mid-Atlantic Agreement, both of which also

5   included the pertinent list of "Guardian Labeled Distributor Products."  Specifically, as with these

6   other two agreements, EFPPs—or any variation of an electronic protection plan—are not listed on

7   the relevant list of products for the Cook County Agreement.  (*See id.*)  Additionally, the Cook

8   County Agreement does not include an addendum providing that EFPPs qualify as "Guardian

9   Labeled Distributor Products."  (*See id.* at 1–26.)  Consequently, EFPPs are not "Guardian Labeled

10  Distributor Products" under the Cook County Agreement and Guardian was entitled to summary

11  judgment as to this issue on its First Counterclaim.  The Court therefore finds that its ruling

12  denying summary judgment as to this claim was based on a clear error of fact and reconsideration

13  is warranted.  *See, e.g.*, *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) ("Clear

14  error occurs when the reviewing court on the entire record is left with the definite and firm

15  conviction that a mistake has been committed." (citation omitted)).

16      For these reasons, the Court GRANTS Guardian's Motion, (Doc. 143), insofar as Guardian

17  requests reconsideration of the Court's Order denying summary judgment on Guardian's First

18  Counterclaim for declaratory relief as to whether EFPPs are covered by the Cook County

19  Agreement.  Accordingly, the Court RECONSIDERS the Order, (Doc. 133), in part, and GRANTS

20  Guardian's motion for summary judgment, (Doc. 92), to the extent Guardian seeks summary

21  judgment on its request in its First Counterclaim for a declaration that EFPPs are not within the

22  scope of the Cook County Agreement.

23  **B.      Whether the Bob's Discount Furniture Agreement is Supported by Consideration
            as it Pertains to the Area Covered by the Cook County Agreement**

24

25      In Guardian's Motion, Guardian also requests that the Court reconsider its ruling as to

26  GIS's third claim in the Complaint, in which GIS alleges that Guardian breached an agreement

27  between the parties relating to a third party—Bob's Discount Furniture (the "Bob's Discount

28

Furniture Agreement")—by selling certain products to this third party without providing compensation to GIS. (*See* Doc. 143 at 3–4.) The Court again agrees with Guardian's position.

In the Court's Order, it found that the products Guardian sold to Bob's Discount Furniture—"private-label products . . . under the brand name 'Bob's Goof Proof'"—were not covered by the Florida Agreement and the Mid-Atlantic Agreement because they were not included in the list of products provided for those agreements. (*See* Doc. 133 at 33.) The Court also found that, as these products were not covered under these two agreements, GIS did not give any consideration and, consequently, the Bob's Discount Furniture Agreement was not a valid contract as it pertained to Guardian's sales to Bob's Discount Furniture in the geographic areas covered by the Florida Agreement and the Mid-Atlantic Agreement. (*Id.*) On the issue of the Cook County Agreement, however, the Court found that the absence of a product list ultimately resulted in "genuine issues of material fact regarding whether GIS provided consideration—and, consequently, whether there was a valid contract—for the Bob's Discount Furniture Agreement, to the extent this agreement pertains to Guardian's sales to Bob's Discount Furniture in the geographic areas covered by the . . . Cook County . . . Agreement[]." (*Id.* at 34.)

As Guardian correctly notes, the Court clearly erred insofar as it did not apply the same analysis to the Cook County Agreement on this issue as the Court employed with regard to the Florida Agreement and the Mid-Atlantic Agreement. Specifically, contrary to the Court's statement in the Order, the record includes the relevant product list for the Cook County Agreement. (*See* Doc. 120, Ex. 4 at 12–17.) That product list does not include the products Guardian sold to Bob's Discount Furniture in the geographic areas covered by the Cook County Agreement—namely, "private-label products . . . under the brand name 'Bob's Goof Proof.'" (*See id.*) Additionally, the Cook County Agreement does not include an addendum indicating that these products qualify as "Guardian Labeled Distributor Products." (*See id.* at 1–26.) Thus, these products are not covered by the Cook County Agreement. As these products are not covered under this agreement, GIS did not relinquish any form of consideration by permitting Guardian to distribute these products to Bob's Discount Furniture in the geographic areas covered by the Cook County Agreement. Finally, without consideration, the Bob's Discount Furniture Agreement is

1    not a valid and binding contract as it pertained to Guardian's sales to Bob's Discount Furniture in

2    these areas, *see, e.g.*, Cal. Civ. Code § 1550 ("It is essential to the existence of a contract that there

3    should be . . . sufficient cause or consideration."), and the Court clearly erred in finding that there

4    were genuine issues of material fact on this issue.

