# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GUARDIAN PROTECTION PRODUCTS, INC., RPM WOOD FINISHES GROUP, INC.,<br><br>　　　　Defendants.<br>_____/<br><br>GUARDIAN PROTECTION PRODUCTS, INC.,<br><br>　　　　Counterclaimant,<br><br>　　v.<br><br>G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,<br><br>　　　　Counter-defendant.<br>_____/ | Case No. 1:15-cv-00321-SKO<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING EQUITABLE ISSUES**<br><br>**(Doc. 301)** |

Before the Court are four equitable issues (the "Four Equitable Issues") identified by Plaintiff G.P.P., Inc. d/b/a Guardian Innovative Solutions ("GIS") that GIS asserts remain pending following the jury's June 29, 2017 verdict (the "Verdict"). (*See* Doc. 301 at 3.) For the reasons that follow, the Court FINDS that the Four Equitable Issues, (*id.*), are all moot.

## I. FINDINGS OF FACT

The Court previously provided extensive discussions regarding the factual background for this case. (*See, e.g.*, Doc. 133 at 2–10; Doc. 200 at 2–5.) As pertinent here, GIS filed the currently operative Second Amended Complaint ("SAC") on July 29, 2016. (Doc. 67.) The SAC includes the following causes of action: (1) First Cause of Action—breach of contract relating to the Florida, Alabama, and Tennessee Agreements,[1] (*see id.* ¶¶ 53–57); (2) Second Cause of Action—breach of the implied covenant of good faith and fair dealing as to the Florida, Alabama, and Tennessee Agreements, (*see id.* ¶¶ 58–64); (3) Third Cause of Action—breach of contract relating to the Bob's Discount Furniture Agreement, (*see id.* ¶¶ 65–69); (4) Fourth Cause of Action—breach of the implied covenant of good faith and fair dealing as to the Bob's Discount Furniture Agreement, (*see id.* ¶¶ 70–75); (5) Fifth Cause of Action—a claim alleging that termination of the Cook County Agreement would violate the Illinois Franchise Disclosure Act, (*see id.* ¶¶ 76–90); (6) Sixth Cause of Action—a claim alleging the violation of California Business and Professions Code Sections 17200 to 17210, (*see id.* ¶¶ 91–108); (7) Seventh Cause of Action—a claim alleging a violation of the California Franchise Investment Law, (*see id.* ¶¶ 109–127); (8) Eighth Cause of Action—breach of the implied covenant of good faith and fair dealing regarding the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements, (*see id.* ¶¶ 128–133); (9) Ninth Cause of Action—breach of contract as to the Mid-Atlantic Agreement, (*see id.* ¶¶ 134–138); and (10) Tenth Cause of Action—tortious interference with contract against only Defendant RPM, (*see id.* ¶¶ 139–146).[2]

---

[1] The Court utilizes the same designations for terms as provided in its Order Granting in Part and Denying in Part the Parties' Motions for Summary Judgment. (*See* Doc. 133.)

[2] The Court granted judgment in favor of certain parties as to some claims and dismissed certain claims in its (1) two orders regarding the parties' motions for summary judgment, (*see* Doc. 133; Doc. 200), (2) order regarding the parties' motions to reconsider, (*see* Doc. 161), and (3) orders during trial, (*see, e.g.*, Doc. 273). However, the Court

Defendant Guardian Protection Products, Inc. ("Guardian") filed counterclaims, which include the following: (1) First Counterclaim—requests for declaratory relief regarding (a) "[w]hether Guardian is entitled to immediately terminate the . . . Agreements due to [GIS's] breaches of their express and implied terms," (b) "[w]hether [EFPPs] qualify as a Guardian Product within the scope of the rights granted by the . . . Agreements," (c) "[if EFPPs] are within the scope of the . . . Agreements, whether Guardian may establish a purchase quota for [EFPPs] above that applicable to the [o]riginal [p]roducts," and (d) "[w]hether [GIS] has used its best efforts to promote the sale of Guardian Products in the exclusive distribution territories established by the . . . Agreements," (Doc. 36 ¶¶ 26–30); (2) Second Counterclaim—breach of the Florida, Alabama, and Tennessee Agreements, (*see id.* ¶¶ 31–34); (3) Third Counterclaim—breach of the implied covenant of good faith and fair dealing as to the Florida, Alabama, and Tennessee Agreements, (*see id.* ¶¶ 35–38); (4) Fourth Counterclaim—breach of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements, (*see id.* ¶¶ 39–42); (5) Fifth Counterclaim—breach of the implied covenant of good faith and fair dealing as to the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements, (*see id.* ¶¶ 43–46); and (6) Sixth Counterclaim—breach of California Commercial Code Section 2306, subdivision 2, (*see id.* ¶¶ 47–50). In its answer to Defendants' counterclaims, GIS argued, in part, that Defendants' counterclaims "are barred in whole or in part by the equitable doctrine of estoppel." (Doc. 43 at 7.)

