# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

G.P.P., INC. d/b/a GUARDIAN
INNOVATIVE SOLUTIONS,

        Plaintiff,

    v.

GUARDIAN PROTECTION PRODUCTS,
INC., RPM WOOD FINISHES GROUP,
INC.,

        Defendants.

_____/

GUARDIAN PROTECTION PRODUCTS,
INC.,

        Counterclaimant,

    v.

G.P.P., INC. d/b/a GUARDIAN
INNOVATIVE SOLUTIONS,

        Counter-defendant.

_____/

Case No.  1:15-cv-00321-SKO

**ORDER GRANTING IN PART AND
DENYING IN PART THE PARTIES'
MOTIONS TO CORRECT FINAL
JUDGMENT**

**(Docs. 317, 318)**

Before the Court are Plaintiff/Counter-defendant G.P.P., Inc. d/b/a Guardian Innovative Solutions' ("GIS") Motion to Correct Final Judgment ("GIS's Motion") (Doc. 317), and Defendant/Counterclaimant Guardian Protection Products, Inc.'s ("Guardian") Motion to Amend Judgment ("Guardian's Motion") (Doc. 318) (collectively, "the Motions"). For the reasons provided herein, the Court GRANTS IN PART and DENIES IN PART the Motions.

## I.  PROCEDURAL BACKGROUND[1]

### A.  GIS's Original Complaint, the Court's Order Denying in Part and Granting in Part Guardian's Motion to Dismiss, and GIS's First Amended Complaint

GIS filed its original complaint on February 27, 2015 (the "Original Complaint"), alleging the following causes of action: (1) breach of the Alabama, Florida, and Tennessee Agreements[2] (Doc. 1 ¶¶ 42–46); (2) breach of the implied covenants of good faith and fair dealing in the Alabama, Florida, and Tennessee Agreements (*see id.* ¶¶ 47–53); (3) breach of Bob's Discount Furniture Agreement (*see id.* ¶¶ 54–58); (4) breach of the implied covenant of good faith and fair dealing of Bob's Discount Furniture Agreement (*see id.* ¶¶ 59–64); (5) declaratory judgment that termination of the Cook County Agreement would violate the Illinois Franchise Disclosure Act (*see id.* ¶¶ 65–79); (6) declaratory judgment that termination of the Iowa Agreement would violate Iowa Code § 523H.1, *et seq.* (*see id.* ¶¶ 80–96); (7) declaratory judgment that termination of the Iowa Agreement would violate Iowa Code § 537A.10, *et seq.* (*see id.* ¶¶ 97–114); (8) breach of the duty of good faith in violation of Iowa Code § 523H.1, *et seq.* (*see id.* ¶¶ 115–127); (9) breach of the duty of good faith in violation of Iowa Code § 537A.10 *et seq.* (*see id.* ¶¶ 128–141); (10) negligence *per se* (*see id.* ¶¶ 142–152); (11) violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et. seq.* (*see id.* ¶¶ 153–167); and (12) breach of the implied covenants of good faith and fair dealing of the Pennsylvania, Mid-Atlantic, Cook County, Indiana, and Midwest Agreements (*see id.* ¶¶ 168–173).

---

[1] The Court previously provided extensive discussions regarding the factual background for this case. (*See, e.g.*, Doc. 133 at 2–10; Doc. 200 at 2–5.)

[2] The Court utilizes the same designations for terms as provided in its Order Granting in Part and Denying in Part the Parties' Motions for Summary Judgment. (*See* Doc. 133.)

On April 23, 2015, Guardian filed a motion to dismiss GIS's Original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In its order dated June 30, 2015, the Court denied in part and granted in part Guardian's motion to dismiss. (Doc. 30.) Specifically, the Court denied Guardian's motion to dismiss under Rule 12(b)(1); denied Guardian's motion to dismiss GIS's First, Second, Third, and Fourth Causes of Action under Rule 12(b)(6); granted Guardian's motion to dismiss GIS's Sixth, Seventh, Eighth, and Ninth Causes of Action and dismissed those claims under Rule 12(b)(6) without prejudice and with leave to amend; and granted Guardian's motion to dismiss GIS's Tenth and Eleventh Causes of Action and dismissed those claims with prejudice and without leave to amend. (*See* Doc. 30.)

The Court's Order Denying in Part and Granting in Part Defendant's Motion to Dismiss permitted, but did not require, GIS to file an amended complaint within 14 days of the Order. (*See id.* at 28:7 ("GIS may file an amended complaint within 14 days of the date of this order.").) On July 14, 2015, GIS filed a First Amended Complaint against Guardian, but did not re-plead its Sixth, Seventh, Eighth, and Ninth Causes of Action that were dismissed without prejudice in the June 30, 2015, Order. (*See* Doc. 31.)

**B.      Guardian's Counterclaims and GIS's Second Amended Complaint**

On July 31, 2015, Guardian filed counterclaims against GIS, which include the following: (1) First Counterclaim—requests for declaratory relief regarding (a) "[w]hether Guardian is entitled to immediately terminate the . . . Agreements due to [GIS's] breaches of their express and implied terms," (b) "[w]hether [EFPPs] qualify as a Guardian Product within the scope of the rights granted by the . . . Agreements," (c) "[if EFPPs] are within the scope of the . . . Agreements, whether Guardian may establish a purchase quota for [EFPPs] above that applicable to the [o]riginal [p]roducts," and (d) "[w]hether [GIS] has used its best efforts to promote the sale of Guardian Products in the exclusive distribution territories established by the . . . Agreements," (Doc. 36 ¶¶ 26–30); (2) Second Counterclaim—breach of the Florida, Alabama, and Tennessee Agreements, (*see id.* ¶¶ 31–34); (3) Third Counterclaim—breach of the implied covenant of good faith and fair dealing as to the Florida, Alabama, and Tennessee Agreements, (*see id.* ¶¶ 35–38); (4) Fourth Counterclaim—breach of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana,

3

and Midwest Agreements, (*see id.* ¶¶ 39–42); (5) Fifth Counterclaim—breach of the implied covenant of good faith and fair dealing as to the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements, (*see id.* ¶¶ 43–46); and (6) Sixth Counterclaim—breach of California Commercial Code Section 2306, subdivision 2, (*see id.* ¶¶ 47–50). Specifically, Guardian alleges in its Counterclaims that GIS breached the Agreements by, among other things, the sale by CDFC, Inc. ("CDFC"), GIS's "express and/or implied agent, and/or its joint venture, and/or its alter ego," of dreamGUARD mattress protector and bedding products. (*See id.* ¶¶ 24–25.)

GIS filed the currently operative Second Amended Complaint ("SAC") against Guardian and Defendant RPM Wood Finishes Group, Inc. ("RPM"), on July 29, 2016. (Doc. 67.) In the SAC, GIS alleges that:

> at all times relevant to the allegations of [the SAC], RPM and Guardian have been alter egos of one another . . . . There is such a unity of interest between RPM and Guardian that the two entities are no longer separate and RPM and Guardian are equally and jointly liable for the wrongful conduct set forth in [the SAC]. In the alternative, if RPM is in fact an affiliate or parent of Guardian, and a third party to the agreements between Guardian and GIS, then RPM has directly and tortuously interfered with Guardian's contractual relationship with GIS.

(*Id.* ¶¶ 48–50.)

The SAC includes the following causes of action: (1) First Cause of Action—breach of contract relating to the Florida, Alabama, and Tennessee Agreements against Guardian and RPM (*see id.* ¶¶ 53–57); (2) Second Cause of Action—breach of the implied covenant of good faith and fair dealing as to the Florida, Alabama, and Tennessee Agreements against Guardian and RPM (*see id.* ¶¶ 58–64); (3) Third Cause of Action—breach of contract relating to the Bob's Discount Furniture Agreement against Guardian and RPM (*see id.* ¶¶ 65–69); (4) Fourth Cause of Action—breach of the implied covenant of good faith and fair dealing as to the Bob's Discount Furniture Agreement against Guardian and RPM (*see id.* ¶¶ 70–75); (5) Fifth Cause of Action—a claim alleging that termination of the Cook County Agreement would violate the Illinois Franchise Disclosure Act against Guardian and RPM, (*see id.* ¶¶ 76–90); (6) Sixth Cause of Action—a claim alleging the violation of California Business and Professions Code Sections 17200 to 17210

against Guardian and RPM (*see id.* ¶¶ 91–108); (7) Seventh Cause of Action—a claim alleging a violation of the California Franchise Investment Law against Guardian and RPM (*see id.* ¶¶ 109–127); (8) Eighth Cause of Action—breach of the implied covenant of good faith and fair dealing regarding the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements against Guardian and RPM (*see id.* ¶¶ 128–133); (9) Ninth Cause of Action—breach of contract as to the Mid-Atlantic Agreement against Guardian and RPM (*see id.* ¶¶ 134–138); and (10) Tenth Cause of Action—tortious interference with contract against RPM alone (*see id.* ¶¶ 139–146).

