# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,<br><br>       Plaintiff,<br><br>  v.<br><br>GUARDIAN PROTECTION PRODUCTS, INC., RPM WOOD FINISHES GROUP, INC.,<br><br>       Defendants.<br>_____/<br><br>GUARDIAN PROTECTION PRODUCTS, INC.,<br><br>       Counterclaimant,<br><br>  v.<br><br>G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,<br><br>       Counter-defendant.<br>_____/ | Case No. 1:15-cv-00321-SKO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE COMPLAINT**<br><br>**(Doc. 359)** |

This matter is before the Court on Plaintiff G.P.P., Inc. d/b/a Guardian Innovative Solutions' ("Plaintiff" or "GIS") motion for leave to supplement the complaint filed on February 10, 2020. (Doc. 359.) Defendant Guardian Protection Products, Inc. ("Defendant" or "Guardian") filed an opposition on March 2, 2020, (Doc. 362), and GIS filed a reply on March 9, 2020, (Doc. 363). For the reasons set forth below, the motion is granted.[1]

## I.   RELEVANT BACKGROUND[2]

### A.   Factual Background

GIS is a business that has purchased products from Guardian for over thirty years. Guardian is a Delaware company with its principal place of business in North Carolina that sells furniture and upholstery protection products, furniture warranties, and other related items to distributors such as GIS, who sell the items to retailers and other businesses. (Doc. 67 ¶¶ 1-2.) In 2000, Guardian was acquired by RPM International, Inc. ("RPM"). (*Id.* ¶ 2.) Between 1988 and 2010, GIS and Guardian entered into, either directly or by assignment, a total of nine warehousing distributor agreements covering the territories of the Mid-Atlantic, Cook County, Indiana, Midwest, Pennsylvania, Florida, Alabama, Tennessee, and Ohio. (*See id.* ¶¶ 6–11.) Each agreement would renew automatically so long as GIS met a certain purchasing requirement.[3] (*See id.*)

GIS alleged a series of wrongful acts by Guardian, including (1) franchise disclosure violations; (2) refusal to pay commission due GIS; and (3) improperly terminating the Alabama, Florida, and Tennessee agreements in October 2013 and threatening to terminate the remaining agreements beginning in December 2014, based upon GIS failing to meet per territory purchase

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes. (Docs. 11, 12.)

[2] The Court has previously provided extensive discussions regarding the factual and procedural background of this case. (*See, e.g.,* Doc. 133 at 2–10.) Only the factual and procedural background relevant to the motion before the court is provided here. Unless otherwise noted, the factual background summarizes GIS's allegations as set forth in the second amended complaint ("SAC"), as well as the parties' briefs related to the motion to supplement the SAC. (Docs. 67, 359, 362, 363.)

[3] GIS maintains that it was only required to meet an annual purchase requirement in the aggregate across all territories. (*See* Doc. 359-1 at 6.) Guardian contends that the purchase requirement is properly measured as per territory and monthly. (*See* Doc. 362 at 13.)

quotas in the applicable territories. (*See id.* ¶¶ 13–27.) GIS further alleged that Guardian violated the agreements by directly selling products in GIS's exclusive territory to retail locations associated with Bob's Discount Furniture. (*Id.* ¶¶ 14–16.) To resolve this dispute, GIS and Guardian agreed that Guardian would pay GIS a five percent commission on all sales of Guardian's products made to Bob's Discount Furniture, but Guardian stopped making this payment in December 2014. (*See id.*)

B.     **Procedural Background**

GIS filed this case on February 27, 2015, (Doc. 1), and filed the operative second amended complaint ("SAC") on July 29, 2016, (Doc. 67). The SAC included the following claims: (1) breach of contract relating to the purported termination of the Florida, Alabama, and Tennessee agreements, (*see id*. ¶¶ 53–57); (2) breach of the implied covenant of good faith and fair dealing as to the Florida, Alabama, and Tennessee agreements, (*see id*. ¶¶ 58–64); (3) breach of contract relating to the Bob's Discount Furniture agreement, (*see id.* ¶¶ 65–69); (4) breach of the implied covenant of good faith and fair dealing as to the Bob's Discount Furniture agreement, (*see id.* ¶¶ 70–75); (5) a claim alleging that termination of the Cook County agreement would violate the Illinois Franchise Disclosure Act, (*see id.* ¶¶ 76–90); (6) a claim alleging violation of California Business and Professions Code Sections 17200 to 17210, (*see id.* ¶¶ 91–108); (7) a claim alleging a violation of the California Franchise Investment Law (the "CFIL"), (*see id.* ¶¶ 109–127); (8) breach of the implied covenant of good faith and fair dealing relating to the threatened termination of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest agreements, (*see id.* ¶¶ 128–133); (9) breach of contract as to the Mid-Atlantic agreement, (*see id.* ¶¶ 134–138); and (10) tortious interference with contract against only Defendant RPM, (*see id.* ¶¶ 139–146). GIS requested the following relief in the SAC: (1) "[a] declaration that the Alabama, Florida, and Tennessee Agreements were not properly terminated and are currently valid and in full effect"; (2) "[a] declaration that termination of the Cook County, Illinois, Mid-Atlantic, and Midwest Agreements would violate state law"; (3) compensatory, treble, and punitive damages; (4) pre-judgment interest; and (5) attorneys' fees and costs. (*Id.* at 26.)

Guardian also filed counterclaims, which include the following: (1) requests for declaratory relief regarding (a) "[w]hether Guardian is entitled to immediately terminate the . . . Agreements due to [GIS's] breaches of their express and implied terms," (b) "[w]hether [electronic furniture protection plans ("EFPPs")] qualify as a Guardian Product within the scope of the rights granted by the . . . Agreements," (c) "[if] the [EFPPs] are within the scope of the . . . Agreements, whether Guardian may establish a purchase quota for the [EFPPs] above that applicable to the [o]riginal [p]roducts," and (d) "[w]hether [GIS] has used its best efforts to promote the sale of Guardian Products in the exclusive distribution territories established by the . . . Agreements," (Doc. 36 ¶¶ 26–30); (2) breach of the Florida, Alabama, and Tennessee agreements, (*see id.* ¶¶ 31–34); (3) breach of the implied covenant of good faith and fair dealing as to the Florida, Alabama, and Tennessee agreements, (*see id.* ¶¶ 35–38); (4) breach of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements, (*see id.* ¶¶ 39–42); (5) breach of the implied covenant of good faith and fair dealing as to the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest agreements, (*see id.* ¶¶ 43–46); and (6) breach of California Commercial Code Section 2306, (*see id.* ¶¶ 47–50). In its counterclaims, Guardian requested declaratory relief, as well as compensatory damages, pre-judgment interest, and attorneys' fees and costs. (*Id.* at 36.)

On January 18, 2017, the Court granted in part and denied in the part the parties' cross motions for summary judgment, (Docs. 92, 93, 98), and dismissed GIS's fifth and seventh causes of action, Guardian's sixth counterclaim, and certain other partial claims. (Doc. 133 at 78; *see also* Doc. 161) (granting in part cross-motions for reconsideration and modifying portions of summary judgment order).) Relevant to GIS's current motion, the Court determined that the Florida, Alabama, and Tennessee agreements required GIS to meet monthly, per-territory purchase quotas, as opposed to an annual, aggregate quota. (Doc. 133 at 18.) The Court further found that as to the Florida, Mid-Atlantic and Cook County agreements, purchases of EFPPs should not be counted towards GIS's purchase quota. (*Id.* at 71; Doc. 161 at 4–5.) On May 9, 2017, the Court denied Defendants' successive motion for partial summary judgment. (*See* Doc. 200.) The jury

trial commenced on June 20, 2017, (Doc. 260), and the jury returned a verdict on June 29, 2017, (Doc. 281). The jury found against Plaintiff on all the remaining claims in the SAC, (*see* Doc. 286 at 2–10), and Plaintiff appealed, (*see* Docs. 334, 335).

On October 3, 2019, the U.S. Court of Appeals for the Ninth Circuit reversed in part the Court's "Order Granting in Part and Denying in Part the Parties' Motions for Summary Judgment," (Doc. 133), and the Court's order granting in part and denying in part Defendants' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), (Doc. 266 at 15–16). (Docs. 344, 347.) The Ninth Circuit remanded for trial the following claims: (1) GIS's cause of action for breach of contract relating to the Florida, Alabama, and Tennessee agreements; (2) Guardian's counterclaim insofar as it requested declaratory relief regarding "[w]hether the [electronic] furniture protection plans qualify as a Guardian Product within the scope of the rights granted by the" Florida, Mid-Atlantic, and Cook County Agreements; and (3) GIS's cause of action for breach of contract relating to the Bob's Discount Furniture agreement insofar as GIS alleges that Guardian breached the Bob's Discount Furniture Agreement by selling products to Bob's Discount Furniture in the geographic areas covered by the Florida, Mid-Atlantic, and Cook County Agreements. (Doc. 349 at 2; *see* Doc. 344.) Of particular relevance here, the Ninth Circuit held that this Court "erred in determining that the Florida, Alabama, and Tennessee Agreements require GIS to meet per-territory purchase quotas" and that the Court's "denial of summary judgment should not have foreclosed GIS from proffering evidence and arguing at trial that the Agreements permit aggregate quotas." (Doc. 344 at 3.)

The Court held a telephonic conference following remand on January 16, 2020. (Docs. 349, 354.) The Court set a pretrial conference for July 22, 2020 and the trial date for September 8, 2020, and granted GIS's request for leave to file a motion to supplement pleadings pursuant to Fed. R. Civ. P. 15(d). (Doc. 355 at 2.) GIS filed the motion on February 10, 2020. (Doc. 359.)

**C.     Guardian's Alleged Post-Trial Conduct and GIS's Proposed Supplement to the SAC**

GIS alleges that approximately ten months after the jury's verdict, on May 29, 2018, Guardian sent notices of breach to GIS regarding the Mid-Atlantic, Cook County, and

Pennsylvania agreements, and on February 22, 2019, Guardian sent notices of breach regarding the Indiana and Midwest agreements. (*See* Doc. 359-4 ¶ 29.) Guardian thereafter allegedly terminated the Mid-Atlantic and Cook County agreements on July 30, 2018, the Indiana and Midwest agreements on April 25, 2019, and the Pennsylvania agreement on May 24, 2019. (*Id.* ¶ 31.) GIS states that Guardian expressly relied upon this Court's previous finding in its summary judgment order that the Florida, Alabama, and Tennessee agreements required GIS to meet monthly per-territory quotas to terminate these additional agreements based on GIS failing to meet monthly per-territory quotas. (*See* Doc. 359-2 at 2.)

GIS requests to file a supplemental complaint with a new, eleventh cause of action for "Breach of the Mid-Atlantic, Cook County, Indiana, Midwest, and Pennsylvania Agreements" relating to Guardian's termination of those agreements on July 30, 2018, April 25, 2019, and May 24, 2019. (*Id.* ¶¶ 151–155; *see* Doc. 359-1.) In the alternative, GIS requests that the Court treat the motion as one to amend the complaint and grant leave to amend under Rule 15(a). (Doc. 359-1 at 10.)

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). Rule 15(d) is a "tool of judicial economy and convenience," and is intended to give district courts broad discretion in allowing or disallowing supplemental pleadings. *San Luis & Delta-Mendota Water Authority v. U.S. Dept. of Interior*, 236 F.R.D. 491, 495 (E.D. Cal. 2006); *see also Bittel Technology, Inc. v. Bittel USA, Inc.*, No. C10-00719 HRL, 2011 WL 940300, at *4 (N.D. Cal. Feb. 18, 2011)). The rule "is meant to avoid the costs, delays, and wastes associated with separate actions," and the "Ninth Circuit has even held that a motion to file

6

a supplemental pleading ought to be allowed as of course absent specific reasons to the contrary." *State of California v. United States Department of Labor*, 155 F.Supp.3d 1089, 1098 (E.D. Cal. 2015) (citation and quotation marks omitted). Claims raised in a supplemental complaint "need neither arise out of the same transaction or occurrence nor involve common questions of law or fact." *Id.* (citation omitted). However, supplemental pleadings may not introduce an entirely separate and distinct claim, *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997), and "some relationship must exist between the newly alleged matters and the subject of the original action." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

"In deciding whether to permit a supplemental pleading, a court's focus is on judicial efficiency." *Bailey v. Specialized Loan Servicing, LLC*, EDCV 14-10586-JGB (KKx), 2015 WL 12698452, at *2 (C.D. Cal. Dec. 30, 2015) (citation omitted). Allowing supplementation serves the goals of judicial efficiency if the court determines that the entire controversy between the parties may and should be settled in one action. *Neely*, 130 F.3d at 402. Courts in the Ninth Circuit may also consider the following additional factors: (1) the relatedness of the original and supplemental complaints; (2) whether there is evidence of delay, bad faith, or dilatory motive; (3) whether supplementation would impose undue prejudice on the opposing party; (4) whether the supplement would be futile; (5) whether final judgment has been rendered and whether the district court retains jurisdiction over the case; (6) whether any prior court orders imposed a future affirmative duty upon defendant; and (7) whether the proposed supplemental complaint alleges that the defendants defied a prior court order. *San Luis*, 236 F.R.D. at 497 (citing *Neely*, 130 F.3d at 402; *Keith*, 858 F.2d at 473; *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

**A. The Court Grants GIS's Motion to Supplement the Complaint Under Rule 15(d).**

### 1. Allowing supplementation of the complaint would serve judicial efficiency.

The Court first finds that the interests of judicial efficiency favor granting GIS's motion. The main purposes of Rule 15(d) in the context of judicial efficiency are "to avoid the costs, delays, and wastes associated with separate actions," *State of California*, 155 F.Supp.3d at 1098 (citing *Keith*, 858 F.2d at 473), and to settle the entire controversy between parties in a single action, if appropriate, *Neely*, 130 F.3d at 402.

This Court has extensive knowledge of the complicated and lengthy history of the case, which favors allowing GIS to supplement the complaint and deciding GIS's new claims as part of this action. *See San Luis*, 236 F.R.D. at 499 (allowing supplementation after remand from the Ninth Circuit, where the plaintiffs sought to supplement the complaint to challenge "subsequent administrative interpretations and implementation of the same statutory provision in a later . . . year" because "[t]he district court ha[d] developed extensive knowledge of the relevant law, background, and scientific considerations" of the case). Further, the Ninth Circuit remanded for trial the issue of whether Guardian properly terminated the Florida, Alabama, and Tennessee agreements based upon Guardian's interpretation of the agreements requiring GIS to meet a monthly, per-territory purchase quota. (Doc. 344 at 2–3.) These additional alleged breaches involve the same issue: whether the agreements require GIS to meet a monthly, per-territory purchase quota or an annual, aggregate purchase quota. (*See* Doc. 359-1 at 8–9.) Thus, the purchase quota issue will be before the jury in the limited trial on remand, and adding additional agreements involving the same purchase quota issue will not prejudice the jury or significantly enlarge the scope of the limited trial on remand, since the jury will already be deciding the purchase quota issue as to certain agreements.

As GIS contends, and Guardian does not dispute, "[t]he alternative [to allowing supplementation] would be for GIS to file a second lawsuit concerning identical issues, thereby forcing the parties to duplicate their efforts and creating the risk of inconsistent judgments." (Doc. 363 at 9.) The proposed supplemental complaint will allow the Court to settle the entire controversy between GIS and Guardian in this single action, as opposed to requiring GIS to file a separate action that will "consum[e] administrative and judicial resources" having to "open a new case, randomly assign[] it, go[] through the related-case low number analysis, and initiat[e] Rule 16 scheduling as if this were a new case[.]" *See San Luis*, 236 F.R.D. at 501. Thus, the Court finds that judicial efficiency would be served by allowing supplementation.

**2.   The new allegations in the supplemental complaint are directly related to the allegations in the SAC and are not a "separate and distinct" cause of action for the purposes of Rule 15(d).**

GIS's supplemental complaint asserts new allegations related to the Mid-Atlantic, Cook County, Indiana, Midwest, and Pennsylvania agreements. (Doc. 359-4 ¶¶ 151–155.) These agreements are already at issue in this case in the SAC, (*see* Doc. 67 ¶¶ 128–133); were before the jury at trial, (*see* Doc. 286 at 17–22); and the basis for the alleged breach of those agreements—wrongful termination based on failure to meet purchase quotas—is the same basis for the alleged breach of the Florida, Alabama, and Tennessee agreements (which were before the jury). (*See, e.g.,* Doc. 344.) Further, the Mid-Atlantic, Cook County, Indiana, Midwest, and Pennsylvania agreements are nearly identical in all material respects to the contracts at issue on remand from the Ninth Circuit.[4] Thus, the allegations in the supplemental complaint are directly related to the allegations in the SAC, and occurred after trial in this case, which favors allowing supplementation. *See State of California*, 155 F.Supp.3d at 1093 (after district court had

---

[4] GIS states: "The agreements are identical or nearly identical in material respects. All gave GIS the exclusive rights (even as against Guardian) to sell Guardian products within GIS's designated territories. All renew automatically as long as GIS purchased sufficient products from Guardian to meet a purchase quota. And all prohibit Guardian from increasing the purchase quotas." (Doc. 359-1 at 4.) Guardian does not dispute that the agreements are very similar.

9

previously remanded case to Department of Labor for further proceedings, reopening case and granting the plaintiff leave to file supplemental complaint to address alleged deficiencies in those post-remand proceedings).

Citing *Neely*, Guardian contends that Rule 15(d) cannot be used to introduce a "separate, distinct and new cause of action[.]" (*See* Doc. 362 at 11.) However, *Neely* is inapposite and Guardian "cites *Neely* out of context." *See San Luis*, 236 F.R.D. at 499. In *Neely*, where the original complaint challenged the constitutionality of a statute, the district court entered a final judgment that the statute was unconstitutional, and no party appealed the judgment. 130 F.3d at 401–02. Four years later, the Arizona legislature amended the statute at issue and the plaintiffs filed a motion with the district court to file a supplemental complaint in the case that had been closed for four years. *Id.* at 402. It was in that context that *Neely* held that the plaintiffs could not file a supplemental complaint to "introduce a separate, distinct and new cause of action" because, since the first action had been "settled for some time," there would need to be two separate actions. *Id.* at 402.

Here, not only is the filing of a separate action not required to address the additional alleged breaches by Guardian, as stated above, requiring GIS to file a separate action would unnecessarily consume judicial resources, (*see* Section III.A.1, *supra*). *See San Luis*, 236 F.R.D. at 501. Indeed, GIS's proposed supplemental complaint "is a discrete and logical extension of the original claims in this case" and bears more than the required "some relationship" to the claims in the SAC. *See State of California*, 155 F.Supp.3d at 1099. In fact, because GIS's supplemental complaint is so related to the SAC, the new claims do not constitute an entirely "separate and distinct" cause of action for the purposes of Rule 15(d), despite the fact that GIS captioned the new claims as the "Eleventh Cause of Action." *See Keith*, 858 F.2d at 474 ("[T]he fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance, but only a factor to be considered by the court in the exercise of its discretion[.]").

10

District courts are to use Rule 15(d) for exactly this type of situation, where the supplemental claims are so related to the original claims that "the entire controversy between the parties could be settled in one action[.]" *Neely*, 130 F.3d at 403. Thus, the relatedness factor weighs heavily in favor of allowing supplementation. *See San Luis*, 236 F.R.D. at 499.

### 3. Supplementation would not cause undue prejudice to Guardian.

Prejudice to the opposing party, as with a motion to amend under Rule 15(a), is a valid consideration when determining whether to allow supplemental pleadings under Rule 15(d). *See Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Guardian contends that GIS's supplemental complaint would "vastly expand the scope of the issues remaining to be litigated, and require further lay witness and expert witness discovery and an opportunity for additional dispositive motions." (Doc. 362 at 15.)

The Court agrees that GIS's supplemental complaint may require some limited discovery related to an updated damages calculation. However, an updated damages calculation may be required regardless of whether supplementation is allowed. (*See* Doc. 363 at 7.) Further, Guardian does not specify what additional discovery would be needed, and the Court does not find that any dispositive motion briefing is appropriate in any event. In sum, Guardian's rights are equally protected by addressing these additional alleged breaches in this lawsuit as by Guardian addressing the breaches in additional lawsuits. *See Friedman v. Typhoon Air Conditioning Co.*, 31 F.R.D. 287, 290 (E.D.N.Y. 1962) ("[A] supplemental complaint should be allowed in the interests of judicial economy and the speedy disposition of cases, if the defendant is not prejudiced, as where its rights on the merits are as well protected by trial on a supplemental complaint as by trial in a new action[.]"). Thus, the Court finds the prejudice factor weighs in favor of allowing supplementation.

### 4. The proposed supplemental complaint is not futile.

Guardian also contends that supplementation should be denied because the new allegations would be subject to dismissal. (Doc. 362 at 15.) The Court disagrees. To state a cognizable claim for breach of contract, the plaintiff must plead (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff. *Walsh v. West Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (1998). GIS alleges the existence of a contract (the Mid-Atlantic, Cook County, Indiana, Midwest, and Pennsylvania agreements); Guardian's breach (terminating the agreements without cause); and performance and damages (that GIS has performed all of its obligations under the agreements and has been damaged by Guardian's breach). (*See* Doc. 359-4 at 29.) These allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss and thus the proposed supplemental complaint is not futile. *See G.P.P., Inc. v. Guardian Protection Products, Inc.*, No. 1:15-cv-00321-SKO, 2015 WL 3992878, at *7 (E.D. Cal. June 30, 2015).

### 5. There is no evidence of bad faith, undue delay, or dilatory motive.

Next, the Court finds no evidence that GIS is seeking to supplement the complaint in bad faith or with a dilatory motive. The alleged breaches occurred between July 2018 and April 2019, while this case was still on appeal with the Ninth Circuit. Thus, GIS was unable to supplement its complaint until the case was remanded to the district court, and sought to supplement the complaint at the earliest opportunity following remand. (*See, e.g.,* Doc. 355.) In any event, contrary to Guardian's contention, "delay in and of itself is not sufficient reason to deny a motion to supplement the complaint[.]" *San Luis*, 236 F.R.D. at 500 (quoting *Bromley v. Michigan Educ. Association-NEA*, 178 F.R.D. 148, 154 (E.D. Mich. 1998)).[5] Thus, this factor weighs in favor of allowing supplementation under Rule 15(d).

---

[5] As to Guardian's contention that GIS was obligated to bring a claim for declaratory relief as to the Mid-Atlantic, Cook County, Indiana, Midwest, and Pennsylvania agreements in the SAC, Guardian provides no legal authority for

### 6. The remaining factors are neutral.

As for the remaining factors, the district court retains jurisdiction over the case following the Ninth Circuit's remand, no prior court orders imposed a future affirmative duty upon Guardian, and the proposed supplemental complaint does not allege that Guardian defied any court order. *See San Luis*, 236 F.R.D. at 497. On balance, the relevant factors weigh in favor of granting GIS's motion and allowing GIS to file the proposed supplemental complaint.

## B. The Court Will Allow Limited Discovery on the Supplemental Complaint.

As stated above, Guardian contends that additional discovery is needed as to the allegations in the supplemental complaint, and GIS agrees. (Doc. 362 at 5.) Both parties state an updated damages calculation will be necessary but do not sufficiently state any other specific discovery will be needed. The parties appear to already have in their possession some documents relevant to the subsequent breaches, (*see* Docs. 359-5, 359-6, 359-7), and neither party explains what other documentation they may need that they do not already have in their possession. Thus, the additional discovery will be limited to discovery on the issues of damages that have occurred since the trial in this case and as a result of the additional breaches. The Court will allow each side to take one Rule 30(b)(6) deposition each, related to discovery on damages, and to serve any limited written discovery necessary to conduct those depositions.

## IV. CONCLUSION AND ORDER

Accordingly, IT IS ORDERED:

1. Plaintiff's motion for leave to supplement the complaint, (Doc. 359), is GRANTED. Within two (2) days of the date of this order, Plaintiff shall file a supplemental complaint on the docket, that conforms in substance to the draft supplemental complaint submitted with its motion, (Doc. 359-3).

---

that contention and the Court is aware of no legal authority requiring a party to bring a claim for declaratory relief in anticipation of breaches that would not happen until years later.

2.      Within seven (7) days after the date of service of the supplemental complaint, Defendants shall file an answer to the supplemental complaint.

3.      Discovery is reopened for the limited purpose of addressing the issue of damages that have occurred since the trial in this case and as a result of the additional alleged breaches. Each side is limited to one Rule 30(b)(6) deposition of no more than seven (7) hours, and any limited necessary written discovery directly related to the depositions. This discovery shall be completed by no later than **June 30, 2020**.

4.      This order does not affect any other dates in the case, and the September 8, 2020, jury trial date remains unchanged.

IT IS SO ORDERED.

Dated:   **May 22, 2020**                           /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE