# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GUARDIAN PROTECTION PRODUCTS, INC., RPM WOOD FINISHES GROUP, INC.,<br><br>　　　　　Defendants.<br>_____/ | Case No.  1:15-cv-00321-SKO<br><br>**ORDER RE: DEFENDANT'S MOTION FOR RECONSIDERATION OF JANUARY 15, 2021 ORDER, OR ALTERNATIVELY TO CERTIFY FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>**(Doc. 405)**<br><br>**ORDER VACATING PRETRIAL CONFERENCE AND BRIEFING SCHEDULE** |

## I.    INTRODUCTION

In this action, Plaintiff G.P.P., Inc. d/b/a Guardian Innovative Solutions ("GIS") alleges that Defendant Guardian Protection Products, Inc. ("Guardian") breached several warehousing distributor agreements that provided GIS the exclusive right to distribute certain Guardian products in certain geographic areas throughout the United States. (*See* Doc. 367.) On January 15, 2021, after an appeal and remand for trial on GIS's claim that Guardian breached three of the agreements, this Court entered an order determining the "law of the case" with respect to these agreements based on a passage of the appellate court's memorandum disposition. (Doc. 402.) Guardian moves for reconsideration of this portion of the Court's January 15, 2021 order, or alternatively to certify it for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), asserting that the passage in the memorandum disposition on which this Court based its law-of-the-case determination is not binding. (*See* Docs.

405, 411.) GIS opposes Guardian's motion and contends that the Court correctly held that the subject passage constituted the law of the case.[1] (*See* Doc. 407.)

Determination of the law of the case requires interpretation of the memorandum disposition and would resolve important questions regarding the scope of the retrial of the remanded claim. For the reasons that follow, Guardian's request to certify under 28 U.S.C. § 1292(b) for immediate appeal a portion of the Court's January 15 order determining the law of the case shall be granted. The order shall be amended to certify for immediate appeal clarification of whether following passage from the Ninth Circuit's memorandum disposition ("Memorandum") constitutes the law of the case that binds the parties on retrial:

> Because the written terms of the Agreements do not exclude an interpretation that the purchase quotas are calculated in the aggregate, *the undisputed facts of the parties' course of performance is evidence of the parties' expressed intent as to what constitutes performance, and the district court should have interpreted the Agreements to require that GIS meet only aggregate purchase quotas*.

*G.P.P. Inc. v. Guardian Prot. Prod., Inc.*, 788 F. App'x 452, 454 (9th Cir. 2019) (unpublished memorandum disposition) (emphasis added). The sole issue consists of Guardian's request to introduce extrinsic evidence of the parties' course of performance at the retrial of the remanded claim to support its argument that these three agreements contain per territory—as opposed to aggregate—purchase quotas. The Court's January 15, 2021 order determining the law of the case as to these agreements adhered to the above-quoted passage of the Memorandum and will be amended to be certified. Guardian's motion for reconsideration will therefore be denied as moot.

## II. RELEVANT BACKGROUND[2]

Defendant Guardian is a provider of various furniture protection products, including stain removers, pre-treatment products, and furniture warranties (also called "furniture protection plans"). Plaintiff GIS had been a distributor of Guardian's products for over thirty years. Between 1988 and 2010, GIS and Guardian entered into, either directly or by assignment, eight warehousing distributor

---

[1] The matter was deemed suitable for decision without oral argument pursuant to Local Rule 230(g) and the March 3, 2021, hearing vacated. (Doc. 412.)

[2] The Court has previously provided extensive discussions regarding the factual and procedural background of this case. (*See, e.g.,* Doc. 133 at 2–10; Doc. 200 at 2–5; Doc. 332 at 2–16.) Only background relevant to the instant motion is included here.

agreements covering the territories of Florida (the "Florida Agreement"), Alabama (the Alabama Agreement"), Tennessee (the "Tennessee Agreement"), Pennsylvania (the "Pennsylvania Agreement"), Mid-Atlantic (the "Mid-Atlantic Agreement"), Cook County (the "Cook County Agreement"), Indiana (the "Indiana Agreement"), and Midwest (the "Midwest Agreement") (collectively, the "Agreements").[3] (*See* Doc. 367 ¶¶ 6–11.) GIS's exclusive right to distribute Guardian's products in these eight territories under the Agreements automatically renewed so long as GIS met a minimum purchase requirement or "quota." (*See id*.)

GIS filed this lawsuit in February 2015 (Doc. 1), and filed its (now superseded) second amended complaint ("SAC") in July 2016. (Doc. 67.) In the SAC, GIS claimed, *inter alia*, that Guardian breached the Alabama, Florida, and Tennessee Agreements by terminating them without proper cause. (*See* Doc. 67 ¶¶ 53–57.) Guardian denied GIS's contentions and further asserted, *inter alia*, that GIS failed to satisfy its minimum purchase quota under those Agreements. (*See* Doc. 86 at 17; Doc. 225 at 3.)

In January 2017, the Court granted in part and denied in the part the parties' cross motions for summary judgment. (Doc. 133 at 78.) Pertinent to the instant motion, the Court determined that the Alabama, Florida, and Tennessee Agreements required GIS to meet monthly, per-territory purchase quotas, as opposed to an annual, aggregate quota. (*Id*. at 18.) It denied summary judgment on GIS's claim of breach of those Agreements, finding the existence of "pervasive genuine issues of material fact" as to GIS's performance, Guardian's breach, and GIS's damages. (*Id*. at 26.)

A jury trial commenced in June 2017. At trial, the jury was instructed, in accordance with the Court's prior determination on summary judgment, that "[t]he Alabama, Florida, and Tennessee Agreements contain at least monthly purchase quotas for the geographic area(s) covered by each agreement." (Doc. 284 at 42.) The jury found that Guardian's termination of the Alabama, Florida, or Tennessee Agreements did not constitute breach of those Agreements (*see* Doc. 268 at 2), and the Court entered final judgment in favor of Guardian on GIS's claim of breach (*see* Doc. 334 at 2).

In February 2018, GIS appealed the Court's denial of its motion for summary judgment on

---

[3] The parties also entered into a ninth agreement covering the State of Ohio (the "Ohio Agreement"), which is the subject of a separate lawsuit. *See Guardian Protection Products, Inc. v. G.P.P., Inc*., Case No. 1:20-cv-01680-DAD-EPG (E.D. Cal.) (filed Nov. 24, 2020).

3

its claim of breach of the Alabama, Florida, and Tennessee Agreements. (*See* Doc. 335.) After the trial but before the Ninth Circuit ruled on GIS's appeal, Guardian terminated the remaining Cook County, Mid-Atlantic, Midwest, Indiana, and Pennsylvania Agreements on grounds that GIS "failed to meet the specified monthly purchase obligations" for those territories. (Doc. 359-1 at 7; Doc. 359-6 at 2; Doc. 362 at 8.)

On appeal, the Ninth Circuit held, in an unpublished memorandum disposition, that this Court "erred in determining that the [] Agreements require GIS to meet per-territory purchase quotas" and it reversed and remanded to this Court "for trial on GIS's claim that Guardian breached the three Agreements." *G.P.P. Inc.*, 788 F. App'x at 454. Its stated reason for reversal and remand is as follows:

> California law required the district court to consider the evidence offered by GIS to show the parties' course of performance with respect to the purchase quotas when interpreting the Agreements. The district court refused to consider this evidence and instead relied on language in the Florida Agreement (which was located in an addendum executed four months after the Agreement itself) that stated merely what the purchase quota would be, upon the addition of the remaining counties in Florida, for representing the whole State of Florida. And, in interpreting the Alabama and Tennessee Agreements, the district court mistook GIS's right to represent Guardian in those States with an obligation to satisfy purchase quotas specifically allocated to them. In short, the contractual provisions cited by the district court do not impose a per-territory purchase requirement on GIS. *Because the written terms of the Agreements do not exclude an interpretation that the purchase quotas are calculated in the aggregate, the undisputed facts of the parties' course of performance is evidence of the parties' expressed intent as to what constitutes performance, and the district court should have interpreted the Agreements to require that GIS meet only aggregate purchase quotas.* Nonetheless, given that there was at least a triable issue on the amount of any damages suffered by GIS, the district court correctly denied GIS's motion for summary judgment. Still, the district court's denial of summary judgment should not have foreclosed GIS from proffering evidence and arguing at trial that the Agreements permit aggregate quotas. Accordingly, we reverse and remand to the district court for trial on GIS's claim that Guardian breached the three Agreements.

*Id*. (internal citations omitted) (emphasis added).

On remand, the Court permitted GIS to supplement the SAC to allege an additional claim of breach of contract as a result of Guardian's post-trial termination of the Cook County, Mid-Atlantic, Indiana, and Midwest Agreements based on the failure to meet purchase quotas. (*See* Docs. 355, 366.) GIS's supplemental complaint, which is now the operative pleading, was filed in May 2020.

4

1  (Doc. 367.)

2  After conducting discovery on the remanded and supplemental claims (which resulted in several disputes, *see* Docs. 366, 372, 378, 382, 386, 388, 392, 398), the parties submitted a joint pretrial statement in which they disagreed about the nature of the law of the case established by the appellate court's memorandum disposition. (*See* Doc. 399 at 25, 31–32.) In lieu of the pretrial conference, which was vacated light of the coronavirus (COVID-19) outbreak, the resultant courthouse restrictions, as well as the uncertainty surrounding courthouse availability in the future (Doc. 400), the Court held a status conference. (Doc. 402.) At the conference, the Court noted the parties' dispute regarding the law of the case and indicated a written order would be forthcoming addressing the issue.

Following the conference, on January 15, 2021, the Court entered an order regarding the scope of trial. (Doc. 402.) The order, which is the subject of the instant motion, addressed the parties' dispute regarding the law of the case:

> As indicated in the Joint Pretrial Statement, the parties continue to dispute the effect of the Ninth Circuit's Memorandum opinion on the claims to be tried in this case and defenses to those claims. (See Doc. 399 at 25, 27, 31–34, 41.) As such, the Court holds as follows: The Ninth Circuit found that the "undisputed facts of the parties' course of performance" is that the Florida, Alabama, and Tennessee Agreements "require that GIS meet only aggregate purchase quotas." (Doc. 344 at 3.) This is the law of the case as to those Agreements, *see Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995), and will be given to the jury;

(*Id*. at 2.)

Guardian filed the instant motion on February 3, 2021. Relying predominantly on *Snapp v. United Transp. Union*, 889 F3d 1088 (9th Cir. 2018), Guardian asserts that the above-quoted portion of the Court's January 15, 2021 order is erroneous because the subject passage in the appellate court's memorandum disposition on which the Court relies does not meet the criteria for the law of the case. (*See* Doc. 407 at 2.) Guardian further contends that even if subject passage were the law of the case, its application would result in "manifest injustice" and, because it does not apply to the five other Agreements at issue in the case, would result in juror confusion. (*See id*.) Guardian alternatively requests that the issue be certified for interlocutory appeal under 28 U.S.C. § 1292(b) because it involves a controlling issue of law, there is substantial ground for difference of opinion,

and an immediate appeal would materially advance the ultimate termination of the litigation. (*See id.*)

GIS counters that the Court correctly determined that the subject passage in the memorandum disposition is the law of the case because it is an "express ruling" by the Ninth Circuit. (Doc. 407 at 16.) According to GIS, the Court has no discretion but to instruct the jury at the retrial that the Alabama, Florida, and Tennessee Agreements contain aggregate quota requirements. (*Id.* at 14, 21.) Finally, GIS opposes Guardian's request for interlocutory appeal, asserting that there is no substantial ground for difference of opinion of the meaning of the appellate court's memorandum disposition and that such appeal would only serve to delay the litigation and prejudice GIS. (*Id.* at 25.)

### III.    DISCUSSION

"[T]he undisputed facts of the parties' course of performance is evidence of the parties' expressed intent as to what constitutes performance, and the district court should have interpreted the Agreements to require that GIS meet only aggregate purchase quotas." *G.P.P. Inc.*, 788 F. App'x at 454. Despite this seemingly clear language from the appellate court's memorandum disposition, there is a plausible argument that it should not be deemed law of the case.

The Memorandum does not cite to any "undisputed facts of the parties' course of performance." *Id.* The legal authority it cites for this statement, *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* stands for the unremarkable proposition that extrinsic evidence is admissible when relevant to prove a meaning to which the language of a contract is reasonably susceptible. 69 Cal. 2d 33, 37–38. In *Pacific Gas & Elec. Co.*, instead of instructing the trial court to give the contract a certain meaning, the California Supreme Court held that the trial court erred in refusing to consider extrinsic evidence of an interpretation contrary to the one it found based on the "plain meaning" of the contract. *See id.* at 36, 40–41. Thus, one could conclude from the lack of factual citation and reliance on general legal principles that the above-quoted language from the memorandum disposition was a "less-than-complete" statement and not intended to be the law of the case. *Snapp*, 889 F.3d at 1096. If so, Guardian would be permitted to adduce evidence and argue at trial that the Alabama, Florida, and Tennessee Agreements required per-territory purchase

quotas, as would be this Court's inclination.

More importantly, the memorandum disposition arguably contemplated that the quota issue would be a triable one, observing that the "district court's denial of summary judgment should not have foreclosed GIS from proffering evidence and arguing at trial that the Agreements permit aggregate quotas." *G.P.P. Inc.*, 788 F. App'x at 454. Had the "undisputed facts" necessitated a finding on summary judgment that the Agreements "required that GIS meet only aggregate purchase quotas," then presumably it would not have been necessary for GIS to "proffer[] evidence" of or make any "argu[ment] at trial" about the meaning of the Agreements' quota requirements.[4] It appears the real problem the Ninth Circuit had with this Court's summary judgment order is that, like *Pacific Gas & Elec. Co.,* it prevented the introduction of extrinsic evidence and argument at trial whether the purchase quotas were measured in the aggregate or per territory, to the detriment of GIS. A conclusive finding that the quotas were measured in the aggregate would have had resulted in the same problem, albeit this time to the detriment of Guardian.

A more consistent reading of the subject passage for purposes of determining the law of the case, therefore, is that *neither* party should be foreclosed from proffering evidence and making arguments at the retrial about the meaning of the quota requirements. Such interpretation better comports with the ultimate disposition of the appeal, which upheld the denial of summary judgment as a result of "at least" a triable issue of fact as to GIS's damages yet reversed and remanded for trial its claim for breach of the Agreements. *See Snapp*, 889 F.3d at 1096 (rejecting application of the law of the case doctrine where there was no indication that the statement at issue "was necessary for resolution of the appeal.").

However, this Court cannot in good faith ignore the language from the appellate court's memorandum disposition that it "should have interpreted the Agreements to require that GIS meet only aggregate purchase quotas." For the law of the case to apply, "the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (*quoting Liberty Mutual*

---

[4] It is for this reason that, prior to its January 15, 2021 order, the Court observed, outside the context of determining the law of the case, that the quota issue was subject to retrial. (*See, e.g.*, Doc. 355; Doc. 366.)

*Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982)). "The rule of mandate is similar to, but broader than, the law of the case doctrine" and provides that "[a] district court, upon receiving the mandate of an appellate court 'cannot vary it or examine it for any other purpose than execution.'" *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995); *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995) ("When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.") (citing *Firth v. U.S.*, 554 F.2d 990, 993 (9th Cir. 1977).

The issue of whether the Alabama, Florida, and Tennessee Agreements require that GIS meet only aggregate purchase quotas may have been, as GIS argues, "decided explicitly" in the affirmative and thus would be law of the case. *Milgard*, 902 F.2d at 715. If so, this Court has no discretion to depart from the appellate court's determination and is required, as it found on January 15, 2021, to proceed in accordance with it. *Cote*, 51 F.3d at 181; *Odima,* 53 F.3d at 1497. Yet whether the Ninth Circuit intended in its Memorandum to establish the law of the case with respect to the interpretation of Agreements' quota requirement is, as set forth above, less than clear. *See Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006) ( "[A] district court is limited by this court's remand in situations where the scope of the remand is *clear*.") (emphasis added).

Accordingly, the Court finds that the portion of its January 15, 2021 order determining the law of the case as to the purchase quota requirements in the Alabama, Florida, and Tennessee Agreements based on the appellate court's memorandum disposition is suitable for certification under 28 U.S.C. § 1292(b). *Cf. Cty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1241 (9th Cir. 2009) (noting withdrawal of earlier opinion due to district court's certification for immediate appeal under 28 U.S.C. § 1292(b) following remand so that the appellate court "could clarify a statement in the [remand] opinion that had an unexpected bearing on a discovery issue."), *rev'd on other grounds sub nom. Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110 (2011).

The determination and application of the rule of mandate and law of the case on remand "involves a controlling question of law," which neither party disputes. As evidenced by this litigation, there is a "substantial ground for difference of opinion" as to the effect of the language in the appellate court's Memorandum that goes beyond mere disagreement with the Court's order.

Finally, an immediate appeal from the January 15 order "may materially advance the ultimate termination of the litigation." Determination of the law of the case at this stage is necessary to define the scope of the trial on remand and could avoid protracted pretrial motion practice. It could mitigate—or eliminate—the risk of inconsistent findings by the jury as to the eight Agreements, all of which have identical language regarding purchase quotas and, arguably, the same or similar course of performance evidence. Resolution of the parties' parallel lawsuit concerning their ninth agreement, the Ohio Agreement, would also be furthered by the appeal. *See Guardian Protection Products, Inc. v. G.P.P., Inc.*, Case No. 1:20-cv-01680-DAD-EPG (E.D. Cal.) (filed Nov. 24, 2020).

### IV.   ORDER

For the foregoing reasons, it is HEREBY ORDERED that:

1. Guardian's motion for reconsideration of the Court's "Order Re Scope of Trial, Setting Briefing Schedule, and Resetting Pretrial Conference" entered January 15, 2021, or alternatively for certification for immediate appeal under 28 U.S.C. § 1292(b) (Doc. 405), is GRANTED IN PART and DENIED IN PART as follows:

    a. Guardian's request for certification under 28 U.S.C. § 1292(b) is GRANTED. The Court AMENDS its "Order Re Scope of Trial, Setting Briefing Schedule, and Resetting Pretrial Conference" (Doc. 402) to certify the following the portion for immediate appeal under 28 U.S.C. 1292(b):

    **The Ninth Circuit found that the "undisputed facts of the parties' course of performance" is that the Florida, Alabama, and Tennessee Agreements "require that GIS meet only aggregate purchase quotas." (Doc. 344 at 3.) This is the law of the case as to those Agreements,** *see Odima v. Westin Tucson Hotel***, 53 F.3d 1484, 1497 (9th Cir. 1995), and will be given to the jury**; and

    b. Guardian's request for reconsideration is DENIED as MOOT.

2. The Pretrial Conference set for June 30, 2021, is VACATED, to be re-set upon resolution of the appeal.

3. The briefing schedule set in the Court's January 15, 2021 order is VACATED, to be re-set

upon resolution of the appeal.

IT IS SO ORDERED.

Dated:     **March 11, 2021**                              /s/ *Sheila K. Oberto*
                                                     UNITED STATES MAGISTRATE JUDGE