**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| G.P.P., INC. d/b/a GUARDIAN INNOVATIVE SOLUTIONS,<br><br>Plaintiff,<br><br>v.<br><br>GUARDIAN PROTECTION PRODUCTS, INC. and RPM WOOD FINISHES GROUP, INC.,<br><br>Defendants.<br>_____/ | Case No. 1:15-cv-00321-SKO<br><br>**ORDER DENYING PLAINTIFF'S JOINT MOTION FOR A NEW TRIAL AND RENEWED JUDGMENT AS A MATTER OF LAW**<br><br>(Doc. 502) |

## I. INTRODUCTION

Pending before the Court is Plaintiff G.P.P., Inc. d/b/a Guardian Innovative Solutions ("GIS")'s joint motion for a new trial and renewed motion for judgment as a matter of law. (Doc. 502.) Defendant Guardian Protection Products, Inc. ("Guardian") opposes GIS's motion. (Doc. 503.) The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument. The hearing set for February 9, 2022, was therefore vacated. (Doc. 506.)

Having carefully considered the arguments raised by both parties and for the reasons set forth below, the Court will deny GIS's joint motion for a new trial and renewed motion for judgment as a matter of law. (Doc. 502.)

## II.     DISCUSSION[1]

**A.     Motion for a New Trial on GIS's Damages Claim for Breach of the Warehousing Distributor Agreements**

1.     <u>Legal Standard</u>

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Although Rule 59 does not specify the grounds on which a new trial may be granted, "the court is bound by those grounds that have been historically recognized." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations and citation omitted). A court may order a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (internal quotations and citation omitted).

A new trial may also be warranted where erroneous evidentiary rulings "substantially prejudiced" a party. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (internal quotations and citation omitted). This requires the moving party to demonstrate that "more probably than not" the evidentiary error "tainted the verdict." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008). A harmless error by the district court does not justify disturbing a jury's verdict. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434,1439 (9th Cir. 1990).

Finally, a court's failure to provide adequate jury instructions may also provide a basis for a new trial unless the error was harmless. *See Watson v. City of San Jose*, 800 F.3d 1135, 1140–41 (9th Cir. 2015); *see also Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). "Prejudicial error results from jury instructions that, when viewed as a whole, fail to fairly and correctly cover the substance of the applicable law." *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002). "The Court need not use the precise words of an offered instruction and an

---

[1] The parties are familiar with the underlying facts and procedural history and the Court will not repeat them here, except as necessary for the adjudication of the instant motion.

instruction is sufficient if it correctly states the principle of law." *Inv. Serv. Co. v. Allied Equities Corp.*, 519 F.2d 508, 511 (9th Cir. 1975).

    2.    Analysis

GIS moves for a new trial on damages as to GIS's claim for breach of the Warehousing Distributor Agreements ("WDAs") asserting that the Court made four "erroneous legal and evidentiary rulings" that were "extremely prejudicial to GIS's entire case." (Doc. 504 at 3.) First, Plaintiff contends the Court erred by allowing Guardian to refer to, and instructing the jury on, certain findings made by the prior jury. (Doc. 502-1 at 6–10.) GIS claims it was prejudiced because the error led the jury to believe that GIS was a "bad actor" and "not worthy of receiving the full value of its damages." (*Id*. at 10.) Second, GIS asserts the Court erred by permitting Guardian's witnesses to testify that they believed the WDAs required per-territory, as opposed to aggregate, purchase quotas, and this prejudiced GIS because it "limited the jury's damage award." (*Id*. at 10–11.) Third, GIS contends that the Court erred by allowing Guardian to present testimony by Jed Rovin and to argue a limitation-of-damages defense to the jury. (*Id*. at 11–14.) GIS argues that it was prejudiced because permitting such defense allowed Guardian to "anchor the jury to a low and baseless damages figure that came out of nowhere." (Doc. 504 at 6.) Lastly, GIS argues the Court erred by permitting Guardian's counsel to make "a number of false statements to the jury" and prejudiced GIS by "unfairly limit[ing] GIS's ability to address them." (Doc. 502-1 at 14.) The Court addresses each argument in turn.

    a.    ***Prior Jury Findings***

At the first trial in this case, the jury expressly found that GIS "breach[ed] the non-competition provisions of" the WDAs. (Doc. 286, Forms E3 & G1.) The prior jury also found that GIS "unfairly interfere[d] with Guardian's right to receive the benefits of" the WDAs. (*Id.*, Forms F1 & H1.)

Prior to the second trial, the Court determined that these prior jury findings were "law of the case." (Doc. 443 at 10–11.) The jury at the second trial was also given these findings in an instruction titled "Matters Already Resolved." (*See* Doc. 495 at 42.)

GIS contends that the Court erred by permitting Guardian to refer to, and by instructing the

3

jury on, these findings[2] in the second trial. (*See* Doc. 502-1 at 6–10; Doc. 504 at 3–5.) However, GIS doesn't challenge the ability of a party to refer to, or the Court to instruct on, the law of the case generally. Rather, GIS takes issue with the law of the case that was provided to the jury here, on the basis that it was incorrectly determined by this Court in its prior ruling. In so doing, GIS merely reargues its previous position advanced exhaustively, and unsuccessfully, in both its pretrial briefing (*see* Doc. 428 at 27–34; Doc. 431 at 29–32; Doc. 433 at 7–9) and its motion in limine (*see* Doc. 448 at 19, 22, & n. 4), effectively urging the Court to reconsider—for the second time—its prior law of the case determination. (*See* Doc. 446 (denying GIS's motion for reconsideration).) The Court once again stands by its prior ruling that the first jury's findings that GIS "breach[ed] the non-competition provisions of" the WDAs and "unfairly interfere[d] with Guardian's right to receive the benefits of" the WDAs are law of the case for purposes of the second trial, *see* Doc. 443 at 10–11, and thus it was not error for the Court to permit Guardian to refer to, and to instruct the jury on, those findings.

Even if it were persuaded by GIS's reiteration of its previous arguments, GIS was not prejudiced by the reference to and instruction on the prior jury findings. *See Dunlap v. Liberty Nat. Prod., Inc.*, 878 F.3d 794, 798 (9th Cir. 2017) ("Where 'it is more probable than not that the jury would have reached the same verdict had it been properly instructed,' the erroneous instruction is harmless.") (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009). GIS's claim that these findings induced the jury into believing GIS was a "bad actor" is belied by the fact that the jury found in GIS's favor on its claim against Guardian for breach of the WDAs (and that it was not barred by the doctrine of "unclean hands"). (*See* Doc. 498 at 2–4.) GIS's contention that the jury believed it was "not worthy of receiving the full value of its damages" because of the prior jury findings (*see* Doc. 502-1 at 10) is mere speculation. GIS does not articulate how these findings adversely influenced the jury's determination of damages, and there is no indication in the record that they did. In fact, the jury awarded $6 million to GIS.[3] (*See* Doc. 498 at 4.) The

---

[2] GIS characterizes these findings in their motion as "Guardian's dreamGUARD defenses." (*See, e.g.*, Doc. 502-1 at 6–8.)

[3] The jury found GIS's economic damages for Guardian's breach of the WDAs totaled $12 million, but it could have avoided $6 million in damages with "reasonable efforts or expenditures" (Doc. 498 at 3–4). A jury's award of

4

Court concludes that GIS's unsupported assertions of prejudice are insufficient to meet GIS's burden on a motion for a new trial.

### b. WDA Quota Language

GIS next asserts that the Court erred in permitting Guardian's witnesses to testify at trial as to their belief that the WDAs require GIS to meet per-territory, as opposed to aggregate, purchase quotas. GIS contends this testimony directly contravenes the law of the case that the quota provisions in the WDAs require GIS to meet only aggregate purchase quotas and is therefore irrelevant and prejudicial. (*See* Doc. 502-1 at 10–11; Doc. 504 at 5–6.)

The Court addressed the admissibility of the WDA quota requirement in ruling on GIS's motion in limine prior to the second trial. (*See* Docs. 448, 463.) The Court granted GIS's motion to preclude Guardian from proffering any "evidence, testimony, or argument that contradicts the law of the case that the quota provisions in the [WDAs] require GIS to meet only aggregate, not per-territory, purchase quotas," but denied the motion to exclude any evidence, testimony, or argument that an aggregate quota is unfair or prejudicial to Guardian. (Doc. 463 at 1–2) The Court reasoned that "[e]vidence that Guardian believed the [WDAs] were unfair or prejudicial is relevant and admissible, for example, to rebut evidence adduced by GIS of Guardian's motive in terminating the [WDAs]." (Doc. 484 at 5:13–18.) The Court reiterated its ruling over the objection of GIS at trial (*See* Doc. 502-2 at 74:77:3.)

In keeping with the Court's ruling, and as GIS's cited examples demonstrate, Guardian's witnesses testified *only* as to their <u>belief</u> that the WDAs required per-territory purchase quotas based in part on the terms of the WDAs—not that the WDAs <u>in fact</u> required them. (*See* Doc. 502-1 at 11; Doc. 504 at 6.) This testimony was offered to rebut testimony by GIS witnesses, which the Court permitted[4], that Guardian "knew that these [purchase quotas] were aggregate."[5]

---

damages is generally entitled to "great deference." *See In re First All. Mortg. Co*., 471 F.3d 977, 1001 (9th Cir. 2006).

[4] The Court sided with GIS and denied Guardian's motion in limine to exclude evidence of Guardian's motive and intent, finding that "[e]vidence of Guardian's motive and/or intent is relevant to the claims and defenses in this case, including, for example, determining whether GIS' breach of the non-compete was material." (Doc. 484 at 12:13–20; *see also* Doc. 463 at 2.)

[5] GIS then relied on this testimony to argue to the jury that Guardian's termination of the WDAs based on per-territory quotas was a "sham" that was "manufacture[d]" as part of a "scheme" to "deprive GIS of its opportunity to share in the fruits of its own hard work." (Doc. 502-6 at 88:1–14.)

1  (Doc. 502-3 at 22:2–3 (C. Nolan).)  *See also id*. at 12:15–17 ("Q. And you said there was certainly
2  no confusion about [sic] GIS about [what these quotas were, that they were aggregate] or at
3  Guardian.  Do you remember that?  A. I remember that.").)  *See United States v. Whitworth*, 856
4  F.2d 1268, 1285 (9th Cir. 1988) ("Under the rule of curative admissibility, or the 'opening the
5  door' doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the
6  court's discretion, to introduce evidence on the same issue to rebut any false impression that might
7  have resulted from the earlier admission.").

8  GIS fails to demonstrate that testimony by Guardian's witnesses about their belief that
9  WDAs require GIS to meet per-territory purchase quotas was introduced in violation of the
10 Court's motion in limine ruling or was improper rebuttal evidence.  The Court finds that the
11 testimony was not admitted in error.

12 Even if it were error to allow the testimony, GIS has not shown that it suffered substantial
13 prejudice.  *See Ruvalcaba*, 64 F.3d at 1328.  GIS asserts that allowing testimony about Guardian's
14 belief that the WDAs' quotas were measured per-territory led the jury to believe that its "position
15 was unreasonable."  (Doc. 504 at 6.)  But GIS's "position" regarding interpretation of the WDAs
16 was not at issue at trial.  The jury was specifically instructed on the law of the case as to the proper
17 interpretation of the WDAs: that it must accept "as true" that the WDAs "require that GIS meet
18 only aggregate, not per-territory, purchase quotas."  (Doc. 495 at 42.)  The interpretation of the
19 WDAs' quota language was governed by this law of the case and not before the jury.  There is
20 nothing in the record to suggest that the jury disregarded this Court's instruction and instead
21 undertook to interpret the WDAs in accordance with either party's "position" or "belief" regarding
22 the quota requirement. *See United States v. Johnson*, 767 F.3d 815, 824 (9th Cir. 2014) ("There is
23 a strong presumption that jurors follow a court's instructions.")

24 In view of the foregoing, it cannot be said that allowing Guardian to argue its belief about
25 the quota requirement "more probably than not . . . tainted the verdict"—a $6 million verdict in
26 GIS's favor. *Harper*, 533 F.3d at 1030.

27       **c.**     ***Testimony of Jed Rovin and Section 6(b) of the WDAs***
28 GIS asserts that the Court erred in permitting Guardian witness Jed Rovin to testify at trial

and in allowing Guardian to present testimony and argument that section 6(b) of the WDAs limits the amount of recoverable damages in the event of termination by Guardian. (Doc. 502-1 at 11–14; Doc. 504 at 6–8.)

With respect to the testimony of Mr. Rovin, GIS reiterates the same arguments they made their motion in limine. (*See* Doc. 448 at 8–13.) The Court has already considered those arguments when it denied the motion (*see* Doc. 484 at 3:1–4:22; Doc. 463 at 1), and is not persuaded now that the admission of Mr. Rovin's testimony was legally erroneous.

Section 6(b) of the WDAs was the subject of Guardian's motion in limine to exclude evidence, testimony, and argument pertaining to GIS's lost profits and commissions.[6] (*See* Doc. 447-1.) Guardian contended that evidence of GIS's future lost profits and commissions is irrelevant, and should be excluded, because section 6(b) provided the only measure of damages recoverable following termination of the WDAs. (*See id.*) GIS disagreed, asserting that Guardian's motion in limine was in an improper attempt to obtain a legal ruling on an interpretation of the WDAs and such argument was, in any event, waived. (*See* Doc. 456.) The Court denied Guardian's motion, agreeing that the issue was improperly brought as a motion in limine, noting the parties' disagreement over the application of section 6(b) in this case:

> The parties dispute whether the "elect to terminate the Distributorship" provisions in the Agreements constitute "at-will" termination clauses and whether the associated payment provisions are limitation-of-damages clauses. (*See* Docs. 447-1, 456 at 1–13.) These are substantive issues of contract interpretation, and a motion in limine is not the proper procedural vehicle for addressing these issues. *See, e.g., Beck v. Metro. Prop. & Cas. Ins. Co.*, No. 3:13-CV-00879-AC, 2016 WL 4978411 (D. Or. Sept. 16, 2016) (reflecting the district court's email exchange with the parties, which stated, "Matching is a matter of contract interpretation but [the defendant] raised the matching issue for the first time in a motion in limine, which is the wrong procedural mechanism to seek a ruling on an issue of contract interpretation. [The defendant] should have filed a motion for declaratory judgment or summary judgment on the matching issue during the two years the case was pending before pretrial documents were due."). *Accord Slip-N-Slide Recs., Inc. v. TVT Recs.*, LLC, No. 05-21113-CIV, 2007 WL 9700559

---

[6] Section 6(b) provides, in pertinent part:

> Should the subsequent ownership of GPP elect to eliminate the Distributorship, subsequent ownership shall pay Distributor an amount equal to five (5) times the Distributor's purchases of GPP products during the immediately proceeding [sic] twelve (12) months.

(Doc. 428-1 ¶ 6(b).)

> (S.D. Fla. Feb. 23, 2007) ("To the extent SNS is raising an argument that as a matter of law the contracts in question should be interpreted as a matter of law in SNS's favor, the Court cannot do so on a motion in limine."); *Plaza S. Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60048-CIV, 2012 WL 13005529, at *3 (S.D. Fla. Jan. 24, 2012) (declining to decide issues of contract interpretation on a motion in limine); *McDowell Bldg., LLC v. Zurich Am. Ins. Co.*, No. CIV.A. RDB-12-2876, 2015 WL 1778369, at *2 (D. Md. Apr. 17, 2015) (same). The parties, however, are free to argue their respective interpretations of the [WDAs] to the jury.

(Doc. 463 at 2 n.1.)[7] The Court reiterated its holding on several occasions during trial. (*See, e.g.*, Doc. 502-4 at 232:13–234:21; 248:15–249:8.)

District courts have broad discretion in admitting evidence. *See Ruvalcaba*, 64 F.3d at 1328. The Court finds that allowing Guardian to present testimony and argument regarding its interpretation of section 6(b) was within its discretion and not erroneous, and even if there were any error, GIS does not establish any substantial prejudice.

As indicated in its ruling on the motion in limine, GIS was permitted to, and did, cross-examine Guardian witnesses on their interpretation of section 6(b) of the WDAs (*see* Doc. 502-4 at 164:13–168:22; 249:11–252:20). *See, e.g., Coachman v. Seattle Auto Mgmt., Inc.*, No. C17-187 RSM, 2019 WL 4695660, at *3 (W.D. Wash. Jan. 3, 2019) (no substantial prejudice where "[b]oth parties presented evidence" on topic contained in erroneously admitted document). GIS also rebutted Guardian's interpretation of section 6(b) in its closing argument (*see* Doc. 502-6 at 68:3–71:3). *See, e.g., Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-02744-BLF, 2015 WL 13298075, at *8 (N.D. Cal. Aug. 31, 2015) (no substantial prejudice where movant was "permitted unfettered closing argument" on topic for which evidence was excluded). Most importantly, while Guardian argued that section 6(b) limited GIS's damages to a maximum of $2,670,982.50 based on Mr. Rovin's testimony (*see* Doc. 502-6 at 57:3–10), the jury <u>rejected</u> that argument, and awarded GIS $6 million instead. Having prevailed on this point, GIS's claims fail to establish prejudice, let alone the substantial prejudice required to prevail on their motion. *See Pac. Coast Steel v. Hunt*, No. 2:09-CV-02190-KJD-PAL, 2014 WL 3592098, at *3 (D. Nev. July 18, 2014) (burden of persuasion to show erroneous evidentiary rulings were both erroneous and substantially prejudicial is on the moving party and is "very high.") (*citing United States v. Redfield*, 197 F. Supp. 559, 562

---

[7] As the Court denied the motion, it did not need to reach the issue of waiver.

Case 1:15-cv-00321-SKO   Document 508   Filed 03/18/22   Page 9 of 20


(D. Nev. 1961)).

### d.     *Guardian's Counsel's Statements*

GIS contends Guardian's counsel made several "false statements" during opening argument that resulted in prejudice to GIS. (*See* Doc. 502-1 at 14–15; Doc. 504 at 8.) "Generally, misconduct by trial counsel results in a new trial if the flavor of misconduct sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002). In evaluating the possible prejudice from attorney misconduct, courts consider "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." *Id*. at 1193 (internal quotation marks omitted). "Where offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial, we are less inclined to find the statements pervaded the trial and thus prejudiced the jury." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 518 (9th Cir. 2004) (internal citation and quotation marks omitted). *See also Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984) (finding that the attorney's improper statements did not warrant a new trial because they were "isolated, rather than persistent").

GIS objects to a statement twice made by Guardian's counsel during opening argument that Guardian is "not suing [GIS] in this case," despite having previously countersued GIS. (Doc. 502-1 at 14–15.) Following the second of these statements, GIS requested and was granted a sidebar with the Court and counsel, during which the Court admonished Guardian's counsel "[p]lease don't refer to that again" and indicated GIS could question witnesses on the topic during trial. (Doc. 502-2 at 137:24–139:10.) GIS did just that.

On cross-examination, Guardian witness Johnny Green was asked (over Guardian's objection) whether he "kn[ew] . . that Guardian did file a counterclaim for breach of the non-compete related to dreamGUARD," to which he replied in the affirmative. (Doc. 502-4 at 144:23–145:1.) GIS's witness Christopher Nolan testified similarly on direct examination. (*See* Doc. 502-

2 at 217:24–218:5.)

The Court further permitted GIS (over Guardian's objection, *see* Doc. 502-4 at 139:24–144:14) to elicit testimony from both GIS and Guardian witnesses that Guardian not only brought counterclaims, but it <u>lost</u> the counterclaims, too:

> Q. Were [Guardian's counterclaims] prosecuted to conclusion?
> A. Yes, they were.
> Q. And who won?
> A. GIS won.
> Q. So Guardian lost?
> A. Guardian lost.
> MR. DAVIS: Your Honor.
> BY MS. BAL:
> Q. Was Guardian awarded anything --
> MR. DAVIS: Your Honor.
> THE WITNESS: No, they were not.

(Doc. 502-2 at 218:6–16 (C. Nolan).)

> Q. One last question. Isn't it true that Guardian's counterclaim for breach of the WDAs based on the Gibson family dreamGUARD business was resolved in favor of GIS and against Guardian?
> A. I think that's the ruling after the terminations.

(Doc. 502-4 at 156:5–9 (J. Green).)  GIS also reiterated the point in closing argument, as the Court advised it could do (*see* Doc. 502-2 at 137:24–139:10):

> Here's what we know. First, Guardian already sued GIS for breach of a non-compete based on dreamGUARD sales. It already did that. It brought two claims for damages against GIS pertaining to dreamGUARD. One for breach of the non-compete and another for denying Guardian the benefit of the agreement in connection with dreamGUARD sales. Guardian litigated those claims to verdict. It lost and it did not appeal. That is undisputed. Those are the facts in this case.

(Doc. 502-6 at 76:7–15.)

Considering the totality of circumstances—that the statements were made during opening argument, which the jury was expressly instructed "is not evidence" (Doc. 495 at 6 (quoting NINTH CIR. MODEL JURY INSTR. § 1.10 (2017 ed.)); that GIS had the opportunity to (and did)

10

correct, and in fact elaborated upon, the statements during the course of trial; and that the jury ultimately returned a verdict in favor of GIS—the Court finds that Guardian's counsel's statements did not rise to the level of misconduct that "sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Hemmings*, 285 F.3d at 1192.

GIS's additional argument of attorney misconduct is directed to Guardian's counsel's statement during opening argument that "[t]here's an asset purchase agreement where now we're on the scene and we're taking over Guardian California," asserting that it misrepresents Guardian's ability to invoke section 6(b) of the WDAs. (Doc. 502-1 at 15.) The Court previously found that GIS was not prejudiced by Guardian's presentation of testimony and argument regarding its interpretation of section 6(b) of the WDAs. (*See* Section II.A.2.c, *supra.*) For the same reasons, the Court finds that counsel's statement did not prejudice GIS or influence the jury verdict.

### e. *Cumulative Prejudice*

GIS asserts that the "cumulative effect" of the above-alleged errors resulted in prejudice sufficient to warrant a new trial. (*See* Doc. 502-1 at 20–21; Doc. 504 at 11–12.) Each of GIS's claims have been addressed in detail above. As such, the Court finds that GIS has identified no prejudicial error justifying a new trial, either individually or collectively. *See Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1210 (D. Or. 2015).

In sum, GIS has not shown itself entitled to a new trial on damages as to GIS's claim for breach of the WDAs.

**B.  Renewed Motion for Judgment as a Matter of Law on GIS's Claim for Breach of the Bob's Discount Furniture Agreement**

In its renewed motion under Federal Rule of Civil Procedure 50(b), GIS re-urges the argument, made in its original motion under Rule 50(a) during the second trial (*see* Doc. 490), that it is entitled to judgment as a matter of law on its claim that Guardian breached the Bob's Discount Furniture Agreement. (*See* Doc. 502-1 at 16–18.) GIS contends that the Court already held on summary judgment that the parties "mutually consented to the same fundamental terms"

of the Bob's Discount Furniture Agreement, and that the evidence presented a trial demonstrated both that GIS gave valid consideration for that agreement and Guardian breached it. (*See id*. *See also* Doc. 504 at 8–9.)

### 1. Legal Standard

A district court ruling on a motion for judgment as a matter of law pursuant to Rule 50(b) "may not substitute its view of the evidence for that of the jury," *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001), and must uphold the jury's verdict if it is supported by substantial evidence. *See Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) (citing *Johnson*, 251 F.3d at 1227). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson*, 251 F.3d at 1227. A district court ruling on a motion for judgment as a matter of law should review the record as a whole, but must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id*. (citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 151 (2000) ("That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." (citation and internal quotations marks omitted))).

In ruling on such a motion, the court must not weigh the evidence or make credibility determinations, *Reeves*, 530 U.S. at 150, "but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion," *Wallace*, 479 F.3d at 624 (citing *Johnson*, 251 F.3d at 1227–28). "The evidence must be viewed in the light most favorable to the nonmoving party, and all inferences must be drawn in favor of that party." *Id*.; *see also Reeves*, 530 U.S. at 150 (noting that the standard for judgment as a matter of law mirrors that for summary judgment). "Judgment as a matter of law may be granted only where, so viewed, the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Wallace*, 479 F.3d at 624 (citing *McLean v. Runyon*, 222 F.3d 1150, 1153 (9th Cir. 2000)). The "high hurdle" the moving party must clear in order to obtain relief "recognizes that credibility, inferences, and factfinding are the province of the jury, not [the] court." *Costa v. Desert Palace*,

*Inc.*, 299 F.3d 838, 859 (9th Cir. 2002).

2. Analysis

While GIS is correct that the Court previously determined the existence of mutual consent for the Bob's Discount Furniture Agreement (*see* Doc. 133 at 31), the questions of whether GIS provided consideration for that agreement, and whether GIS breached it, were expressly reserved for trial. (*See* Doc. 344 at 4–5 (reversing and remanding for trial the Court's determination as a matter of law that "the purported agreement to pay the Bob's Commission was not supported by consideration in the territories covered by the Florida, Mid-Atlantic, and Cook County Agreements"); Doc. 133 at 38–39 (finding "genuine issues of material fact regarding whether [Guardian] breached the Bob's Discount Furniture Agreement" that are to be "properly left to the jury").)

The jury was instructed that to find breach of the Bob's Discount Furniture Agreement by Guardian, they would need to find, *inter alia*, that the agreement was created, in that "the parties agreed to give each other something of value," and that Guardian "failed to do something that the [agreement] required it to do" or "did something that the [agreement] prohibited from doing." (Doc. 495 at 30, 32 (quoting JUDICIAL COUNCIL OF CAL. CIVIL JURY INSTRUCTIONS 302 & 303).) The jury determined that Guardian did not breach the Bob's Discount Furniture Agreement. (Doc. 498 at 5.) Viewing the evidence in the light most favorable to Guardian, and disregarding all evidence favorable to GIS that the jury was not required to believe, the Court finds there is sufficient evidence for a reasonable jury to reach this conclusion.

Guardian witness Ronnie Holman testified that Guardian was "not getting anything in return for giving [GIS] a commission on Bob's" and GIS never told him "that this Bob's deal . . . is a violation of [its] exclusive rights." (Doc. 502-4 at 198:16–17; 201:4–6.) Mr. Holman further testified that the Bob's Discount Furniture Agreement with GIS was a "goodwill gesture" (*id.* at 201:22–24; *see also* Trial Ex. J-019 ("We did this as a goodwill gesture with GIS and other distributors.")), while Guardian witness Johnny Green characterized it as an "accommodation." (Doc. 502-3 at 85:17–21; Doc. 502-4 at 159:22–23.) As evidence that GIS gave consideration by

13

promising that it "would not assert its exclusivity in its territories" (Doc. 502-1 at 17)[8], GIS points to testimony by Mr. Holman that "Guardian agreed to the commission in order to quiet the noise from GIS." (Doc. 502-4 at 212:5–7.) But it is not clear that the "noise" to which Mr. Holman referred pertains to GIS's exclusive rights, and a reasonable inference can be drawn that it did not. (*See* Doc. 503 at 24). The same can be said for Mr. Holman's testimony "[s]ometimes you got to give a little to get something" (Doc. 502-4 at 196:23), which was given in the context of discussing both the Bob's Discount Furniture Agreement and GIS's launch of dreamGUARD products (*see id*. at 196:11–25). *See Reeves*, 530 U.S. at 150 ("[T]he court must draw all reasonable inferences in favor of the nonmoving party.").

The jury could also have reasonably concluded from the evidence presented at trial that the Bob's Discount Furniture Agreement terminated in November 2014, such that Guardian's cessation of commission payments for periods after that date was not a breach. As the Court observed on summary judgment, "a jury may find that the formal oral agreement between the parties on December 22, 2010, included an implied duration term based on the parties' conduct" or, alternatively, that the term of duration was "at least a reasonable time," after which it was "terminable at will by any party upon reasonable notice." (Doc. 133 at 37–38 (citing cases).)

Mr. Holman testified that GIS wanted its agreement with Guardian regarding Bob's Discount Furniture to be "the same deal" as Guardian had with another distributorship, Metro Guardian ("Metro"), to which Guardian assented. (*See* Doc. 502-4 at 189:17–21; 196:15–19; 199:4–6; 209:9–11; 209:17–21; 211:10–14.) Mr. Holman then testified that "ultimately, at some point" the "Metro deal" was "over," and Guardian thereafter "ended" the "arrangement" it had with GIS vis-à-vis Bob's Discount Furniture. (*Id*. at 201:13–21.) Guardian witness Mr. Green testified that Guardian paid GIS a commission on sales to Bob's Discount Furniture from January 2011 to November 2014, or almost four years (*see* Doc. 502-3 at 84:19–85:25), at which point it notified GIS that it was terminating the commissions (*see* Trial Ex. J-019). Construing this evidence in the light most favorable to Guardian, a reasonable jury could find either that (1) the

---

[8] *See G.P.P. Inc. v. Guardian Prot. Prod., Inc*., 788 F. App'x 452, 455 (9th Cir. 2019) ("So long as GIS made a single valid promise not to assert its exclusivity rights, this would constitute valid consideration for a promise made by Guardian to pay the Bob's Commission.").

parties' conduct implied that the Bob's Discount Furniture Agreement would last only as long as Guardian's agreement with Metro, *i.e.*, the parties intended that GIS's Bob's Furniture Agreement be "the same deal" as Metro, such that when the "Metro deal" was "over," so too was the Bob's Furniture Agreement; or (2) the duration of four years was a "at least a reasonable time" for the Bob's Furniture Agreement to endure and that Guardian's letter of termination constituted "reasonable notice," such that the agreement was "terminable at will." From this, the jury could have reasonably concluded there was no breach by Guardian by failing to pay commissions beyond the November 2014 period.

Accordingly, because GIS has not met its stringent burden to show that "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict," *Wallace*, 479 F.3d at 624, GIS's renewed motion as a matter of law on its claim that Guardian breached the Bob's Discount Furniture Agreement will be denied.

## C.   Motion for a New Trial on GIS's Claim for Breach of Bob's Furniture Agreement

As an alternative to the Court granting judgment as a matter of law on its claim for breach of the Bob's Discount Furniture Agreement, GIS seeks a new trial on that claim. (Doc. 502-1 at 18.) As with its claim for breach of the WDAs, GIS alleges the Court made "errors that prejudiced GIS in proving its claim." (*Id.* at 19.) First, GIS claims that it was prejudiced by the Court erroneously declining to include in its jury instruction directed to contract formation a passage from the Ninth Circuit's memorandum disposition concerning consideration. (*id.*; *see also* Doc. 504 at 10.) The Court disagrees.

"A district court has substantial latitude in tailoring jury instructions," so long as they "fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1051–52 (9th Cir. 1998). Thus, "[i]f the instruction as given sufficiently covers the case so that a jury can intelligently determine the questions presented, the judgment will not be disturbed because further amplification is refused." *Investment Serv. Co. v. Allied Equip. Corp.*, 519 F.2d 508, 511 (9th Cir. 1975). *See also Curtis v. City of Oakland*, No. 10-cv-00358-SI, 2016 WL 1138457, at *4 (N.D. Cal. Mar. 23, 2016) ("It is well established that instructions should not be argumentative or slanted

in one party's favor.") (citing *United States v. Maxwell*, 579 F.3d 1282, 1304-05 (9th Cir. 2009)).

Here, the Court instructed the jury, in accordance with the Judicial Council of California Civil Jury Instruction ("CACI") 302, that "[t]o prove the Bob's Discount Furniture Agreement was created, GIS must prove that the parties agreed to give each other something of value. A promise to do something or not to do something may have value" (Doc. 495 at 32). *See* JUDICIAL COUNCIL OF CAL. CIVIL JURY INSTRUCTION 302. The inclusion of GIS's additional proposed instruction, in which the Ninth Circuit, in *dicta* in its memorandum disposition, elaborated on the element of consideration (*see* Doc. 474 at 4), was not warranted. *See, e.g.*, *H.I.S.C., Inc. v. Franmar Int'l Importers, Ltd.*, No. 3:16-cv-00480-BEN-WVG, 2019 WL 1545675, at *6 (S.D. Cal. Apr. 9, 2019) (finding proposed instructions that further defined elements contained in the Ninth Circuit's model instruction "unnecessary"). *See also Mays v. Stobie*, No. 3:08-CV-552-EJL, 2012 WL 13024271, at *4 (D. Idaho Feb. 14, 2012) ("[J]ust because a proposed instruction is a correct statement of law, does not mean the instruction must be given by the court if the other instructions address the issue and allow counsel to argue their theory of the case and any defenses."). GIS has failed to show that the Court's instruction on contract formation constitutes an incomplete or incorrect statement of the relevant law. Moreover, there is no prejudice, as GIS was permitted to, and did, present evidence and argue to the jury the existence of consideration based on this elaboration (*see, e.g.*, Doc. 502-2 at 110:9–19; *id.* at 194:17–195:1, 196:5–9 (C. Nolan); Doc. 502-6 at 25:2–26:1, 87:7–24). *See Guillford v. Pierce County*, 136 F.3d 1345, 1350 (9th Cir. 1998) (Even if an instruction is erroneous, a new trial is not necessary if "the error is more probably than not harmless.") *See also Curtis*, 2016 WL 1138457, at *5.

Next, GIS asserts that the Court erred in permitting Guardian to argue that GIS's "failure of performance" or "unclean hands" barred its claim for breach of the Bob's Discount Furniture Agreement. (Doc. 502-1 at 19–20; Doc. 504 at 10–11.) These defenses were the subject of GIS's pre-trial motion to strike brought pursuant to Rule 50(a) (Doc. 490 at 26–27), which was denied by the Court (Doc. 502-5 at 53:23–54:20). In denying the motion, the Court noted "that viewing the evidence presented at trial in the light most favorable to Guardian, there are conflicting inferences that can be drawn from such evidence as to Guardian's defenses, including, for

example, what the parties' respective obligations under the Bob's [Discount Furniture] [A]greement were if the parties did, in fact, enter into such an agreement and whether GIS's breach of the non-competition provisions of the WDAs was material and/or intimately connected with GIS's claim for breach of the agreement, the Bob's [Discount Furniture] [A]greement." (*Id.* at 54:12–20.)

GIS makes no new arguments in the present motion. (*Compare* Doc. 502-1 at 19–20 *with* Doc. 490 at 25–27.) Moreover, there are conflicting interferences that can be drawn from the evidence as to these defenses, as set forth above. (*See* Section II.B.2, *supra*. ) The Court therefore sees no reason to reconsider its prior ruling and concludes that the denial of GIS's motion to strike was not made in error. Even if it had been, however, GIS has not shown prejudice as a result. *See Dunlap*, 878 F.3d at 798.

GIS asserts that the "Court ruled that the two affirmative defenses would be included in the verdict form" (*see* Doc. 502-1 at 19), but the verdict form included a question directed only to Guardian's "unclean hands" defense—which the jury did not reach (Doc. 498 at 5). *See Marugame v. Johnson*, No. 11-00710 LEK-BMK, 2015 WL 128000, at *4 n.2 (D. Haw. Jan. 8, 2015) (finding alleged error in giving disputed jury instruction harmless where jury did not reach the question covered by the instruction). "Failure of performance," while not included as an affirmative defense on the verdict form, was encompassed by element two of CACI 303, which the Court gave, almost verbatim, to the jury (*Compare* Doc. 495 at 30 *with* JUDICIAL COUNCIL OF CAL. CIVIL JURY INSTRUCTIONS 303). *See Investment Serv. Co.*, 519 F.2d at 511. Having found a factual dispute regarding materiality and the nature of the parties' covenants, the Court did as instructed by the "Directions for Use" set forth in CACI 303, and gave additional instructions. (*See* Doc. 495 at 30.) The Court notes that these are the same additional instructions that GIS urged be included, over Guardian's objection. (*See* Doc. 502-5 at 57:8–21. *See also* Doc. 504-1 at 31, 44.)

Finally, GIS claims the Court erred by "limiting the Bob's [Discount Furniture] Agreement to three specific territories." (Doc. 502-1 at 20.) The Court previously rejected—twice—the same arguments GIS makes here. (*See* Doc. 378 at 7–8; Doc. 388.) GIS's reasserted arguments

do not now demonstrate error. The Court therefore stands on its prior ruling that "Guardian's alleged breach of the Bob's [Discount] Furniture Agreement in territories covered by agreements other than the Florida, Mid-Atlantic, and Cook County Agreements was not within the scope of the issue the Ninth Circuit reversed and remanded for trial, *i.e.*, the Remanded Claims." (Doc. 378 at 8.)

GIS also fails to demonstrate prejudice. It concedes that it was able to present testimony and evidence to the jury that "the Bob's [Discount Furniture] Agreement covered all of GIS's exclusive territories." (Doc. 502-1 at 20.) More importantly, it is difficult to see—and GIS does not explain—how the limitation "unfairly prejudiced liability and limited damages to three territories" where <u>neither</u> the jury instructions (*see* Doc. 495 at 3, 30, 32, 46) <u>nor</u> the verdict form (*see* Doc. 498 at 5) contain any limitation of the Bob's Discount Furniture Agreement to any specific territory[ies].

In sum, GIS's assertions of legal error do not, either singularly or cumulatively, establish prejudice and are without merit. Accordingly, the Court finds that a new trial on GIS's claim for breach of the Bob's Discount Furniture Agreement is not warranted.

**D.     Renewed Judgment as a Matter of Law Regarding WDA Issues**

GIS renews its motion under Rule 50(b) "as to all issues for which the Court denied GIS's initial motion," which includes those related to GIS's claim for breach of the WDAs on which it prevailed. (Doc. 502-1 at 21–25.) GIS requests that judgment be entered "to prevent re-litigation of those issues in the event of another trial" (*id*. at 22), and contends that the motion "will simplify any appeal or post-appellate proceedings by reducing the number of issues subject to retrial" (Doc. 504 at 12).

As the Court previously advised GIS in its order denying as moot GIS's renewed Rule 50(b) motion following the first trial (*see* Doc. 333), Rule 50(b) "does not permit a party in whose favor the verdict was rendered to renew its motion because 'a jury verdict for the moving party moots the issue.'" *Lyon Dev. Co. v. Bus. Men's Assur. Co. of Am*., 76 F.3d 1118, 1122 (10th Cir. 1996) (quoting Fed. R. Civ. P. 50(b) advisory committee's note to 1991 amendment). Because a jury verdict was rendered and judgment entered in GIS's favor on its claim for breach of the

WDAs, GIS's renewed motion as to that claim is moot.[9] *See Madrigal v. Allstate Indem. Co.*, No. CV 14-4242 SS, 2015 WL 12748272, at *2 (C.D. Cal. Dec. 7, 2015) (denying as moot motion for judgment as a matter of law on promissory fraud and punitive damages claims where the moving party "obtained the ultimate relief it sought in its [m]otion" after the jury concluded that the moving party "was not liable on those counts"); *Brighton Collectibles, Inc. v. Marc Chantal USA, Inc.*, No. 06-CV-1584 H (POR), 2009 WL 10674076, at *2 n.1 (S.D. Cal. Aug. 12, 2009) ("Defendant's earlier motion for judgment as a matter of law also addressed Plaintiff's trademark claims. As the Jury did not find for [Plaintiff] on its trademark claims, these arguments are moot."). *Accord Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG, 2016 WL 7650735, at *4 (E.D. Tex. Sept. 29, 2016) ("While Federal Rule of Civil Procedure 50(b) permits Genband to request entry of judgment 'notwithstanding an adverse jury verdict,' it does not allow Genband to seek advisory opinions from the Court on issues it has already prevailed on."); *Peeler v. KVH Indus., Inc.*, 13 F. Supp. 3d 1241, 1248 (M.D. Fla. 2014) ("As repeatedly emphasized herein, Peeler is the party who prevailed at trial, in light of which the Court previously denied as moot Peeler's Rule 50(a) motion for judgment as a matter of law. . . . The Court adheres to its previous determination that Peeler's Motion [under Rule 50(b)] is moot in light of the verdict in his favor."); *TransWeb, LLC v. 3M Innovative Properties Co.*, 16 F. Supp. 3d 385, 407 (D.N.J. 2014) ("3M also moves for Judgment as a Matter of Law on the antitrust claims. Because the jury returned a verdict in 3M's favor on the sham litigation claim, the motion is moot as to that issue.").

The Court once again declines GIS's invitation to render rulings that would do nothing more than "bolster" or "improve" a judgment that is already in GIS's favor based on the speculative possibility of a retrial in this case.[10] *See Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513,

---

[9] Because the Court denies and finds moot GIS's renewed motion as a matter of law on its claim for breach of the WDAs, it need not and does not reach the merits of the motion. *See Darley v. DePuy Orthopaedics, Inc.*, No. 2:13–cv–00721–MCE, 2014 WL 3939721, at *2 n.5 (E.D. Cal. Aug. 11, 2014).

[10] The Court also reiterates its prior observation that permitting a Rule 50(b) motion on issues pertaining to claims on which the moving party prevailed would result in a bizarre application of the standard of review, where all of the evidence pertaining to GIS's claim for breach of the WDAs must be viewed in the light most favorable to GIS (the "party in whose favor the jury returned a verdict") but all reasonable interferences must be drawn in favor of Guardian (the "non-moving party").

519 n.3 (7th Cir. 2012) ("It would waste time and resources to require a party to move for judgment as a matter of law under Rule 50(b), formerly denominated 'judgment *notwithstanding the verdict*,' if that party has obtained a jury verdict in its favor.") (emphasis in original).

### III.    CONCLUSION AND ORDER

Based on the foregoing, GIS's joint motion for a new trial and renewed motion for judgment as a matter of law (Doc. 502) is DENIED.

IT IS SO ORDERED.

Dated:    **March 17, 2022**                   /s/ *Sheila K. Oberto*
                                               UNITED STATES MAGISTRATE JUDGE