# EXHIBIT 5

# EXHIBIT "5"

```
 1                  UNITED STATES DISTRICT COURT
 2                 EASTERN DISTRICT OF CALIFORNIA
 3                            --oOo--
 4  G.P.P., INC.,                    ) Case No. 1:15-cv-00321-SKO
                                     )
 5               Plaintiff,          ) Fresno, California
                                     ) Tuesday, June 27, 2017
 6       vs.                         ) 9:21 A.M.
                                     )
 7  GUARDIAN PROTECTION PRODUCTS,    ) Jury Trial - Day 5.
    INC., et al.,                    )
 8                                   )
                 Defendants.         )
 9  _____)
10               TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE SHEILA K. OBERTO
11       UNITED STATES MAGISTRATE JUDGE, and a jury.
12  APPEARANCES:
    For Plaintiff:            JOHN P. FLYNN
13                            COLLEEN BAL
                              Wilson Sonsini Goodrich & Rosati
14                            One Market Plaza
                              Spear Tower, Suite 3300
15                            San Francisco, CA   94105
                              (415) 947-2130
16
                              CRAIG BOLTON, PHV
17                            JASON B. MOLLICK, PHV
                              Wilson Sonsini Goodrich & Rosati
18                            1301 Avenue of the Americas,
                              40th Floor
19                            New York, NY   10019
                              (212) 497-7723
20
                              DYLAN J. LIDDIARD
21                            Wilson Sonsini Goodrich & Rosati
                              650 Page Mill Road
22                            Palo Alto, CA   94304
                              (650) 565-3534
23
    For Defendants:           AARON P. RUDIN
24                            CALVIN E. DAVIS
                              Gordon & Rees, LLP
25                            633 West Fifth Street, 52nd Flr.
                              Los Angeles, CA   90071
                              (213) 576-5000
```

5-90

1  to do everything they can to mitigate damages. By hiring three
2  people for pretty minimal salaries they could have mitigated
3  their damages. And if they don't, they're not entitled to a
4  judgment on that claim.
5         Turning to -- so that's really what their claims are,
6  right, that we breached the contract. We -- that they weren't
7  under quota, that we threatened them and they have these
8  exorbitant level of damages. And I think we've addressed that
9  and I think the evidence is overwhelming in this case they
10 haven't established any of those claims.
11        Turning to what our claims are, to some extent they
12 were kind of a mirror image. We are claiming that they're in
13 breach of the contract with us and they're in breach of the
14 implied covenant because they're under quota. So they say they
15 weren't under quota. We say they are under quota. So we have
16 a breach claim based on that.
17        We also have a breach of contract claim, an implied
18 covenant claim, based on dreamGUARD, which I want to get into.
19 But just really quickly, as opposed to their $76 million claim,
20 we've been telling you over and over again, they are not
21 damaged by the termination notices that went out for Alabama,
22 Florida and Tennessee.
23        Now, we do have a breach of contract claim for that
24 and we say that they are in breach, but we are not asking for
25 any specific amount of damages for that, because that would be

Case 1:15-cv-00321-SKO   Document 534-8   Filed 09/12/23   Page 5 of 7
Case 1:15-cv-00321-SKO   Document 338-8   Filed 02/15/18   Page 19 of 34

5-91

1   hypocritical.  We haven't been damaged either.  We have a
2   breach of contract claim and they should have met their quota,
3   but there's no specific damage to us because the business has
4   gone on as usual.
5            So what happens on that is you'll see on the jury
6   form is something called nominal damages.  We want you to
7   affirm that we did the right thing, that they're in breach of
8   the contract, but no one's been damaged here.  So we're only
9   asking for nominal damage of the -- and you'll see in the form
10  -- give us a dollar of nominal damages for their breach of the
11  contract.  They're clearly in breach, but nobody's been damaged
12  by that.
13           Now, dreamGUARD on the other hand, that's real
14  damages, and I just want to talk to you for a moment about
15  dreamGUARD.  Actually, here's a brief snippet of mitigation.
16  It's just basically what I just said to you, that could have
17  hired two salespersons and a trainer, could have saved millions
18  of dollars and the costs would have been between 100,000 and
19  165,000.
20           So Guardian was harmed by GIS's competition, in
21  violation of the agreements, and we were significantly harmed
22  by dreamGUARD.  So let me show you this.  This is the non-
23  competition clause in the agreements:  Distributor agrees it
24  will not compete with G.P.P. by selling competing products
25  during the term of this agreement in its assigned areas.

```
                                                              5-98

 1   sorry, in lost profits to us from their sale of dreamGUARD.
 2           In addition, they used to by pads from us; ended up
 3   about $800,000 a year in pads.  Our profit margin is seven
 4   percent.  At six years that's $338,000.  So our lost profits
 5   and our damages total to, from the sale of dreamGUARD,
 6   $1,236,000.
 7           And although we're not going to ask you for damages
 8   for the quota breach, we are going to ask you damages for their
 9   sale of dreamGUARD.
10           Now, recall, GIS's whole case is about, we're the bad
11   guys and they're the good guys.  Take a look at this and see if
12   there's any way to determine anything here other than, and
13   reach any other conclusion than they are the bad guys 100
14   percent in this circumstance.
15           Want to talk to you about another issue.  Actually,
16   this is also an issue.  This slide here actually shows loss for
17   Guardian, gain for GIS.  This is their mattress protector
18   purchases from us.  They were up, and as soon as they started
19   up dreamGUARD these purchases all disappeared and the red line
20   shows their sales of dreamGUARD mattresses -- protectors.
21           So you weren't shown this by Mr. Flynn, but here's
22   the definition of what a Guardian label distributor product is.
23   This has to do with and this whole issue is about, are
24   electronic warranties part of these contracts or aren't they.
25   And you have to look to the contract to figure that out.
```

```
                                                                 5-132

1                          CERTIFICATE
2        I certify that the foregoing is a correct transcript from
3   the electronic sound recording of the proceedings in the above-
4   entitled matter.
5
6   /s/ Mary C. Clark                    Date:   June 27, 2017
7   Mary C. Clark, Transcriber
8   AAERT CERT*D-00214
9
10  /s/ Jennifer Barris                  Date:   June 27, 2017
11  Jennifer Barris, Transcriber
12  AAERT CET*668
13
14  /s/ Elizabeth Reid-Grigsby           Date:   June 27, 2017
15  Elizabeth Reid-Grigsby, Transcriber
16  AAERT CET*D-00145
17
18
19
20
21
22
23
24
25
```