1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9   G.P.P., INC. d/b/a GUARDIAN
    INNOVATIVE SOLUTIONS,                    Case No.  1:15-cv-00321-SKO
10
                    Plaintiff,               **ORDER RE CROSS MOTIONS FOR
11                                           ATTORNEY'S FEES**

12          v.                               (Docs. 532 & 534)

13
    GUARDIAN PROTECTION PRODUCTS,
14  INC. and RPM WOOD FINISHES GROUP,
    INC.,
15
                    Defendants.
16  _____/

17

18                      **I.      INTRODUCTION**

19          Pending before the Court is Plaintiff G.P.P., Inc. d/b/a Guardian Innovative Solutions

20  ("GIS")'s motion for attorney's fees (Doc. 532) and Defendants Guardian Protection Products, Inc.

21  ("Guardian") and RPM Wood Finishes Group ("RPM") (collectively "Defendants")'s motion for

22  attorney's fees (Doc. 534).[1]  Both parties have filed briefs in opposition to each other's motion (*see*

23  Docs. 538 & 540) and have filed replies in support of their own (*see* Docs. 541 & 42).  The Court

24  reviewed the parties' papers and all supporting material and found the matter suitable for decision

25  without oral argument.  The hearing set for October 18, 2023, was therefore vacated.  (Doc. 543.)

26          Having carefully considered the arguments raised by both parties and for the reasons set

27  forth below, the Court will grant GIS's motion for attorney's fees, and will deny Defendants' motion

28
    _____
    [1] The parties have also submitted bills of costs (*see* Docs. 533 & 535), which will be adjudicated separately.

1  for attorney's fees.

2  ## II.       LEGAL STANDARD

3  "In a diversity case, the law of the state in which the district court sits determines whether a

4  party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is

5  governed by federal law."  *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).  Generally,

6  "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable

7  attorneys' fee from the loser.'"  *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric*

8  *Co.*, 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421

9  U.S. 240, 247 (1975)).  However, a statute or enforceable contract allocating attorney's fees can

10 overcome this general rule.  *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S.

11 714, 717 (1967)).

12 In their motions for fees, both parties invoke a provision from the nine Warehousing

13 Distributor Agreements ("WDAs") that provides "should any action be initiated upon this contract,

14 the party prevailing in the above court of law shall be awarded its actual attorney fees, in addition

15 to any other court costs or awards by the court."[2]  (*See* Doc. 532-1 at 6; Doc. 534-1 at 16.  *See also*

16 Docs. 367-1–Doc. 367-3; Doc. 367-5–Doc. 367-7; Doc. 367-9–Doc. 367-11 (WDAs).)  California

17 law permits parties to allocate attorney's fees by contract.  *See* Cal. Code Civ. Proc. § 1021 ("Except

18 as attorney's fees are specifically provided for by statute, the measure and mode of compensation

19 of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .").

20 California Civil Code § 1717 ("Section 1717") governs the recovery of attorney's fees pursuant to

21 an underlying contract.  It provides that,

22
23
24
25
> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

26 Cal. Civ. Code § 1717(a).

27

28 ---
[2] The WDAs contain a choice of law provision stating that the governing law is the "law of the State of California, U.S.A."  (*See* Docs. 367-1–Doc. 367-3; Doc. 367-5–Doc. 367-7; Doc. 367-9–Doc. 367-11.)

2

To recover attorney's fees pursuant to a contractual provision under Section 1717, the moving party must be able to show that: (1) the underlying contract authorizes such fees, (2) the moving party is the prevailing party, and (3) the attorney's fees incurred are reasonable. *First Nat. Ins. Co. of Am. v. MBA Const*., No. 02:04-CV-836-GEB-JFM, 2005 WL 3406336, at *2 (E.D. Cal. Dec.12, 2005); *see also Baldain v. Am. Home Mortg. Servicing, Inc*., No. CIV. S-09-0931 LKK/GGH, 2010 WL 2606666, at *5 (E.D. Cal. June 28, 2010) (stating that "to recover fees incurred in connection with litigation of a claim under a fee shifting contract, a party must show that the claim fell within the scope of the contract and that the party prevailed on the claim"). "The California Supreme Court has emphasized that a trial court is 'obligated to award attorney fees[ ] whenever the statutory conditions have been satisfied.'" *Hopkins v. Wells Fargo Bank, N.A*., No. 2:13–444 WBS CKD, 2014 WL 2987753, at *1 (E.D. Cal. July 1, 2014) (quoting *Hsu v. Abbara*, 9 Cal. 4th 863, 872 (1995)). The trial court is given "broad authority to determine the amount of a reasonable fee." *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (Cal. 2000).

### III.     DISCUSSION[3]

GIS seeks an award of attorney's fees in the amount of $4,353,283, asserting that it was the prevailing party on "all main legal claims under the WDAs" and that such fees are reasonable. (*See* Doc. 532-1. *See also* Doc. 542-1 ¶ 6.)

RPM seeks an award of attorney's fees in the amount of no less than $493,709.50, claiming that it "obtained an unqualified defense victory" as to all the claims brought against it by GIS. (Doc. 534-1 at 8.) Guardian asserts that it is entitled to a minimum of $134,462.94 in attorney's fees for prevailing on GIS's claim under the Ohio WDA, and that there is no prevailing party as to the other eight WDAs because the results were "undeniably mixed." (*Id*.) Defendants further contend that a "lodestar multiplier" of two should be applied to their fee request. (*Id*. at 31.)

### A.     Claims That Are "On the WDAs"

The first step in determining whether a party is entitled to attorney's fees under Section 1717 is to analyze whether the claims are within the scope of the contract containing the attorney's fees

---

[3] The parties are familiar with the underlying facts and procedural history and the Court will not repeat them here, except as necessary for the adjudication of the instant motion.

provision, *i.e.*, whether the claims are "on [the WDAs]." Cal. Civ. Code § 1717(a).[4] *See Johnston v. Lindauer*, No. 2:07-CV-01280, 2010 WL 2850767, at \*4 (E.D. Cal. July 20, 2010) ) ("To demonstrate its entitlement to recover attorney[']s fees, Value must establish for each claim that it seeks to recover fees for defending against, that the claim fell within the scope of one of the fee-shifting provisions in Plaintiff's loan agreements or deeds of trust . . . . .") (citing *Baldain*, 2010 WL 2606666, at \*5).

"Although Section 1717 limits the court's ability to enforce an attorneys' fees clause to 'any action on the contract,' California courts liberally construe 'on a contract' to extend to any action '[a]s long as an action 'involves' a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit . . . .'" *In re Baroff*, 105 F.3d 439, 442–43 (9th Cir. 1997) (quoting *Milman v. Shukhat*, 22 Cal. App. 4th 538, 544–45 (1994)); *see Barrientos v. 1801–1825 Morton LLC*, 583 F.3d 1197, 1216 (9th Cir. 2009) (interpreting the language of Section 1717 liberally to find that an action is "on a contract" whenever "the underlying contract between the parties is not collateral to the proceedings but plays an integral part in defining the rights of the parties"). *See also Gens v. Wachovia Mortg. Corp.*, No. 10-CV-01073-LHK, 2011 WL 3844083, at \*4 (N.D. Cal. Aug. 30, 2011) ("Defendants have persuasively demonstrated that Plaintiff's claims are either 'on the contract' or completely intertwined with her contract claims, so that contractual attorney's fees are appropriate").

In view of the liberal construction of the phrase "on a contract," the Court finds the following claims are "on the WDAs" for purposes of Section 1717[5]:

- GIS's First Cause of Action against Defendants ("Breach of the Alabama, Florida, and Tennessee Agreements") (Doc. 367 ¶¶ 57–61)[6];

- GIS's Second Cause of Action against Defendants ("Breach of the Implied Covenant[] of Good Faith and Fair Dealing of the Alabama, Florida, and Tennessee

---

[4] *See also* Docs. 367-1–Doc. 367-3; Doc. 367-5–Doc. 367-7; Doc. 367-9–Doc. 367-11 (authorizing fees to the prevailing party for actions "initiated upon" the WDAs).

[5] GIS's claims concerning the "Bob's Discount Furniture Agreement," while arguably "on a contract," are not subject to Section 1717 because that agreement did not contain an attorney's fee provision. (*See* Doc. 367 ¶¶ 69–79.)

[6] *See Wallace v. Nationstar Mortg., LLC*, No. 2:18-CV-02768-JAM-DB, 2021 WL 1578196, at \*3 (E.D. Cal. Apr. 22, 2021) ("Plaintiff's claim for breach of contract is unquestionably 'on a contract.'").

Agreements") (*Id.* ¶¶ 62–68)[7];

- GIS's Fifth Cause of Action against Defendants ("Declaratory Judgment - Termination of the Cook County Franchise Would Violate the Illinois Franchise Disclosure Act, 815 ILCS 705/1 *et seq.*") (Doc. 367 ¶¶ 80–94)[8];

- GIS's Sixth Cause of Action against Defendants ("Violation of the California Business and Professions Code Sections 17200-17210") (Doc. 367 ¶¶ 95–112)[9];

- GIS's Seventh Cause of Action against Defendants ("Violation of the California Franchise Investment Law, California Corporations Code Sections 31000-31516") (Doc. 367 ¶¶ 113–131)[10];

- GIS's Eighth Cause of Action against Defendants ("Breach of the Implied Covenant[] of Good Faith and Fair Dealing of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements") (Doc. 367 ¶¶ 132–137);

- GIS's Ninth Cause of Action against Defendants ("Breach of the Mid-Atlantic Agreement") (Doc. 367 ¶¶ 138–142);

---

[7] *See Teague v. BioTelemetry, Inc.*, No. 16-CV-06527-TSH, 2019 WL 318265, at *2–3 (N.D. Cal. Jan. 24, 2019) (holding that a breach of implied covenant claim is a contractual claim within the meaning of Section 1717).

[8] *See Teton Glob. Invs. LLC v. LC Inv. 2010, LLC*, No. 20-CV-01756-AJB-MSB, 2021 WL 9649335, at *3 (S.D. Cal. Dec. 14, 2021) ("[A] declaratory relief cause of action seeking a declaration of rights based on an agreement is 'on the contract' within the meaning of [S]ection 1717."); *Citrus El Dorado LLC, v. Stearns Bank.*, No. SA CV 09-1462-DOC (RNBx), 2016 WL 7626583, at *3 (C.D. Cal. Apr. 18, 2016) (declaratory relief claim was "on a contract" because it "directly or indirectly involved the enforcement" of the contract); *Tri-City Healthcare Dist. v. HC Tri-City I, LLC*, No. 3:09-CV-2334-GPC-KSC, 2014 WL 202616, at *3 (S.D. Cal. Jan. 17, 2014) (declaratory relief claim was "on a contract" because it "involve[d]" the contract, in that the plaintiff "sought to define and interpret the [contract's] terms and to determine the parties' rights and obligations thereunder.); *Davis v. Advanced Care Techs., Inc.*, No. S-06-2449 RRB DAD, 2007 WL 2825716, at *2 (E.D. Cal. Sept. 26, 2007) (same). *See also* Doc. 106 at 27 ("actionable controversy" for GIS's declaratory judgment claim is "whether Defendants have threatened to terminate, and/or are still plotting to terminate, the Cook County Agreement and all other WDAs"); Doc. 133 at 40 (same).

[9] *See, e.g., Rivera v. Wachovia Bank*, Case No. 09-433 JM, 2009 WL 3423743, at *2 S.D. Cal. Oct. 23, 2009 (awarding attorney's fees for prevailing party for claim of unfair business practices under Cal. Bus. & Prof. Code § 17200, among others, because such claims were "either based directly on the contract, require predicate acts based on the contract, or relate to the formation of the contract."); *Bonner v. Redwood Mortg. Corp.*, No. 10-cv-00479-WHA, 2010 WL 2528962, at *3 (N.D. Cal. June 18, 2010) (awarding fees on Section 17200 claim given the claim's "significant relation" to the parties' contract). *See also Caldwell v. Wells Fargo Bank, N.A.*, No. 13-CV-01344-LHK, 2014 WL 789083, at *6 (N.D. Cal. Feb. 26, 2014) (collecting cases).

[10] *See e.g., Thueson v. U-Haul Int'l, Inc.*, No. A114367, 2007 WL 841937, at *3 (Cal. Ct. App. Mar. 21, 2007) (unpublished) (holding it was not an abuse of discretion to award fees on statutory franchise law claims because they were "inextricably intertwined and connected with his efforts to assert or protect his contractual rights," distinguishing *Kim v. Servosnax, Inc.*, 10 Cal. App. 4th 1346 (1992)). *See Barrientos*, 583 F.3d at 1216; *In re Baroff*, 105 F.3d at 442–43. *See also* Doc. 106 at 36 ("Defendants were also obligated to provide [franchise disclosures] in conjunction with annual renewals" of the WDAs); Doc. 133 at 53, 55 (observing GIS's California franchise law claim is "related to" and "based on" the WDAs).

- GIS's Tenth Cause of Action against RPM ("Tortious Interference with Contract") (Doc. 367 ¶¶ 143–150)[11];

- GIS's Eleventh Cause of Action against Guardian ("Breach of the Mid-Atlantic, Cook County, Indiana, Midwest, and Pennsylvania Agreements") (Doc. 367 ¶¶ 151–155);

- Guardian's First Counterclaim ("Declaratory Relief") (Doc. 36 ¶¶ 26–30);

- Guardian's Second Counterclaim ("Breach of the Alabama, Florida, and Tennessee Agreements") (Doc. 36 ¶¶ 31–34);

- Guardian's Third Counterclaim ("Breach of the Implied Covenant[] of Good Faith and Fair Dealing in the Alabama, Florida, and Tennessee Agreements") (Doc. 36 ¶¶ 35–38);

- Guardian's Fourth Counterclaim ("Breach of the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements") (Doc. 36 ¶¶ 39–42);

- Guardian's Fifth Counterclaim ("Breach of the Implied Covenant[] Of Good Faith and Fair Dealing in the Pennsylvania, Mid-Atlantic, Ohio, Cook County, Indiana, and Midwest Agreements") (Doc. 36 ¶¶ 43–46); and

- Guardian's Sixth Counterclaim ("Breach of California Commercial Code section 2306, subd. (2)") (Doc. 36 ¶¶ 47–50.)[12]

## B.    Prevailing Party

Next, the trial court "shall determine who is the party prevailing on the contract."  Cal. Civ. Code § 1717(b)(1).  Section 1717 defines the "prevailing party on the contract" as "the party who

---

[11] *See, e.g.*, *Do v. First Fin. Sec., Inc*., No. 214CV07608SVWAJW, 2016 WL 11757926, at *2 n.2 (C.D. Cal. Jan. 11, 2016) (Awarding fees under Section 1717 for tortious interference claim because it was "sufficiently intertwined with the interpretation" of the contract); *Webber v. Inland Empire Invs*., 74 Cal. App. 4th 884, 895 (1999) (affirming award of attorney's fees under Section 1717 on claim for "conspiracy to intentionally interfere with a contractual relationship").  *See Barrientos*, 583 F.3d at 1216; *In re Baroff*, 105 F.3d at 442–43.  *Cf. Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 129 (1979) ("Had plaintiff prevailed on its cause of action claiming defendant [was] in fact the alter ego[ ] of the corporation, defendant[ ] would have been liable on the notes.  Since [defendant] would have been liable for attorney's fees pursuant to the fees provision had plaintiff prevailed, [defendant] may recover attorney's fees pursuant to section 1717 now that [he] ha[s] prevailed.").

[12] *See* Cal Comm. Code § 2306(2) ("A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.").  *See also Barrientos*, 583 F.3d at 1216; *In re Baroff*, 105 F.3d at 442–43.

6

1    recovered a greater relief in the action on the contract." *Id*.  A trial court "may also determine that

2    there is no party prevailing on the contract for purposes of [Section 1717]." *Id*.

3        The standard for evaluating prevailing party status under Section 1717 is set forth in *Hsu v.*

4    *Abbara*, 9 Cal. 4th 863 (1995).  *See Berkla v. Corel Corp*., 302 F.3d 909, 920 (9th Cir. 2002).   In

5    that case, the California Supreme Court held that "[w]hen a defendant defeats recovery by the

6    plaintiff on the only contract claim in the action, the defendant is the party prevailing," and

7    conversely, "a plaintiff who obtains all relief requested on the only contract claim in the action must

8    be regarded as the party prevailing on the contract for purposes of attorney fees under section 1717."

9    *Hsu,* 9 Cal. 4th at 876.

10        However, "the trial court [retains] a measure of discretion to find no prevailing party when

11    the results of the litigation are mixed," including circumstances "when both parties seek relief, but

12    neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought."

13    *Id*. at 875–76 (citation omitted).  In such cases, "the trial court is to compare the relief awarded on

14    the contract claim or claims with the parties' demands on those same claims and their litigation

15    objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Id*.

16    at 876.  *See Scott Co. v. Blount, Inc*., 20 Cal. 4th 1103 (1999) (Where "neither party achieves a

17    complete victory on all the contract claims, it is within the discretion of the trial court to determine

18    which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to

19    justify an award of attorney fees.").  However, "a court may abuse [its] discretion if it finds no

20    prevailing party where the results are 'so lopsided that, even under an abuse of discretion standard,

21    it [is] unreasonable to say the [party with a greater degree of success] was not the prevailing party.'"

22    *Cardinal v. Lupo*, No. 18-CV-00272-JCS, 2020 WL 1694355, at *5 (N.D. Cal. Apr. 7, 2020)

23    (quoting *De la Cuesta v. Benham*, 193 Cal. App. 4th 1287, 1290 (2011)).

24        "That one party obtained a net monetary recovery may be a significant factor, but is not

25    dispositive."  *HPS Mech., Inc. v. JMR Constr. Corp*., No. 11-CV-02600-JCS, 2014 WL 6989112,

26    at *4 (N.D. Cal. Dec. 9, 2014) (citing *Sears v. Baccaglio*, 60 Cal. App. 4th 1136, 1156 (1998)).

27    "[I]n determining litigation success, courts should respect substance rather than form, and to this

28    extent should be guided by 'equitable considerations.'" *Hsu*, 9 Cal.4th at 877 (emphasis omitted);

*see also Berkla*, 302 F.3d at 920 ("[I]t is clear from *Hsu* that a court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives"); *Hollywood Foreign Press Ass'n v. Red Zone Cap. Partners II, L.P.*, No. CV-1008-833-AHMFMOX, 2012 WL 13006194, at *1 (C.D. Cal. Nov. 1, 2012) ("California courts have frequently applied the principle that courts must weigh the relative successes of each party before deciding whether–and, if so, to whom–to award attorneys' fees.") (collecting cases).

With these principles in mind, the Court evaluates whether GIS, Guardian, or neither, is the prevailing party for purposes of Section 1717.

    1.   <u>GIS's First and Eleventh Causes of Action</u>

        *a.*    *As against Guardian*

At the second trial, following an appeal, the jury found in favor of GIS and against Guardian, determining that Guardian breached the Florida, Alabama, Tennessee, Mid-Atlantic, Cook County, Indiana, Midwest, and Pennsylvania Agreements.  (*See* Doc. 498 at 2.)  The jury awarded $12 million dollars in economic damages, but found that GIS "could have avoided" $6 million dollars of those damages "with reasonable efforts or expenditures."  (*Id*. at 3–4.)  Thus, the net dollar amount awarded by the jury on these claims against Guardian was $6 million.  (*Id*. at 4.)  The jury verdict was affirmed on appeal (*see* Doc. 527) and judgment was entered in GIS's favor on these claims (*see* Doc. 499 at 2).

The Court concludes that GIS "recovered a greater relief" than Guardian and is the prevailing party on these claims.  Cal. Civ. Code § 1717(b)(1).  Guardian contends that there is no prevailing party because GIS recovered nothing at the first trial, despite seeking over $76 million in damages, and that it was ultimately awarded a fraction of the $55 million it sought.[13]  (*See* Doc. 538 at 10.) In looking only to the monetary damages awarded to GIS, however, Guardian ignores that GIS obtained an unqualified victory on appeal of the Court's interpretations of the WDAs on summary

---

[13] The Court rejects GIS's contention (Doc. 532-1 at 11) that Guardian is "judicially estopped" from arguing that GIS is not the prevailing party under Section 1717 based on its submissions made on appeal, as that issue was not before the Ninth Circuit.  *See, e.g., Multimedia Pat. Tr. v. LG Elecs*., Inc., No. 12-CV-2731-H KSC, 2013 WL 5779645, at *6 (S.D. Cal. Aug. 1, 2013) (Judicial estoppel concerns the inconsistency of a "particular position" taken in the litigation).

judgment, an issue central to the parties' dispute and one that had been hotly contested over the course of the case. *See Iguaca, Inc. v. Filho*, No. 09-0380, 2014 WL 3668574, *3 (N.D. Cal. July 23, 2014) (awarding attorney's fees under Section 1717 to a party who "obtained judgment for only fraction of the dollars it sought" where "the recovery was not *de minimis* and included complete victory on [an] important issue," distinguishing the Ninth Circuit's decision in *Berkla*, 302 F.3d 909.)).

GIS's successful appeal secured a retrial of its claim for breach of the Alabama, Florida, and Tennessee Agreements. (*See* Doc. 344.)  GIS also accomplished other litigation objectives: it was granted leave by the Court, over Guardian's objection, to amend its complaint to add a claim for breach of the Mid-Atlantic, Cook County, Indiana, Midwest, and Pennsylvania Agreements (which Guardian terminated during the pendency of the appeal, *see* Doc. 366 at 5–6), and was ultimately awarded millions of dollars by the jury, *see* Doc. 498 at 2–4.  The fact that GIS did not obtain the entirety of damages sought does not detract from these successes. *See Scott Co.*, 20 Cal. 4th at 1109 (1999) (affirming trial court's conclusion that "on balance plaintiff prevailed on the contract" even though "plaintiff sought to prove more than $2 million in damages . . . [but] it succeeded in establishing only about $440,000 in damages" and "did not achieve all of its litigation objectives"); *Citrus El Dorado LLC*, 2016 WL 7626583, at *5 (plaintiff is prevailing party even though it was only awarded $1.2 million of the $34 million it originally sought).

Guardian further asserts that the jury valued Guardian's lack-of-mitigation affirmative defense as "the exact same amount the jury awarded GIS," thereby demonstrating a "mixed result." (Doc. 538 at 12.)  Guardian's math is faulty.  Had the jury valued Guardian's affirmative defense as equal to the value of GIS's claims, then they would have awarded GIS <u>zero</u>.  Instead, the jury found that GIS's claims were valued at $12 million, double the value of GIS's lack-of-mitigation defense, thereby resulting in a net award of $6 million to GIS.

Lastly, the Court rejects Guardian's argument that GIS's appeal of the jury verdict is "strong evidence" that GIS did not achieve its litigation objectives. (*Id*. at 11.)  Guardian cites no legal authority in support this argument, the application of which could have a chilling effect on a party's right to pursue an appeal.  Moreover, the failure by a party to achieve all of its litigation objectives

1    does not preclude a finding that the party prevailed.  *See Scott Co.*, 20 Cal. 4th at 1109.

2                       *b.      As against RPM*

3         With respect to GIS's claim against RPM for breach of the Alabama, Florida, and Tennessee

4    Agreements, Guardian asserts it is the prevailing party because the claim was dismissed with

5    prejudice pursuant to Fed. R. Civ. P. 41(b) (*see* Doc. 499 at 3), which "operates as an adjudication

6    on the merits."  (Doc. 534-1 at 18.  *See also* Doc. 538 at 14.)  Deeming this claim as having been

7    adjudicated on the merits in Guardian's favor, however, would run afoul of the California Supreme

8    Court's admonition to "respect substance rather than form."  *Hsu*, 9 Cal.4th at 877.

9         Section 1717(b)(2) provides "[w]here an action has been voluntarily dismissed . . . there

10   shall be no prevailing party for purposes of this section."   As this Court previously held, GIS

11   intentionally abandoned, and ultimately failed to prosecute, its claim for breach of the Alabama,

12   Florida, and Tennessee Agreements against RPM as an alter ego of Guardian.  (Doc. 332 at 22, 24.)

13   Although not a voluntary dismissal for purposes of the Federal Rules *see id*. at 23, courts, including

14   this one, have held that, for purposes of Section 1717(b)(2), a plaintiff's abandonment of a claim

15   operates as a voluntary dismissal, such that there is no prevailing party.  *See, e.g., Donnelly v. Am.*

16   *Express Bank, FSB*, No. 18-CV-1024-GPC-WVG, 2018 WL 4759206, at *4 (S.D. Cal. Oct. 2, 2018)

17   (collecting cases); *Ennis v. Mortgagetree Lending, Inc*., No. 2:08-CV-1301-GEB-EFB, 2010 WL

18   3341544, at *2 (E.D. Cal. Aug. 24, 2010) ("Plaintiff abandoned his breach of contract claim when

19   he failed to preserve this claim for trial.  Therefore, there was no 'final resolution' of Plaintiff's

20   breach of contract claim.  Plaintiff's failure to preserve his breach of contract claim for trial was

21   akin to a voluntary dismissal, which prevents Defendants from prevailing on this claim under section

22   1717.").

23        In light of GIS's abandonment, and therefore voluntary dismissal, of its claim for breach of

24   the Alabama, Florida, and Tennessee Agreements against RPM, the Court concludes there is no

25   prevailing party on this claim.  Cal. Civ. Code § 1717(b)(2).

26        2.      GIS's Second Cause of Action

27                       *a.      As against Guardian*

28        At the first trial, the jury found in favor of Guardian on GIS's claim against it for breach of

the implied covenant of good faith and fair dealing in the Alabama, Florida, and Tennessee Agreements.  (*See* Doc. 498 at 2.)  This claim was not the subject of any appeal, and the Court entered judgment in favor of Guardian.  (*See* Doc. 499 at 2.)  GIS concedes that Guardian prevailed on this claim.  (*See* Doc. 532-1 at 10.)  As such, the Court finds that Guardian is the prevailing party.

> b.    As against RPM

GIS also intentionally abandoned its claim for breach GIS's claim against RPM for breach of the implied covenant of good faith and fair dealing in the Alabama, Florida, and Tennessee Agreements.  (*See* Doc. 332 at 22.)  Because such abandonment constitutes a voluntary dismissal for purposes of Section 1717(b)(2), *see Donnelly*, 2018 WL 4759206, at *4, the Court finds there is no prevailing party on this claim.

3.    GIS's Fifth Cause of Action

The Court granted summary judgment in favor of Defendants on GIS's declaratory judgment claim.  (*See* Doc. 133 at 39–42.)  There was no appeal of this claim, and judgment was thereafter entered in favor of Defendants.  (*See* Doc. 499 at 2.)  As such, Defendants are the prevailing party on this claim.

GIS does not dispute that Defendants are the prevailing party; instead, it contends that the claim is not "on a contract" and thus not covered by Section 1717.  (*See* Doc. 532-1 at 7; Doc. 540 at 19.)  As indicated above, the Court has rejected this argument, finding that this claim "involves" the WDAs, in that the complained-of conduct—Defendants' threatened termination of the WDAs— implicates the interpretation and enforcement of their terms (*see, e.g.,* Doc. 367 ¶¶ 81–88, 91–93; Doc. 106 at 27 ("actionable controversy" for GIS's declaratory judgment claim is "whether Defendants have threatened to terminate, and/or are still plotting to terminate, the Cook County Agreement and all other WDAs"); Doc. 133 at 40 (same).).  *See, e.g., Teton Glob. Invs. LLC,* 2021 WL 9649335, at *3; *Citrus El Dorado LLC,* 2016 WL 7626583, at *3; *Tri-City Healthcare Dist.,* 2014 WL 202616, at *3, *Davis,* 2007 WL 2825716, at *2.

4.    GIS's Sixth Cause of Action

GIS abandoned its claim for violation of the California Business and Professions Code sections 17200-17210 against Defendants.  (*See* Doc. 332 at 24.)  In light of GIS's abandonment,

1    and therefore voluntary dismissal, of this claim, the Court concludes there is no prevailing party.

2    *Donnelly*, 2018 WL 4759206, at *4; Cal. Civ. Code § 1717(b)(2).

3              5.    GIS's Seventh Cause of Action

4         The Court granted summary judgment in favor of Defendants on GIS's claim for violation

5    of California Franchise Investment Law based on the WDAs.[14]  (*See* Doc. 133 at 52–55.)  No appeal

6    was taken, and judgment was entered in favor of Defendants.  (*See* Doc. 499 at 2.)  As such,

7    Defendants are the prevailing party on this claim.

8         Instead of disputing that Defendants are the prevailing party on this partial claim, GIS

9    contends that this claim is not "on a contract" for Section 1717 purposes.  The Court has rejected

10   this argument, as indicated above, finding that this claim "involves" the WDAs because it is

11   connected to GIS's efforts to assert and protect its contractual rights under those agreements (*see,*

12   *e.g.,* Doc. 367 ¶¶ 123–129; Doc. 106 at 36 ("Defendants were also obligated to provide [franchise

13   disclosures] in conjunction with annual renewals" of the WDAs); Doc. 133 at 53, 55 (observing

14   GIS's California franchise law claim is "related to" and "based on" the WDAs).)  *See, e.g., Thueson*,

15   2007 WL 841937, at *3.  *See Barrientos*, 583 F.3d at 1216; *In re Baroff*, 105 F.3d at 442–43.

16             6.    GIS's Eighth Cause of Action

17                   a.    *As against Guardian*

18        At the first trial, the jury found in favor of Guardian on GIS's claim against it for breach of

19   the implied covenant of good faith and fair dealing in the Pennsylvania, Mid-Atlantic, Ohio, Cook

20   County, Indiana, and Midwest Agreements.  (*See* Doc. 286 at 6.)  This claim was not the subject of

21   any appeal, and the Court entered judgment in favor of Guardian.  (*See* Doc. 499 at 2.)  GIS concedes

22   that Guardian prevailed on this claim.  (*See* Doc. 532-1 at 10.)  As such, the Court finds that

23   Guardian is the prevailing party.

24                   b.    *As against RPM*

25        GIS also intentionally abandoned this claim against RPM.  (*See* Doc. 332 at 22.)  Because

26

27   ───────────────────────────
     [14] GIS also based its California franchise law claim on a "form distributor agreement" dated January 2015.  (*See, e.g.*,
     Doc. 133 at 55–57.)  Because GIS intentionally abandoned, and therefore voluntarily dismissed, this portion of its claim

28   (*see* Doc. 332 at 24), there is no prevailing party under Section 1717 on this partial claim.  *See Donnelly*, 2018 WL
     4759206, at *4; Cal. Civ. Code § 1717(b)(2).

1  such abandonment constitutes a voluntary dismissal for purposes of Section 1717(b)(2), *see*

2  *Donnelly*, 2018 WL 4759206, at *4, the Court finds there is no prevailing party on this claim.

3         7.    <u>GIS's Ninth Cause of Action</u>

4       The Court granted judgment as a matter of law to Defendants on this claim for breach of the

5  of the Mid-Atlantic Agreement, finding that because the only products allegedly sold in violation of

6  the Agreement were electronic furniture protection plans that were not covered by its terms (as the

7  Court had previously found on summary judgment), there was no evidence of breach. (*See* Doc.

8  266 at 17:1–14.) This claim was not the subject of any appeal, and the Court entered judgment in

9  favor of Defendants.[15] (*See* Doc. 499 at 2.) GIS concedes that Defendants prevailed on this claim.

10  (*See* Doc. 532-1 at 10.) As such, the Court finds that Defendants are the prevailing party.

11         8.    <u>GIS's Tenth Cause of Action</u>

12       At the first trial, the jury found in favor of RPM on GIS's claim against it for tortious

13  interference with the WDAs. (*See* Doc. 286 at 8.) This claim was not the subject of any appeal,

14  and the Court entered judgment in favor of RPM. (*See* Doc. 499 at 2.) As such, the Court finds that

15  RPM is the prevailing party.

16       GIS does not dispute that RPM is the prevailing party; instead, it contends that the claim is

17  not "on a contract" and thus not covered by Section 1717. (*See* Doc. 540 at 19–20. *See also* Doc.

18  532-1 at 7.) As indicated above, the Court has rejected this argument, finding that this claim

19  "involves" the WDAs, in that they play an "integral part" in defining the rights of the parties and

20  the alleged interference (*see, e.g.,* Doc. 367 ¶¶ 144–148.). *See Barrientos,* 583 F.3d at 1216. *See*

21  *also, e.g., Do*, 2016 WL 11757926, at *2 n.2; *Webber*, 74 Cal. App. 4th at 895. The fact that RPM

22  was not a signatory to the WDAs, but instead the alleged alter ego of a signatory, does not alter this

23  result. *See Reynolds Metals Co.*, 25 Cal. 3d at 129.

24  ///

25

---

26  [15] While GIS did not appeal the claim itself, it did appeal the Court's finding on summary judgment that the Mid-Atlantic Agreement did not cover Guardian's electronic furniture protection plans, which formed the basis of the Court's grant

27  of judgment as a matter of law. (*See* Doc. 344 at 3–4.) The Ninth Circuit reversed and remanded this issue for trial. (*See id.*) Neither this issue nor the claim was retried in the second trial, however. Instead, at the second trial, GIS

28  litigated, successfully, its Eleventh Cause of Action, which alleges breach of eight of the WDAs—including the Mid-Atlantic Agreement. (*See* Doc. 367 ¶¶ 151–155; Doc. 499 at 2.)

1          9.      Guardian's First Counterclaim

2          Guardian's first counterclaim was comprised of four predicates.  (*See* Doc. 36 ¶ 27.)  The

3  Court granted judgment as a matter of law to GIS on the first (whether Guardian was entitled to

4  immediately terminate the WDAs due to GIS's breaches).  (*See* Doc. 271 at 6:18–23.)

5          Regarding the second predicate (whether the electronics furniture protection plans are

6  covered by the WDAs), the Court granted summary judgment in favor of Guardian as to the Florida,

7  Mid-Atlantic, and Cook County Agreements, finding that Guardian's electronic furniture protection

8  plans were not covered under those agreements.  (Doc. 133 at 71 (Florida and Mid-Atlantic

9  Agreements); Doc. 161 at 5 (Cook County Agreement).)  On appeal, the Ninth Circuit reversed the

10  Court's grant of summary judgment on this predicate, and remanded the issue for trial.  (Doc. 344

11  at 4.)  Guardian did not pursue retrial of this portion of its counterclaim and therefore abandoned it.

12  Because abandonment constitutes voluntary dismissal, *see Donnelly*, 2018 WL 4759206, at *4, there

13  is no prevailing party as to this predicate of the counterclaim relating to the Florida, Mid-Atlantic,

14  and Cook County Agreements.  Cal. Civ. Code § 1717(b)(2).  As to the other six WDAs, the jury at

15  the first trial rendered a verdict in favor of GIS, finding that Guardian's electronic furniture

16  protection plans were covered by those agreements.  (Doc. 286 at 23.)

17          The Court granted judgment as a matter of law to GIS on the third predicate (whether

18  Guardian may establish a purchase quota for its electronic furniture protection plans).  (*See* Doc.

19  271 at 5:24–6:4.)  Regarding the fourth predicate (whether GIS has used its best efforts to promote

20  the sale of Guardian's products), the Court granted summary judgment in favor of GIS on this claim.

21  (*See* Doc. 133 at 73–76.)

22          Judgment was entered in favor of GIS on all predicates of this counterclaim, except that

23  portion that Guardian abandoned.  (*See* Doc. 499 at 2–3, 4.)  No appeal was taken.  The Court

24  therefore finds that GIS was the prevailing party on all predicates of Guardian's first counterclaim

25  except that for which there is none.

26          10.      Guardian's Second, Third, Fourth, and Fifth Counterclaims

27          At the first trial, the jury found in favor of GIS on these counterclaims for breach of contract

28  and breach of the implied covenant of good faith and fair dealing.  (*See* Doc. 286 at 11–22.)  The

14

claims were not the subject of any appeal, and the Court entered judgment in favor of GIS.  (*See* Doc. 499 at 3.)  As such, the Court finds that GIS is the prevailing party on these counterclaims.

11.     Guardian's Sixth Counterclaims

Finally, the Court granted summary judgment in favor of GIS on Guardian's sixth counterclaim, breach of California Commercial Code § 2306(2).  (*See* Doc. 133 at 77 n.37.)  No appeal was taken, and judgment was entered in favor of GIS.  (*See* Doc. 499 at 3.)  GIS is therefore the prevailing party on this counterclaim.

12.     Conclusion

Tallying the number of claims on which each party prevailed militates toward a finding that GIS is the prevailing party, having successfully prosecuted and defended a total of eight claims against Guardian, as compared to Guardian (five claims) and RPM (four claims).   Such a rudimentary calculation is only part of the analysis, however, because the results are not "lopsided" in GIS's favor.  In this instance, equitable considerations apply, and courts are counseled to probe beyond mere results to determine which litigant actually succeeded.  *See Susilo v. Wells Fargo Bank, N.A.*, No. CV 11-1814 CAS PJWX, 2013 WL 1970064, at *3 (C.D. Cal. May 6, 2013); *Sears*, 60 Cal. App. 4th at 1155.

In this case, the result suggested by the claim tally actually correlates to litigation success.  The gravamen of this lawsuit, and the factual predicate for all of GIS's claims, both contractual and extracontractual, is the allegation that Guardian, either directly or through its alter ego RPM, diminished and/or deprived GIS of its rights under the various WDAs.  As to this pervading issue, GIS clearly prevailed, its litigation objectives met not only by obtaining $6 million in damages on its affirmative claims, but also by successfully defending against liability on all of Guardian's counterclaims.[16]  *See Shany Co. v. Crain Walnut Shelling, Inc*., No. 2:11-CV-01112-KJM, 2015 WL 351660, at *3 (E.D. Cal. Jan. 23, 2015) ("California courts look to whether a party has prevailed in the 'ordinary and popular sense' and whether a party has 'realized its litigation objectives.'") (quoting *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998)).

---

[16] Although GIS's receipt of a net judgment in its favor is not dispositive of the prevailing party question, "it is significant: a trial court that disregards 'a sizeable net monetary recovery[ ] would risk abuse of discretion under [S]ection 1717.'" *HPS Mech., Inc.,* 2014 WL 6989112, at *5 (quoting *Sears*, 60 Cal. App. 4th at 1156).

Applying equitable considerations to this case, *Hsu*, 9 Cal.4th at 877, the Court finds that GIS, having achieved "greater relief" than Defendants "in the action on the contracts," is the prevailing party and therefore entitled to attorney's fees under Section 1717. The Court shall therefore grant GIS's motion for attorney's fees and, as a result, shall deny Defendants' motion for attorney's fees.[17] *See Frog Creek Partners, LLC v. Vance Brown, Inc*., 206 Cal. App. 4th 515, 520 (2012) (holding there can be only one prevailing party on a single contract under Section 1717).

**C.    Reasonableness**

Having found GIS to be the prevailing party, the Court must next determine whether GIS's requested fees are reasonable. GIS requests $4,353,283 in attorney's fees, based on a total of 12,967.6 hours of work.[18] (Doc. 532-1 at 19; Doc. 542-1 ¶¶ 5–6.) Guardian contends the fees are excessive because GIS failed to raise legal arguments on appeal and acted "unreasonably" during the course of litigation. (Doc. 538 at 17–18.) Guardian further objects to the fees because, with multiple attorneys working on the matter, the time spent on certain tasks were duplicative and inflated, and they include time spent litigating claims not "on the contract." (*Id*. at 18–19.)

Under California law, the trial court has discretion to determine what constitutes reasonable attorney's fees. *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1096 (2000). "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' *i.e*., the number of hours reasonably expended multiplied by the reasonable hourly rate." *Ctr. For Biological Diversity v. Cnty. of San Bernardino*, 188 Cal. App. 4th 603, 616 (2010). "California courts have consistently held that a computation of

---

[17] Guardian contends that it at least achieved its litigation objective as to the Ohio Agreement. (*See* Doc. 534-1 at 19–20.) However, the question of whether any party has, or will achieve, its objective with respect to that Agreement has yet to be determined, as it is the subject of a separate lawsuit between the parties currently pending before this Court, *see Guardian Protection Products, Inc. v. G.P.P., Inc*., Case No. 1:20-cv-01680-SKO (E.D. Cal. November 24, 2020). *Cf. Hollywood Foreign Press Ass'n v. Red Zone Cap. Partners II, L.P*., No. CV10-08833 AHM (FMOx), 2012 WL 13006194, at *1 (C.D. Cal. Nov. 1, 2012) (award of attorney's fees premature where claims remain to be tried).

Moreover, the Ninth Circuit expressly rejected the interpretation of the WDAs on which Guardian based its defense of GIS's Ohio Agreement claim, calling into question the continuing viability of that defense. (*See* Doc. 344 at 2–4.) This applies with equal force to RPM, as its claimed "unqualified defense victory" (Doc. 534-1 at 17) ignores the pyrrhic nature of such victory. That RPM succeeded on claims, the defense of which was based on interpretations of the WDAs that the Ninth Circuit later expressly rejected, does not a prevailing party make. *See Susilo v. Wells Fargo Bank, N.A*., No. CV 11-1814 CAS PJWX, 2013 WL 1970064, at *3 (C.D. Cal. May 6, 2013) ("Applying equitable considerations, California courts have held that to determine which side is the prevailing party, in some cases it is necessary to probe behind the ultimate result in the case to determine which litigant actually succeeded.")

[18] This request includes $13,905 for 42.1 hours of additional work in connection with GIS's motion for attorney's fees. (*See* Doc. 542-1 ¶¶ 5–6.)

16

time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorney's fee award." *Id*. "Generally, the reasonable hourly rate used for the lodestar calculation 'is that prevailing in the community for similar work.'" *Id*. (quoting *PLCM Grp.*, 22 Cal. 4th at 1095). After determining the reasonable hourly rate for comparable legal services in the community, courts may adjust that amount based on "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "The purpose of such adjustment is to fix a fee at the fair market value for the particular action." *Id*. "The 'burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable.'" *Ctr. For Biological Diversity*, 188 Cal. App. 4th at 615 (quoting *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 98 (2009)).

### 1. Hourly Rates

Utilizing the lodestar method, GIS requests $4,353,283 in attorney's fees. (Doc. 542-1 ¶ 6.) As support for the requested amount, GIS provides declarations from Dylan J. Liddiard and Dylan J. Savage. (Docs. 532-2 & 542-1.) Liddiard and Savage are partners in the firm Wilson Sonsini Goodrich & Rosati, P.C., counsel of record for GIS. (*See* Doc. 532-1 ¶ 12; Doc. 542-1 ¶ 5.) GIS requests hourly rates between $350 and $400 for partners with 12 to 35 years of experience; between $175 and $350 for associates and counsel with one to 13 years of experience; and between $125 and $150 for paralegals. (*Id*.) Guardian does not challenge GIS's requested hourly rates.

Upon consideration of the declarations and filings submitted by counsel, the attorney's experience, and other rates approved in this district, the Court finds that the requested rates are reasonable. *See Kang v. Credit Bureau Connection, Inc.*, No. 1:18-CV-01359-SKO, 2023 WL 6811994, at *12 (E.D. Cal. Oct. 16, 2023) ("The Court has performed a comprehensive survey of attorney fees awarded in the Eastern District and finds current hourly rates range from $200 to $750 . . . .") (collecting cases); *id*. at *13 ("Paralegal rates within the Eastern District range from $75 to approximately $150.00 per hour, depending on experience.").

### 2. Hours Expended

A fee applicant must provide time records documenting the tasks completed and the amount

of time spent.  *See Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 945–46 (9th Cir. 2007).  Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable.  *Ketchum*, 24 Cal. 4th at 1132 (quoting *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977)).  Thus, evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended."  *Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008).  The court must exclude "duplicative or excessive" time from its fee award.  *Graciano v. Robinson Ford Sales, Inc*., 144 Cal. App. 4th 140, 161 (2006); *see also Ketchum*, 24 Cal. 4th at 1132 (stating "inefficient or duplicative efforts [are] not subject to compensation").

The billing records and declarations submitted by GIS indicate that its attorneys expended 11,649 billable hours on this case through October 4, 2023, while its paralegals expended 1,318.6 hours.  (*See* Doc. 532-1 ¶ 12; Doc. 542-1 ¶ 5.)  Guardian contends that GIS "makes no effort to apportion the time incurred with respect to issues that are not recoverable, such as the Bob's Agreement." (Doc. 538 at 19.)  Review of GIS's billing records, however, shows this to be incorrect.  Of the thousands of entries, there are only two unredacted that mention the Bob's Agreement.  (*See* Doc. 532-4 at 66 (12.6 hours spent preparing the motion for judgment as a matter of law).)  Because these entries pertain to an issue common to both the Bob's Agreement **and** the WDAs, they need not be apportioned.  *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1111 (1996) ("[A]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.") (internal citations, quotation marks, and alternations omitted).

Guardian further asserts many of the requested hours are unreasonable because they "reflect a substantial amount of duplication and inflation in terms of the billing by multiple attorneys with respect to numerous issues, including most noticeably with respect to the appeal and the appellate briefs, and trial preparation and trial."  (Doc. 538 at 18.)  However, Guardian does not point to any specific entries in the billing records provided by GIS, nor challenge any specific amount.  Rather, it cites ranges of pages of containing "appeal related time" and "trial related time" spent by various

attorneys.  (*Id.*)  The Court notes Guardian bears the burden of providing specific evidence to challenge the accuracy and reasonableness of the hours charged.  *Gates v. Gomez*, 60 F.3d 525, 534–35 (9th Cir. 1995); *see Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984).  Moreover, "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort."  *See McGrath v. Cty. of Nev.*, 67 F.3d 248, 255 (9th Cir. 1995).

Upon reviewing GIS's billing records, the Court does not agree with Guardian's assertion of unreasonably duplicative efforts at trial or on appeal.  Nor does it find that any improper litigation conduct by GIS inflated the hours requested.  This case was filed in February 2015.  In this eight-year period, actions taken by <u>both</u> sides has resulted in over 500 docket entries, four complaints, three rounds of fact discovery, two rounds of expert discovery, five discovery disputes, two rounds of summary judgment motions, two jury trials, extensive pre- and post-trial motions and briefing, five motions for reconsideration, two appeals, an interlocutory appeal.

In sum, the Court has reviewed the declarations of GIS's attorneys and the detailed time records provided.  The Court finds the hourly rates are reasonable.  The Court further finds that the hours expended were reasonable and necessary to litigating vigorously this case over the course of eight years.  *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.  And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.") (internal quotations omitted); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1335 (C.D. Cal. 2015) (identifying the "growing trend that District Court judges should award fees based on an overall global understanding and review of a case . . . .").  *See also Directors Fin. Grp. v. Savino*, No. SACV 17-00018 AG (JCGx), 2018 WL 5880615, at *3 (C.D. Cal. Sept. 10, 2018) ("A holistic, global approach is appropriate here in deciding whether a fee request is reasonable and appropriate.").

## IV.    CONCLUSION AND ORDER

Based upon the foregoing, Plaintiff G.P.P., Inc. d/b/a Guardian Innovative Solutions' motion

1   for attorney's fees (Doc. 532) is GRANTED in the amount of $4,353,283.  Defendants Guardian

2   Protection Products, Inc.'s and RPM Wood Finishes Group's motion for attorney's fees (Doc. 534)

3   is DENIED.

4

5   IT IS SO ORDERED.

6   Dated:   __November 15, 2023__                    ____/s/ *Sheila K. Oberto*_____

7                                                UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28