5    　　　For these reasons, the Court GRANTS Guardian's Motion, (Doc. 143), to the extent

6    Guardian requests reconsideration of the Court's findings as to whether the Bob's Discount

7    Furniture Agreement was a valid contract as it pertained to the areas covered by the Cook County

8    Agreement.  Accordingly, the Court RECONSIDERS the Order, (Doc. 133), in part, and finds that

9    the Bob's Discount Furniture Agreement was *not* a valid contract as it relates to Guardian's sales

10   of products to Bob's Discount Furniture in the geographic areas covered by the Cook County

11   Agreement.[3]

12   　　　　　　　　　　**III.   GIS'S MOTION**

13   　　　In GIS's Motion, GIS argues that the Court (1) committed clear error in its analysis

14   pertaining to the EFPPs, (2) should consider certain additional arguments, and (3) erred when

15   addressing whether the dreamGUARD products are "competing products."  (*See* Doc. 147, Ex. 1.)

16   The Court agrees only with GIS's last argument.

17   **A.   Whether the Court Erred in its Analysis Pertaining to the EFPPs**

18   　　　GIS first argues that the Court committed clear error by finding "that EFPPs are not

19   covered by the" parties' warehousing distributor agreements (cumulatively, the "Agreements")

20   because "[t]he Court based its decision entirely on a provision that neither Guardian nor GIS

21   raised as grounds for granting or denying summary judgment."  (Doc. 147, Ex. 1 at 11.)  The

22   Court disagrees.

23   _____

[3] Guardian further argues in Guardian's Motion that, "in light of the Court's finding that EFPPs are not 'Guardian Labeled Distributor Products' covered by the Florida and Mid-Atlantic Agreements, [GIS's] Ninth Cause of Action for Breach of the Mid-Atlantic Agreement should be dismissed as a matter of law."  (Doc. 143 at 2.)  The Court disagrees.  Only GIS—and *not* either Defendant—moved for summary judgment on GIS's Ninth Cause of Action. (*See, e.g.*, Doc. 92 (Guardian's motion for summary judgment); Doc. 93, Ex. 1 (Defendants' memorandum in support of their motion for summary judgment); Doc. 98 (GIS's motion for summary judgment).)  Of course, if Guardian sought dismissal of this claim, it could have included this request in its extensive briefing at the summary judgment stage.  However, the Court will not entertain this novel request for dismissal at the posture of a motion for reconsideration.

　　　Accordingly, the Court DENIES Guardian's Motion, (Doc. 143), insofar as Guardian requests dismissal of GIS's ninth cause of action in the Complaint.

1    In its motion for summary judgment, Guardian argued that it was "entitled to a [j]udicial

2  [d]eclaration" that EFPPs are not "Guardian Labeled Distributor Products" under the Agreements.

3  (Doc. 92 at 13.)  As noted by the Court in its Order, most of the Agreements[4] include a dispositive

4  definition for "Guardian Labeled Distributor Products" which, absent a relevant "Addendum

5  hereto," limits the products that qualify as "Guardian Labeled Distributor Products" to those listed

6  on a specified attached exhibit.  (Doc. 133 at 71 (citations omitted).)  As such, Guardian's motion

7  for summary judgment clearly described its stated basis for moving for summary judgment as to

8  the EFPPs and—with the exception of the Pennsylvania Agreement—the Agreements provide the

9  requisite dispositive language to resolve this motion.  The Court therefore did not err—let alone

10 clearly err—in disposing of Guardian's motion for summary judgment as to the EFPPs based on

11 the language of the parties' Agreements.  *Cf. Davis v. Patel*, 506 F. App'x 677, 678 (9th Cir.

12 2013) ("Only 'if the moving party placed the nonmovant party on proper notice' can the latter

13 fairly 'be held to have failed to satisfy its duty . . . to designate specific facts showing that there is

14 a genuine issue for trial.'" (alteration in original) (quoting *Katz v. Children's Hosp. of Orange

15 Cty.*, 28 F.3d 1520, 1534 (9th Cir. 1994))).

16    Despite the plain language of the parties' Agreements, GIS chose—intentionally or

17 inadvertently—to ignore the dispositive language relating to "Guardian Labeled Distributor

18 Products" in its briefing at the summary judgment stage.  (*See, e.g.*, Doc. 104 at 7–12.)  However,

19 the fact that GIS's litigation strategy on this point was unsuccessful is not a valid basis for

20 reconsideration.  GIS was given ample opportunity to make arguments related to this dispositive

21 language, including extensive briefing regarding the parties' motions for summary judgment.

22 (*See, e.g.*, Doc. 123 (GIS's 41-page brief in support of its motion for summary judgment); Doc.

23 112 (GIS's 19-page reply brief in support of its motion for summary judgment); Doc. 104 (GIS's

24 25-page brief in opposition to Guardian's motion for summary judgment).)  GIS may not now use

25 the vehicle of reconsideration to relitigate this issue.[5]  *See, e.g., In re Taco Bell Wage & Hour*, No.

26
27 [4] As noted by the Court in the Order, the parties' warehousing distributor agreement covering certain counties in Pennsylvania (the "Pennsylvania Agreement") "does not include *any* definition of what constitutes 'Guardian Labeled Distributor Products.'"  (Doc. 133 at 72 (citing Doc. 120, Ex. 1).)

28 [5] On January 5, 2017, the Court entered an order directing the parties to file the following by noon the next day: "(1) the exhibits . . . listing the 'Guardian Labeled Distributor Products' for each of the [Agreements] at issue in

1  CV F 07–1314 LJO DLB, 2013 WL 204661, at *1 (E.D. Cal. Jan. 17, 2013) ("A reconsideration

2  motion 'is not a vehicle for relitigating old issues, presenting the case under new theories, securing

3  a rehearing on the merits, or otherwise taking a second bite at the apple.'" (quoting *Sequa Corp. v.*

4  *GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998))).

5      Accordingly, the Court DENIES GIS's Motion, (Doc. 147), insofar as GIS argues that the

6  Court clearly erred by finding that the EFPPs are not covered by certain of the parties' Agreements

7  based on the language of these Agreements.

8  **B.    GIS's Additional Arguments**

9      In GIS's Motion, GIS also raises arguments regarding whether (1) Guardian is estopped

10  from claiming that EFPPs are not "Guardian Labeled Distributor Products," (2) the Court should

11  consider the parties' course of conduct regarding EFPPs, and (3) the Bob's Discount Furniture

12  Agreement is supported by consideration. (*See* Doc. 147, Ex. 1 at 12–27.) GIS was free to raise

13  each of these arguments in its expansive briefing regarding the parties' motions for summary

14  judgment. Indeed, GIS did raise the latter two arguments in its briefing, to a certain extent. (*See*

15  Doc. 104 at 8–10 (GIS's argument that the parties' course of conduct demonstrates that the EFPPs

16  are covered by the Agreements); Doc. 112 at 11–13 (GIS's argument that the Bob's Discount

17  Furniture Agreement is supported by consideration).) As such, GIS may not now raise these

18  arguments in the posture of a motion for reconsideration. *See, e.g.*, *Marlyn Nutraceuticals, Inc. v.*

19  *Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) ("A motion for reconsideration

20  'may *not* be used to raise arguments or present evidence for the first time when they could

21  reasonably have been raised earlier in the litigation.'" (quoting *Kona Enters., Inc. v. Estate of*

22  *Bishop*, 229 F.3d 877, 890 (9th Cir. 2000))); *Chapman v. Starbucks Corp.*, No. 2:09–cv–2526–

23  
24  [Guardian's motion for summary judgment]; and (2) any 'mutually agreed upon Addend[a],' as referenced in the [A]greements' paragraph pertaining to the 'Guardian Labeled Distributor Products' included in these [A]greements." (Doc. 119.) On January 6, 2017, GIS filed a response to this order. (Doc. 121.)

25      In GIS's Motion, GIS argues that it "explained in its response" that "this was not a reasonably sufficient period of time for it to gather a complete set of evidence responding to the Court's" January 5, 2017 order. (Doc. 147

26  at 11.) However, at no point in GIS's January 6, 2017 response did GIS indicate that the Court did not provide enough time to respond to the Court's January 5, 2017 order, or request additional time to respond. (*See* Doc. 121.)

27  Instead, GIS stated in its response that it was "not in a position to provide [the responsive documents] to the Court at this time." (*Id.* at 2.) The Court is therefore not persuaded by GIS's current argument that its January 6, 2017

28  response included a representation that the Court did not provide the parties with "a reasonably sufficient period of time" to respond to the Court's January 5, 2017 order.

GEB–EFB, 2011 WL 826810, at *3 (E.D. Cal. Mar. 3, 2011) ("[A] motion for reconsideration 'may not be used to relitigate old matters[.]'" (second alteration in original) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008))).

For these reasons, the Court DENIES GIS's Motion, (Doc. 147), to the extent GIS argues that the Court should consider these additional arguments.

## C.   Whether dreamGUARD Products are "Competing Products"

GIS's final argument is that the Court committed clear error in finding that the dreamGUARD products are "competing products" under the Agreements. (*See* Doc. 147, Ex. 1 at 27–28.) The Court agrees with this assertion.

As noted by the Court in the Order, each of the Agreements include the following non-compete provision:

> [GIS] agrees that it will not compete with [Guardian] by selling competing products during the term of this Agreement in its assigned area(s). For purposes of this Agreement, "competing products" mean products of comparable claims or qualities. Should [Guardian] develop new products and amend Exhibit "B" to reflect said new products and prices, [GIS] agrees not to sell products which compete with said new products.

(Doc. 133 at 66 (citations omitted).) In the Order, the Court found "that the dreamGUARD mattress protector is a 'competing product,'" under the second sentence of this definition—namely, the record reflected that the dreamGUARD products were "products of comparable claims or qualities." (*Id.*)

However, as GIS properly notes, the Court did not take into account the third sentence—whether Guardian's comparable product was a "new product[]." (*See id.*) Under this third sentence, if Guardian's comparable product satisfied this "new product" requirement, then the dreamGUARD product was only a "competing product" under the Agreements if Guardian amended the specified exhibit "to reflect said new products and prices." (*See id.* (citations omitted).) However, it is not clear based on the available record whether Guardian's comparable product satisfies this "new product" requirement, thereby implicating the third sentence of the definition. (*Cf.* Doc. 92 at 6–7 (providing Guardian's argument that both GIS and Guardian sold

1    "a micro fleece mattress protector" in 2011).)  The Court therefore finds that it clearly erred in

2    making a finding regarding whether dreamGUARD products are "competing products."  This

3    issue is properly reserved for trial.

4        Accordingly, the Court GRANTS GIS's Motion, (Doc. 147), only to the limited extent that

5    GIS requests reconsideration of the Court's finding that the dreamGUARD products are

6    "competing products" under the Agreements.  The Court therefore RECONSIDERS the Order,

7    (Doc. 133), in part, and finds that the issue of whether the dreamGUARD products are "competing

8    products" under the Agreements presents genuine issues of material fact.

9                              **IV.    Conclusion**

10       For the reasons provided above, the Court GRANTS IN PART and DENIES IN PART

11   Guardian's Motion, (Doc. 143), and GIS's Motion, (Doc. 147).   Specifically, the Court

12   RECONSIDERS its Order, (Doc. 133), only to the following limited extent:

13       (1)    Guardian's motion for summary judgment, (Doc. 92), is GRANTED insofar as

14              Guardian seeks summary judgment on its request in its First Counterclaim for a

15              declaration that EFPPs are not within the scope of the Cook County Agreement;

16       (2)    the Court FINDS that the Bob's Discount Furniture Agreement was *not* a valid

17              contract as it relates to Guardian's sales of products to Bob's Discount Furniture in

18              the geographic areas covered by the Cook County Agreement; and

19       (3)    the Court FINDS that the issue of whether the dreamGUARD products are

20              "competing products" under the Agreements presents genuine issues of material

21              fact.

22       The Court DENIES the remainder of both Guardian's Motion, (Doc. 143), and GIS's

23   Motion, (Doc. 147).

24

25   IT IS SO ORDERED.

26   Dated:   __**February 21, 2017**__                    _____/s/ *Sheila K. Oberto*_____

27                                                    UNITED STATES MAGISTRATE JUDGE

28

                                       11