Prior to the trial in this matter, GIS filed a motion *in limine* requesting that "all issues in this case . . . be tried before the jury in a single trial." (Doc. 166 at 16.) The Court granted this motion *in limine* "to the extent GIS requests that the remaining issues"—with the exception of punitive damages—"be tried in a single, non-bifurcated trial." (Doc. 177 at 2.) However, during the March 13, 2017 hearing regarding the parties' motions *in limine*, the Court also noted that "[b]oth parties acknowledge in their motion *in limine* briefing that [the] alter ego determination is equitable and as such, is left to the Court," and that the Court would make the "ultimate

---

need not fully recite which issues and claims were previously decided in this case to resolve GIS's present request for determinations as to the Four Equitable Issues.

determination regarding alter ego issues." (Doc. 179 at 44 (emphasis added).) The Court also noted during the trial that "equitable estoppel is an equitable issue for the Court's resolution" and "the Court will decide the issues" pertaining to "equitable estoppel." (Doc. 271 at 5−6.)

On June 26, 2017, GIS filed its Revised Proposed Verdict Form, in which GIS omitted any questions regarding GIS's Third and Fourth Causes of Action. (*See* Doc. 263.) Similarly, the final verdict form provided to the jury omitted any questions regarding GIS's Third and Fourth Causes of Action. (*See* Doc. 286.)

The Court held a jury trial in this case between June 20 and June 29, 2017. (*See* Docs. 260–62, 266, 271, 276, 279, 282.) On June 29, 2017, the jury returned its Verdict. (*See* Doc. 286.) The jury did not resolve the Four Equitable Issues in its Verdict.[3] (*See id.*) Nonetheless, the jury found on other bases that Defendants were not liable on GIS's surviving causes of action―to the extent GIS submitted such causes of action to the jury―and GIS was not liable on Guardian's surviving counterclaims. (*See id.*) The jury also found that EFPPs are covered products under the Pennsylvania, Alabama, Tennessee, Ohio, Indiana, and Midwest Agreements. (*See id.* at 23.)

Following the return of the Verdict, the Court directed the parties to notify the Court "whether there are any equitable issues that remain to be determined by the Court." (Doc. 282 at 12.) In a statement filed on July 6, 2017, Defendants contended that there are no remaining equitable issues that require determinations by the Court. (*See* Doc. 294.) In a statement filed on the same date, GIS asserted that the Four Equitable Issues "remain to be determined by the Court."[4] (Doc. 293.)

GIS filed its Memorandum of Law Regarding Equitable Issues on July 21, 2017. (Doc. 301.) In this filing, GIS identified the Four Equitable Issues as including the following: (1) "[w]hether . . . Guardian . . . should be estopped from contending that [EFPPs] are not 'Guardian

---

[3] The jury's verdict included findings as to whether GIS is the alter ego of a third party, CDFC, Inc. (*See* Doc. 286 at 24.) The Court repeatedly noted that these were only advisory findings and the Court would make the ultimate alter-ego determination. (*See, e.g.*, Doc. 179 at 46; Doc. 276 at 5.)

[4] In its July 6, 2017 statement, GIS also argued that a fifth equitable issue required a determination by the Court―specifically, "[w]hether RPM Wood Finishes Group, Inc. is an alter-ego of Guardian." (Doc. 293.) However, GIS subsequently stated that it "no longer seek[s] an equitable determination as to whether co-defendant RPM Wood Finishes Group, Inc. . . . is an alter-ego of Guardian." (Doc. 301 at 3 n.1.) As such, this fifth equitable issue is not presently before the Court.

4

Labeled Distributor Products' under the . . . Agreements" (the "First Equitable Issue"), (2) "[w]hether Guardian should be estopped from contending that the electronic warranties it sells to Bob's Discount Furniture are not 'Guardian Labeled Distributor Products'" (the "Second Equitable Issue"), (3) "[w]hether Guardian should be estopped from preventing the continued sales of dreamGUARD products in the future" (the "Third Equitable Issue"), and (4) "[w]hether CDFC, Inc. . . . is an alter-ego of GIS, and thereby bound by the non-compete provisions in the [Agreements]" (the "Fourth Equitable Issue"). (*Id.* at 3.) Defendants also filed their brief regarding the Four Equitable Issues on July 21, 2017. (Doc. 300.) The parties then filed their responsive briefs pertaining to these issues on July 28, 2017. (Docs. 303 & 304.) As such, the Four Equitable Issues are fully briefed and ready for disposition.

## II. CONCLUSIONS OF LAW

Defendants argue, in relevant part, that (1) GIS is barred from requesting determinations as to the Four Equitable Issues by the doctrine of judicial estoppel, and (2) the Four Equitable Issues are moot. (*See, e.g.*, Doc. 300 at 5–14.) The Court shall address each of these arguments, in turn.

### A. Preliminary Issue Regarding Injunctive Relief

At the outset, the Court must address the specific determinations GIS requests that the Court make regarding the Four Equitable Issues. It appears that GIS requests that the Court make certain determinations regarding the Four Equitable Issues that extend beyond the claims and requests for relief in this matter. For example, GIS appears to request de facto injunctive relief as to the First Equitable Issue—namely, an order enjoining Defendants from contending that EFPPs are not covered products based on the jury's Verdict. (*See* Doc. 301 at 3–8.) Similarly, in its discussion regarding the Third Equitable Issue, GIS requests a determination regarding whether "Guardian should be estopped from preventing the continued sales of dreamGUARD products *in the future*." (*Id.* at 9 (emphasis added).) This question similarly requests de facto injunctive relief. (*See id.*)

The Court rejects GIS's requests for prospective injunctive relief for two reasons. First, GIS failed to raise these requests for injunctive relief earlier in this litigation. (*See, e.g.*, Doc. 203 at 13–14 (providing GIS's statement in the operative Amended Pretrial Order regarding its

requested relief).) As GIS failed to raise these novel requests for injunctive relief at any point prior to now, the Court declines to address these requests at this late, post-trial stage. *See, e.g.*, *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 841 (9th Cir. 2001) ("[P]articular evidence or theories which are not at least implicitly included in the [pretrial] order are barred unless the order is first modified to prevent manifest injustice." (quoting *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886–87 (9th Cir. 1981))).

Second, GIS's requests for prospective injunctive relief are not ripe. "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Wolfson v. Brammer*, 616 F.3d 1045, 1057 (9th Cir. 2010) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). "The ripeness doctrine is peculiarly a question of timing designed to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." *Id.* (citations omitted). "'[T]hrough avoidance of premature adjudication,' the ripeness doctrine prevents courts from becoming entangled in 'abstract disagreements.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

Prior to its briefing regarding the Four Equitable Issues, GIS's requests for relief in this litigation pertained to the parties' past conduct. (*See, e.g.*, Doc. 203 at 13–14.) GIS's present requests for injunctive relief, on the other hand, pertain to what Defendants *might* do in the future―such as Guardian again contending in the future that EFPPs are not covered products or attempting to prevent the future sales of dreamGUARD products. (*See* Doc. 301 at 3–9.) If Guardian engages in such future conduct, GIS may seek injunctive relief at that point. However, as Guardian has not yet engaged in such potential future conduct, GIS's requests for prospective injunctive relief are not ripe, *see, e.g.*, *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1190 (9th Cir. 2014) (noting that a "dispute" was not ripe "because the supposed injury ha[d] not materialized and may never materialize"), and any determinations by the Court regarding these requests would be inappropriate, *see, e.g.*, *Ass'n of Am. R.R. v. Cal. Office of Spill Prevention & Response*, 113 F. Supp. 3d 1052, 1056 (E.D. Cal. 2015) ("A court's subject matter jurisdiction is limited to matters ripe for adjudication . . . ." (citations omitted)).

For these reasons, the Court rejects GIS's apparent requests in its briefing for prospective injunctive relief. (*See* Doc. 301; Doc. 304.) Instead, the Court considers GIS's requests as seeking determinations regarding the Four Equitable Issues only as they pertain to the claims and requests for relief in this action, and *not* its requests for prospective injunctive relief.

**B.     Judicial Estoppel**

Defendants first argue that GIS is barred from now requesting determinations regarding the Four Equitable Issues by the doctrine of judicial estoppel. (*See, e.g.*, *id.* at 5–10.) As discussed below, this argument lacks merit.

1.     <u>Standard</u>

Judicial estoppel "is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *McClatchy Newspapers, Inc. v. Cont'l Cas. Co.*, No. 1:14-CV-00230-LJO, 2015 WL 2340246, at *9 (E.D. Cal. May 13, 2015) (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600–01 (9th Cir. 1996)). The purpose of judicial estoppel is to "protect the integrity of the judicial process by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).

"Federal law governs the application of judicial estoppel in federal courts." *Johnson v. Oregon*, 141 F.3d 1361, 1364 (9th Cir. 1998). In determining whether to apply judicial estoppel, a court may consider (1) whether the party's later position was clearly inconsistent with its initial position; (2) whether the party successfully persuaded the court to accept its earlier position; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped from asserting the inconsistent position. *New Hampshire*, 532 U.S. at 750–51.

The Ninth Circuit has rejected a "per se rule" regarding the application of judicial estoppel. *Fredenburg v. Contra Costa Cty. Dep't of Health Servs.*, 172 F.3d 1176, 1179 (9th Cir. 1999). In *Fredenburg*, the Court "acknowledged that estoppel might be appropriate when the inconsistency of statements and positions was so blatant as to demonstrate that a claimant is playing fast and

loose with the courts," but stated that its "clear preference was that inconsistent statements simply be considered along with other evidence to see whether they were so damaging that no rational trier of fact could rule in the [party's] favor." *Id.* (citation omitted). Thus, "[j]udicial estoppel applies when a party's position is tantamount to a knowing misrepresentation to or even fraud on the court." *Johnson*, 141 F.3d at 1369 (citation omitted). Finally, "[j]udicial estoppel is imposed at the discretion of the district court." *Baughman*, 685 F.3d at 1133 (citing *New Hampshire*, 532 U.S. at 749–50).

2. Analysis

Defendants argue that the pertinent considerations weigh in favor of an application of judicial estoppel. (*See* Doc. 300 at 5–10.) The Court disagrees with Defendants' position.

As to the first consideration—GIS's prior positions in this case—GIS has consistently taken the position that the Court, and *not* the jury, should determine the estoppel and alter-ego issues that are presently at issue. (*See, e.g.*, Doc. 170 at 9 (providing GIS's argument in its opposition to Defendants' Motions *in Limine* that "[t]he Court should render its decision regarding alter ego liability after all evidence is presented by the parties in a single trial before the jury"); Doc. 179 at 7 (providing GIS's argument at the hearing regarding the parties' motions *in limine* that "there's a lot of issues here that are clearly intertwined, legal and equitable in nature, but [the Court] should allow [the parties] to present [their] case to the jury and have the jury decide the issues" and, "at the end of the trial, [the Court] can direct the parties to issue proposed findings of fact and conclusions of law with respect to the equitable claims").) While GIS also requested that all issues in this matter be tried in a single trial, (*see, e.g.*, Doc. 166 at 16–18), GIS never wavered from its position that the Court—and not the jury—should decide the present equitable issues. As GIS did not take a contradictory position regarding these equitable issues, the first consideration weighs against an application of the doctrine of judicial estoppel.

Turning to the second consideration—whether GIS previously persuaded the Court to accept the contrary position—the Court has consistently ruled in the same manner regarding the equitable issues. In particular, the Court ruled that the evidence would be presented during a single trial and, with the exception of a separate phase for punitive damages, not a bifurcated trial

with the equitable and legal issues presented in separate phases of the trial. (*See, e.g.*, Doc. 177 at 2 (providing the Court's ruling that, with the exception of a punitive damages phase, "the remaining issues in this case [will] be tried in a single, non-bifurcated trial")).) However, the Court has also consistently stated that the present equitable issues would ultimately be decided by the Court and *not* the jury. (*See, e.g.*, Doc. 179 at 44 ("Both parties acknowledge in their motion *in limine* briefing that [the] alter ego determination is equitable and as such, is left to the Court." (alteration added)); *id.* (noting that the Court will make the "ultimate determination regarding alter ego issues"); Doc. 271 at 5–6 ("[E]quitable estoppel is an equitable issue for the Court's resolution. As such and as previously recognized by the parties, the Court will decide the issues of equitable estoppel.").) As such, an application of the doctrine of judicial estoppel is inappropriate under the second consideration. *Cf. Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1213 (9th Cir. 2016) (stating that the Ninth Circuit "ha[s] 'restricted the application of judicial estoppel to cases where the court relied on, or accepted, the party's previous inconsistent position'" (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001))).

Finally, as to the third consideration―whether GIS would derive an unfair advantage or Defendants would suffer prejudice by GIS pursing a contradictory position―GIS would not gain an unfair advantage by the Court deciding the Four Equitable Issues because GIS has consistently maintained that such issues were properly before the Court. Furthermore, as GIS has consistently maintained the same position, Defendants would suffer no prejudice by GIS renewing its request that the Court decide these equitable issues. *See, e.g.*, *Radware, Ltd. v. F5 Networks, Inc.*, Case No. 13-cv-02024-RMW, 2016 WL 590121, at *12 (N.D. Cal. Feb. 13, 2016) (finding that the plaintiff would not suffer prejudice by the defendant taking a certain position because the plaintiff "had been aware of" the defendant's "planned" argument "for months" and the plaintiff "had adequate opportunity to defend against" the argument). Consequently, this third consideration also weighs against an application of the doctrine of judicial estoppel.

In summary, the pertinent considerations weigh against applying the doctrine of judicial estoppel to prevent GIS from arguing that the Court should decide the Four Equitable Issues. Simply put, the doctrine of judicial estoppel is inapplicable here. The Court therefore finds that

9

GIS is not judicially estopped from requesting that the Court decide the Four Equitable Issues.

**C.    Mootness**

Defendants next contend that the Four Equitable Issues are all moot. (*See, e.g.*, Doc. 300 at 10–14.) The Court agrees.[5]

1.    <u>Standard</u>

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Id.* "Article III of the United States Constitution limits federal court jurisdiction to 'actual, ongoing cases or controversies.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted). "Its judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would

---

[5] In its briefing, GIS again argues that Defendants should be estopped from arguing that EFPPs are not covered products under the Florida, Mid-Atlantic, and Cook County Agreements. (*See, e.g.*, Doc. 301 at 4–8.) GIS also appears to argue in its briefing that Defendants should be estopped from arguing that the products Guardian sold to Bob's Discount Furniture—Bob's Goof Proof—are not covered products under all of the Agreements, including the Florida, Mid-Atlantic, and Cook County Agreements. (*See id.* at 8–9.)

This is yet another attempt by GIS to disturb the Court's rulings regarding these three Agreements at the first summary judgment stage. (*See* Doc. 133 at 77 (providing the Court's ruling as to the Florida and Mid-Atlantic Agreements); Doc. 161 at 11 (providing the Court's ruling regarding the Cook County Agreement).) The Court rejected GIS's numerous prior attempts to revisit these rulings. Most recently, GIS filed a Brief Regarding "Law of the Case" Doctrine—at the Court's invitation—during the middle of the trial in this case. (*See* Doc. 250.) In this brief, GIS argued that the Court's summary judgment rulings "do not preclude GIS from arguing that *all* of the [Agreements] . . . cover EFPPs," including the Bob's Goof Proof products. (*Id.* at 12.) During the proceedings on June 23, 2017, the Court denied GIS's request to revisit these prior rulings and permitted GIS to "make a record," but noted that "this will be the last time we will do that." (Doc. 266 at 8–9.)

As the Court has repeatedly rejected GIS's attempts to revisit the Court's summary judgment rulings regarding the Florida, Mid-Atlantic, and Cook County Agreements, the Court declines GIS's further attempt to contravene this pertinent law of the case. As previously noted by the Court during the June 23, 2017 proceedings, "[t]he Court's rulings in its first summary judgment opinion granting judgment in favor of Guardian on Guardian's request in its first counterclaim that EFPPs are not within the scope of the Florida, Mid[-]Atlantic and Cook County [A]greements shall remain the law of the case." (*Id.* at 8–9.)

The Court CAUTIONS GIS that any further attempts to revisit the Court's prior rulings regarding the Florida, Mid-Atlantic, and Cook County Agreements will be viewed with disfavor. If GIS again attempts to revisit these rulings in future filings or proceedings before this Court, the Court will be open to considering a properly filed motion for sanctions under Federal Rule of Civil Procedure 11(c). Further arguments on this topic are only appropriate before an appellate court and *not* this Court.

10

1 be upon a hypothetical state of facts.'" *Id.* (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

"If the controversy is moot, . . . the trial . . . court[] lack[s] subject matter jurisdiction and the concomitant power to declare the law by deciding the claims on the merits." *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (citation omitted). "A case, or an issue in a case, is considered moot 'if it has lost its character as a present, live controversy of the kind that must exist if [courts] are to avoid advisory opinions on abstract propositions of law.'" *Lindquist v. Idaho State Bd. of Corrs.*, 776 F.2d 851, 853–54 (9th Cir. 1985) (quoting *Connoly v. Pension Benefit Guar. Corp.*, 673 F.2d 1110, 1113 (9th Cir. 1982)); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (alteration in original) (quoting *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979))). "Mootness, like the related doctrine of standing, restricts judicial power to the decision of cases and controversies, so that our elected government retains the general power to establish social policy." *Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992)).

"Mootness can be characterized as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). Thus, "[w]here the question sought to be adjudicated has been mooted by developments subsequent to the filing of the complaint, no justiciable controversy is presented." *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185, 1189 (9th Cir. 1986) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).

"[I]n deciding a mootness issue, the question is not whether the precise relief sought . . . is still available." *Or. Nat. Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006) (first alteration in original) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988)). Rather, "[t]he basic question in determining mootness is whether there is a *present* controversy as to which effective relief can be granted." *Gordon*, 849 F.2d at 1244

11

(citation omitted); *see also id.* ("[M]oot cases [are] those which have lost their character as present, live controversies." (citation omitted)). Simply put, "[a] court is unable to take jurisdiction over a claim as to which no effective relief can be granted because 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'" *Williams v. City of Fresno*, No. CV F 07-1386 LJO SMS, 2007 WL 2902973, at *7 (E.D. Cal. Oct. 2, 2007) (quoting *Rice*, 404 U.S. at 246). "[T]he burden of demonstrating mootness is a heavy one." *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000) (quoting *Gordon*, 849 F.2d at 1244).

2. <u>Analysis</u>

Defendants argue that the jury's Verdict rendered the Four Equitable Issues moot. (*See, e.g.*, Doc. 300 at 10–14.) The Court shall address each of the Four Equitable Issues, in turn.

As to the First Equitable Issue—whether Guardian should be estopped from arguing that EFPPs are not covered products under the Agreements—the Court agrees with Defendants' position that this issue is moot.[6] In its First Counterclaim, Guardian requested declaratory relief stating "[w]hether the [EFPPs] qualify as a [covered product] within the scope of the rights granted by the [Agreements]." (Doc. 36 at 8.) GIS responded to this counterclaim, in part, by raising the affirmative defense of estoppel. (*See, e.g.*, Doc. 200 at 17 (constituting the Court's second summary judgment order, in which it discussed GIS's argument that "Guardian is 'estopped from claiming that EFPPs . . . are not 'Guardian Labeled Distributor Products'" (citing Doc. 185 at 15)).) However, this affirmative defense became irrelevant when the jury returned the Verdict, as the jury found that EFPPs are covered products under the Agreements. (*See* Doc. 286 at 23.) In other words, the jury found in favor of GIS on this portion of Guardian's First Counterclaim on a basis other than GIS's equitable estoppel affirmative defense.

---

[6] As previously noted, the law of this case includes the Court's rulings that (1) EFPPs are not covered products under the Florida, Mid-Atlantic, and Cook County Agreements, (*see, e.g.*, Doc. 133 at 77), and (2) the products Guardian sold to Bob's Discount Furniture—Bob's Goof Proof—are not covered products under these three Agreements, (*see, e.g.*, Doc. 161 at 11). Consequently, the present mootness discussion regarding EFPPs (the First Equitable Issue) and the products Guardian sold to Bob's Discount Furniture (the Second Equitable Issue) does not extend to the Florida, Mid-Atlantic, and Cook County Agreements. The Court's previous rulings regarding these three Agreements remain the law of this case.

12

The Court's resolution of the estoppel question presented by the First Equitable Issue would thus have no impact on the rights of the parties. Indeed, the Court ruling on this issue would only become relevant upon the occurrence of a "hypothetical state of facts," *Preiser*, 422 U.S. at 401, such as if Defendants appealed the jury's Verdict on this issue and the Ninth Circuit overturned this portion of the Verdict. Stated differently, the Court ruling on the merits of the First Equitable Issue would be an advisory ruling. *See, e.g.*, *Nickert v. Puget Sound Tug & Barge Co.*, 480 F.2d 1039, 1041 (9th Cir. 1973) (noting that the trial court's ruling was "purely advisory" where it was "hypothetical and tentative on an issue which may never arise"). The Court declines to render an advisory ruling that would only become ripe based on attenuated hypothetical developments in this litigation. Instead, the Court finds that the First Equitable Issue was rendered moot by the jury's Verdict. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, No. C10–1823JLR, 2013 WL 6000017, at *5 (W.D. Wash. Nov. 12, 2013) (stating that "estoppel [was] an alternative theory" that was "rendered moot by the jury's verdict on breach of contract"); *Oracle Am., Inc. v. Google Inc.*, No. C 10–035161 WHA, 2012 WL 1965778, at *1–2 (N.D. Cal. May 31, 2012) (finding that the defendant's "defenses of equitable estoppel and laches" were moot, "at least pending appeal," following a jury verdict).

Regarding the Second Equitable Issue—whether Guardian should be estopped from contending that the products it sold to Bob's Discount Furniture are not covered products—the Court again agrees with Defendants' position that this issue is moot. GIS's SAC includes two pertinent claims relating to the purported Bob's Discount Furniture Agreement: (1) GIS's Third Cause of Action—a claim that Defendants breached the Bob's Discount Furniture Agreement, and (2) GIS's Fourth Cause of Action—a claim that Defendants breached the implied covenant of good faith and fair dealing as to the Bob's Discount Furniture Agreement. (*See* Doc. 67 ¶¶ 65–75.) The Second Equitable Issue relates specifically to these two claims. In particular, Defendants argued at the summary judgment stage that GIS's Third and Fourth Cause of Actions failed because the products that were the subject of the purported Bob's Discount Furniture Agreement—Bob's Goof Proof—were not covered products under the Agreements and, correspondingly, this alleged agreement lacked consideration. (*See, e.g.*, Doc. 184 at 17–18.)

GIS, in turn, argued that Defendants were barred from arguing that the Bob's Goof Proof products are not covered products by the doctrine of equitable estoppel. (*See, e.g.*, Doc. 185 at 15–18.)

The Second Equitable Issue is now moot because GIS's Third and Fourth Causes of Action are no longer live claims in this matter. GIS declined to request a verdict as to either its Third or Fourth Causes of Action when it omitted these causes of action from the verdict form. (*See* Doc. 286 (the verdict form); *see also* Doc. 263 (GIS's proposed verdict form).) As such, GIS has abandoned these two claims. *See, e.g.*, *Hunt v. City of L.A.*, 523 F. App'x 493, 495 (9th Cir. 2013) (finding that the plaintiff's "failure to present [a] claim at trial constitutes an abandonment of this claim" (citation omitted)); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (stating that a party "waived" claims that were included in the complaint "by failing to object to their exclusion from the [jury] instructions"); *see also Wilson v. Kelkhoff*, 86 F.3d 1438, 1442–43 (7th Cir. 1996) ("[E]ven though a party's complaint contains certain claims, he will waive those claims if he fails to object to their exclusion from the jury instructions." (citation omitted)). As GIS's Third and Fourth Causes of Action are no longer a part of this litigation, any determination by the Court as to the Second Equitable Issue would be completely irrelevant in this action. The Court again declines to issue an advisory ruling on issues that are irrelevant to the live causes of action in this litigation. *See, e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." (citation omitted)). The Court instead finds that the Second Equitable Issue is also moot.

As to the Third Equitable Issue, this issue is moot insofar as GIS requests a determination regarding whether Guardian is estopped from arguing that the dreamGUARD products are competing products under the Agreements. Guardian alleged in its Second through Fifth Counterclaims that GIS breached the Agreements by selling a competing product―namely, the dreamGUARD products.[7] (*See* Doc. 36 ¶¶ 24–46.) However, the jury found in its Verdict that

---

[7] Guardian's First Counterclaim also included a request for declaratory judgment as to "[w]hether Guardian is entitled to immediately terminate the . . . Agreements due to GIS's breaches of their express and implied terms." (Doc. 36 at 8.) At the summary judgment stage, the Court found that summary judgment was not appropriate as to this portion of the First Counterclaim because, in part, "the record indicate[d] that Guardian did not satisfy the notice and cure provision of the Agreements as to GIS's purported breach due to the sale of dreamGUARD products." (Doc. 133 at

14

Guardian lost on each of these counterclaims on other bases. (*See* Doc. 286 at 11–22.) Specifically, the jury found that Guardian was barred from asserting that GIS breached the Agreements by (1) the doctrine of "waiver"/"acquiescence" for the Second and Fourth Counterclaims, (*see id.* at 10, 16–17); (2) the applicable statutes of limitations for the Second and Fifth Counterclaims, (*see id.* at 11 & 20); and (3) the doctrine of "unclean hands" for the Second and Third Counterclaims, (*see id.* at 11 & 13). In other words, GIS already prevailed on these counterclaims for other reasons, irrespective of the resolution of the Third Equitable Issue.

Like the First Equitable Issue, a ruling by the Court on the Third Equitable Issue would only become relevant if a series of hypothetical events occurred, such as if Guardian appealed the jury's Verdict as to these counterclaims and the Ninth Circuit overturned this portion of the Verdict. Again, the Court declines to render an advisory ruling on unripe issues that would only become relevant based on such potential future developments in this litigation. Instead, the Court finds that the Third Equitable Issue was rendered moot by the jury's verdict. *See, e.g.*, *Oracle Am., Inc.*, 2012 WL 1965778, at *1–2.

Finally, the Court also finds that the Fourth Equitable Issue—whether CDFC, Inc. is the alter ego of GIS—is moot. As noted above, Guardian alleged in its Second through Fifth Counterclaims that GIS breached the Agreements by selling a competing product—specifically, the dreamGUARD products. (*See* Doc. 36 ¶¶ 24–46.) Of course, a third party, CDFC, Inc.—and *not* GIS—actually sold the dreamGUARD products. (*See, e.g.*, Doc. 300, Ex. 3 at 5; *id.*, Ex. 4 at 6.) Thus, as noted by the Court in its first summary judgment order, "the preliminary question" regarding Guardian's counterclaims alleging that GIS breached the non-competition provision of the Agreements was "whether CDFC, Inc. is the alter ego of GIS, such that CDFC, Inc.'s sale of

---

68.) Guardian subsequently declined to include a question regarding this portion of the First Counterclaim—such as whether it satisfied the notice and cure provision of the Agreements—in the verdict form. (*See* Doc. 286.) Guardian has therefore abandoned this portion of the First Counterclaim. *See, e.g.*, *Hunt v. City of L.A.*, 523 F. App'x 493, 495 (9th Cir. 2013) (finding that the plaintiff's "failure to present [a] claim at trial constitutes an abandonment of this claim" (citation omitted)); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (stating that a party "waived" claims that were included in the complaint "by failing to object to their exclusion from the [jury] instructions"). Consequently, Guardian's request for declaratory judgment in the First Counterclaim pertaining to whether it may immediately terminate the Agreements is not at issue in the instant analysis.

dreamGUARD products may be imputed to GIS for purposes of determining whether GIS breached the Agreements." (Doc. 133 at 63.)

As with the Third Equitable Issue, the jury's Verdict rendered the Fourth Equitable Issue irrelevant. Specifically, the jury found that Guardian was barred from asserting that GIS breached the Agreements by the doctrine of "waiver"/"acquiescence," the applicable statutes of limitations, and/or the doctrine of "unclean hands." (*See* Doc. 286 at 10–11, 13, 16–17, 20.) In other words, the jury found in its Verdict that Guardian lost on each of these counterclaims on bases that did not require a determination as to the Fourth Equitable Issue. (*See id.*) GIS therefore prevailed on these counterclaims—regardless of the resolution of the Fourth Equitable Issue—and a ruling by the Court on the Fourth Equitable Issue would only become relevant if a series of hypothetical events occurred. Again, the Court declines to render an advisory ruling that would only become relevant upon the occurrence of a series of hypothetical future events. Instead, the Court finds that the jury's verdict rendered the Fourth Equitable Issue moot. *See, e.g.*, *Microsoft Corp.*, 2013 WL 6000017, at *5.

In summary, the Court finds that all of the Four Equitable Issues are now moot. The Court therefore declines to address the merits of the Four Equitable Issues and provide needless advisory rulings.[8]

---

[8] In their briefing, Defendants also "request that the Court issue an Order to Show Cause why sanctions against GIS should not be issued pursuant to" Federal Rule of Civil Procedure 11 because GIS purportedly "improperly seek[s] reconsideration of this Court's law of the case determinations" regarding the Florida, Mid-Atlantic, and Cook County Agreements. (Doc. 303 at 10–11.) The Court is not persuaded by Defendants' position.
    Rule 11 states, in relevant part, that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "When sanctions are sought by opposing counsel, opposing counsel must comply with Rule 11's 'safe harbor' provision." *Gomes v. Am. Century Cos.*, No. 2:09–cv–02153–FCD/KJM, 2010 WL 1980201, at *2 (E.D. Cal. May 17, 2010) (citing *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998)). "Rule 11's safe harbor provision provides that a party may not file a motion for sanctions under Rule 11 unless the party against whom sanctions are sought is served with the motion and given 21 days to either withdraw or correct the paper that is the subject of the motion." *Id.* (citing Fed. R. Civ. P. 11(c)(2)). "Within the Ninth Circuit, the safe harbor provision is strictly enforced" and "[f]ailure to follow" this procedure "precludes the moving party from obtaining an award of sanctions." *Id.* (citations omitted). Additionally, "[t]he language of Rule 11(c)(2) itself, in providing that a court 'may' award sanctions 'if warranted,' indicates that any decision in that regard is a matter squarely within the Court's discretion." *Cal. Sportfishing Prot. All. v. Matheson Tri-Gas, Inc.*, No. 2:11–cv–01456–MCE–KJN, 2013 WL 5597177, at *1 (E.D. Cal. Oct. 11, 2013) (quoting Fed. R. Civ. P. 11(c)(2)).
    The Court finds that Defendants' request for an order to show cause regarding sanctions is inappropriate for two reasons. First, Defendants failed to comply with the safe harbor provision of Rule 11. Specifically, Defendants did not file their request for an order to show cause as a separate motion and, instead, only included this request at the end of their briefing regarding the Four Equitable Issues. (*See* Doc. 303 at 10–11.) As Defendants failed to comply

### III. CONCLUSION

For the reasons set forth above, the Court FINDS that the Four Equitable Issues, (*see* Doc. 301 at 3), are moot. The Court, therefore, shall not render determinations on the merits regarding the Four Equitable Issues.

IT IS SO ORDERED.

Dated: **September 26, 2017**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE

---

with Rule 11's safe harbor provision, an order to show cause regarding sanctions is inappropriate. *See, e.g.*, *Gomes*, 2010 WL 1980201, at *2.

Second, the Court finds, in its discretion, that an order to show cause pertaining to sanctions is premature at this juncture. However, as noted above, the Court will be amenable to considering a properly filed Rule 11 motion if GIS again attempts to revisit the Court's prior rulings regarding the Florida, Mid-Atlantic, and Cook County Agreements. Such arguments are now only properly presented to the appellate panel and not this Court.

For these reasons, the Court DENIES Defendants' request that the Court issue an order to show cause regarding sanctions. (*See* Doc. 303 at 10–11.)