## C.    The Court's Order Granting in Part and Denying in Part the Parties' Motions for Summary Judgment

On November 9, 2016, GIS filed a motion for summary judgment (Doc. 98), Guardian filed a motion for partial summary judgment as to the First Counterclaim (Doc. 92), and Guardian and RPM jointly filed a motion for summary judgment (Doc. 93).  Both GIS and Guardian moved for summary judgment on Guardian's request for a declaration that it may terminate the Agreements due to GIS's purported sale of dreamGUARD products in the areas covered by the Agreements.  (*See, e.g.*, Doc. 123 at 32–35; Doc. 92 at 8–13.)

In its order dated January 18, 2017, the Court granted in part and denied in part the three motions.  (*See* Doc. 133.)  Specifically, the Court granted GIS's motion on Guardian's allegations in all of its Counterclaims that GIS failed to use best efforts and Guardian's Sixth Counterclaim and denied the remainder of the motion; granted Guardian's motion on its request for a declaration in its First Counterclaim that electronic furniture protection plans ("EFPPs") are not within the scope of the Florida and Mid-Atlantic Agreements and denied the remainder of the motion; and granted Guardian's and RPM's motion on GIS's Fifth Cause of Action and GIS's Seventh Cause of Action for violation of California Franchise Investment Law ("CFIL") based on the Agreements and denied the remainder of the motion.  (*See* Doc. 133.)  The Court's Order Granting in Part and Denying in Part the Parties' Motions for Summary Judgment thereby dismissed GIS's Fifth Cause of Action, GIS's CFIL claim based on the Agreements in the Seventh Cause of Action, Guardian's claims in all of its Counterclaims that GIS failed to use best efforts; and Guardian's Sixth Counterclaim.  (*See id.*)  With respect to the sale of dreamGUARD products, the Court found that

there were genuine issues of material fact as to whether CDFC is the alter ego of GIS, such that CDFC's sale of dreamGUARD products may be imputed to GIS for purposes of determining whether GIS breached the Agreements. (*See id.* at 63–66, 68.)

On reconsideration, the Court granted Guardian's motion for summary judgment to the extent Guardian sought summary judgment on its request for a declaration in its First Counterclaim that EFPPs are not within the scope of the Cook County Agreements. (*See* Doc. 161 at 5.)

**D.    Pretrial Orders**

On January 27, 2017, the parties submitted their Joint Pretrial Statement, in which GIS listed as a "disputed factual issue" "[w]hether RPM is an alter ego of Guardian," and GIS sought relief including "lost profits incurred by GIS resulting from Defendants' alleged wrongful terminations and/or breaches of the [Agreements] . . . ." (Doc. 146 at 9, 15.)  On February 3, 2017, the Court issued its Pretrial Order, which included these items. (*See* Doc. 154 at 6, 12.)

On May 12, 2016, the parties submitted their Revised Joint Pretrial Statement, in which GIS again listed as a "disputed factual issue" "[w]hether RPM is an alter ego of Guardian" and GIS sought relief including "lost profits incurred by GIS resulting from Defendants' alleged wrongful terminations and/or breaches of the [Agreements] . . . ." (Doc. 202 at 9, 17.)  On May 16, 2017, the Court issued the Amended Pretrial Order, which again included these items. (*See* Doc. 203 at 6, 13–14.)

**E.    Motions in Limine**

On March 2, 2017, the parties filed motions *in limine*. (Docs. 165 & 166.)  GIS filed a motion *in limine* requesting that "all issues in this case . . . be tried before the jury in a single trial." (Doc. 166 at 16.)  Guardian and RPM opposed GIS's motion (Doc. 169), and moved *in limine* to bifurcate "the issue of whether CFDC, Inc. is the alter ego of GIS." (Doc. 165-1 at 2, 6.)

GIS opposed Guardian and RPM's motion, asserting that "[a]lthough the issue of alter ego liability is an equitable one to be decided by the Court, the parties will rely on many of the same witnesses and documents in order to prove or defend this claim," and that it "would be a waste of judicial resources to bring in the same witnesses and same exhibits for two separate trials." (Doc.

170 at 16–17.) GIS maintained that "the Court should render its decision regarding alter ego liability after all evidence is presented by the parties in a single trial before the jury," but that if the Court were inclined to "conduct a separate, preliminary bench trial regarding alter ego liability between GIS and CDFC, . . . the same procedure [should] be used for GIS's claim for alter ego liability between Guardian and RPM and that "both parties' alter ego claims should be tried together, either as part of a single jury trial or in a bifurcated proceeding." (*Id.*)

Following a hearing held March 13, 2017, the Court denied Guardian's request for bifurcation and granted GIS's motion *in limine* "to the extent GIS requests that the remaining issues"—with the exception of punitive damages—"be tried in a single, non-bifurcated trial." (Doc. 177 at 2.) During the March 13, 2017, hearing, however, the Court observed that "[b]oth parties acknowledge in their motion *in limine* briefing that [the] alter ego determination is equitable and as such, is left to the Court." (Doc. 179 at 46.) The Court further noted that even though it would make the "ultimate determination" regarding alter ego, the issue "presents conflicting and contested issues of fact" that would be "ultimately informed by the jury's factual findings." (*Id.* at 11, 46.)

**F.     Motions for Judgment as a Matter of Law**

The Court held a jury trial in this case between June 20 and June 29, 2017 (the "Trial"). (*See* Docs. 260–62, 266, 271, 276, 279, 282.) During the Trial, on June 22, 2017, Guardian and RPM moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on, among other things, GIS's Third Cause of Action on the grounds that GIS failed to provide evidence that the Bob's Discount Furniture Agreement was supported by consideration and, consequently, that it is a valid contract, and on GIS's Ninth Cause of Action on the ground that that there is no evidence of breach of the Mid-Atlantic Agreement because the only products Guardian sold to RenComGroup, LLC d/b/a Renaissance in the covered geographical area are EFPPs, which are not covered by that Agreement. (*See* Doc. 262 at 137–38.) On June 23, 2017, the Court granted in part and denied in part Defendants' motion for judgment as a matter of law. (*See* Doc. 266 at 15–16.) Specifically, the Court granted Defendants' motion on GIS's claim in its Third Cause of Action that Guardian breached the Bob's Discount Furniture Agreement by selling

products to Bob's Discount Furniture in the geographic areas covered by the Florida, Mid Atlantic, and Cook County Agreements; granted Defendants' motion on GIS's Ninth Cause of Action; and denied the remainder of the motion. (*Id.* at 16.)

GIS also filed a motion for judgment as a matter of law pursuant to Rule 50(a) during Trial on GIS's First, Second, Eighth, and Tenth Causes of Action and Guardian's First, Second, Third, Fourth, and Fifth Counterclaims. (*See* Docs. 258, 268 (errata).) In Defendants' opposition, Guardian stated that its First Counterclaim "does not seek an order that it can immediately terminate the Agreements due to dreamGUARD." (Doc. 259.)

The Court granted in part and denied in part GIS's motion for judgment as a matter of law. (*See* Doc. 271 at 4–15.) Specifically, the Court granted GIS's motion on Guardian's request in its First Counterclaim for a declaration that it may immediately terminate the Agreements, observing that Guardian "now states that its declaratory relief claim does not seek an order that it can immediately terminate the Agreements," and therefore that it "appears to have abandoned" this claim. (Doc. 271 at 8.) The Court also granted GIS's motion for judgment as a matter of law on Guardian's request in its First Counterclaim for a declaration that it may raise the quotas for EFPPs and denied the remained of the motion. (*See id.* at 7–16.)

### G.    Jury Instructions

On June 15, 2017, the parties filed their Disputed Jury Instructions, in which the parties disputed the inclusion of jury instruction on the alter ego issue. (*See* Doc. 226 at 11.) Guardian and RPM proposed to include a jury instruction directed to whether GIS and CDFC are alter egos of one another. (*See id.*; Doc. 229 at 10–12.) GIS maintained that Defendants' proposed instruction was improper because "the alter ego determination is equitable and as such, is left to the Court." (Doc. 232 at 10–11.) GIS contended further that "to the extent the Court is inclined to allow an 'Alter Ego' instruction, that instruction must also include GIS's claim that Guardian and RPM are alter egos of one another." (*Id.* at 10.)

During Trial, on June 23, 2017, the Court ordered the parties to meet and confer as to an alter ego instruction, stating that an alter ego instruction would be given to the jury and the verdict form would include a question pertaining to the issue due to the "conflicting and contested issues

of fact" that would "ultimately be informed by the jury's factual findings." (Doc. 266 at 99–100.) GIS objected to "asking the jury to make an advisory finding" as to the alter ego issue, on the grounds that the doctrine of alter ego is "equitable in nature." (*Id.* at 100–101.)

On June 26, 2017, the parties submitted their Joint Proposed Jury Instructions. (See Docs. 264, 267 (errata).) In them, GIS objected to "a jury instruction regarding alter ego," but submitted an instruction on the issue "[t]o the extent the Court will read a jury instruction regarding alter ego." (Doc. 267 at 43–44.) The proposed alter ego instruction was directed only to the question of whether GIS is the alter ago of CDFC, and did not address the question of whether RPM is the alter ego of Guardian (*see id.*), despite the fact that GIS had asserted earlier (in its Disputed Jury Instructions) that such the inclusion of such an instruction should be reciprocal. (*See* Doc. 232 at 10.) On June 27, 2017, GIS once again reiterated its objection to an advisory finding on alter ego from the jury, maintaining that "the inquiry is antithetical to a jury finding," (*see* Doc. 276 at 5), and the Court did not require that GIS include an instruction directed to the issue of whether RPM is an alter ego of Guardian.

On June 27, 2017, the jury was instructed. (*See* Doc. 277.) Consistent with the parties' request, the final jury instructions (the "Jury Instructions") included an instruction on alter ego directed only to the question of whether GIS is the alter ago of CDFC, and did not address the question of whether Guardian and RPM are alter egos of on another. (*See* Doc. 284 at 43 ("Instruction No. 39").)

**H.      Final Verdict Form**

On June 15, 2017, the parties filed their Joint Proposed Verdict Form. (*See* Doc. 224.) That next day, the parties separately filed their proposed additions to the Joint Proposed Verdict Form. (*See* Docs. 231, 233.) In its proposed additions, Guardian and RPM included, among other things, the question of whether CDFC is the alter ego of GIS. (*See* Doc. 231 at 41.) GIS's proposed additions included, among other things, questions regarding GIS's Third and Fourth Causes of Action, which relate to the Bob's Discount Furniture Agreement. (*See* Doc. 233 at 7– 9.) GIS did *not* include a question on alter ego (either as to GIS/CDFC or Guardian/RPM) in its proposed additions. (*See id.*)

On June 26, 2017, following the Court's ruling on the parties' motions for judgment as a matter of law, the parties filed Revised Proposed Verdict Forms. (*See* Docs. 263, 265.) Like their prior verdict form, Guardian and RPM included a question of whether CDFC is the alter ego of GIS. (*See* Doc. 265 at 24.) In its Revised Proposed Verdict Form, GIS included a question as to whether GIS and CDFC were alter egos of one another, but noted that it objected to the use of a verdict form for alter ego. (*See* Doc. 263 at 16.) GIS did *not* include a question as to whether RPM is an alter ego of Guardian. (*See id.*) GIS also removed from its Revised Proposed Verdict Form any questions regarding GIS's Third and Fourth Causes of Action. (*See id.*)

On June 27, 2017, final verdict form (the "Final Verdict Form") was provided to jury. (*See* Docs. 277, 286.) In the Final Verdict Form, the jury was asked, among other things, whether "Guardian" breached the Alabama, Florida, and/or Tennessee Agreements (GIS's First Cause of Action) (Doc. 286 at 2–3); whether "Guardian" breached the implied covenant of good faith and fair dealing in the Alabama, Florida, and/or Tennessee Agreements (GIS's Second Cause of Action) (*see id.* at 4–5); whether "Guardian" breached the implied covenant of good faith and fair dealing in the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and/or Midwest Agreements (GIS's Eighth Cause of Action) (*see id.* at 6–7); whether "RPM" tortuously interfered with the Agreements (GIS's Tenth Cause of Action) (*see id.* at 8–9); whether there was "such a unity of interest and ownership between CDFC, Inc. and GIS that the separate personalities of CDFC, Inc. and GIS do not in reality exist" (*see id.* at 24); and whether there would be "an inequitable result if the acts in question are treated as those of the CDFC, Inc. alone" (*see id.*). Like GIS's Revised Proposed Verdict Form, the Final Verdict Form provided to the jury omitted any questions regarding GIS's Third and Fourth Causes of Action and whether RPM is an alter ego of Guardian. (*See id.)*

## I.    Jury Verdict

On June 29, 2017, the jury returned its verdict (the "Verdict"). (*See* Doc. 286.) The jury found that Guardian did not breach the Alabama, Florida, and Tennessee Agreements (GIS's First Cause of Action) (*see id*. at 2); that Guardian did not unfairly interfere with GIS's right to receive the benefits of the Alabama, Florida, and Tennessee Agreements (GIS's Second Cause of Action)

(*see id.* at 4); that Guardian did not unfairly interfere with GIS's right to receive the benefits of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements (GIS's Eighth Cause of Action) (*see id.* at 6); and that RPM did not intentionally cause Guardian to breach any of the following Agreements with GIS (GIS's Tenth Cause of Action) (*see id.* at 8). As to Guardian's counterclaim for breach of the Alabama, Florida, and/or Tennessee Agreements (Second Counterclaim), the jury found that GIS breached those Agreements by failing to satisfy its purchase quotas under those Agreements for June and/or July 2013, and that Guardian did not prevent, frustrate, or inhibit GIS's contractual right to cure its breaches of the purchase quotas. (*See* Doc. 286 at 11.) The jury also found that GIS breached the non-competition provisions of the Alabama, Florida, and Tennessee Agreements. (*See id.*) The jury further found that Guardian should not be barred from asserting a claim for breach of the non-competition provisions of the Alabama, Florida, and/or Tennessee Agreements by the doctrine of "waiver"/"acquiescence," but that Guardian should be barred from asserting such a claim by the statute of limitations and "unclean hands." (*See id.* at 11–12.)

With respect to Guardian's counterclaim for breach of the implied covenant of good faith and fair dealing in the Alabama, Florida, and Tennessee Agreements (Third Counterclaim), the jury found that GIS unfairly interfered with Guardian's right to receive the benefits of the Alabama, Florida, and Tennessee Agreements, but that Guardian should be barred from asserting such a claim by the doctrine of "unclean hands." (*See id.* at 14.) Pursuant to the Final Verdict Form's instructions, the jury was not required to answer the questions of Guardian prevented, frustrated, or inhibited GIS's contractual right to cure its breaches of the implied covenant of good faith and fair dealing in the Alabama, Florida, and Tennessee Agreements, and whether Guardian should be barred from asserting a claim by the doctrines of "waiver"/"acquiescence" and/or statute of limitations. (*See id.* at 15.)

As to Guardian's counterclaim for breach of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements (Fourth Counterclaim), the jury found that GIS breached the non-competition provisions of those Agreements. (*See id.* at 17.) The jury further found that Guardian should not be barred from asserting a claim for breach of the non-competition

provisions of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements by the doctrine of "unclean hands," but that Guardian should be barred from asserting such a claim by the doctrine of "waiver"/"acquiescence". (*See id.* at 17–18.) Pursuant to the Final Verdict Form's instructions, the jury was not required to answer the question of whether Guardian should be barred from asserting a claim for breach of the non-competition provisions of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements by the statute of limitations. (*See id.* at 18.)

With respect to Guardian's counterclaim for breach of the implied covenant of good faith and fair dealing in the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements (Fifth Counterclaim), the jury found that GIS unfairly interfered with Guardian's right to receive the benefits of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements, but that Guardian should be barred from asserting such a claim by the statute of limitations. (*See id.* at 20–21.) The jury found that Guardian should not be barred from asserting a claim for breach of the implied covenant of good faith and fair dealing in the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements by the doctrines of "unclean hands" or "waiver"/"acquiescence." (*See id.*)

The jury also found that EFPPs are covered products under the Pennsylvania, Alabama, Tennessee, Ohio, Indiana, and Midwest Agreements. (*See id.* at 23.) Finally, as to alter ego, the jury found that there was such a unity of interest and ownership between CDFC and GIS that the separate personalities of CDFC and GIS do not exist, and that there would be an inequitable result if the acts in question were treated as those of CDFC alone. (*See id.* at 24.)

**J.      The Court's Findings of Fact and Conclusions of Law Regarding Equitable Issues**

Following the return of the Verdict, the Court directed the parties to notify the Court "whether there are any equitable issues that remain to be determined by the Court" (the "Equitable Issues"). (Doc. 282 at 12.) In a statement filed on July 6, 2017, Guardian and RPM contended that there were no Equitable Issues that remain to be tried by the Court, and that GIS was

"judicially estopped" from arguing otherwise by virtue of the positions it had taken at the motion *in limine* stage of the proceedings. (*See* Doc. 294.)

In a statement filed on the same date, GIS identified five Equitable Issues that remained to be determined by the Court:

1.  Whether Defendants should be estopped from contending that electronic furniture protection plans are not "Guardian Labeled Distributor Products" under the Warehousing Distributor Agreements ("WDAs").

2.  Whether Defendants should be estopped from contending that the electronic warranties Guardian sells to Bob's Discount Furniture are not "Guardian Labeled Distributor Products" under the WDAs.

3.  Whether Defendants should be estopped from preventing the continued sales of dreamGUARD products in the future.

4.  Whether CDFC, Inc. is an alter-ego of GIS, and thereby bound by the non-compete provisions in the WDAs.

5.  Whether RPM Wood Finishes Group, Inc. is an alter-ego of Guardian.

(Doc. 293.) On July 7, 2017, the Court ordered the parties to file briefing addressing the merits regarding each of the five Equitable Issues, whether each was rendered moot by the Verdict, and whether GIS is barred from requesting rulings on the Equitable Issues by the doctrine of judicial estoppel. (Doc. 296.)

The parties filed their briefing on July 21, 2017. (*See* Docs. 300, 301.) In its brief, Defendants addressed all five of the Equitable Issues, and contended, among other thing, "GIS . . . chose to abandon its alter ego claim against Defendants, by not submitting the issues to the jury pursuant to the Court's Orders." (Doc. 300 at 13.). In GIS's Memorandum of Law Regarding Equitable Issues, GIS asserted that four, not five, Equitable Issues remained to be determined by the Court: (1) "[w]hether . . . Guardian . . . should be estopped from contending that [EFPPs] are not 'Guardian Labeled Distributor Products' under the . . . Agreements", (2) "[w]hether Guardian should be estopped from contending that the electronic warranties it sells to Bob's Discount Furniture are not 'Guardian Labeled Distributor Products'", (3) "[w]hether Guardian should be estopped from preventing the continued sales of dreamGUARD products in the future", and (4)

"[w]hether CDFC, Inc. . . . is an alter-ego of GIS, and thereby bound by the non-compete provisions in the [Agreements]."  (Doc. 301, at 3.)  As to the fifth Equitable Issue, "[w]hether RPM Wood Finishes Group, Inc. is an alter-ego of Guardian," GIS stated in its Memorandum in a footnote that it was "no longer seeking an equitable determination" as to that issue.  (*Id.* at 3 n1.)

In its Responsive Brief, Defendants requested an order to show cause why sanctions should not be issued against GIS pursuant to Federal Rule of Civil Procedure 11 on grounds that, "after Defendants incurred the expense of addressing all Five Equitable Issues," GIS "unilaterally changed its position" and declined to seek an equitable determination as to whether RPM is an alter ego of Guardian without notifying Defendants or the Court, "instead us[ing] the additional pages available to improperly brief the legal issue of implied modification."  (Doc. 303 at 11.)  In response, GIS contended that Defendants' request for sanctions was "frivolous, procedurally impermissible, and intended to waste GIS's and the Court's time with meritless arguments," but did not address its decision to remove the RPM/Guardian alter ego issue from the Court's determination.  (Doc. 305.)

On September 27, 2017, the Court entered its Findings of Fact and Conclusions of Law Regarding Equitable Issues.  (Doc. 310.)  The Court found that all four of the Equitable Issues identified by GIS as remaining to be determined by the Court were rendered moot by the Verdict.  (*See id.* at 16–17.)  The Court noted that, given that GIS was no longer seeking an equitable determination as to whether RPM is an alter ego of Guardian, that issue was "not presently before the Court."  (*Id.* at 4 n.4.)

**K.     Final Judgment**

On October 3, 2017, the Court entered its Final Judgment in a Civil Action (the "Final Judgment").  (Doc. 311.)  The Court, "in accordance with the jury verdict rendered on June 29, 2017, and the Court's orders," entered judgment in favor of Guardian and RPM on GIS's First Cause of Action; GIS's Second Cause of Action; GIS's Third Cause of Action, insofar as GIS alleged in this claim that Guardian breached the Bob's Discount Furniture Agreement by selling products to Bob's Discount Furniture in the geographic areas covered by the Florida, Mid-Atlantic, and Cook County Agreements; GIS's Fifth Cause of Action; GIS's Seventh Cause of

14

Action, insofar as this claim relates to the parties' Agreements; GIS's Eighth Cause of Action; GIS's Ninth Cause of Action; GIS's Tenth Cause of Action; and Guardian's First Counterclaim, insofar as Guardian requested declaratory relief regarding "[w]hether the [electronic] furniture protection plans qualify as a Guardian Product within the scope of the rights granted by the" Florida, Mid-Atlantic, and Cook County Agreements. (*Id.* at 2.)

The Court, "in accordance with the jury verdict rendered on June 29, 2017, and the Court's orders," entered judgment in favor of GIS on Guardian's First Counterclaim, insofar as Guardian requested declaratory relief regarding "[w]hether Guardian is entitled to immediately terminate the Distributor Agreements due to GIS's breaches of their express and implied terms"; Guardian's First Counterclaim, insofar as Guardian requested declaratory relief regarding "[w]hether the [electronic] furniture protection plans qualify as a Guardian Product within the scope of the rights granted by the" Pennsylvania, Alabama, Tennessee, Ohio, Indiana, and Midwest Agreements; Guardian's First Counterclaim, insofar as Guardian requested declaratory relief regarding "whether Guardian may establish a purchase quota for the [electronic] furniture protection plans above that applicable to the Original Products[3]"; Guardian's First Counterclaim, insofar as Guardian requested declaratory relief regarding "[w]hether GIS has used its best efforts to promote the sale of Guardian Products in the exclusive distribution territories established by the Distributor Agreements"; Guardian's Second Counterclaim; Guardian's Third Counterclaim; Guardian's Fourth Counterclaim; Guardian's Fifth Counterclaim; and Guardian's Sixth Counterclaim. (*Id.* at 2–3.)

Finally, the Court ordered that GIS's Third Cause of Action, insofar as GIS alleged in this claim that Guardian breached the Bob's Discount Furniture Agreement by selling products to Bob's Discount Furniture in the geographic areas covered by the Pennsylvania, Alabama, Tennessee, Ohio, Indiana, and Midwest Agreements; GIS's Fourth Cause of Action; GIS's Sixth Cause of Action; and GIS's Seventh Cause of Action, insofar as this claim relates to the 2015 Form Agreement, as discussed in the Court's January 18, 2017, order are "dismissed without

---

[3] Guardian defines "Original Products" in its Counterclaim as "those Guardian [Labeled Distributor] Products that Guardian was selling when each contract was made." (Doc. 36 ¶ 12.)

prejudice for want of prosecution." (*Id.* at 3.)

**L.     The Subject Motions**

On October 25, 2017, GIS filed its Motion to Correct Final Judgment.   (Doc. 317.) Guardian and RPM filed their opposition brief on November 8, 2017 (Doc. 321), and GIS filed a reply brief on November 22, 2017.  (Doc. 326.)

Guardian filed its Motion to Amend Judgment on October 31, 2017.  (Doc. 318.)  GIS filed its opposition brief on November 15, 2017 (Doc. 324), and Guardian filed a reply brief on November 22, 2017.  (Doc. 325.)

The Court then heard oral argument regarding the Motions on November 29, 2017.[4]  (Doc. 328.)  The Motions are therefore ready for disposition.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 60(a) states, in relevant part, that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  "In determining whether a mistake may be corrected under Rule 60(a), '[the Ninth Circuit] focuses on what the court *originally intended* to do.'" *Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1297 (9th Cir. 2014) (quoting *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir. 1987)).  "The basic distinction between 'clerical mistakes' and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consists of 'blunders in execution' whereas the latter consist of instances where the court *changes its mind . . . .*" *Blanton*, 813 F.2d at 1577 n.2.

"The quintessential 'clerical' errors are where the court errs in transcribing the judgment or makes a computational mistake." *Tattersalls, Ltd.*, 745 F.3d at 1297 (citation omitted).  But Rule 60(a) "covers more than those situations."  *Id.*  For example, a district court may correct a final judgment pursuant to Rule 60(a) to change a dismissal for want of prosecution without prejudice to with prejudice.  *See Huey v. Teledyne, Inc.*, 608 F.2d 1234, 1236–37 (9th Cir. 1979); *Turner v. Las Vegas Metro. Police Dep't*, No. 2:16–cv–02413–RFB–VCF, 2017 WL 2869500, at *2 (D.

---

[4] Also pending before the Court is GIS's Renewed Motion as a Matter of Law filed October 31, 2017 (Doc. 319), which was argued and submitted at the hearing on November 29, 2017.  The Court addresses that motion in a separate order.

Nev. July 3, 2017).  *Accord Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) ("Inadvertently designating a dismissal as being 'without prejudice' instead of 'with prejudice' is the type of rote, typographical error of transcription that could be committed by a law clerk or a judicial assistant. It is not an error of judgment or legal reasoning."); *see also* 11 Fed. Prac. & Proc. Civ. § 2854 (3d ed.) ("A great variety of matters have been held by the courts to come within Rule 60(a)," including "clerical errors, the failure to enter judgment or an opposing party's motion, the omission of a filing date, and mathematical computations," as well as if the judgment "wrongly apportions the damages between the parties, confuses special and general damages, or reverses answers in the verdict.")  In sum, Rule 60(a) "allows a court to clarify a judgment in order to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement." *Tattersalls, Ltd.*, 745 F.3d at 1298 (quoting *Garamendi v. Henin*, 683 F.3d 1069, 1079 (9th Cir. 2012)).

### III.    GIS'S MOTION

#### A.    Contentions of the Parties

GIS seeks in its Motion to correct the Final Judgment to (1) remove the reference to RPM with respect to the entry of judgment on Guardian's First Counterclaim (*see* Doc 311 at 2), and (2) remove the reference to RPM with respect to the entry of judgment on GIS's First, Second, and Eighth Causes of Action (see *id.* at 2) and instead dismiss those claims against RPM without prejudice for want of prosecution.  (*See* Doc. 317-1 at 2–4.)  As to the first issue, GIS contends that because RPM was not a party to Guardian's Counterclaims, the Court should correct the Final Judgment to remove the grant of judgment in favor of RPM as to Guardian's First Counterclaim. (*Id.* at 4.)

As to the second issue, GIS asserts that because neither the jury nor the Court was presented at Trial with the issue of whether RPM had breached the Agreements in connection with GIS's First, Second, and Eighth Causes of Action—insofar as the jury was not asked whether RPM, as the alleged alter ego of Guardian, breached those Agreements, and GIS declined to seek an equitable ruling from the Court as to whether RPM is an alter ego of Guardian—judgment in

favor of RPM on those claims is improper. (*Id.* at 2–4.) In its reply brief, GIS asserts further that it "voluntarily abandoned" its First, Second, and Eighth Causes of Action against RPM, and therefore those claims should be dismissed without prejudice against RPM for want of prosecution. (*See* Doc. 326 at 2–3, 6.)

RPM and Guardian counter that the request to remove the reference to RPM with respect to the entry of judgment on GIS's First, Second, and Eighth Causes of Action should be denied, as RPM "was forced to defend against GIS's breach of contract claims during trial because GIS repeatedly raised the issue of whether RPM was an alter ego of Guardian" before Trial in the Pretrial Orders, during Trial through testimony introduced by GIS, and even after the Trial prior to GIS "unilaterally" . . . 'dropp[ing]' the issue from its briefing."[5] (Doc. 321 at 2, 4–5.) Defendants maintain that if the Court were inclined to remove entry of judgment in favor of RPM on GIS's First, Second, and Eighth Causes of Action, those claims should nevertheless be dismissed *with prejudice* for want of prosecution under Federal Rule of Civil Procedure 41(b), which would operate as an adjudication of those claims on the merits.

**B.      Because GIS's First, Second, and Eight Causes of Action against RPM Were Not Litigated or Fairly Placed in Issue Before the Jury or Court, Judgment in Favor of RPM on These Claims Was in Error and the Court Shall Correct the Final Judgment.**

Judgment should be granted only on issues that were "litigated, or fairly placed in issue, during the trial." *See Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1126 (N.D. Cal. 2014) (quoting *Alcon Research Ltd. v. Barr Laboratories, Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014)). In determining if this standard is met, courts should "assess[ ] both what the parties expected to try given their statements and conduct and what they actually litigated at trial." *Id.*

It is uncontroverted that GIS pleaded its First, Second, and Eighth Causes of Action in the SAC against RPM solely as the alter ego of Guardian. (*See* Doc. 67 at ¶¶ 48–52.) The alter ego doctrine, sometimes referred to as piercing the corporate veil doctrine, is not a cause of action unto itself; "it is merely a procedural means of allowing [or better said, expanding the scope of those

[5] Guardian and RPM indicate in their opposition that they "do not oppose GIS's motion with respect to the limited issue of Guardian's First Counterclaim, as RPM did not assert any counterclaims against GIS." (Doc. 321 at 8.)

18

ensnared in the net of] liability on a substantive claim." *Siegel v. Warner Bros. Entm't Inc.*, 581 F. Supp. 2d 1067, 1074 (C.D. Cal. 2008) (quoting *International Financial Servs. v. Chromas Tech.*, 356 F.3d 731, 736 (7th Cir. 2004)).

Here, the issue of whether RPM is an alter ego of Guardian, and therefore whether RPM was within the "scope" of liability for GIS's First, Second, and Eighth Causes of Action against Guardian, was not "litigated, or fairly placed in issue" either during the Trial or before the Court in determining the Equitable Issues.

> **1.** **The Issue of Whether RPM is Liable for GIS's First, Second, and Eighth Causes of Action as an Alter Ego of Guardian Was Not Litigated, or Fairly Placed at Issue, During the Trial.**

First, it is clear that GIS did not expect, and RPM and Guardian should not have expected, to try this issue at Trial. The alter ego doctrine "is one sounding in equity to which no right to a trial by jury existed at common law." *Siegel,* 581 F. Supp. 2d at 1076. As such, the Court repeatedly held throughout the proceedings that, although it would be informed by the jury's factual findings, the "ultimate determination" of whether RPM is an alter ego of Guardian would be made by the Court. (*See* Doc. 179 at 11, 46; Doc. 266 at 99–100.) GIS agreed with the Court that the issue of whether RPM is an alter ego "was an equitable one to be decided by the Court" (Doc. 170 at 16–17; *see also* Doc. 232 at 10–11; Doc. 266 at 100–101), and for this reason objected to asking the jury to make an advisory finding as to the alter ego issue (*see* Doc. 266 at 100–101; Doc. 276 at 5). Defendants were made well aware of GIS's position. Indeed, unlike Guardian (who asked that the jury determine whether GIS and CDFC met the two conditions for finding the existence of alter ego, *see* Doc. 226 at 11; Doc. 229 at 10–12; Doc. 284 at 43; Doc. 265 at 24; Doc. 286 at 24), GIS on multiple occasions objected to and expressly refused to include the issue of whether RPM is an alter ego of Guardian in either the Jury Instructions or the Final Verdict Form (despite GIS's prior request in its Disputed Jury Instructions that, if an alter ego instruction be given as to GIS/CDFC, that it also be given for RPM/Guardian, *see* Doc. 232 at 10), on grounds that the alter ego inquiry is "antithetical to a jury finding." (Doc. 276 at 5; *see also* Doc. 232 at 10–11; Doc. 267 at 43–44; Doc. 233; Doc. 263 at 16; Doc. 266 at 100–101.) Moreover, neither party proposed in its respective verdict forms questions for the jury as to

whether RPM was liable for GIS's First, Second, and/or Eighth Cause of Action—only questions as to whether Guardian was liable. (*See* Docs. 231, 233, 263, 265.)

Nor was the issue "actually litigated" at Trial. Jury Instruction No. 39, the alter ego instruction, instructed the jury that "Guardian contends that GIS and third party CDFC, Inc. are alter egos of one another" and set forth the "two conditions that must be met before the alter ego doctrine will be invoked: (1) there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist; and (2) there must be an inequitable result if the acts in question are treated as those of the corporation alone." (Doc. 284 at 43.) Jury Instruction No. 39 also set forth the non-exhaustive list of "factors" to be considered when determining whether the first condition is met. (*See id.*) Although both parties elicited testimony at Trial from RPM's President Ronnie Holman relating to some of these factors with respect to RPM and Guardian (*see, e.g.*, Doc. 226 at IV-63:17–IV-65:23; Doc. 320, Ex. 7 at 31–33), the fact remains that the jury was not asked, and did not consider, the application of the factors to the question of whether an alter ego relationship exists between the two entities, as the Jury Instruction No. 39 made no mention of GIS's contention that RPM is an alter ego of Guardian (*see* Doc. 284). The jury was also not asked, and did not decide, whether RPM breached or "unfairly interfere[d] with" with the Agreements at issue in GIS's First, Second, and Eighth Causes of Action (*see* Doc. 286 at 1–6), as those claims were alleged against RPM solely as the alter ego of Guardian. The only determination of liability that the jury was asked to make, and did make, with respect to GIS's First, Second, and Eighth Causes of Action was to Guardian alone. (*See id.*) Based on this record, the Court cannot reasonably conclude that the parties "actually litigated" the question of whether RPM is an alter ego of Guardian and therefore liable for GIS's First, Second, and Eighth Causes of Action. *See Apple, Inc.*, 67 F. Supp. 3d at 1126.

///

///

///

///

## 2. The Issue of Whether RPM is Liable for GIS's First, Second, and Eighth Causes of Action as an Alter Ego of Guardian Was Not Litigated, or Fairly Placed at Issue, During the Court's Determination of the Equitable Issues.

Finally, the issue of whether RPM is an alter ego of Guardian, and therefore whether RPM was liable for GIS's First, Second, and Eighth Causes of Action, was not "actually litigated" before the Court during its determination of the Equitable Issues, nor did the parties expect it to be at the time the Issues were determined. Prior to and during Trial, GIS preserved for determination by the Court the Equitable Issue of whether RPM is an alter ego of Guardian. (*See, e.g.*, Doc. 146 at 9, 15 (Joint Pretrial Statement); Doc. 154 at 6, 12 (Pretrial Order); Doc. 202 at 9, 17 (Revised Joint Pretrial Statement); Doc. 203 at 6, 13–14 (Amended Pretrial Order); Doc. 170 at 16–17 (Opposition to Defendants' Motions in Limine); Doc. 232 at 10–11 (Disputed Jury Instructions); Doc. 266 at 100–101 (Trial).) Following Trial and the Verdict, on July 6, 2017, GIS reasserted its position that the issue of whether RPM is an alter ego of Guardian remained to be determined by the Court and *included it as one of the five Equitable Issues still before the Court.* (*See* Doc. 293.) Although GIS claimed at the hearing that the inclusion of this issue was "inadvertent[]" and "simply in error" (*see* Doc. 331 at 19:1–7), it is clear that as of July 6, 2017, Defendants reasonably expected the issue to be tried to the Court.

In its briefing on the five Equitable Issues filed two weeks later, however, GIS for the first time "dropped" from consideration the issue of whether RPM is an alter ego of Guardian, and expressly declined to seek an equitable determination as to that issue. (*See* Doc. 301 at 3 n1.) Thus, as of July 21, 2017, neither party should have expected the Court to determine the issue.

The Court acted accordingly and declined to consider the issue, based on GIS's representation. (*see* Doc. 310 at 4 n.4.) Therefore, there the issue of whether RPM is an alter ego of Guardian, and therefore whether RPM was liable for GIS's First, Second, and Eighth Causes of Action, was not "actually litigated" before the Court, either.

In sum, because the issue of whether RPM is liable for GIS's First, Second, and Eighth Causes of Action as an alter ego of Guardian was not litigated, or fairly placed at issue, during either the Trial or before the Court in determining the Equitable Issues, judgment in favor of RPM

on those claims was in error.  Accordingly, the Court GRANTS GIS's request that the Court correct the Final Judgment to remove the reference to RPM with respect to the entry of judgment on GIS's First, Second, and Eighth Causes of Action and shall CORRECT the Final Judgment accordingly.

The Court also GRANTS GIS's Motion as to GIS's unopposed request to remove the reference to RPM with respect to the entry of judgment on Guardian's First Counterclaim, as RPM was not a party to the Counterclaims (*see* Doc. 36).  The Court shall CORRECT the Final Judgment accordingly.

**C.     GIS's First, Second, and Eighth Causes of Action Against RPM Shall Be Dismissed with Prejudice Under Rule 41(b) in the Final Judgment.**

Federal Rule of Civil Procedure 41(b) provides that
If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b).  A request for dismissal does not need to come from a defendant; a court may sua sponte dismiss claims with prejudice for failure to prosecute under Rule 41(b).  *See Hells Canyon Preservation Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005).

GIS claims that it "abandoned" its First, Second, and Eighth Causes of Action against RPM as an alter ego of Guardian prior to submitting the case to the jury at Trial.  (*See* Doc. 331 16:10–14.)  The Court disagrees, finding, for the reasons set forth more fully above, that GIS reserved the right to try those claims before the Court after Trial, as late as July 6, 2017.  It was only until GIS filed its Memorandum of Law Regarding Equitable Issues on July 21, 2017, that GIS abandoned those claims.  Regardless of the timing of its abandonment, however, it is clear that GIS intended to abandon its First, Second, and Eighth Causes of Action against RPM and ultimately failed to prosecute them.  GIS contends that these abandoned claims should be dismissed *without prejudice* under Rule 41(b) (Doc. 317-1 at 4 (relying on *Garzon v. Varese*, No. CV 09-9010 PSG (PLAx), 2011 WL 103948, at *1 (C.D. Cal. Jan. 11, 2011)), and suggests in its reply brief that its abandonment of these claims was akin to a "voluntary dismissal" under Federal

Rule of Civil Procedure 41(a)(2) (*See* Doc. 326 at 4 n.4, 5).  Neither contention has merit.

To begin with, *Garzon* is inapplicable.  In *Garzon*, the Court had dismissed the action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b), but did so without prejudice, and the Court proceeded to consider the questions of "whether a party who secures a dismissal in its favor on technical grounds is a prevailing party within the meaning of [California Civil Code] section 1717," thereby entitling it to attorney's fees.  2011 WL 103948, at *1–3.  Contrary to GIS's suggestion, *Garzon* did <u>not</u> concern the question of when, under Rule 41(b), a case should be dismissed with or without prejudice, nor did it hold that a dismissal without prejudice is "proper in cases where . . . a claim is dismissed when 'it had yet to be determined whether plaintiffs would ultimately succeed or fail on the merits of their contract claims.'"  (Doc. 327 at 7.)  Instead, the Court observed that, given that it "specifically dismissed the case 'without prejudice,'" there had "been no determination whatsoever on the merits of the contract claims" and therefore there was no entitlement to attorney's fees by the defendant.  2011 WL 103948, at *3 and n.2.

Further, there has been no "voluntary dismissal" under Rule 41(a)(2) of GIS's First, Second, and Eighth Causes of Action against RPM.  In fact, the relevant case law holds that "a plaintiff wishing to eliminate a particular claim from the action should amend the complaint under [Federal Rule of Civil Procedure] 15(a) rather than move to dismiss it under Rule 41(a)."  *Sleep Sci. Partners, Inc. v. Lieberman*, No. C 09-04200 CW, 2011 WL 2669494, at *1 (N.D. Cal. July 7, 2011 (citing *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988)).  GIS could have sought to amend the SAC during or even after Trial to "conform [it] to the evidence" presented at Trial, *see* Fed. R. Civ. P. 15(b), but it chose not to do so.  Even assuming Rule 41(a)(2) would have been a permissible mechanism to effect the dismissal of GIS's First, Second, and Eighth Causes of Action against RPM, *see Hells Canyon Pres. Council*, 403 F.3d at 689, such dismissal could only be accomplished by Court order, which GIS did not seek.  *See* Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.").  (*See also* Doc. 326 at 5.)

//

The Court therefore finds that the more appropriate course is to dismiss GIS's First, Second, and Eighth Causes of Action against RPM with prejudice under Rule 41(b). *See Spina v. City of Montclair*, No. ED CV 14-02586-AB (SPx), 2016 WL 7480261, at *2 (C.D. Cal. Dec. 6, 2016) (noting that abandonment of a claim is "functionally tantamount to a failure to prosecute"); *Snow v. Grondolsky*, No. CV 11-00850 JGB AN, 2013 WL 812033, at *3 (C.D. Cal. Feb. 21, 2013) (dismissing claims with prejudice under Fed. R. Civ. P. 41(b) where the petitioner "manifested a clear intent to abandon [the] action"). *See also Robert & Ethel Freeman, LLC I v. City of Fircrest*, No. C07–5614RJB, 2008 WL 2622916, at *2 (W.D. Wash. July 1, 2008) (same). Accordingly, GIS's Motion is DENIED as to its request that its First, Second, and Eighth Causes of Action against RPM as the alter ego of Guardian be dismissed without prejudice. The Court shall AMEND the Final Judgment to reflect dismissal of these claims with prejudice under Rule 41(b) for want of prosecution.

**D.** **The Court Shall Sua Sponte Correct the Final Judgment to Change the Dismissals of GIS's Causes of Action for Want of Prosecution from Without Prejudice to With Prejudice Under Rule 41(b).**

In the Final Judgment, the Court ordered GIS's Third Cause of Action, insofar as GIS alleged in this claim that Guardian breached the Bob's Discount Furniture Agreement by selling products to Bob's Discount Furniture in the geographic areas covered by the Pennsylvania, Alabama, Tennessee, Ohio, Indiana, and Midwest Agreements; GIS's Fourth Cause of Action; GIS's Sixth Cause of Action; and GIS's Seventh Cause of Action, insofar as this claim relates to the 2015 Form Agreement, as discussed in the Court's January 18, 2017 order (Doc. 133), "dismissed without prejudice for want of prosecution." (Doc. 311 at 3.)

It is uncontroverted that GIS abandoned these claims at various points during the proceedings. Following the Court's ruling on the parties' motions for judgment as a matter of law, GIS removed any reference to its Third and Fourth Causes of Action from its proposed verdict forms (*see* Doc. 263), and did not submit those claims to the jury (*see* Doc. 286). Having survived summary judgment (*see* Doc. 133), GIS also chose not to submit its Sixth and Seventh Causes of

1    Action as Equitable Issues to be determined by the Court following Trial. [6]

2         The Court dismissed these claims for "want of prosecution," intending that they not be

3    subject to relitigation in another proceedings.  (*See, e.g.*, Doc. 331 at 9:15–22; 16:5–24; *see also*

4    Fed. R. Civ. P. 41(b) ("If the plaintiff *fails to prosecute* . . . , a defendant may move to dismiss the

5    action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this

6    subdivision . . .  operates as an *adjudication on the merits*.") (emphasis added).  Where, as here, a

7    plaintiff abandons claims after having "had a full and fair opportunity to litigate all [its] claims,"

8    "vigorously pursued [its] positions," "conducted discovery on these issues and thus had an

9    opportunity to explore the factual basis for the claims," and "incurred expenses," a court's

10   discretion is appropriately exercised to correct a final judgment under Rule 60(a) to dismiss those

11   claims with prejudice under Rule 41(b).  *T.B. by & through Brenneise v. San Diego Unified Sch.*

12   *Dist.*, No. 08-CV-28-MMA (WMC), 2012 WL 12953527, at *3 (S.D. Cal. July 23, 2012)).  *See*

13   *also Huey*, 608 F.2d at 1236–37.  Moreover, "an express dismissal with prejudice of the

14   abandoned causes of action" is appropriate when it will "put to rest . . . lengthy and contentious

15   litigation.")  *T.B. by & through Brenneise*, 2012 WL 12953527, at *3  (citing *Am. States Ins. Co.*

16   *v. Dastar Corp.*, 318 F.3d 881, 884 (9th Cir. 2003) (finding that judicial economy requires parties

17   to resolve related claims in one case)).  *See also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943

18   (9th Cir. 1976); *Rivera*, 647 F.3d at 194.

19        Accordingly, the Court shall CORRECT the Final Judgment to change the dismissal of

20   GIS's Third Cause of Action, insofar as GIS alleged in this claim that Guardian breached the

21   Bob's Discount Furniture Agreement by selling products to Bob's Discount Furniture in the

22   geographic areas covered by the Pennsylvania, Alabama, Tennessee, Ohio, Indiana, and Midwest

23   Agreements, GIS's Fourth and Sixth Causes of Action, and GIS's Seventh Cause of Action,

24

25   [6] Neither GIS's Sixth Cause of Action (violation of California Business and Professions Code § 17200 *et seq.*) nor its
     surviving Seventh Cause of Action (violation of the California Franchise Investment Law ("CFIL"), California
26   Corporate Code § 31202) entitles GIS to a trial by jury.  *See Openwave Sys. Inc. v. Myriad France S.A.S.*, No. C 10–
     02805 WHA, 2011 WL 2580991, at *2 (N.D. Cal. June 29, 2011) (Plaintiff's Section 17200 claim "is equitable . . .
27   and does not trigger any jury-trial rights.") (citing *Steinberg Moorad & Dunn Inc. v. Dunn*, 136 F. App'x 6, 9 (9th Cir.
     2005) ("Statutory unfair competition is an equitable claim under California law, one that does not provide for damages
28   or a jury trial.")); *It's Just Lunch Int'l LLC v. Island Park Enter. Grp., Inc.*, No. EDCV 08–367–VAP (JCRx), 2009
     WL 10671493, at *4 (C.D. Cal. Feb. 6, 2009) ("The CFIL does not create a right to a jury trial.").

insofar as this claim relates to the 2015 Form Agreement, as discussed in the Court's January 18, 2017 order, from a dismissal without prejudice to a dismissal with prejudice under Rule 41(b) for want of prosecution.

## IV.    GUARDIAN'S MOTION

### A.    Contentions of the Parties

By its Motion, Guardian seeks to amend the Final Judgment to (1) add the determinations by the Court set forth in its June 30, 2015, Order Denying in Denying in Part and Granting in Part Defendant's Motion to Dismiss (Doc. 30), and (2) remove the reference to entry of judgment in favor of GIS on Defendant Guardian's First Counterclaim, insofar as Guardian requested declaratory relief regarding "[w]hether Guardian is entitled to immediately terminate the Distributor Agreements due to GIS's breaches of their express and implied terms" (Doc. 311 at 2). As to the first issue, Guardian asserts that it is entitled to final judgment in its favor on all claims dismissed in the June 30, 2015 Order, including those dismissed without prejudice with leave to amend, as GIS did not replead the dismissed claims in its amended complaint.  (*See* Doc. 318 at 4.)  As to the second issue, Guardian contends that the grant of judgment in favor of GIS on Guardian's First Counterclaim, insofar as Guardian requested declaratory relief regarding "[w]hether Guardian is entitled to immediately terminate the Distributor Agreements due to GIS's breaches of their express and implied terms," was erroneous because Guardian voluntarily abandoned that claim prior to Trial.  (*See id.*)

In response, GIS asserts that if the Court is inclined to add the claims the Court previously dismissed without prejudice with leave to amend in its June 30, 2015 order, those claims should be dismissed "without prejudice for want of prosecution."  (Doc. 324 at 2–3.)  GIS further asserts that to the extent the Court is inclined to grant Guardian's request to remove judgment in favor of GIS on Guardian's "voluntarily abandoned" First Counterclaim, insofar as Guardian requested declaratory relief regarding "[w]hether Guardian is entitled to immediately terminate the Distributor Agreements due to GIS's breaches of their express and implied terms," the Court should also remove judgment in favor of RPM on the claims GIS "voluntary abandoned," as set forth in its Motion.  (*See id.* at 3.)

**B.** **The Court Shall Amend the Final Judgment to Dismiss GIS's Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action in its Original Complaint With Prejudice Under Rule 12(b)(6).**

In its Order Denying in Part and Granting in Part Defendant's Motion to Dismiss, the Court, among other things, (1) granted Guardian's motion to dismiss GIS's Sixth, Seventh, Eighth, and Ninth Causes of Action in its Original Complaint and dismissed those claims under Federal Rule of Civil Procedure 12(b)(6) without prejudice and with leave to amend, and (2) granted Guardian's motion to dismiss GIS's Tenth and Eleventh Causes of Action in its Original Complaint and dismissed those claims with prejudice and without leave to amend. (*See* Doc. 30.)

The parties do not appear to dispute that Guardian is entitled to judgment on GIS's Tenth and Eleventh Causes of Action in its Original Complaint, which were dismissed with prejudice under Rule 12(b)(6) and without leave to amend. The Court therefore GRANTS Guardian's Motion with respect to its request that the Court amend the Final Judgment to reflect dismissal with prejudice of these causes of action under Rule 12(b)(6), and shall AMEND the Final Judgment accordingly.

With regard to GIS's Sixth, Seventh, Eighth, and Ninth Causes of Action in its Original Complaint that were dismissed without prejudice and with leave to amend, the parties do not dispute that GIS voluntarily abandoned these claims upon the filing of its First Amended Complaint, which omitted them. The parties differ, however, on whether the dismissal should be with prejudice or without prejudice under Rule 41(b), for want of prosecution. (*See* Doc. 318 at 4; Doc. 324 at 2–3; Doc. 325 at 2.) Contrary to both parties' positions, the Court finds that the proper course is to dismiss GIS's Sixth, Seventh, Eighth, and Ninth Causes of Action in its Original Complaint with prejudice under Rule 12(b)(6)—not Rule 41(b).

The Ninth Circuit has instructed courts confronted with a plaintiff's failure to amend after a Rule 12(b)(6) dismissal with leave to amend to consider whether the action should be dismissed under Rule 41(b) as a sanction for failure to prosecute or comply with court orders, or under Rule 12(b)(6) for failure to state a claim. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063–1066 (9th Cir. 2004) (holding that where a plaintiff notified the court in writing of her election not to amend her complaint after being given leave to do so, the district court erred in dismissing the

complaint under Rule 41(b) for failure to comply with order granting leave to amend).  The

distinction between the two types of dismissal is significant because "a Rule 41(b) dismissal is

deemed a sanction for disobedience, while a Rule 12(b)(6) dismissal carries no such stigma," and

because the Ninth Circuit reviews "a Rule 41(b) dismissal only for abuse of discretion in applying

the five factors set forth in *Ferdik* [v. *Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992)]" but reviews

"a Rule 12(b)(6) dismissal de novo, reviewing directly the question whether the plaintiff has stated

a claim upon which relief could be granted." *Edwards*, 356 F.3d at 1065.

In *Edwards*, the court explained that "[u]nder Ninth Circuit precedent, when a plaintiff

fails to amend his complaint after the district court dismisses the complaint with leave to amend,

the dismissal is typically considered a dismissal for failing to comply with a court order rather

than for failure to prosecute a claim." *Edwards*, 356 F.3d at 1065 (quoting *Yourish v. Cal.

Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999)).  That approach, however, is "somewhat

problematic" because "the plaintiff has the right simply to allow the complaint to be dismissed,"

*Edwards*, 356 F.3d at 1064 (quoting *Yourish*, 191 F.3d at 986 n.4), and because it is inconsistent

with Ninth Circuit authority expressly permitting a plaintiff "to obtain an appealable final

judgment by 'fil[ing] in writing a notice of intent not to file an amended complaint.'" *Edwards*,

356 F.3d at 1064.  *Edwards* reconciled these authorities by holding that a plaintiff's failure "to

respond to the court's ultimatum—either by amending the complaint or by indicating to the court

that it will not do so—is properly met with the sanction of a Rule 41(b) dismissal." *Id.* at 1065.

When, however, "the plaintiff makes an affirmative choice not to amend, and clearly

communicates that choice to the court, there has been no disobedience to a court's order to

amend" so as to "ferment" a "threatened Rule 12(b)(6) dismissal . . . into a Rule 41(b) dismissal . .

. ." *Edwards*, 356 F.3d at 1065.

Here, unlike in *Edwards*, the Court's Order Denying in Part and Granting in Part

Defendant's Motion to Dismiss contained no "ultimatum."  It did not, for example, require GIS to

either to file an amended complaint or a notice of intent not to amend, nor did it provide that if

GIS did not amend its complaint, it would have been deemed to consent to the dismissal of those

claims under Rule 41(b).  Instead, the Order simply provided that GIS "may" amend its complaint

to attempt to state a claim as to those four causes of action—it did not order GIS to either do so or state affirmatively its intent not to. (*See* Doc. 30 at 28:7 ("GIS may file an amended complaint within 14 days of the date of this order.").) GIS timely filed a First Amended Complaint against Guardian, but did not re-plead its previously-dismissed Sixth, Seventh, Eighth, and Ninth Causes of Action. (*See* Doc. 31.)

Because there was no "disobedience" of the Court's Order, or "inaction" by GIS in response to it, the Court will not convert its Rule 12(b)(6) dismissal of GIS's Sixth, Seventh, Eighth, and Ninth Causes of Action in its Original Complaint without prejudice and with leave to amend into a Rule 41(b) "sanction." *See Edwards*, 356 F.3d at 1065 ("Where, however, the plaintiff makes an affirmative choice not to amend, and clearly communicates that choice to the court, there has been no disobedience to a court's order to amend" and Rule 41(b)'s terminating sanctions are not warranted."); *Daniel v. City of Glendale*, No. CV14-3864 VAP (AJW), 2015 WL 5448803, at *6 (C.D. Cal. May 7, 2015) ("Since plaintiff elected not to file a timely amended complaint without adding new parties or new claims, he has exhibited an intent not to amend the claims that were dismissed with leave to amend. Accordingly, the dismissal of those claims with leave to amend for failure to state a claim under Rule 12(b)(6) did not 'ferment into a Rule 41(b) dismissal' for failure to prosecute and comply with orders, and the appropriate course is to dismiss those claims under Rule 12(b)(6).") (quoting *Edwards*, 356 F.3d at 1065)).

Accordingly, the Court GRANTS Guardian's Motion as to its request that the Court amend the Final Judgment to reflect dismissal of GIS's Sixth, Seventh, Eighth, and Ninth Causes of Action in its Original Complaint with prejudice, and DENIES Guardian's Motion to the extent it requests such dismissal under Rule 41(b). As set forth above, the Court shall AMEND the Final Judgment to reflect dismissal of those claims with prejudice under Rule 12(b)(6).

**C.** **Judgment in Favor of GIS on Guardian's First Counterclaim Regarding "Whether Guardian is Entitled to Immediately Terminate the Distributor Agreements Due to GIS's Breaches of Their Express and Implied Terms" Is Proper Given That GIS's Motion for Judgment as a Matter of Law Was Granted on that Claim.**

Finally, Guardian asserts that the Court should correct the Final Judgment to reflect that

Guardian "voluntarily dismissed," prior to Trial, its First Counterclaim insofar as Guardian requested declaratory relief regarding "[w]hether Guardian is entitled to immediately terminate the Distributor Agreements due to GIS's breaches of their express and implied terms." (Doc. 318 at 4.) There was, however, no "voluntary dismissal" of this claim. At no point during the proceedings did Guardian seek to amend its Counterclaims under Federal Rule of Civil Procedure 15(a) to drop this portion of its First Counterclaim—the appropriate procedure in this circumstance, *see* Section III.C, *supra*—nor did Guardian seek an order of dismissal of this claim by the Court under Rule 41(a)(2). Instead, in opposition to GIS's motion for judgment as a matter of law on this claim (*see* Docs. 258, 268 (errata), Guardian merely pointed out that "it does not seek an order that is [sic] can immediately terminate the Agreements . . . .," (*see* Doc. 259 at 10). Guardian did not contend in opposition to GIS's motion—either in briefing or at the hearing—that judgment as a matter of law was inappropriate because it had already "voluntarily dismissed" that portion of its First Counterclaim.

In ruling on GIS's motion, the Court acknowledged that Guardian "appear[ed] to have abandoned its claim," but nevertheless granted the motion:

> GIS argues that it's entitled to judgment as a matter of law on Guardian's request in its first counterclaim for a declaration that it may immediately terminate the agreements. In particular, GIS argues that judgment is appropriate because the parties provided uncontroverted evidence that Guardian never provided the requisite notice and opportunity to cure required by the agreements. Guardian does not contest this assertion. Instead, contrary to the express language of its claim, Guardian now states that its declaratory relief claim does not seek an order that it can immediately terminate the agreements. ***Therefore, Guardian appears to have abandoned its claim seeking a declaration that it may immediately terminate the agreements.*** As it is uncontroverted that Guardian failed to provide the contractually mandated notice and opportunity to cure, ***the Court grants GIS's motion insofar as it requests judgment as a matter of law on Guardian's request in its first counterclaim for a declaration that it may immediately terminate the agreements.***

(Doc. 271 at 8) (emphasis added). Guardian did not seek reconsideration of the Court's ruling or otherwise assert that judgment in favor of GIS on this claim was erroneous because Guardian had previously voluntarily dismissed or abandoned it.

//

The Final Judgment therefore accurately reflects judgment in favor of GIS on Guardian's First Counterclaim regarding "[w]hether Guardian is entitled to immediately terminate the Distributor Agreements due to GIS's breaches of their express and implied terms." Because the Final Judgment does not include a clerical error or omission relating to this portion of Guardian's First Counterclaim, Guardian's Motion is therefore DENIED as to its request that the Court correct the Final Judgment reflect that this claim "was dismissed prior to trial."[7]

## V.    CONCLUSION

For the reasons provided herein, the Court GRANTS IN PART and DENIES IN PART GIS's Motion (Doc. 317) and Guardian's Motion (Doc. 318).

Specifically, the Court GRANTS GIS's Motion (Doc. 317) as to its request that the Court correct the Final Judgment (1) to remove the reference to RPM with respect to the entry of judgment on GIS's First, Second, and Eighth Causes of Action, and (2) to remove the reference to RPM with respect to the entry of judgment on Guardian's First Counterclaim, and shall CORRECT the Final Judgment accordingly. The Court DENIES GIS's Motion as to its request that GIS's First, Second, and Eighth Causes of Action against RPM as the alter ego of Guardian be dismissed without prejudice for want of prosecution. The Court shall AMEND the Final Judgment to dismiss GIS's First, Second, and Eighth Causes of Action against RPM with prejudice under Federal Rule of Civil Procedure 41(b) for want of prosecution.

The Court also GRANTS Guardian's Motion (Doc. 318) as to its request that the Court amend the Final Judgment (1) to reflect dismissal of GIS's Tenth and Eleventh Causes of Action in its Original Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6), and (2) to reflect dismissal of GIS's Sixth, Seventh, Eighth, and Ninth Causes of Action in its Original Complaint with prejudice. The Court DENIES Guardian's Motion as to its request that the Court amend the Final Judgment (1) to reflect dismissal of GIS's Sixth, Seventh, Eighth, and Ninth Causes of Action in its Original Complaint with prejudice under Federal Rule of Civil Procedure

---

[7] Even if the Court were to find that Guardian had voluntarily abandoned its First Counterclaim regarding "[w]hether Guardian is entitled to immediately terminate the Distributor Agreements due to GIS's breaches of their express and implied terms" prior to Trial, the claim would be subject to dismissal *with prejudice* under Rule 41(b), for the reasons set forth above, *see* Section III.C, *supra*.

41(b) for want of prosecution, and (2) to reflect that Guardian "voluntarily dismissed" the portion of its First Counterclaim regarding "[w]hether Guardian is entitled to immediately terminate the Distributor Agreements due to GIS's breaches of their express and implied terms. The Court shall AMEND the Final Judgment to reflect dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6) of GIS's Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action in its Original Complaint.

Finally, the Court, on its own motion, shall CORRECT the Final Judgment to reflect dismissal of GIS's Third Cause of Action, insofar as GIS alleged in this claim that Guardian breached the Bob's Discount Furniture Agreement by selling products to Bob's Discount Furniture in the geographic areas covered by the Pennsylvania, Alabama, Tennessee, Ohio, Indiana, and Midwest Agreements, GIS's Fourth and Sixth Causes of Action, and GIS's Seventh Cause of Action, insofar as this claim relates to the 2015 Form Agreement, as discussed in the Court's January 18, 2017 order, with prejudice under Federal Rule of Civil Procedure 41(b) for want of prosecution.

IT IS SO ORDERED.

Dated:   **January 9, 2018**                    /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE